1
2
3
4
5
6
7

8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                AT SEATTLE

10   BOILERMAKERS NATIONAL                  Consolidated Case No. C09-0037 (MJP)
     ANNUITY TRUST FUND, on Behalf of
11   Itself and All Others Similarly Situated,   **DEFENDANTS THE FIRST AMERICAN
                                                 CORPORATION'S AND eAPPRAISEIT,
12                Plaintiff,                      LLC'S MOTION TO DISMISS AMENDED
                                                 CONSOLIDATED CLASS ACTION
13          v.                                   COMPLAINT**

14   WAMU MORTGAGE PASS-THROUGH
     CERTIFICATES, SERIES AR1, et al.,          **NOTE FOR CONSIDERATION: March 12,
15                                              2010**
                 Defendants.
16                                              **ORAL ARGUMENT REQUESTED**

17
     NEW ORLEANS EMPLOYEES'
18   RETIREMENT SYSTEM, et al.,

19                Plaintiffs,

20          v.

21   FEDERAL DEPOSIT INSURANCE
     CORPORATION AS RECEIVER FOR
22   WASHINGTON MUTUAL BANK, et al.,

23                Defendants.

24   ***continued …***

25
26

**THE HONORABLE MARSHA J. PECHMAN**

1

NEW ORLEANS EMPLOYEES'
RETIREMENT SYSTEM, et al.,

2

3

Plaintiffs,

v.

4

5

THE FIRST AMERICAN
CORPORATION and FIRST AMERICAN
eAPPRAISEIT, LLC,

6

7

Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1

# TABLE OF CONTENTS

2

Page

3    I.     INTRODUCTION ................................................................................................ 1

4    II.    RELEVANT BACKGROUND ........................................................................... 3

       A.     Plaintiffs .................................................................................................. 3

5      B.     First American and eAppraiseIT ............................................................. 3

6      C.     The Mortgage Pass-Through Certificates ............................................... 4

7      D.     The Securitization Process ...................................................................... 5

       E.     Procedural Background ........................................................................... 6

8    III.   PLAINTIFFS LACK STANDING TO ASSERT ANY CLAIMS BASED ON

9           THE 12 SERIES OF CERTIFICATES THAT NO NAMED PLAINTIFF
            PURCHASED ..................................................................................................... 7

10   IV.    PLAINTIFFS CANNOT ASSERT ANY CLAIMS AGAINST FIRST
            AMERICAN AND EAPPRAISEIT BASED ON OFFERING DOCUMENTS

11          OR SECURITIES THAT PRE-DATE THEIR ALLEGED CONDUCT ..................... 9

12   V.     PLAINTIFFS' SECTION 11 CLAIM AGAINST FIRST AMERICAN AND
            EAPPRAISEIT SHOULD BE DISMISSED ................................................... 10

13     A.     First American And eAppraiseIT Are Not Proper Defendants To
              Plaintiffs' Section 11 Claim ................................................................. 10

14     B.     Plaintiffs' Section 11 Claim Is Time-Barred ....................................... 11

15   VI.    PLAINTIFFS' WSSA CLAIM AGAINST FIRST AMERICAN AND
            EAPPRAISEIT IS PREEMPTED BY FEDERAL LAW ............................... 14

16     A.     HOLA Created A Pervasive Federal Regulatory Scheme That Leaves No

17            Room For State Regulation Or Oversight ............................................. 14

18     B.     FIRREA Extends OTS's Pervasive Reach To Appraisal Programs And
              Institution-Affiliated Parties, Such As eAppraiseIT ............................. 15

19     C.     Plaintiffs' WSSA Claim Is Preempted And Must Be Dismissed .................... 16

     VII.   PLAINTIFFS' WSSA CLAIM FAILS AS A MATTER OF LAW ............................. 19

20     A.     Plaintiffs Cannot Allege That First American Or eAppraiseIT Made Any

21            Actionable Misrepresentation Or Omission ......................................... 20

       B.     Defendants Are Not "Sellers" Under WSSA .................................................. 22

22     C.     Plaintiffs' "Control Person" Claim Against First American Fails .................... 24

23   VIII.  CONCLUSION ................................................................................................. 24

24

25

26

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

# TABLE OF AUTHORITIES

**Page**

### CASES

*Adair v. Kay Kotts Assocs., Inc.*,
No. 97 Civ. 3375(SS), 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) ............................... 11

*Alcaraz v. Wachovia Mortgage, FSB*,
No. CV F  08-1640 LJO SMS, 2009 WL 160308 (E.D. Cal. Jan. 21, 2009) .................. 17

*Bank of America v. City of San Francisco*,
309 F.3d 551 (9th Cir. 2002) ........................................................................................ 14

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ...................................................................................................... 22

*Betz v. Trainer Wortham & Co.*,
504 F.3d 1017 (9th Cir. 2007) ...................................................................................... 12

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ............................................................................................ 5

*Brin v. Stutzman*,
89 Wn. App. 809, 951 P.2d 291 (1998) ......................................................................... 23

*Burgess v. Premier Corp.*,
727 F.2d 826 (9th Cir. 1984) ........................................................................................ 21

*Casey v. FDIC*,
583 F.3d 586 (8th Cir. 2009) ........................................................................................ 17

*Cedeno v. IndyMac Bancorp., Inc.*,
No. 06 Civ. 6438(JGK), 2008 WL 3992304 (S.D.N.Y. Aug. 26, 2008) .................. 17, 19

*Chiarella v. United States*,
445 U.S. 222 (1980) ...................................................................................................... 22

*Commc'ns Workers of Am. Plan for Employees' Pensions &
Death Benefits v. CSK Auto Corp.*,
No. CV06-1503-PHX-DGC, 2007 WL 951968 (D. Ariz. Mar. 28, 2007) .................... 22

*Desai v. Deutsche Bank Sec. Ltd.*,
573 F.3d 931 (9th Cir. 2009) ........................................................................................ 20

*Haberman v. Wash. Pub. Power Supply Sys.*,
109 Wn.2d 107, 744 P.2d 1032 (1987) ........................................................................ 23

*Hagert v. Glickman,Lurie, Eiger & Co.*,
520 F. Supp. 1028 (D. Minn. 1981) .............................................................................. 11

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

**TABLE OF AUTHORITIES**
(continued)

Page

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983) ................................................................................................. 10, 11

*Hines v. Data Line Systems,Inc.*,
    114 Wn.2d 127, 787 P.2d 8 (1990) ......................................................................... 20, 23

*Hilton v. Wash. Mut. Bank*,
    No. C 09-1191 SI, 2009 WL 3485953, (N.D. Cal. Oct. 28, 2009) .................................. 17

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008) ............................................................................. 8

*Howard v. Everex Sys.,Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ....................................................................................... 21

*In re AIG Advisor Group Sec. Litig.*,
    No. 06 CV 1625(JG), 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007) ................................ 8

*In re Am. Funds Sec. Litig.*,
    556 F. Supp. 2d 1100 (C.D. Cal. 2008) .................................................................... 12, 13

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) .......................................................................................... 9

*In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*,
    601 F. Supp. 2d 1201 (S.D. Cal. 2009) ......................................................................... 17

*In re Cylink Sec. Litig.*,
    178 F. Supp. 2d 1077 (N.D. Cal. 2001)......................................................................... 22

*In re Jiffy Lube Sec. Litig.*,
    No. Civ. Y-89-1939, 1990 WL 10010982 (D. Md. Oct. 31, 1990)................................. 11

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006) ............................................................................. 8

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ........................................................................................... 5

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
    No. 2:08-md-1919 MJP, 2009 WL 3517630 (W.D. Wash. Oct. 27, 2009).................. 7, 9

*In re Worlds of Wonder Sec. Litig.*,
    694 F. Supp. 1427 (N.D. Cal. 1988) ......................................................................... 10, 11

*Kreek v. Wells Fargo & Co.*,
    652 F. Supp. 2d 1053 (N.D. Cal. 2009)..................................................................... 12, 13

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ! Tel: 206.839.4800

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...........................................................7

*McFarland v. Memorex Corp.,*
    493 F. Supp. 631 (N.D. Cal. 1980)...............................11

*McGuire v. Dendreon Corp.,*
    No. C07-800MJP, 2008 WL 1791381 (W.D. Wash. Apr. 18, 2008) ...............5

*Monroe v. Hughes,*
    31 F.3d 772 (9th Cir. 1994) ...........................................22

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,*
    --- F. Supp. 2d ---, 2009 WL 3149775 (D. Mass. 2009) ...................8

*Shinn v. Thrust IV,Inc.,*
    56 Wn. App. 827, 786 P.2d 285 (1990)...............................19, 23

*Siemers v. Wells Fargo & Co.,*
    No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006).................9, 22

*Silvas v. ETrade Mortgage Corp.,*
    514 F.3d 1001 (9th Cir. 2008) ...................................14, 16, 17, 19

*Spain v. Deutsche Bank,*
    No. 08 Civ. 10809(LBS), 2009 WL 3073349, (S.D.N.Y. Sept. 18, 2009).................9

*Spears v. Wash. Mut., Inc.,*
    No. C-08-00868 RMW, 2009 WL 605835  (N.D. Cal. Mar. 9, 2009) ............18, 19

*Spears v. Wash. Mut., Inc.,*
    No. C-08-00868 RMW, 2009 WL 2761331 (N.D. Cal. Aug. 30, 2009)................18, 19

*Stewart v. Estate of Steiner,*
    122 Wn. App. 258, 93 P.3d 919 (2004)...............................20

*Stoneridge Inv. Partners,LLC v. Scientific-Atlanta, Inc.,*
    552 U.S. 148 (2008) ......................................................21

*Swartz v. Deutsche Bank,*
    No. C03-1252MJP, 2008 WL  1968948 (W.D. Wash. May 2, 2008).................19, 21

*Tumelson Family Ltd. P'ship v. World Fin. News Network,*
    242 F. App'x 385, 387 (9th Cir. Feb. 28, 2007) .................23

*United States v. Locke,*
    529 U.S. 89 (2000) ......................................................14

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

*Van Saher v. Norton Simon Museum of Art at Pasadena,*
--- F.3d ----, 2010 WL 114959 (9th Cir. 2010) ........................................................... 13

*Wade v. Skipper's Inc.,*
915 F.2d 1324 (9th Cir. 1990) ...................................... 23

*Williams v. Boeing Co.,*
No. C98-761P, 2005 WL 2921960 (W.D. Wash. Nov. 4, 2005) ...................................... 7

**STATUTES**

12 U.S.C. § 1461 .......................................................................... 14

12 U.S.C. § 1813 .......................................................................... 15

12 U.S.C. § 1813(u) ...................................................................... 16

12 U.S.C. § 3301 *et seq* ............................................................. 15

12 U.S.C. § 3331 .......................................................................... 15

12 U.S.C. §§ 3346-3348 .............................................................. 16

15 U.S.C. § 77k .................................................................... 2, 10

15 U.S.C. § 77m ........................................................................... 12

RCW 21.20.010  .......................................................................... 19

RCW 21.20.010(2) ....................................................................... 20

RCW 21.20.010(3) ....................................................................... 20

RCW 21.20.430  ................................................................... 2, 19

RCW 21.20.430(1)  ...................................................................... 19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ! Tel: 206.839.4800

1  Defendants The First American Corporation ("First American") and eAppraiseIT, LLC

2  ("eAppraiseIT") respectfully request that the Court dismiss the Consolidated Class Action

3  Complaint (the "Amended Complaint," or "AC") [Dkt. No. 130] filed by lead plaintiff

4  Policemen's Annuity and Benefit Fund of the City of Chicago ("Chicago PABF").[1]

5  ## I. <u>INTRODUCTION</u>

6  Plaintiffs in this consolidated proceeding seek to pursue federal and state securities

7  claims based on allegedly false and misleading statements in the offering documents for 23

8  offerings of mortgage pass-through certificates (the "Certificates") issued by certain trusts (the

9  "WaMu Trusts") affiliated with Washington Mutual, Inc. ("WaMu") and Washington Mutual

10  Bank ("WMB").  Plaintiffs claim that the registration statement and 23 separate prospectus

11  supplements through which the Certificates were offered contained material misstatements

12  about the Certificates and about the underlying mortgage loans held by the WaMu Trusts.

13  Plaintiffs assert claims for alleged violations of the Securities Act of 1933 (the "1933 Act") and

14  the Washington State Securities Act ("WSSA") against twelve defendants, including WaMu

15  Asset Acceptance Corporation ("WMAAC") — the entity that filed the registration statement

16  and prospectus supplements — and several other WaMu entities, a number of WMAAC

17  officers, two major rating agencies, and First American and eAppraiseIT.

18  Plaintiffs' only allegations relating to First American and eAppraiseIT are that

19  eAppraiseIT, First American's subsidiary, inflated unidentified property appraisals that

20  ultimately served as a basis for unidentified mortgage loans originated by WaMu, some

21  unidentified number of which were later pooled by WaMu entities with other mortgage loans,

22  packaged by WaMu entities into mortgage pass-through certificates, and eventually offered by

23  WaMu entities to investors.  Based solely on those allegations, Plaintiffs claim that First

24  _____

25  [1] In addition to lead plaintiff Chicago PABF, the Amended Complaint is filed by plaintiffs Boilermakers National Annuity Trust ("Boilermakers") and Doral Bank Puerto Rico ("Doral Bank").  Those parties are referred to

26  collectively herein as "Plaintiffs."  Other complaints that were consolidated into this proceeding were also filed by New Orleans Employees' Retirement System ("NOERS") and MARTA/ATU Local 732 Employees Retirement Plan ("MARTA").  Plaintiffs, NOERS, and MARTA collectively comprise the "named plaintiffs."

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 1
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    American and eAppraiseIT can be liable for alleged misstatements contained in the offering

2    documents for the Certificates under Section 11 of the 1933 Act, 15 U.S.C. § 77k, and WSSA's

3    civil liability provision, RCW 21.20.430.[2]  But Plaintiffs do not allege (nor can they) **any**

4    connection between First American or eAppraiseIT and the Certificates.   Plaintiffs do not

5    allege (nor can they) that First American or eAppraiseIT played any role in any of the securities

6    offerings.   Plaintiffs do not allege (nor can they) that the offering documents contained any

7    statements made by, attributed to, or certified by, First American or eAppraiseIT.  Plaintiffs do

8    not allege (nor can they) that First American or eAppraiseIT is even mentioned in the offering

9    documents.  Plaintiffs do not allege (nor can they) that First American or eAppraiseIT drafted,

10   reviewed, approved, contributed to, or otherwise had any control over any statements in the

11   offering documents.   And Plaintiffs do not allege (nor can they) that First American or

12   eAppraiseIT ever had any contact with Plaintiffs or with other investors.

13        First American and eAppraiseIT are simply too far removed from the Certificates, from

14   Plaintiffs, and from the offering documents about which Plaintiffs complain, to be subject to

15   liability in this lawsuit.  Plaintiffs' claims against First American and eAppraiseIT fail as a

16   matter of law for multiple, independent reasons.

17        First, Plaintiffs lack Article III standing to assert any claims based on the 12 series of

18   Certificates that no named plaintiff claims to have purchased.

19        Second, Plaintiffs cannot assert any claims against First American and eAppraiseIT

20   based on offering documents that were filed **before** any alleged wrongdoing by First American

21   or eAppraiseIT, or before eAppraiseIT even began to do work for WaMu.

22        Third, First American and eAppraiseIT are not proper defendants to Plaintiffs' Section

23   11 claim.   Neither First American nor eAppraiseIT was named as having certified any portion

24   of the registration statement or prospectus supplements, so Plaintiffs' Section 11 claim against

25   First American and eAppraiseIT fails as a matter of law.

26

---

[2] Plaintiffs also assert a "control person" claim under WSSA against First American.

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 2
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1       <u>Fourth</u>, Plaintiffs' Section 11 claim against First American and eAppraiseIT fails for the

2   additional reason that it is time-barred.

3       <u>Fifth</u>, Plaintiffs' WSSA claim against First American and eAppraiseIT is preempted by

4   the extensive federal regulatory scheme governing the relevant appraisal practices.

5       <u>Sixth</u>, Plaintiffs' WSSA claim fails for the additional reasons that Plaintiffs cannot

6   allege that First American or eAppraiseIT made any misrepresentations in connection with the

7   Certificates, and that neither First American nor eAppraiseIT is a "seller" of the Certificates.

8       <u>Seventh</u>, because Plaintiffs have not alleged a primary violation of WSSA by

9   eAppraiseIT, Plaintiffs' "control person" claim against First American should be dismissed.

10      In short, each of Plaintiffs' claims against First American and eAppraiseIT is

11  fundamentally flawed in several, independent respects, and the Court has multiple bases for

12  dismissing Plaintiffs' claims against First American and eAppraiseIT.[3]  Dismissal should be

13  with prejudice, because the defects are incurable.

14                     **II.  RELEVANT BACKGROUND**

15  **A.**    <u>**Plaintiffs**</u>

16      Plaintiffs are institutional investors who allege that they invested in several of 23

17  different series of mortgage pass-through certificates, each of which was issued by a different

18  WaMu Trust.  AC ¶¶ 25-27.  Plaintiffs allege that the registration statement[4] and 23 individual

19  prospectus supplements (collectively, the "Prospectus Supplements") filed by WMAAC with

20  the SEC contained false and misleading statements concerning the Certificates and the

21  mortgage loans held by the WaMu Trusts.

22  **B.**    <u>**First American and eAppraiseIT**</u>

23      First American is a diverse, publicly traded company that, through its subsidiaries,

24  provides business information and related services.  AC ¶ 44.  eAppraiseIT provides a variety

25

26

---

[3] First American and eAppraiseIT also adopt the additional arguments made in the dismissal briefs of the other defendants to the extent that those arguments apply to Plaintiffs' claims against First American and eAppraiseIT.

[4] *See* WaMu Asset Acceptance Corp., Registration Statement (Form S-3/A) (Jan. 3, 2006) (the "Registration Statement") included at Dkt. No.139-2, pp. 7-31 (WaMu Defendants' Request for Judicial Notice).

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 3
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    of appraisal and valuation services to banks and lending institutions.  AC ¶ 45.

2        From approximately June 2006 through October 2007, eAppraiseIT and another

3    company, Lender Services, Inc. ("LSI"), administered WaMu's appraisal program and provided

4    WaMu with appraisal services, through both staff and contract appraisers, in connection with

5    the origination of mortgage loans.[5]  Plaintiffs allege, in conclusory fashion, that eAppraiseIT

6    provided appraisals for "many, if not most" of the mortgage loans that were pooled and

7    ultimately placed in the WaMu Trusts that issued the Certificates.  *See* AC ¶ 224.  Plaintiffs

8    further allege that, beginning sometime in 2006, First American and eAppraiseIT violated

9    federal regulations concerning appraiser independence by acquiescing in WaMu's attempts to

10   exercise undue control over the selection of appraisers.  *E.g.*, AC ¶ 118.  Plaintiffs claim that,

11   as a result of WaMu's undue influence, appraisals performed by eAppraiseIT overstated the

12   value of properties appraised for WaMu.  AC ¶ 131.  On November 1, 2007, the New York

13   Attorney General filed a lawsuit against First American and eAppraiseIT, alleging that

14   eAppraiseIT had allowed WaMu to improperly pressure its appraisers to increase appraisal

15   values in connection with loans originated by WaMu.  *See* AC ¶ 119; Complaint, *People ex rel.*

16   *Cuomo v. First American Corp.*, No 07/406796 (N.Y. Sup. Ct.) (the "NYAG Complaint").

17   **C.**    **The Mortgage Pass-Through Certificates**

18       Between January 2006 and March 2007, various WaMu Trusts offered 23 different

19   series of mortgage pass-through certificates for public sale.  Each series of Certificates was

20   issued by a different WaMu Trust — *e.g.*, the 2006-AR4 Certificates[6] were issued by the

21   WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust.  *See* April 21, 2006

22   Prospectus Supplement for the 2006-AR4 Certificates (the "2006-AR4 Prospectus

---

[5] *See* First Amended Complaint for Violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, at ¶ 59, *New Orleans Employees' Retirement System v. Wash. Mut. Bank*, No. 09-134 (W.D. Wash.) [Dkt. No. 1] (the "*NOERS I* Complaint"); Class Action Complaint, at ¶ 53, *New Orleans Employees' Retirement System v. First Am. Corp.*, No. 09-137 (W.D. Wash.) [Dkt. No. 1] (the "*NOERS II* Complaint").

[6] For purposes of this Motion, the individual series of Certificates will be referred to in short form, *i.e.*, the WaMu Mortgage Pass-Through Certificates, Series 2006-AR4 will be referred to as "2006-AR4," and the series will sometimes collectively be referred to as the "Certificates."  A complete list of the securities at issue is included at paragraph 39 of the Amended Complaint.

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 4
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1 Supplement") at S-1 ("The certificates will represent interests only in the issuing entity which

2 is WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust ....").[7]  Each issuing

3 WaMu Trust owns a unique pool of mortgage loans — ranging in size from 471 loans (2006-

4 AR2) to 4,086 loans (2007-HY1), and ranging in loan value from $332 million (2006-AR2) to

5 $3 billion (2007-HY1).  Keehnel Decl., Ex. B.[8]  The Certificates represent ownership interests

6 in the issuing WaMu Trusts.  *See, e.g.*, 2006-AR4 Prospectus Supplement at S-5.  Holders

7 receive monthly distributions based on the payments of principal and interest on the mortgage

8 loans held by the WaMu Trusts.  *See id.* at S-12.  WMB originated only a portion of the

9 mortgage loans held by the issuing WaMu Trusts.  *See* AC ¶ 7 ("All of the mortgage loans

10 underlying the Certificates were originated by WMB *or otherwise acquired by WMB* ....")

11 (emphasis added); 2006-AR4 Prospectus Supplement at S-34.

12        The offering documents for the Certificates do ***not*** contain any statements or

13 representations made by, or attributed to, First American or eAppraiseIT.  The offering

14 documents do ***not*** identify specifically the loans held by the WaMu Trusts, the properties that

15 serve as collateral for the loans, the appraised value of those properties, or the identity of any

16 appraisers who performed appraisals on the properties.  The offering documents also do ***not***

17 include any appraisal reports obtained in connection with the origination of the loans, nor do

18 they reproduce any information contained in those reports.

19 **D.      The Securitization Process**

20        WMB originated (and purchased from other lenders) hundreds of billions of dollars in

---

[7] The 2006-AR4 Prospectus Supplement is illustrative of the Prospectus Supplements issued for the various
Certificates and is attached as Exhibit A to the Declaration of Stellman Keehnel ("Keehnel Decl.").  To avoid
burdening the Court with unnecessarily voluminous exhibits, only relevant excerpts of other Prospectus
Supplements cited herein are attached as exhibits.

[8] The Court may take judicial notice of the information contained in Exhibit B to the Keehnel Declaration (which
was taken directly from the Prospectus Supplements) and the publicly filed documents included as exhibits to the
Keehnel Declaration because they are matters of public record required to be filed with the SEC, and because
Plaintiffs relied on those documents and other documents referenced in the Complaint, "but which are not
physically attached."  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *In re Silicon Graphics Inc. Sec.
Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *McGuire v. Dendreon Corp.*, No. C07-800MJP, 2008 WL 1791381, *4
(W.D. Wash. Apr. 18, 2008) ("A court may take judicial notice of documents that are referenced by the plaintiff in
the complaint and whose authenticity are not in dispute, such as SEC filings....").

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 5
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

residential mortgage loans on a yearly basis.  *See* 2006-AR4 Prospectus Supplement at S-34

(showing origination of $212 billion in mortgage loans in 2004 and $207 billion in 2005); AC

¶ 62 (alleging that WMB originated $229 billion in mortgage loans in 2006).  WMB held many

of those mortgage loans in its own investment portfolio, but WMB also — through related

entities — securitized a fraction of those loans.  *See* 2007-HY3 Prospectus Supplement at S-23

(Keehnel Decl. Ex. C) (showing securitization of $34 billion in mortgage loans in 2004, $71

billion in 2005, and $70 billion in 2006).   WMB selected mortgages for securitization

transactions from its loan portfolio "based on a variety of considerations, including type of

mortgage loan, geographic concentration, range of mortgage interest rates, principal balance,

credit scores and other characteristics."  *See* 2006-AR4 Prospectus Supplement at S-57.

In the *NOERS I* Complaint, the plaintiffs described the securitization process as follows:

> [I]n the typical securitization transaction, ***participants in the transaction are the
> sponsor (who is often also the loan servicer), the depositor, the underwriter,
> the issuing trust and investors***.   On the closing date of a trust series, the
> mortgage loans supporting the trust are first sold by the sponsor of the
> securitization transaction to the depositor in return for cash…. The depositor
> then sells those mortgage loans and related assets to the trust, in exchange for
> the trust issuing certificates to the depositor.  The depositor then works with the
> underwriter of the trust to price and sell the certificates to investors.

*NOERS I* Complaint ¶ 39 (emphasis added).  For the Certificates at issue in this case, WMB

served as the sponsor and the servicer (AC ¶ 29), WMAAC was the depositor (AC ¶ 28), and

the Certificates were issued by various WaMu Trusts.  AC ¶ 1.

**E.**     **Procedural Background**

By order dated August 14, 2009 [Dkt. No. 70], this Court consolidated three lawsuits

then pending in the Western District of Washington that asserted claims against various

defendants relating to the Certificates:   (1)  *Boilermakers National Annuity Trust Fund v.

WaMu Mortgage Pass-Through Certificates*, No. 09-0037, which asserted claims under the

1933 Act against the WaMu Trusts and certain other WaMu defendants; (2) *New Orleans

Employees' Retirement System v. Washington Mutual Bank*, No. 09-134 ("*NOERS I*"), which

also asserted claims under the 1933 Act against various WaMu defendants; and (3) *New

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 6
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  *Orleans Employees' Retirement System v. First American Corp.*, No. 09-137 ("*NOERS II*"),

2  which asserted exclusively Washington state law claims against First American and

3  eAppraiseIT.  On December 31, 2009, Plaintiffs filed the Amended Complaint.[9]

**III.  PLAINTIFFS LACK STANDING TO ASSERT ANY CLAIMS BASED ON THE 12
SERIES OF CERTIFICATES THAT NO NAMED PLAINTIFF PURCHASED.**

To meet the "irreducible constitutional minimum" requirement of Article III standing to

bring a claim, a plaintiff must establish that it (1) suffered an "injury in fact" that is (2) fairly

traceable to challenged conduct of the defendant, and that is (3) likely to be redressed by a

favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In multiple-

claim cases, including class actions, Article III requires that at least one named plaintiff have

standing for each claim asserted in the complaint.  *See Williams v. Boeing Co.*, No. C98-761P,

2005 WL 2921960, *3 (W.D. Wash. Nov. 4, 2005) ("In cases where multiple claims are

asserted, it is not enough that a named plaintiff can establish a case or controversy between

himself and the defendant by virtue of having standing as to just one of many claims he wishes

to assert.  Instead, each claim must be analyzed separately, and a claim cannot be asserted on

behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that

claim.") (internal citation and quotations omitted).

In securities cases, those fundamental standing principles translate to the requirement

that, to have standing to bring claims on behalf of purchasers of any security, at least one

named plaintiff must have purchased that security.  *See, e.g.*, *In re Wash. Mut., Inc. Sec.,
Derivative & ERISA Litig.*, No. 2:08-md-1919 MJP, 2009 WL 3517630, *18 (W.D. Wash. Oct.

27, 2009) ("Plaintiffs do not have standing to pursue § 11 claims as to the 5.50% Notes.  There

is no named plaintiff who can be deemed a 'person acquiring such security' (the 5.50% Notes)

---

[9] On October 30, 2009, Doral Bank filed a complaint against First American, eAppraiseIT, and various WaMu defendants relating to 10 series of Certificates not alleged in any of the consolidated actions.  *See* Complaint, *Doral Bank Puerto Rico v. Wash. Mut. Asset Acceptance Corp.*, No. 09-1557 (W.D. Wash.) (the "*Doral Bank* Complaint").  On November 19, 2009, Chicago PABF and Doral Bank filed a joint motion to consolidate the *Doral Bank* lawsuit with the other consolidated actions.  [Dkt. No. 101].  On December 18, 2009, the Court denied the motion to consolidate without prejudice to renewal after Doral Bank provides the notice required by the PSLRA.  [Dkt. No. 118].

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 7
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   as required by § 11(a), and, thus, no named plaintiff has suffered an 'actual injury.'"); *Hoffman*

2   *v. UBS-AG*, 591 F. Supp. 2d 522, 530-31 (S.D.N.Y. 2008) ("Plaintiffs in this case cannot meet

3   the [Article III] injury requirement for claims relating to funds in which they have not

4   purchased shares because they cannot claim to be personally injured by the violations relating

5   to those funds.").[10]

6       In *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, ---

7   F. Supp. 2d ---, 2009 WL 3149775 (D. Mass. 2009), the court applied Article III standing

8   principles to a purported class action relating to mortgage pass-through certificates issued by

9   trusts affiliated with Nomura Asset Acceptance Corporation.  In *Nomura*, the plaintiffs — who

10  alleged that they had purchased securities from two series of certificates — attempted to sue

11  defendants for violations of the 1933 Act based on eight series of certificates.  *Id.* at *2.  On

12  defendants' motion to dismiss, the court explained that each series of certificates was issued by

13  a separate legal entity pursuant to a separate prospectus and was backed by a unique pool of

14  mortgages, and the court held, consistent with "the overwhelming weight of authority," that

15  plaintiffs lacked both Article III and statutory standing to assert claims based on the six series

16  of certificates that no named plaintiff claimed to have purchased.  *Id.* at *3-4.

17      *Nomura* is directly on point.  Plaintiffs purport to represent a putative class consisting of

18  all persons who acquired any of 23 different series of mortgage pass-through certificates, issued

19  pursuant to 23 different prospectus supplements.  AC ¶¶ 2, 39.  Each series of Certificates was

20  issued by a different legal entity and is backed by a completely unique pool of hundreds or

21  thousands of mortgage loans.  The named plaintiffs in this consolidated proceeding allege that

22  they purchased ***only 11 of the 23 securities that are the subject of the Amended Complaint***.[11]

23  Plaintiffs plainly lack Article III standing to pursue claims on behalf of the purchasers of the

---

[10] *See also In re AIG Advisor Group Sec. Litig.*, No. 06 CV 1625(JG), 2007 WL 1213395, *4 (E.D.N.Y. Apr. 25, 2007); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006).

[11] *See* AC ¶¶ 25 (Chicago PABF purchased Certificates 2006-AR5, 2006-AR12, 2006-AR16, and 2007-HY1), 26 (Boilermakers purchased Certificates 2006-AR7), 27 (Doral Bank purchased Certificates 2006-AR17 and 2006-AR18); *NOERS II* Complaint ¶¶ 16 (NOERS purchased Certificates 2006-AR14, 2006-AR16 and 2006-AR18), 17 (MARTA purchased Certificates 2006-AR2, 2006-AR16, 2006-AR18, 2007-HY2, and 2007-HY4).

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 8
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   other 12 series of Certificates, because Plaintiffs have not alleged that they purchased any of

2   those 12 securities.  *See Wash. Mut.*, 2009 WL 3517630 at *18; *Siemers v. Wells Fargo & Co.*,

3   No. C 05-04518 WHA, 2006 WL 3041090, *7 (N.D. Cal. Oct. 24, 2006) ("Plaintiff cannot sue

4   on behalf of funds he does not own.").  Accordingly, pursuant to Article III and Rule 12(b)(1),

5   the Court should dismiss all of Plaintiffs' claims based on Certificates 2006-AR1, 2006-AR3,

6   2006-AR4, 2006-AR6, 2006-AR8, 2006-AR9, 2006-AR10, 2006-AR11, 2006-AR13, 2006-

7   AR15, 2006-AR19 and 2007-HY3.

8   ### IV.  PLAINTIFFS CANNOT ASSERT ANY CLAIMS AGAINST FIRST AMERICAN AND EAPPRAISEIT BASED ON OFFERING DOCUMENTS OR SECURITIES THAT

9   PRE-DATE THEIR ALLEGED CONDUCT.

10  Plaintiffs attempt to hold all defendants, including First American and eAppraiseIT,

11  liable for alleged misstatements and omissions in the offering documents for all 23 series of

12  Certificates.  But the document on which Plaintiffs rely for all of their allegations against First

13  American and eAppraiseIT — the NYAG Complaint — establishes that First American and

14  eAppraiseIT could not have been involved with, or bear any liability for, many of the alleged

15  misstatements of which Plaintiffs complain, for the simple reason that many of those statements

16  were made *before First American or eAppraiseIT had any relationship with WaMu*.

17  Plaintiffs' allegations against First American and eAppraiseIT in the Amended

18  Complaint are deliberately vague.  But Plaintiffs cannot artfully plead themselves into a claim

19  against First American and eAppraiseIT by simply omitting facts about which there can be no

20  dispute.  The allegations of the NYAG Complaint — from which all of Plaintiffs' allegations

21  against First American and eAppraiseIT are drawn — establish that eAppraiseIT first began

22  providing appraisal services for WaMu no earlier than spring 2006.  NYAG Complaint ¶ 25

23  ("WaMu retained eAppraiseIT in spring 2006 ....").[12]  The Registration Statement was filed, as

24

25  [12] A copy of the NYAG Complaint is included as Exhibit D to the Keehnel Declaration. The Court can consider the NYAG Complaint on this motion to dismiss because Plaintiffs relied on that document in drafting the Amended Complaint. *E.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (courts

26  may consider documents "*integral to or explicitly relied*" upon in the complaint") (internal quotation omitted); *Spain v. Deutsche Bank*, No. 08 Civ. 10809(LBS), 2009 WL 3073349, *2 (S.D.N.Y. Sept. 18, 2009).  Similarly, the *NOERS II* Complaint alleges that eAppraiseIT began providing appraisals for WaMu in April 2006.  *See*

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 9
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  amended, in January 2006 (*see* AC ¶ 1), **months before** eAppraiseIT performed any appraisal

2  services for WaMu.  Similarly, the prospectus supplements for at least three series of

3  Certificates described in the Complaint were filed with the SEC **months before** Plaintiffs claim

4  that eAppraiseIT began performing appraisals for WaMu.  *See* AC ¶ 39.  First American and

5  eAppraiseIT cannot, under any circumstances, be responsible for statements made **before**

6  eAppraiseIT was even performing services for WaMu.  Accordingly, all of Plaintiffs' claims

7  against First American and eAppraiseIT necessarily fail insofar as they relate to the

8  Registration Statement or to Certificates 2006-AR1, 2006-AR2, or 2006-AR3.

9  **V. PLAINTIFFS' SECTION 11 CLAIM AGAINST FIRST AMERICAN AND**
   **EAPPRAISEIT SHOULD BE DISMISSED.**

10

11  **A.     First American And eAppraiseIT Are Not Proper Defendants To Plaintiffs'**
   **Section 11 Claim.**

12          Section 11 of the 1933 Act provides a private right of action to a person who purchases

13  a security pursuant to a registration statement that contains false or misleading statements of

14  material fact.  *See* 15 U.S.C. § 77k(a).  By the express terms of the statute, a Section 11 cause

15  of action extends **only** to a limited, enumerated class of defendants — persons who signed the

16  registration statement, directors of the issuer, underwriters of the security at issue, and experts

17  named as having prepared or certified a portion of the registration statement.  *See id.* §

18  77k(a)(1)-(5); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 (1983) ("Section 11 of

19  the 1933 Act allows purchasers of a registered security to sue **certain enumerated parties** in a

20  registered offering ….") (emphasis added); *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp.

21  1427, 1434 (N.D. Cal. 1988) ("Section 11 liability is limited to persons who sign the

22  registration statement, directors of the issuer, underwriters of that issue, or experts named as

23  preparing or certifying a portion of the registration statement.").  Although "appraisers" are

24  included, along with accountants and engineers, in the list of "experts" who can be subject to

25  liability under Section 11, it is black-letter law that an expert can be liable **only** if it is **expressly**

26

*NOERS II* Complaint ¶¶ 10, 53.
FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 10
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   ***identified*** in the registration statement as having prepared or certified a portion of the

2   registration statement, and even then the expert can be liable only for the portion that it

3   prepared or certified — the so-called "expertised" portion of the registration statement. *See*

4   *Huddleston*, 459 U.S. at 381 n.11 ("Accountants are liable under Section 11 only for those

5   matters which purport to have been prepared or certified by them."); *Worlds of Wonder*, 694 F.

6   Supp. at 1434 ("Accountants cannot be held liable under Section 11 unless the misleading

7   information can be expressly attributed to them."); *Adair v. Kay Kotts Assocs., Inc.*, No. 97 Civ.

8   3375(SS), 1998 WL 142353, *4 (S.D.N.Y. Mar. 27, 1998) (Sotomayor, J.) (same).

9       In this case, Plaintiffs attempt to assert a Section 11 claim against First American and

10   eAppraiseIT based on alleged misstatements in the Registration Statement and 23 Prospectus

11   Supplements. But Plaintiffs ***do not*** allege (nor can they) that First American or eAppraiseIT

12   signed or certified any portion of the Registration Statement or Prospectus Supplements.

13   Indeed, Plaintiffs ***do not*** allege (nor can they) that either First American or eAppraiseIT was

14   even named in the Registration Statement or Prospectus Supplements. Accordingly, Plaintiffs'

15   Section 11 claim fails as a matter of law and should be dismissed with prejudice. *See, e.g.*,

16   *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 643 (N.D. Cal. 1980) ("The *only* question is

17   whether the accountants are '*named* as having prepared or certified any part of the registration

18   statement.'") (quoting 15 U.S.C. § 77k(a)(4); emphasis in original); *In re Jiffy Lube Sec. Litig.*,

19   No. Civ. Y-89-1939, 1990 WL 10010982 (D. Md. Oct. 31, 1990) (dismissing Section 11 claim

20   against accountant because plaintiffs failed to "identify those misstatements or omissions which

21   are expressly attributed to defendant Ernst & Young"); *Hagert v. Glickman, Lurie, Eiger &*

22   *Co.*, 520 F. Supp. 1028, 1035 (D. Minn. 1981) ("There is no allegation that this defendant

23   signed or expertised any portion of the registration statement. Absent such an allegation, a

24   claim of a primary violation of Section 11 cannot be made out against this defendant.").

25   **B.**    **Plaintiffs' Section 11 Claim Is Time-Barred.**

26       Plaintiffs' Section 11 claim against First American and eAppraiseIT should be

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 11
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   dismissed for the independent reason that it is barred by the one-year statute of limitations.

2   Plaintiffs did not assert a Section 11 claim against First American or eAppraiseIT until

3   November 23, 2009, more than *two years* after an investor exercising reasonable diligence

4   would have discovered the factual basis for Plaintiffs' claims.  Indeed, no plaintiff asserted *any*

5   claims against First American or eAppraiseIt until December 24, 2008 (the *NOERS II*

6   Complaint), nearly 14 months after the one-year limitations period began to run.

7        Section 13 of the 1933 Act, 15 U.S.C. § 77m, sets the statute of limitations for claims

8   under Section 11 and provides, in relevant part, that a claim under Section 11 must be filed

9   within the shorter of: (1) "one year after the discovery of the untrue statement or the omission,

10  or after such discovery should have been made by the exercise of reasonable diligence"; or (2)

11  three years after the offering of the security at issue.  Section 13's one-year limitations period

12  can be triggered by either actual notice or inquiry notice.  *See Betz v. Trainer Wortham & Co.*,

13  504 F.3d 1017, 1022 (9th Cir. 2007), *amended on denial of rehearing*, 519 F.3d 863 (9th Cir.

14  2008).  In inquiry notice cases, the Ninth Circuit applies an "inquiry-plus-reasonable-diligence

15  test" to determine when Section 13's limitations period begins to run.  *See id.* at 1024.  The

16  court first determines "when the plaintiff had inquiry notice of the facts giving rise to his or her

17  securities fraud claim."  *Id.*  Once the plaintiff is on inquiry notice, the statute of limitations

18  begins to run "when the investor, in the exercise of reasonable diligence, should have

19  discovered the facts constituting the alleged fraud."  *Id.* at 1024-25.  Where the information

20  underlying the plaintiff's claim is disclosed in sufficient detail, the inquiry notice and

21  reasonable diligence questions "merge" into a single inquiry.  *See In re Am. Funds Sec. Litig.*,

22  556 F. Supp. 2d 1100, 1110 (C.D. Cal. 2008); *Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d

23  1053, 1060 (N.D. Cal. 2009).

24       In this case, the one-year statute of limitations for Plaintiffs' Section 11 claim against

25  First American and eAppraiseIT began to run no later than ***November 1, 2007***, when the New

26  York Attorney General filed the NYAG Complaint, alleging that eAppraiseIT acquiesced in

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 12
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    WaMu's improper attempts to control the selection of appraisers and to pressure appraisers to

2    increase the appraised values of properties.  As noted above, the NYAG Complaint is the *sole*

3    source of Plaintiffs' allegations against First American and eAppraiseIT.  All of Plaintiffs'

4    substantive allegations against First American and eAppraiseIT either explicitly refer back to

5    the NYAG Complaint or are simply copied nearly verbatim from the NYAG Complaint.  *See*

6    AC ¶¶ 120 ("The NYAG Complaint alleges …."), 121 & 130 ("According to the NYAG

7    Complaint …."), 122 ("The NYAG Complaint contains …."), 125-132 (restating allegations

8    from NYAG Complaint).  In addition, the NYAG Complaint expressly alerted Plaintiffs to the

9    very harms that Plaintiffs allege — the potential harm to investors from allegedly overvalued

10   mortgage-backed securities.  NYAG Complaint ¶¶ 13, 16, 17.[13]  Thus, as of November 1, 2007,

11   all of the information supporting Plaintiffs' factual allegations against First American and

12   eAppraiseIT was available to Plaintiffs.  *See, e.g.*, *NOERS II* Complaint ¶ 9 (alleged conduct of

13   First American and eAppraiseIT "came to light" with filing of NYAG Complaint).

14       Based on the allegations of the NYAG Complaint, any reasonably diligent investor

15   would have discovered the facts underlying his or her claim against First American and

16   eAppraiseIT no later than November 1, 2007.  *See, e.g., Am. Funds*, 556 F. Supp. 2d at 1109

17   (statute of limitations began to run no later than date of prior, similar complaint, where

18   plaintiffs' allegations were nearly "verbatim copy" of earlier allegations; "The very existence

19   of the *Corbi* complaint ... is nearly dispositive evidence that there was sufficient information in

20   the public sphere to impart inquiry notice on reasonable investors ...."); *Kreek*, 652 F. Supp. 2d

21   at 1058-60 (dismissing federal securities claims as time-barred based on, *inter alia*, existence of

22

23   [13] Contemporaneous media coverage also explicitly made a connection between the allegations of the NYAG
     Complaint and the value of mortgage-backed securities.  *See* Drew DeSilver, *WaMu Accused of Pushing*
24   *Appraisers to Inflate Values*, Seattle Times, Nov. 2, 2007 (Keehnel Decl. Ex. E); (describing potential harm to
     investors in mortgage-backed securities if borrowers default on artificially inflated mortgages); *N.Y. Attorney*
25   *General Says WaMu Demanded Higher Appraisals*, Puget Sound Bus. J., Nov. 1, 2007 (Keehnel Decl. Ex. F)
     (quoting Andrew Cuomo as stating that "[i]nvestors are hurt" by conduct alleged in NYAG Complaint "because it
26   skews the value and risk of loans that are sold in financial markets").  The Court may take judicial notice of those
     articles for the purpose of determining what information was available to Plaintiffs in November 2007.  *See Van*
     *Saher v. Norton Simon Museum of Art at Pasadena*, --- F.3d ----, 2010 WL 114959, *4 (9th Cir. 2010).

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 13
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    prior complaint containing materially similar allegations).   Because Plaintiffs did not assert a

2    Section 11 claim against First American or eAppraiseIT until *November 23, 2009*, more than

3    two years after the NYAG Complaint was filed, Plaintiffs' Section 11 claim against First

4    American and eAppraiseIT should be dismissed as time-barred.   Moreover, Plaintiffs' Section

5    11 claim is time-barred irrespective of whether that claim relates back to the *NOERS II*

6    Complaint, which asserted only state law claims against First American and eAppraiseIT; the

7    *NOERS II* Complaint was not filed until December 24, 2008, nearly fourteen months after the

8    NYAG Complaint, and nearly two months after the one-year statute of limitations expired.

9    **VI.   PLAINTIFFS' WSSA CLAIM AGAINST FIRST AMERICAN AND
         EAPPRAISEIT IS PREEMPTED BY FEDERAL LAW.**

10

11   **A.     HOLA Created A Pervasive Federal Regulatory Scheme That Leaves No Room
            For State Regulation Or Oversight.**

12         Federal preemption of state law and regulation is assured if the state purports to

13   "regulate[] in an area where there has been a history of significant federal presence."   *United*

14   *States v. Locke*, 529 U.S. 89, 108 (2000).   The field of banking is one such area.   *See Home*

15   *Owners' Loan Act* ("HOLA"), 12 U.S.C. § 1461 *et seq.*; *see also Bank of Am. v. City of San*

16   *Francisco*, 309 F.3d 551, 558 (9th Cir. 2002).   "HOLA was designed to restore public

17   confidence by creating a nationwide system of federal savings and loan associations to be

18   centrally regulated according to nationwide 'best practices.'"   *Silvas v. E*Trade Mortgage*

19   *Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008).

20         "Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad

21   authority to issue regulations governing thrifts."   *Id.* at 1005 (citing 12 U.S.C. § 1464).   "As the

22   principal regulator for federal savings associations, OTS promulgated a preemption regulation

23   at 12 C.F.R. § 560.2.   That the preemption is expressed in OTS's regulation, instead of HOLA,

24   makes no difference because, '[f]ederal regulations have no less preemptive effect than federal

25   statutes.'"   *Id.* (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153

26   (1982)).   12 C.F.R. § 560.2 expressly provides that: "OTS hereby *occupies the entire field* of

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 14
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  lending regulation for federal savings associations." (Emphasis added.) Subsection 560.2(b)

2  delineates specific types of state laws that are preempted by OTS regulations, including state

3  laws relating to "[d]isclosure and advertising" and "[p]rocessing, origination, servicing, sale or

4  purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(9) & (10).

5  **B.**    **FIRREA Extends OTS's Pervasive Reach To Appraisal Programs And Institution-Affiliated Parties, Such As eAppraiseIT.**

6

7        With the passage of the Financial Institutions Reform, Recovery, and Enforcement Act

   ("FIRREA"), 12 U.S.C. § 3301 *et seq.*, in 1989, Congress amended HOLA and, among other

8  things, expanded federal oversight of savings and loan associations to include review and

9  regulation of appraisal programs. In enacting FIRREA, Congress intended to:

10

11        provide that Federal financial and public policy interests in real estate related
          transactions will be protected by requiring that real estate appraisals utilized in
          connection with federally related transactions are performed in writing, in
12        accordance with uniform standards ....

13  12 U.S.C. § 3331. Under FIRREA, the *exclusive* responsibility for examination of real estate

14  lending and appraisal programs implemented by federally-regulated savings and loans falls to

15  OTS. *Id.*

16        Under the broad authority granted it under Title XI of FIRREA, OTS issued extensive

17  regulations addressing appraisal programs undertaken by and for savings and loans. *See* 12

18  C.F.R. pt. 564. The purpose and scope of the regulations are as follows:

19        Title XI provides protection for federal financial and public policy interests in
          real estate related transactions by requiring real estate appraisals used in
20        connection with federally related transactions to be performed in writing, in
          accordance with uniform standards, by appraisers whose competency has been
21        demonstrated and whose professional conduct will be subject to effective
          supervision. ***This part implements the requirements of title XI and applies to***
22        ***all federally related transactions entered into by the OTS or by institutions***
          ***regulated by the OTS.***

23  12 C.F.R. § 564.1(b) (emphasis added). The regulations extend not only to savings and loans,

24  but also to "***institution-affiliated parties***, *including staff and fee appraisers*." *Id.* § 564.7

25  (emphasis added). "Institution-affiliated parties" is defined under the Federal Deposit

26  Insurance Act, 12 U.S.C. § 1813, to include independent contractors through whom thrifts

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 15
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   operate, including staff and fee appraisers. 12 U.S.C. § 1813(u)(4).

2        OTS regulations in the field of appraisals are exhaustive.   The regulations identify

3   which real estate-related financial transactions require the services of an appraiser, prescribe

4   which categories of federally-related transactions must be appraised by a state-certified or state-

5   licensed appraiser, and prescribe minimum standards for the performance of real estate

6   appraisals in connection with federally-related transactions under its jurisdiction.  *See* 12 C.F.R.

7   §§ 564.2-564.4.[14]   FIRREA and its accompanying regulations also expressly limit the states'

8   role in the appraisal field to the supervision of the professional conduct of individual

9   appraisers.  *See* 12 U.S.C. §§ 3346-3348.  OTS regulations also directly address and define

10  "Appraiser independence" for both staff and fee appraisers.  *See* 12 C.F.R. § 564.5.

11  **C.   Plaintiffs' WSSA Claim Is Preempted And Must Be Dismissed.**

12       As discussed above, OTS (through HOLA and FIRREA) occupies the entire field of

13  regulation for lending and appraisal programs implemented by federally regulated savings and

14  loans, and OTS regulations — specifically 12 C.F.R. § 560.2 — preempt state law claims

15  related to that regulatory scheme.   In *Silvas*, the Ninth Circuit established a framework for

16  evaluating whether a particular state law claim is preempted by 12 C.F.R. § 560.2:

17       "When analyzing the status of state laws under § 560.2, the first step will be to
         determine whether the type of law in question is listed in paragraph (b). If so,
18       the analysis will end there; the law is preempted.  If the law is not covered by
         paragraph (b), the next question is whether the law affects lending.  If it does,
19       then, in accordance with paragraph (a), the presumption arises that the law is
         preempted.  This presumption can be reversed only if the law can clearly be
20       shown to fit within the confines of paragraph (c).  For these purposes, paragraph
         (c) is intended to be interpreted narrowly.  Any doubt should be resolved in
21       favor of preemption."

22  514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)).

23       Importantly, the *Silvas* court held that a state law claim is preempted by section

24  560.2(b) if the state law, ***as applied to the particular case***, falls within one of the categories

25

26  [14] The OCC, Federal Reserve, and FDIC have each promulgated regulations pursuant to FIRREA identical to those issued by OTS in 12 C.F.R. §§ 564.1–564.6.  *See* 12 C.F.R. §§ 34.41–34.47 (OCC); 12 C.F.R. §§ 225.61–225.67 (Federal Reserve); and 12 C.F.R. §§ 323.1–323.7 (FDIC).

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 16
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    listed in section 560.2(b):  "As outlined by OTS, the first step is to determine if [the state law],

2    *as applied*, is a type of state law contemplated in the list under paragraph (b) of 12 C.F.R.

3    § 560.2.  If it is, the preemption analysis ends."  514 F.3d at 1006 (emphasis added).  Thus,

4    *Silvas* makes clear that the preemptive reach of section 560.2(b) is ***not*** limited to state laws that

5    on their face attempt to regulate lending or appraisal programs.  *Id.*; *see Casey v. FDIC*, 583

6    F.3d 586, 595 (8th Cir. 2009) ("We conclude that a state law that either on its face or as applied

7    imposes requirements regarding the examples listed in § 560.2(b) is preempted.").

8         Applying the *Silvas* framework, courts have repeatedly held that 12 C.F.R. § 560.2

9    preempts state statutory claims relating to federally regulated transactions, including appraisal

10   practices.  For example, in *Cedeno v. IndyMac Bancorp, Inc.*, No. 06 Civ. 6438(JGK), 2008

11   WL 3992304 (S.D.N.Y. Aug. 26, 2008), the court held that 12 C.F.R. § 560.2 preempted state

12   law claims that were — like Plaintiffs' claims in this case — based on allegations concerning

13   inflated appraisals in connection with residential real estate transactions:

14        ***The appraisal practices challenged by the plaintiff appear to relate directly to
          the processing or origination of mortgages, and thus the application of the law
15        that the plaintiff seeks to impose falls within 12 CFR § 560.2(b)(10).*** . . .
          Therefore, … the California [consumer protection claim] is preempted under 12
16        C.F.R. § 560.2(b)…. The same analysis with respect to the California [consumer
          protection statute] applies to the plaintiff's efforts to use the New York statute to
17        penalize the alleged failure to disclose appraisal practices and the substance of
          those practices…. The appraisals are a prerequisite to the lending process, and
18        are inextricably bound to it.

19   2008 WL 3992304 at *8-9 (emphasis added); *see also Casey*, 583 F.3d at 595-96 (Missouri

20   statutes relating to commercial fraud and unauthorized practice of law preempted as applied to

21   claims concerning loan fees); *Hilton v. Wash. Mut. Bank*, No. C 09-1191 SI, 2009 WL

22   3485953, *5 (N.D. Cal. Oct. 28, 2009) (state law claims based on, *inter alia*, alleged inflated

23   appraisals preempted by section 560.2(b)); *In re Countrywide Fin. Corp. Mortgage Mktg. &*

24   *Sales Practices Litig.*, 601 F. Supp. 2d  1201, 1223 (S.D. Cal. 2009) ("[Plaintiffs'] claims …

25   purport to impose requirements on Defendants' 'disclosure and advertising.'   Therefore,

26   [plaintiffs' state law] claims are preempted."); *Alcaraz v. Wachovia Mortgage, FSB*, No. CV F

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 17
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    08-1640 LJO SMS, 2009 WL 160308, *6 (E.D. Cal. Jan. 21, 2009) (state-law unfair business

2    practices claim preempted by HOLA.).

3          The U.S. District Court for the Northern District of California has twice dismissed state

4    law claims asserted against eAppraiseIT — claims based on the very same factual allegations

5    as Plaintiffs' claims in this lawsuit — as preempted by 12 C.F.R. § 560.2(b)(10):

6          Plaintiffs['] first UCL claim is based on EA's allegedly unlawful conduct
      in contravention of the Uniform Standards of Professional Appraisal Practice
7      ("USPAP").  Specifically, plaintiffs allege that EA violated the requirement that
      an appraisal be performed with impartiality, objectivity, and independence....
8      Plaintiffs' second and third UCL claims, which concern the same conduct,
      allege that that the impartiality of the offered appraisals constituted unfair and
9      fraudulent business practices ....   Plaintiffs['] CLRA claim alleges that EA
      represented that their home appraisal services were of a standard or quality that
10     they were not....

11         ***Each of these claims relate[s] directly to the processing and origination
      of mortgages.***  Appraisals are required for many real-estate transactions.  And
12     those appraisals must be performed according to certain standards in order to
      protect the public and federal financial interests.  Indeed, plaintiffs' theory of the
13     case, that lenders and appraisers conspired to inflate appraisals in order to
      increase   mortgage   resale   prices,   demonstrates   the   importance   and
14     interrelationship of impartial appraisals to mortgage origination and servicing.
      ***The court therefore finds that plaintiffs' UCL and CLRA claims ... relate to
15     the processing and origination of, and participation in, mortgages, and are
      thus preempted under § 560.2(b)(10).***
16
17   *Spears v. Wash. Mut., Inc.*, No. C-08-00868 RMW, 2009 WL 605835, *5-6 (N.D. Cal. Mar. 9,

18   2009) ("*Spears I*") (internal citations omitted; emphasis added); *Spears v. Wash. Mut., Inc.*, No.

19   C-08-00868 RMW, 2009 WL 2761331, *6 (N.D. Cal. Aug. 30, 2009) ("*Spears II*") (breach of

     contract claim preempted by section 560.2(b)).
20
21         Here, as in *Spears*, the gravamen of Plaintiffs' allegations is that First American and

22   eAppraiseIT supposedly violated federal rules and regulations relating to appraiser

23   independence.  The Amended Complaint repeatedly references federal law, regulations, and

24   standards, and then alleges that First American and eAppraiseIT violated those standards.  *See,*

25   *e.g.*, AC ¶¶ 73-76 (discussing federal appraisal standards), 81 ("[T]he appraisals that

26   eAppraiseIT performed for WaMu did not conform to the USPAP standards ...."), 118 ("The

     Appraiser Defendants violated USPAP guidelines ....").  Plaintiffs' WSSA claim against First

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 18
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

American and eAppraiseIT necessarily depends on Plaintiffs' allegations relating to (i) appraisals in connection with the origination of mortgages; (ii) the promotion, marketing, and sales of the Certificates to Plaintiffs; and (iii) the purported deceptive advertisement of the quality of the mortgage pool loans underlying the Trusts.  AC ¶¶ 224, 226.  Accordingly, the WSSA claim is preempted by 12 C.F.R. § 560.2(b)(9) and (10) because it is based on Plaintiffs' allegations that Defendants violated federal regulations in connection with the origination of, and alleged disclosures about, residential mortgages.  *See Spears I*, 2009 WL 605835 at *5-6; *Spears II*, 2009 WL 2761331 at *5-6; *Silvas*, 514 F.3d at 1006 (barring preempted claims "based on … *disclosures and advertising*"); *IndyMac*, 2008 WL 3992304 at *8-9 (barring preempted claims challenging appraisal practices).

Even if there were any doubt concerning preemption, *Silvas* mandates that "[a]ny doubt should be resolved in favor of preemption."  *Id.* at 1005.  This Court should dismiss Plaintiffs' WSSA claim against First American and eAppraiseIT.

## VII.  PLAINTIFFS' WSSA CLAIM FAILS AS A MATTER OF LAW FOR ADDITIONAL AND INDEPENDENT REASONS.

WSSA provides a private right of action to remedy certain wrongful conduct in securities transactions.  RCW 21.20.010, which is structured similarly to SEC Rule 10b-5, provides that is unlawful to: (1) "employ any device, scheme, or artifice to defraud"; (2) "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading"; or (3) "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person," in connection with the purchase or sale of a security.  WSSA's private right of action, RCW 21.20.430, permits a claim against a person who unlawfully "offers or sells" a security in violation of RCW 21.20.010.  *See* RCW 21.20.430(1).  To state a claim for relief under WSSA, a plaintiff must allege facts demonstrating ***both*** (1) that the defendant violated RCW 21.20.010; ***and*** (2) that the defendant is a "seller" or "offeror" of the security.  *See Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 851, 786 P.2d 285 (1990); *Swartz v. Deutsche Bank*, No. C03-1252MJP, 2008 WL

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT – 19 NO. C 09-0037 (MJP)

DLA PIPER LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1968948, *22 (W.D. Wash. May 2, 2008) ("In order to maintain an action under the WSSA, the plaintiff must show the defendant made either an untrue statement of material fact or omitted such a fact in connection with a security transaction and that the defendant was a seller or offeror of the security."). Plaintiffs fail to satisfy either of WSSA's basic requirements.

## A.   Plaintiffs Cannot Allege That First American Or eAppraiseIT Made Any Actionable Misrepresentation Or Omission.

Plaintiffs allege that defendants violated WSSA in two ways — by making material misstatements and omissions in the offering documents for the Certificates (RCW 21.20.010(2)), and by engaging in "acts, practices and/or a course of business" that "operated as a deceit upon Plaintiffs" (RCW 21.20.010(3)).   AC ¶¶ 228-229, 239.   In substance, Plaintiffs' two sets of allegations are identical:   Plaintiffs allege that First American and eAppraiseIT should be liable for alleged misrepresentations in the offering documents for the Certificates concerning the independence of the appraisal process and the loan-to-value ratios of the various mortgage pools.[15]   Inasmuch as Plaintiffs' allegations are, at bottom, allegations of misrepresentations or omissions in the offering documents, Plaintiffs' claim, if any, falls exlusively under RCW 21.20.010(2).   *See, e.g.*, *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009) (analyzing similar provisions of Rule 10b-5; "Misrepresentations and most omissions fall under the prohibition of Rule 10b-5(b), whereas manipulative conduct [is covered by Rule 10b-5(a) and (c)].").   Accordingly, the Court need only consider whether Plaintiffs have alleged an actionable misrepresentation or omission by First American or eAppraiseIT.[16]   Under that standard, Plaintiffs' claim fails as a matter of law.

---

[15] *Compare* AC ¶¶ 237 (claiming violation of RCW 21.20.010(2); alleging that First American and eAppraiseIT failed to disclose that their "independence from WaMu was compromised" and the "significance [sic] risk the LTV ratios provided in the Offering Documents are understated,") *and* 238 (alleging that LTV ratios in offering documents were misleading), *with* ¶ 246 (claiming violation of RCW 21.20.010(3); alleging that "*undisclosed* involvement and influence" of WaMu on appraisal process "deceive[d] Plaintiffs" about appraisers' "independence and the reliability of the LTV ratios specified in the Offering Documents as well as the potential for *future disclosure of those facts* to negatively impact the value of the Certificates") (emphasis added).

[16] Any claim against First American and eAppraiseIT under RCW 21.20.010(3) must fail, because Plaintiffs have not alleged that they relied on any conduct by First American or eAppraiseIT. WSSA requires plaintiffs to plead and prove reasonable reliance on the alleged statements or misconduct. *See, e.g.*, *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 134, 787 P.2d 8 (1990); *Stewart v. Estate of Steiner*, 122 Wn. App. 258, 264, 93 P.3d 919 (2004).

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 20
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    Plaintiffs cannot allege any actionable misrepresentation by First American or

2    eAppraiseIT relating to the Certificates, for the simple reason that neither First American nor

3    eAppraiseIT was involved in any way with the Certificates or the offerings.  Plaintiffs tacitly

4    acknowledge as much:  They do not allege (nor could they) that First American or eAppraiseIT

5    actually made any statements that were included in the Registration Statement or in any of the

6    Prospectus Supplements.  Plaintiffs instead allege that First American and eAppraiseIT violated

7    WSSA because their allegedly inflated appraisals ***allowed WaMu to make*** misrepresentations

8    in the offering documents.  *E.g.*, AC ¶¶ 81, 225 ("Without certified appraisals, the WaMu

9    Defendants could not have credibly specified the LTV ratios of the mortgages in the Offering

10   Documents."), 235 (alleging First American and eAppraiseIT are liable for misstatements in

11   offering documents "derived from" appraisals).  Those allegations fail to state a WSSA claim

12   as a matter of law.  WSSA does not impose liability on parties based on the conduct or

13   statements of others; rather, WSSA liability requires the defendant to have actually made a

14   false or misleading statement.  *See Burgess v. Premier Corp.*, 727 F.2d 826, 833 (9th Cir. 1984)

15   ("[Under WSSA], some liability-producing action by [the defendants] themselves is required.

16   And because there is no evidence that [defendants] made any misrepresentations, they are not

17   subject to liability under this statute."); *Swartz*, 2008 WL 1968948 at *22.[17]

18   _____

19   Plaintiffs here do not (and cannot) allege that they knew of, or relied on, any alleged conduct of First American or
     eAppraiseIT when they purchased the Certificates.  The offering documents do not even mention First American

20   or eAppraiseIT, and Plaintiffs allege they relied solely on statements in the offering documents.  *See* AC ¶ 251;
     *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 160 (2008) ("In effect petitioner contends

21   that … investors rely not only upon the public statements relating to a security but also upon the transactions those
     statements reflect.  Were this concept of reliance to be adopted, the implied cause of action would reach the whole

22   marketplace in which the issuing company does business; and there is no authority for this rule.").

23   [17] Even if Plaintiffs were to argue that the statements made by WaMu entities should be attributed to First
     American and eAppraiseIT, courts have consistently held that a party cannot be deemed responsible for the

24   allegedly misleading public statement of another unless, at a very minimum, it substantially participated in the
     preparation of that statement.  *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000) ("[W]e

25   have held that substantial participation or intricate involvement in the preparation of fraudulent statements is
     grounds for primary liability ….").  Here, First American and eAppraiseIT did not play any role whatsoever — let

26   alone a substantial one — with respect to the Registration Statement or the Prospectus Supplements.  The strongest
     allegation Plaintiffs can muster to link First American and eAppraiseIT to the Certificates is the conclusory — and
     insufficient — allegation that First American was aware that WaMu and other lenders securitize mortgage loans.
     *See* AC ¶¶ 117 ("First American acknowledged that its operating revenue had been adversely impacted '***by the***

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 21
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    Moreover, neither First American nor eAppraiseIT can be liable for any alleged

2  "omissions" in connection with the offerings of the Certificates, because First American and

3  eAppraiseIT owed no duty to Plaintiffs.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17

4  (1988) ("Silence, absent a duty to disclose, is not misleading ….").  As discussed above,

5  Plaintiffs do not allege that First American or eAppraiseIT played any role in the securitization

6  process or in the offerings of the Certificates.  The *only* acts or conduct that Plaintiffs allege

7  First American and eAppraiseIT engaged in relate *exclusively* to the preparation of appraisals in

8  connection with the origination of mortgage loans for WaMu.  Such alleged conduct cannot, as

9  a matter of law, generate any duty to parties who later invest in certificates issued by the WaMu

10 Trusts.[18]  *See Chiarella v. United States*, 445 U.S. 222, 232-33 (1980) (party had no duty to

11 selling shareholders where he "had no prior dealings with them[,] … [h]e was not their agent,

12 he was not a fiduciary, [and] he was not a person in whom the sellers had placed their trust and

13 confidence"); *Monroe v. Hughes*, 31 F.3d 772, 776 (9th Cir. 1994) (auditor had no disclosure

14 duty where "it had no direct relationship with the investors, derived no benefit from any

15 relationship with the investors and played no role in initiating the securities transactions").

16 **B.    Defendants Are Not "Sellers" Under WSSA.**

17    Plaintiffs' WSSA claim fails for the additional reason that neither First American nor

18 eAppraiseIT is a "seller" of the Certificates.  A party is a "seller" under WSSA **only** if his acts

19

---

20 *decline in mortgage originations and the tightening of the credit markets which led to a decrease in mortgage securitization* ….") (emphasis in original), 226 (alleging that First American "knew, directly from WaMu
21 Defendants and through their involvement with the mortgage industry generally, that WaMu would provide the
    LTV ratios that flowed directly and necessarily from the appraisals to investors to induce them to purchase the
22 Certificates").  As a matter of law, such allegations fail to establish substantial participation in the creation of any
    statement.  *See, e.g.*, *Siemers*, 2006 WL 3041090 at *11 (dismissing claims against defendants who did not sign,
23 approve, or otherwise substantially participate in making statements in offering documents); *Commc'ns Workers
    of Am. Plan for Employees' Pensions & Death Benefits v. CSK Auto Corp.*, No. CV06-1503-PHX-DGC, 2007 WL
24 951968 (D. Ariz. Mar. 28, 2007); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084-85 (N.D. Cal. 2001).

25 [18] As noted above, the Prospectus Supplements do not include identifying information about the mortgage loans
    held by the WaMu Trusts or the properties secured by those mortgages, including the appraised values.  Nor do the
    Prospectus Supplements identify the appraisers who conducted appraisals in connection with the mortgage loans.
26 It is therefore impossible to determine from the offering documents whether the property securing any loan held by
    any particular issuing WaMu Trust was appraised by an eAppraiseIT staff or contract appraiser, an LSI appraiser,
    or another third-party appraiser, or whether the underlying loan was even originated by WMB.

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 22
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

were a "substantial contributive factor" in the securities transaction.  *See Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 131, 744 P.2d 1032 (1987).  In *Hines v. Data Line Systems, Inc*., 114 Wn.2d 127, 149, 787 P.2d 8 (1990), the Washington Supreme Court found that a professional service provider is not a "substantial contributive factor" in a securities offering absent some level of "active participation" in the transaction itself.  The *Hines* court held that a law firm that advised an issuer was not a "seller" under WSSA, where the law firm had no "personal contact with any of the investors or was in any way involved in the solicitation process" and was therefore "not a catalyst in the sales transaction."  *Id.* at 149-50.

In *Wade v. Skipper's Inc.*, 915 F.2d 1324 (9th Cir. 1990), the Ninth Circuit similarly held that a corporate franchisor was not a "seller" of a franchisee's limited partnership interests, where the franchisor had no role in preparing the offering documents or soliciting investors. The franchisor had provided certain financial information to the seller's agent and discussed with the agent financial projections that were included in the offering documents, but the court held that such conduct was insufficient as a matter of law to render the franchisor a seller:

> Skipper's conduct in giving [seller's agent] financial information for other Skipper's restaurants … discussing estimated projections with [seller's agent], and receiving copies of the Offering Memorandum is ***insufficient to constitute a "substantial contributive factor" in the sale of the limited partnership interests.***

*Id.* at 1329 (emphasis added); *see also Brin v. Stutzman*, 89 Wn. App. 809, 830, 951 P.2d 291 (1998) (affirming dismissal of WSSA claim; defendant "did not act together with the issuers of the [security]" and did not "take any part in the actual sales process by acting as the 'catalyst' between the [securities] dealers and [plaintiff]") (citations omitted); *Shinn*, 56 Wn. App. at 851 (affirming dismissal of WSSA claim where "[t]he absence of any real promotional conduct on the part of [defendant]" supported conclusion that "no 'sale' within the meaning of the statutes occurred").[19]

---

[19] *Accord Tumelson Family Ltd. P'ship v. World Fin. News Network*, 242 F. App'x 385, 387 (9th Cir. Feb. 28, 2007) (defendant entitled to judgment as a matter of law on WSSA claim because there "was no evidence that [the parties] discussed buying stock, that Defendant [] had the attributes of a seller, or that Plaintiffs relied on Defendant [] to make their investment decisions, much less that any reliance would have been reasonable").

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 23
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1    Here, Plaintiffs cannot allege that First American or eAppraiseIT was a "substantial

2 contributive factor" in any offer or sale of the Certificates.  Plaintiffs claim that First American

3 and eAppraiseIT are "sellers" because the USPAP-compliant appraisals were necessary in

4 order to securitize mortgage loans and ultimately package and issue the Certificates, and

5 because First American and eAppraiseIT allegedly knew that WaMu would include LTV ratios

6 calculated based on the appraised values of mortgage properties in the offering documents for

7 mortgage-backed securities. *See* AC ¶¶ 225-226.  But those allegations do not establish any

8 nexus between First American or eAppraiseIT and the offer or sale of the Certificates.  The

9 home appraisal process — which takes place before a mortgage loan is even finalized — is

10 simply too far removed from a third-party's subsequent decision to pool, securitize and offer a

11 mortgage loan to investors to serve as a basis for imposing WSSA liability.  Because the

12 Amended Complaint is devoid of any factual allegation that would, if true, show that First

13 American or eAppraiseIT prepared, reviewed, or approved any offering document, or had any

14 involvement in marketing or soliciting investors for the Certificates, Plaintiffs cannot establish

15 the "seller" element of their WSSA claim as a matter of law, and the WSSA claim should be

16 dismissed with prejudice.

17 **C.    Plaintiffs' "Control Person" Claim Against First American Fails.**

18    Because, as explained above, Plaintiffs have not established a claim for primary liability

19 under WSSA against eAppraiseIT, Plaintiffs' claim for secondary "control person" liability

20 against First American should also be dismissed with prejudice.

21                         **VIII.  CONCLUSION**

22    For all of the above reasons, First American and eAppraiseIT respectfully request that

23 the Court dismiss Plaintiffs' Consolidated Complaint with prejudice.

24

25

26

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 24
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1        RESPECTFULLY SUBMITTED this 29th day of January, 2010.

2

3                                  /s/ Stellman Keehnel
                                   Stellman Keehnel, WSBA No. 9309
4                                  Christopher M. Huck, WSBA No. 34104
                                   R. Omar Riojas, WSBA No. 35400
5                                  Bradley T. Meissner, WSBA No. 39592
                                   **DLA PIPER LLP (US)**
6                                  701 Fifth Avenue, Suite 7000
                                   Seattle, Washington  98104
7                                  Telephone:    206.839.4800
                                   Fax:          206.839.4801
8                                  E-mail:  stellman.keehnel@dlapiper.com
                                            christopher.huck@dlapiper.com
9                                            omar.riojas@dlapiper.com
                                            bradley.meissner@dlapiper.com
10

11                                 Richard F. Hans (admitted *pro hac vice*)
                                   Kerry F. Cunningham (admitted *pro hac vice*)
12                                 Corey Elanor Delaney (admitted *pro hac vice*)
                                   **DLA PIPER LLP (US)**
13                                 1251 Avenue of the Americas
                                   27th Floor
14                                 New York, New York  10020-1104
                                   Tel:          212.335.4500
15                                 Fax:          212.335.4501
                                   E-mail:  richard.hans@dlapiper.com
16                                          kerry.cunningham@dlapiper.com
                                            corey.delaney@dlapiper.com
17
                                   Attorneys for Defendants
18                                 The First American Corporation and
                                   eAppraiseIT, LLC
19

20

21

22

23

24

25

26

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 25
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2010, I electronically filed the foregoing **MOTION TO DISMISS** and the accompanying **[PROPOSED] ORDER GRANTING MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Adam Zurofsky    azurofsky@cahill.com

- Andrew B. Brettler    abrettler@stblaw.com

- Arthur L. Shingler    ashingler@scott-scott.com, efile@scott-scott.com

- Barry Robert Ostrager    bostrager@stblaw.com, managingclerk@stblaw.com

- Bradley T. Meissner    bradley.meissner@dlapiper.com

- Brian C. Free    bcf@hcmp.com, gcp@hcmp.com

- Bruce Earl Larson    blarson@karrtuttle.com, psteinfeld@karrtuttle.com

- Christopher E. Lometti    clometti@cohenmilstein.com

- Christopher M. Huck    Christopher.huck@dlapiper.com, karen.hansen@dlapiper.com

- Corey E. Delaney    corey.delaney@dlapiper.com, kerry.cunningham@dlapiper.com, patrick.smith@dlapiper.com, richard.hans@dlapiper.com

- Daniel B. Rehns    drehns@cohenmilstein.com

- David Daniel Hoff    dhoff@tousley.com, efile@tousley.com

- David M. Balabanian    david.balabanian@bingham.com

- Dennis H. Walters    dwalters@karrtuttle.com, wbarker@karrtuttle.com

- Erik D. Peterson    epeterson@btkmc.com, knguyen@btkmc.com

- Floyd Abrams    fabrams@cahill.com

- Frank Busch    frank.busch@bingham.com, frank.downing@bingham.com

- Gavin Williams Skok    gskok@riddellwilliams.com, dhammonds@riddellwilliams.com

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 26
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1

2

- Hal D. Cunningham   hcunningham@scott-scott.com, efile@scott-scott.com, halcunningham@gmail.com

3

- James J. Coster   jcoster@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

4

- Joel P. Laitman   jlaitman@cohenmilstein.com

5

- John D. Lowery   jlowery@riddellwilliams.com, dhammonds@riddellwilliams.com

6

- John D. Pernick   john.pernick@bingham.com

7

- Jonathan Gardner   jgardner@labaton.com

8

- Joseph P. Guglielmo   jguglielmo@scott-scott.com, efile@scott-scott.com

9

10

- Joshua M. Rubins   jrubins@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

11

- Kenneth J. Pfaehler   kpfaehler@sonnenschein.com, nreeber@sonnenschein.com

12

- Kenneth M. Rehns   krehns@cohenmilstein.com

13

- Kerry F. Cunningham   kerry.cunningham@dlapiper.com

14

- Kevin P. Chavous   kchavous@sonnenschein.com

15

16

- Kim D. Stephens   kstephens@tousley.com, cbonifaci@tousley.com, kzajac@tousley.com

17

- Larry Steven Gangnes   gangnesl@lanepowell.com, docketing-sea@lanepowell.com, donnellyjossm@lanepowell.com, sebringl@lanepowell.com

18

19

- Leslie D. Davis   ldavis@sonnenschein.com

20

- Louis David Peterson   ldp@hcmp.com, smp@hcmp.com

21

- Mary Kay Vyskocil   mvyskocil@stblaw.com

22

- Michael H. Barr   mbarr@sonnenschein.com

23

- Mike Liles, Jr.   mliles@karrtuttle.com

24

- Nancy A. Pacharzina   npacharzina@tousley.com, kzajac@tousley.com

25

- Paul Scarlato   pscarlato@labaton.com, ElectronicCaseFiling@labaton.com

26

- Paul Joseph Kundtz   pkundtz@riddellwilliams.com, mbergquam@riddellwilliams.com, mdowns@riddellwilliams.com

1

- Ramzi Abadou     rabadou@btkmc.com, knguyen@btkmc.com

2

- Richard F. Hans     richard.hans@dlapiper.com, dorinda.castro@dlapiper.com

3

- Robert D. Stewart     stewart@kiplinglawgroup.com, cannon@kiplinglawgroup.com

4

- Robert J. Pfister     rpfister@stblaw.com

5

- Rogelio Omar Riojas     omar.riojas@dlapiper.com, nina.marie@dlapiper.com

6

- Stellman Keehnel     stellman.keehnel@dlapiper.com, patsy.howson@dlapiper.com

7

- Stephen M. Rummage     steverummage@dwt.com, jeannecadley@dwt.com

8

- Steve W. Berman     steve@hbsslaw.com, heatherw@hbsslaw.com, robert@hbsslaw.com

9

10

- Steven J. Toll     stoll@cohenmilstein.com, efilings@cohenmilstein.com

11

- Steven P. Caplow     stevencaplow@dwt.com, belenjohnson@dwt.com

12

- Tammy Roy     troy@cahill.com

13

- Timothy Michael Moran     moran@kiplinglawgroup.com, cannon@kiplinglawgroup.com

14

15

- Walter Eugene Barton     gbarton@karrtuttle.com, danderson@karrtuttle.com, nrandall@karrtuttle.com

16

17

Signed at Seattle, Washington, this 29th day of January, 2010.

18

19

20

*/s/  Stellman Keehnel*

Stellman Keehnel, WSBA No. 9309

21

WEST\21858555.2

22

23

24

25

26

FIRST AMERICAN'S AND EAPPRAISEIT'S MOTION
TO DISMISS AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT – 28
NO. C 09-0037 (MJP)

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800