The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10
BOILERMAKERS NATIONAL
ANNUITY TRUST FUND, on behalf of
itself and all others similarly situated, et al.,

11

                     Plaintiffs,

12
     v.

13
WAMU MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2006-AR1, *et
al.*,

14

15
                  Defendants.

Case No. C09-0037MJP

**THE RATING AGENCY
DEFENDANTS' MOTION TO
DISMISS THE AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT**

**NOTE FOR MOTION CALENDAR:
MARCH 12, 2010**

**ORAL ARGUMENT REQUESTED**

16

17

18

19

20

21

22

23

24

25

26

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

## TABLE OF CONTENTS

2

RELIEF REQUESTED AND SUMMARY OF ARGUMENT............................................1

3

BACKGROUND ........................................................................................................4

4

STANDARD OF REVIEW .........................................................................................7

5

ARGUMENT..............................................................................................................7

6

I.    PLAINTIFFS' § 11 CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW ......7

7

A.   Plaintiffs' § 11 Claims Against the RAs Are Precluded by Express SEC Rule ......8

8

B.   The RAs Are Not Subject to Suit Under § 11.................................................10

9

1.   Plaintiffs Have No Claim Against the RAs Under § 11(a)(4) ...........................10

10

2.   The RAs Are Not "Underwriters".................................................................13

11

C.   Plaintiffs' § 11 Claims Are Time-Barred.......................................................18

12

1.   Plaintiffs' § 11 Claims Against the RAs Based on 17 of the 23
     Offerings Are Time-Barred by the Three-Year Statute of Repose ...................19

13

14

2.   Plaintiffs' Claims Against the RAs Are Also Time-Barred Because
     Plaintiffs Were on Inquiry Notice of Their Claims More than One Year
     Prior to Filing...........................................................................................19

15

16

II.   THE ALLEGED MISSTATEMENTS AND OMISSIONS BY THE RATING
      AGENCIES ARE NOT ACTIONABLE ................................................................25

17

18

A.   No Actionable "Omissions" Are Alleged ......................................................27

19

B.   The Ratings-Related Statements in the Offering Documents Are Entitled to
     Protection Under the "Bespeaks Caution" Doctrine.......................................29

20

21

III.  PLAINTIFFS' WSSA CLAIMS MUST BE DISMISSED (COUNT IV) ................31

22

A.   The Claims Are Preempted By Federal Law ..................................................31

23

B.   The First Amendment Bars Plaintiffs' WSSA Claims ....................................35

24

C.   Plaintiffs Fail To State a Claim Under the WSSA..........................................39

25

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - i
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    1.   The RAs Are Not "Sellers" as a Matter of Law.................................................40

2    2.   Plaintiffs Fail To Allege Reasonable Reliance ...............................................46

3    CONCLUSION..........................................................................................................48

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - ii
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

## TABLE OF AUTHORITIES

2                                                                                                Page

3  **Cases**

4  *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.,* 651 F. Supp.
   2d 155 (S.D.N.Y. 2009) ................................................................... 36, 36n

5  *Ackerberg* v. *Johnson*, 892 F.2d 1328 (8th Cir. 1989) ...................................... 14

6  *In re Activision Securities Litigation*, 621 F. Supp. 415 (N.D. Cal. 1985)........ 42-43

7
   *In re Adelphia Communications Corp. Securities and Derivative*
8     *Litigation*, No. 03 MD 1529 (LMM), 2007 WL 2615928 (S.D.N.Y.
      Sept. 10, 2007) ........................................................................................ 17

9
   *AIG Retirement Services, Inc.* v. *Altus Finance S.A.*, No. CV 05-1035-
10    JFW (CWx), 2006 WL 5971775 (C.D. Cal. Mar. 1, 2006) .......................... 23

11 *Aizuss* v. *Commonwealth Equity Trust*, 847 F. Supp. 1482 (E.D. Cal.
      1993) ........................................................................................................ 23
12
   *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009)........................................................... 7, 16-17
13
   *Aviation Charter, Inc.* v. *Aviation Research Group/US*, 416 F.3d 864
14    (8th Cir. 2005)) ........................................................................................ 36

15 *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007)......................................... 7

16 *Berry* v. *Valence Technology, Inc.*, 175 F.3d 699 (9th Cir. 1999)...................... 20-21

17 *Betz* v. *Trainer Wortham & Co.*, 519 F.3d 863 (9th Cir. 2008)......................... 19-20

18 *BMW of North America, Inc.* v. *Gore*, 517 U.S. 559 (1996) ............................. 33

19 *Bose Corp.* v. *Consumer Union of United States, Inc.*, 466 U.S. 485
      (1984) ...................................................................................................... 38
20
   *Branch* v. *Tunnell*, 14 F.3d 449 (9th Cir. 1994), *overruled on other*
21    *grounds, Galbraith* v. *County of Santa Clara*, 307 F.3d 1119 (9th
      Cir. 2002) ................................................................................................ 4n
22
   *Brin* v. *Stutzman*, 89 Wash. App. 809 (1998) ................................................. 41, 43
23
   *In re Britannia Bulk Holdings Securities Litigation*, -- F. Supp.2d ---,
24    Master File No. 08 Civ. 9554(DLC), 2009 WL 3353045 (S.D.N.Y.
      Oct. 19, 2009) .......................................................................................... 29-30
25
   *Brown* v. *Earthboard Sports USA, Inc.*, 481 F.3d 901 (6th Cir. 2007) ............. 32
26

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

                                                                                    Page

*Browne* v. *Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007) ..................... 36

*Cisneros* v. *Alpine Ridge Group*, 508 U.S. 10 (1993) ....................................... 32-33, 35

*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520
    (6th Cir. 2007).......................................................................................... 26, 36, 37-38

*County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 138 (C.D. Cal. 1999)......... 36, 38-39

*Desai* v. *Deutsche Bank Securities Ltd*, 573 F.3d 931 (9th Cir. 2009)............. 28, 48n

*Eckstein* v. *Balcor Film Investors*, 8 F.3d 1121 (7th Cir. 1993), *aff'd*, 58
    F.3d 1162 (7th Cir. 1995)......................................................................... 48n

*In re Enron Corp. Securities, Derivative and "ERISA" Litigation*, 511
    F. Supp. 2d 742 (S.D. Tex. 2005) ............................................................ 9, 36, 39

*Fidelity Federal Savings and Loan Ass'n* v. *De la Cuesta*, 458 U.S. 141
    (1982)......................................................................................................... 35n

*First Equity Corp.* v. *Standard & Poor's Corp.*, 690 F. Supp. 256
    (S.D.N.Y. 1988), *aff'd on other grounds*, 869 F.2d 175 (2d Cir.
    1989).......................................................................................................... 39

*Freeman* v. *Burlington Broadcasters, Inc.*, 204 F.3d 311 (2d Cir. 2000) ......... 32-33

*In re Global Crossing, Ltd. Securities Litigation*, 313 F. Supp. 2d 189
    (S.D.N.Y. 2003) ........................................................................................ 11

*In re Global Crossing, Ltd. Securities Litigation*, 322 F. Supp. 2d 319
    (S.D.N.Y. 2004) ........................................................................................ 13

*Haberman* v. *Washington Public Power Supply System*, 109 Wash.2d
    107 (1987)................................................................................................. *passim*

*Halperin* v. *Ebanker USA.COM, Inc.*, 295 F.3d 352 (2d Cir. 2002) ................. 30

*Herman & MacLean* v. *Huddleston*, 459 U.S. 375 (1983)............................... *passim*

*Hines* v. *Data Line Systems, Inc.*, 114 Wash. 2d 127 (1990) ........................... 42, 44, 45

*Hustler* v. *Falwell*, 485 U.S. 46, 108 S. Ct. 876 (1988) .................................... 36-37

*In re Infonet Services Corp. Securities Litigation*, 310 F. Supp. 2d 1106
    (C.D. Cal. 2003)........................................................................................ 4n, 20, 21

*Ingenito* v. *Bermec Corp.*, 441 F. Supp. 525 (S.D.N.Y. 1977)......................... 14, 15

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

|  | Page |
|---|---|
| *Jefferson County School District No. R-1 v. Moody's Investor's Services*, 175 F.3d 848 (10th Cir. 1999) .......................................... | 26, 36, 38-39 |
| *JJR Inc. v. City of Seattle*, 126 Wash. 2d 1 (1995) ............................................ | 39n |
| *Jones v. Rath Packing Co.*, 430 U.S. 519 (1977) .............................................. | 32 |
| *Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053 (N.D. Cal. 2009) .............. | 20, 23 |
| *Lieberman v. Fieger*, 338 F.3d 1076 (9th Cir. 2003) ....................................... | 37 |
| *In re Lehman Bros. Mortgage-Backed Securities Litigation*, No. 09-MD-2017, No. 08-CV-6762 ...................................................... | 13 |
| *Lin v. Interactive Brokers Group, Inc.*, 574 F. Supp. 2d 408 (S.D.N.Y. 2008) ............................................................................................ | 27 |
| *Louisiana-Pacific Corp v. ASARCO, Inc.*, 5 F.3d 431 (9th Cir. 1993) ............. | 19n |
| *Lowden v. T-Mobile USA, Inc.*, No. C05-1482 MJP, 2009 WL 537787 (W.D. Wash. Feb. 18, 2009) ......................................................................... | 33 |
| *Lubic v. Fidelity National Financial, Inc.*, No. C08-0401MJP, 2009 WL 2160777 (W.D. Wash. June 20, 2009)...................................................... | 7 |
| *McFarland v. Memorex Corp.*, 493 F. Supp. 631 (N.D. Cal. 1980)................. | 11, 12-13, 14, 16n |
| *McGuire v. Dendreon Corp.*, No. C07-800MJP, 2008 WL 1791381 (W.D. Wash. Apr. 18, 2008) ......................................................................... | 4n |
| *In re MDC Holdings Securities Litigation*, 754 F. Supp. 785 (S.D. Cal. 1990) ......................................................................................................... | 48n |
| *In re Merrill Lynch & Co. Research Reports Securities Litigation*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003)........................................................... | 29 |
| *In re Metropolitan Securities Litigation*, 532 F.Supp.2d 1260 (E.D. Wash. 2007) .......................................................................................... | 46 |
| *In re Metropolitan Securities Litigation*, 2009 WL 36776 (E.D. Wash. 2009) ......................................................................................................... | 47 |

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - v
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

|  |  | Page |
|---|---|---|
| *In re Morgan Stanley Information Fund Securities Litigation*, --- F.3d ---, Docket Nos. 09-0837-cv, 09-0858-cv, 2010 WL 252294 (2d Cir. Jan. 25, 2010) | | 28-29 |
| *In re Network Commerce Inc. Securities Litigation*, No. C01-0675L, 2006 WL 1375049 (W.D. Wash. May 16, 2006) | | 19 |
| *New Orleans Employees' Retirement System* v. *Washington Mutual, Inc.*, No. 09-CV-00134, Complaint filed August 4, 2008 (Dkt. No. 5, Attached to Verification of State Court Records and Proceedings) | | 21, 23 |
| *In re Novagold Resources Inc. Securities Litigation*, 629 F. Supp.2d 272, 288 (S.D.N.Y. 2009) | | 20 |
| *Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, 2009 WL 3149775, at *8 (D. Mass. Sept. 30, 2009) | | 27, 29 |
| *Reale* v. *Ernst & Young, LLP*, No. 43932-4-I, 2000 WL 949388 (Wash. App. Div.1 July 10, 2000) | | 44-45 |
| *In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) | | 17 |
| *In re Refco, Inc. Securities Litigation*, No. 05 Civ. 8626 (GEL), 2008 WL 3843343 (S.D.N.Y. Aug. 14, 2008) | | 11-12, 15, 17-18 |
| *Riegel* v. *Medtronic, Inc.*, 128 S.Ct. 999 (2008) | | 33-34 |
| *Rubke* v. *Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009) | | 26 |
| *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236 (1959) | | 33 |
| *Schmidt* v. *Cornerstone Investments, Inc.*, 115 Wash. 2d 148 (1990) | | 42 |
| *SEC* v. *Lybrand*, 200 F. Supp. 2d 384 (S.D.N.Y. 2002), *aff'd on other grounds*, 425 F.3d 143 (2d Cir. 2005) | | 14 |
| *Shain* v. *Duff and Phelps Credit Rating Co.*, 915 F. Supp. 575 (S.D.N.Y. 1966) | | 40 |
| *In re Stac Electronics Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996) | | 19 |
| *Starr ex rel. Estate of Sampson* v. *Georgeson Shareholder, Inc.*, 412 F.3d 103 (2d Cir. 2005) | | 28 |

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - vi
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

| | Page |
|---|---|
| *Stewart* v. *Estate of Steiner*, 122 Wash. App. 258 (Wash. App. Div. 1 2004) ................................................................ | 45 |
| *Swartz* v. *Deutsche Bank*, No. C03-1252, 2008 WL 1968948 (W.D. Wash. May 2, 2008) ................................................ | 7, 25, 40 |
| *Train* v. *Colorado Public Interest Research Group, Inc.*, 426 U.S. 1 (1976) ................................................................ | 32 |
| *TSC Industries, Inc.* v. *Northway, Inc.*, 426 U.S. 438 (1976) .......................... | 28 |
| *In re Tseng Labs, Inc. Sec. Litig.*, 954 F. Supp. 1024 (E.D. Pa. 1996), *aff'd*, 107 F.3d 8 (3d Cir. 1997) ........................................ | 28 |
| *Tuscany* v. *Paragon Capital Corp.*, No. Civ.A. 44637-1-I, 2000 WL 1224795 (Wash. App. Div. 1 Aug. 28, 2000) .......................... | 41, 42 |
| *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083 (1991) ........................ | 26 |
| *Wade* v. *Skipper Inc.*, 915 F.2d 1324 (9th Cir. 1990) .................................... | 42 |
| *In re Worlds of Wonder Securities Litigation*, 35 F.3d 1407 (9th Cir. 1994) ................................................................ | 29, 30 |

**Rules**

Fed. R. Civ. P.

| | |
|---|---|
| 8 ................................................................ | 1 |
| 12(b)(1) ........................................................ | 1 |
| 12(b)(6) ........................................................ | 1 |

**SEC Regulations**

| | |
|---|---|
| 17 C.F.R. § 230.436(g) (2009) ........................................ | 8, 9, 10, 45 |

**Statutes**

Credit Rating Agency Reform Act of 2006

| | |
|---|---|
| 15 U.S.C. § 78o-7 (2006) ............................................ | 31-32 |

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

|  | Page |
|---|---|
| **Securities Act of 1933** | |
| § 2, 15 U.S.C. § 77b (2006) ........................................ | 14-15 |
| § 7, 15 U.S.C. § 77g (2006) ........................................ | 11 |
| § 11, 15 U.S.C. § 77k (2006) ........................................ | *passim* |
| § 12, 15 U.S.C. § 77l (2006) ........................................ | 43 |
| § 15, 15 U.S.C. § 77m (2006) ........................................ | 18 |
| **Securities Exchange Act of 1934** | |
| § 10(b), 15 U.S.C. § 78j(b) (2006)................................. | 10 |
| **Wash. Rev. Code Ann.** | |
| Ch. 21.20, §21.20.005 *et seq.* (Thompson Reuters 2010)............................. | *passim* |

### Treatises

| | |
|---|---|
| Thomas Lee Hazen, *The Law of Securities Regulation* (4th ed. 2002)............... | 14 |

### Other Authorities

| | |
|---|---|
| Additional Form 8-K Disclosure Requirements and Acceleration of Filing Date, SEC Release No. 33-8400, 69 Fed. Reg. 15594-01 .................. | 9n |
| Adoption of Integrated Disclosure System, SEC Release No. 33-6383, 1982 WL 90370, at *23 (Mar. 3, 1982) ......................................... | 9 |
| Disclosure of Security Ratings in Registration Statements, SEC Release No. 33-6836, 46 Fed. Reg. 42024-01, 42024................................. | 8-9, 10 |
| Disclosure of Securities Ratings, SEC Release No. 33-7086, 1994 WL 469347 (Aug. 31, 1994) ................................................................ | 9n, 29 |
| *How Rating Firms' Calls Fueled Subprime Mess,* Wall Street Journal, Aug. 15, 2007 ................................................................ | 24, 25 |
| *Investing Marketplace:  CDO's Mask Subprime Loan Losses,* International Herald Tribune, June 1, 2007 .................................... | 25 |
| *In re Lorsin, Inc.*, 82 SEC Docket 3044, Release No. 250 (May 11, 2004) ................................................................ | 14 |
| *Overrated,* Conde Nast Portfolio, Sept. 2007 ..................................... | 25 |
| R. Beales, et al., *Failing Grades*, Financial Times, May 16, 2007 .................. | 24 |

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - viii
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

Page

*In re Reiter-Foster Oil Corp.,* 6 SEC 1028, Release No. 33-2201, 1940
    WL 36362 (Mar. 11, 1940) .......................................................... 15n

SEC Report on the Role and Function of Credit Rating Agencies - The
    Operation of the Securities Markets (Jan. 2003) ........................................ 27-28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - ix
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

## RELIEF REQUESTED AND SUMMARY OF ARGUMENT

2        Defendants The McGraw-Hill Companies, Inc. ("McGraw-Hill" or "S&P") and

3    Moody's Investors Service, Inc. ("Moody's") (together the "RAs") respectfully submit this

4    memorandum in support of their motion to dismiss the Amended Consolidated Class Action

5    Complaint (Dkt. No. 130) (hereafter "Amended Complaint" or "AC") by Lead Plaintiff

6    Policemen's Annuity and Benefit Fund of the City of Chicago and Plaintiffs Boilermakers

7    National Annuity Trust Fund and Doral Bank Puerto Rico (collectively "Plaintiffs") pursuant to

8    Fed. R. Civ. R. 8, 12(b)(1) and 12(b)(6).

9        With their two claims against the RAs (Counts I & IV), Plaintiffs ask this Court to go,

10   literally, where no court has ever gone before: specifically, to hold entities strictly liable for

11   potentially billions of dollars for allegedly failing to predict the future.  The RAs are accused of

12   publishing overly "high" rating opinions on the question of whether certain Mortgage Pass-

13   Through Certificates arranged, underwritten and sold by Washington Mutual and its affiliates[1]

14   (the "Certificates") were likely to default on their payment obligations.  The RAs are **not**

15   accused of publishing opinions they did not believe — indeed, Plaintiffs expressly and

16   repeatedly disclaim any allegations sounding in fraud.  Nor are they accused of having any

17   knowledge of the alleged underwriting shortcomings by the WaMu defendants, the purportedly

18   faulty appraisals by the appraisal defendants or any of the other non-ratings-related matters that

19   take up the lion's share of the AC.  Instead, Plaintiffs assert, with the benefit of perfect

20   hindsight, that the RAs "should have" done a better job of analyzing the creditworthiness of the

21   Certificates.

22        To transform that assertion into a case, Plaintiffs ask this Court to interpret two statutes

23   in ways no court has ever done and which would contradict their plain meaning.  The first

24   _____

[1] The WaMu defendants are defined as the Washington Mutual Asset Acceptance Corporation ("WMAAC"), the
25   preparer and filer of the Registration Statement and the depositor of the underlying mortgage collateral in the
Issuing Trusts; Washington Mutual Capital Corporation ("WCC"), the underwriter of the Offerings; and
26   Washington Mutual, Inc. ("WMI") the parent of the WaMu entity that originated all the loans underlying the
Certificates (collectively "WaMu").  AC ¶¶ 2-5.

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 1
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  statute is § 11 of the Securities Act of 1933, 15 U.S.C. § 77k (the "1933 Act").  Section 11

2  provides potential plaintiffs with a cause of action if false or misleading information is

3  contained in a registration statement.  But the categories of persons that may be sued under § 11

4  are carefully limited to include only those individuals and/or entities that had a specified role in

5  the registered offering.  In the long history of the 1933 Act, that group has never included a

6  nationally recognized statistical rating organization ("NRSRO") — *i.e.*, those credit rating

7  agencies that have been recognized by the federal government — such as the RAs here.  Indeed,

8  the only judge to have ruled on this issue has recently dismissed outright virtually identical

9  claims in their entirety on a motion to dismiss.

10      This Court should do so as well for four primary reasons.  ***First***, NRSROs are explicitly

11  exempt from liability under § 11 for their ratings.  Section I.A, *infra*.  ***Second***, exemption aside,

12  the alleged conduct of the RAs could only give rise to liability, if at all, under § 11(a)(4)'s

13  "expert" provision, but then only if the RAs: (i) were named to investors in the registration

14  statement of the offering as having prepared or certified a portion of it and (ii) provided written

15  consent to being so named.  Neither is alleged to have occurred here, and neither did.  Section

16  I.B.1, *infra*.  ***Third***, even if not exempted and the 1933 Act's consent requirement were stripped

17  away, the RAs' alleged conduct, as a matter of law, cannot give rise to § 11 liability.  Section

18  I.B.2, *infra*.  ***Fourth***, the claim is time-barred because the majority of the purchases took place

19  beyond the applicable three-year statute of repose and, with respect to the remainder, Plaintiffs

20  were plainly on inquiry notice well over a year prior to filing their claims here against the RAs

21  on November 23, 2009.  Indeed, their first complaint was filed in August 2008, and the AC

22  itself details and relies on wide public disclosures made in 2007 and 2008.  Section I.C, *infra*.

23      The second statute Plaintiffs seek to misread is the Washington State Securities Act,

24  RCW Ch. 21.20, § 21.20.005 *et seq.* ("WSSA").  Plaintiffs claim, as they must under the

25  WSSA, that the RAs were "sellers" of the Certificates.  Over the decades, no federal or state

26  court in any jurisdiction has ever found any rating agency to be a "seller" of securities (despite

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 2
4830-3981-2357.01
012910/1718/45991.00015

the fact that the RAs have issued millions of ratings).  Undaunted, Plaintiffs make this claim in the absence of any allegation that the RAs engaged in the sort of behavior that is regarded in the ordinary course as selling or even sales-related.  For example, there is no allegation that either rating agency ever owned the Certificates or transferred title with respect to them, ever had any personal contact with any investor regarding the Certificates, participated in any sales "pitch," brokered any specific transaction, advised any investor with respect to any sale, received the proceeds of such a sale or otherwise solicited any sale in any way.  Instead, the RAs are accused of doing what they are in the business of doing: analyzing securities and issuing forward-looking creditworthiness opinions about the securities' likelihood of default.  That the RAs are accused of having done their work poorly, does not begin to mean that what they did amounts to "selling" so as to expose them to billions of dollars in potential liability.  Section III.C, *infra*.

Both of Plaintiffs' claims against the RAs (Counts I & IV) also fail as a matter of law because the AC does not allege an actionable misrepresentation or omission.  Indeed, courts have recognized that credit ratings are not factual statements, given that they are purely predictive opinions about creditworthiness that cannot be proven false when made.  Section II, *infra*.

Plaintiffs' WSSA claims — which expressly sound in negligence — must also be dismissed because they are: (i) preempted by a federal statute expressly precluding any state from regulating the "substance" of ratings, which is precisely what Plaintiffs seek to do here (Section III.A); (ii) barred by the First Amendment, given that, as numerous courts have recognized, credit ratings, such as those at issue here, are statements of national, even global, public concern and may not give rise to liability for mere negligence (Section III.B); and (iii) deficient as a matter of law since (a) the RAs, who are not alleged to have had any actual involvement in any sales, cannot as a matter of law be "sellers" within the meaning of the WSSA; and (b) Plaintiffs do not and cannot plead the crucial element of reliance (Section III.C).

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 3
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    For each of these reasons, the claims against the RAs should be dismissed with

2  prejudice.[2]

## BACKGROUND

4    Both of the RAs are credit rating agencies registered with the United States Securities

5  and Exchange Commission (the "SEC") as NRSROs and "were engaged to rate the

6  Certificates" at issue in this case.  AC ¶ 4.  Credit ratings are forward-looking opinions about

7  the creditworthiness of rated securities.  They speak to the likelihood of future events — *i.e.*,

8  the likelihood that the security will pay interest and principal in accordance with its terms.  The

9  Offering Documents for the Certificates make clear the nature and limitations of ratings.[3]  For

10  example:

11     The ratings on the offered certificates address the likelihood of the receipt by
       certificateholders of all distributions with respect to the underlying mortgage
12     loans to which they are entitled.

13  WaMu Mortgage Pass-Through Certificates, Series 2006-AR12 Prospectus Supp., at S-93

14  (Sept. 22, 2006), Declaration of Adam Zurofsky ("Zurofsky Decl."), Ex. A (filed herewith).[4]

15    Despite originally bringing this case on August 4, 2008, Plaintiffs did not file their

16  claim against the RAs until November 23, 2009.  At their core, these claims are rooted in the

17  assertion that the published rating opinions on the Certificates were allegedly too "high."  *See*,

18  _____

19  [2]  The RAs join in the arguments made in Sections III.B, III.C, III.D, III.G, and III.H of the motion to dismiss filed by the WaMu Defendants.

20  [3]  Offering Documents are defined as "the Registration Statement and the subsequently-filed Prospectus Supplements incorporated therein."  AC ¶ 2.

21  [4]  This Court may take judicial notice of information contained in the Prospectus Supplements, other publicly filed documents and ratings-related news articles included as exhibits to the Declarations of Adam Zurofsky and Joshua M. Rubins ("Rubins Decl."), *infra*.  These documents are matters of public record, were relied on by Plaintiffs and/or referenced by the AC.  *See Branch* v. *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds, Galbraith* v. *County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also McGuire* v. *Dendreon Corp.*, No. C07-800MJP, 2008 WL 1791381, at *4 (W.D. Wash. Apr. 18, 2008) ("A court may take judicial notice of documents that are referenced by the plaintiff in the complaint and whose authenticity are not in dispute, such as SEC filings . . . .").  Furthermore, a "court may take judicial notice of matters of public record outside the complaint . . . [where public documents] are submitted to establish 'whether and when certain information was provided to the market,' not the truth of the matters asserted" therein.  *In re Infonet Services Corp. Securities Litigation*, 310 F. Supp. 2d 1106, 1115 n.10 (C.D. Cal 2003).

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 4
4830-3981-2357.01
012910/1718/45991.00015

1   *e.g.*, AC ¶¶ 97, 103, 166(a), 166(b).  While Plaintiffs make a variety of allegations about the

2   RAs' conduct — for example, that the RAs "participated in structuring the various mortgage

3   pools . . . by specifying the amount of credit enhancement . . . needed for the Certificates to

4   qualify for a specified rating," AC ¶ 220 — Plaintiffs acknowledge that these alleged actions

5   ultimately concern the appropriateness of the ratings issued.  *See, e.g.*, AC ¶ 98 (acknowledging

6   the link between the ratings and "the amount of credit enhancement needed to support the

7   rating").  Similarly, any alleged lack of "due diligence" by the RAs on the data they reviewed,

8   or purported "conflicts of interest," also relate to the appropriateness of the ratings generated.

9   *See, e.g.*, AC

10   ¶ 103 (due to alleged lack of due diligence, flawed data and models were used "to generate . . .

11   ratings assigned to the Certificates," which "did not accurately reflect their risk . . ."); AC ¶ 243

12   (RAs' alleged lack of "independence" affected "the reliability of the ratings").

13       Based on their criticisms of the ratings and the rating process, Plaintiffs assert two

14   causes of action against the RAs.  The first (Count I) asserts a claim under § 11 of the 1933 Act,

15   15 U.S.C. § 77k, based on alleged misstatements and/or omissions in the registration statement

16   pursuant to which the Certificates were issued (the "Registration Statement").  Plaintiffs also

17   assert claims under RCW Ch. 21.20, § 21.20.005 *et seq.*, of the WSSA.  Plaintiffs go out of

18   their way to make clear that they are not alleging any fraudulent conduct by the RAs and

19   repeatedly emphasize that they make "no allegations or claims sounding in fraud."  AC ¶ 3; *see*

20   *also* AC ¶¶ 174, 191, 208, 239.  This is critical since it means Plaintiffs are not alleging that the

21   RAs did not subjectively believe the ratings opinions they issued or somehow knew they were

22   inappropriate, but are rather basing their claims on the contention that the RAs "could have" or

23   "should have" done a better job.   In addition, Plaintiffs make no allegation that the RAs had

24   any knowledge of the purported misstatements attributable to the other defendants here,

25   including, for example, statements regarding underwriting and appraisal practices.

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 5
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    As the AC makes abundantly clear, the RAs were not the central players in the issuance

2    and sale of the Certificates.  For example, there is not a single factual allegation to suggest that

3    the RAs participated in any of the following critical steps:  originating the mortgage loans

4    underlying the Certificates; conducting appraisals; marketing the Certificates to investors;

5    advising any investor to buy the Certificates or transferring title on the Certificates to any

6    investor.

7    Instead, the WaMu Defendants are alleged to have played the central roles here:

> WaMu controlled almost every aspect of the creating and issuance of the
> Certificates — from originating and pooling of the underlying mortgage loans,
> through the securitization of the loans and the sale of the Certificates . . . to
> Plaintiffs and the Class.  All of the mortgage loans underlying the Certificates
> were originated by WMB or otherwise acquired by WMB from various
> 'correspondent' mortgage lenders throughout the Country.  WMB formed
> WMAAC, a special purpose entity, for the sole purpose of acquiring mortgage
> loans from WMB and transferring the mortgage loans into the Issuing Trusts,
> which, in turn, issued the Certificates.  The Certificates were then purchased by
> WCC, the underwriter, from the Issuing Trusts and sold to investors pursuant
> to the Offering Documents.

AC ¶ 7.  Noticeably absent from this comprehensive description of the process are the RAs,

whose basic role here — issuing creditworthiness opinions — was, not surprisingly, a collateral

one.  Indeed, in Paragraph 47 Plaintiffs include a detailed diagram of the securitization process

at the core of their case.  The identified players in the diagram are "Borrower," "Broker,"

"Lender," "Investment Bank," and "Investors."  Again, conspicuously absent from this list are

the RAs.

This diagram is entirely consistent with the allegations throughout the AC that make

clear over and over that other defendants and/or third parties were the primary participants in

the securitization here.  For example, the AC alleges that:

- "WaMu controlled almost every aspect of the creating and issuance of the
  Certificates — from originating and pooling of the underlying mortgage loans,
  through the securitization of the loans and the sale of the Certificates representing
  interests in the loans to Plaintiffs and the Class." AC ¶ 7; *see also* AC ¶¶ 133, 135.
- Non-defendant WMB "formed WMAAC . . . for the sole purpose of acquiring

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 6
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

mortgage loans from WMB and transferring the mortgage loans into the Issuing Trusts" and served as "the sponsor/seller for each of the Offerings, as well as the originator and servicer for all of the underlying mortgage loan collateral for each of the Offerings." AC n. 2; AC ¶¶ 7, 29.

- Defendant WMAAC "prepared and filed the Registration Statement and was the depositor of the underlying mortgage collateral into the Issuing Trusts." ¶ 4; *see also* AC ¶¶ 28-31.

- Defendant WCC "served as the underwriter for all of the Certificate Offerings and was intimately involved in all of the Offerings." AC ¶ 39.

- Individual Defendants "functioned as directors of the Issuing Trusts as they were officers and/or directors of WMAAC and signed the Registration Statement of the registration of the Certificates thereafter issued by the Issuing Trusts." AC ¶ 37.

## STANDARD OF REVIEW

As recently confirmed by the United States Supreme Court, to survive a motion to dismiss a plaintiff's complaint may not rely merely on "labels and conclusions" but, instead, must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *see also Swartz* v. *Deutsche Bank*, No. C03-1252, 2008 WL 1968948, at *5 (W.D. Wash. May 2, 2008) (Pechman, J.) ("[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss.") (citing *Twombly*). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Lubic* v. *Fidelity National Financial, Inc.*, No. C08-0401MJP, 2009 WL 2160777, at *2 (W.D. Wash. June 20, 2009) (Pechman, J.) (same) (quoting *Iqbal* and *Twombly*). It is not enough to plead facts that are "'merely consistent with'" liability. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*).

## ARGUMENT

### I.   PLAINTIFFS' § 11 CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW

Section 11 of the 1933 Act "allows purchasers of a registered security to sue certain *enumerated* parties in a registered offering when false or misleading information is included in

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 7
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  a registration statement. [It] was designed to assure compliance with the disclosure provisions

2  of the Act by imposing a stringent standard of liability on the parties who play a *direct role* in a

3  registered offering." *Herman & MacLean* v. *Huddleston*, 459 U.S. 375, 381-82 (1983)

4  (emphasis added). The enumerated parties that can be held liable are the following:

> (1) every person who signed the registration statement; (2) every person who
> was a director . . . or partner in the issuer at the time of . . . filing . . .; (3) every
> person who, with his consent, is named in the registration statement as being or
> about to become a director . . . or partner; (4) every accountant, engineer, or
> appraiser, or any person whose profession gives authority to a statement made
> by him, who has with his consent been named as having prepared or certified
> any part of the registration statement, or as having prepared or certified any
> report or valuation which is used in connection with the registration statement,
> with respect to the statement in such registration statement, report, or
> valuation, which purports to have been prepared or certified by him; [and] (5)
> every underwriter with respect to such security.

11  15 U.S.C. § 77k(a). Plaintiffs' § 11 claims against the RAs must be dismissed — as similar

12  claims have been in the only case to have decided the issue, *infra* at 13-14 — both because they

13  are barred by SEC rule and because the RAs simply do not, as a matter of law, fall within the

14  enumerated categories of persons subject to § 11 liability.

15  **A.      Plaintiffs' § 11 Claims Against the RAs Are Precluded by Express SEC
        Rule**

16      Plaintiffs' claims are, at their core, a challenge to the appropriateness of the ratings the

17  RAs issued on the Certificates. *See, e.g.*, AC ¶ 103 (alleging that the RAs' "artificially high

18  ratings, which were published in the Prospectus Supplements, were false and misleading in that

19  they did not reflect the true risk of the Certificates"). Yet, whatever legal rights Plaintiffs might

20  have to challenge those ratings under other statutes or law, a claim under § 11 of the 1933 Act

21  is not among them. Indeed, by SEC rule, credit ratings of NRSROs such as the RAs are

22  absolutely immune from liability under § 11 of the 1933 Act. Specifically, Rule 436(g)(1), 17

23  C.F.R. § 230.436(g)(1), provides that:

> the security rating assigned to a class of debt securities, a class of convertible
> debt securities, or a class of preferred stock by a nationally recognized
> statistical rating organization . . . shall not be considered a part of the
> registration statement prepared or certified by a person within the meaning of
> sections 7 and 11 of the [1933] Act.

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 8
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   The purpose of this rule is unambiguous. It is to "exclude any [NRSRO] whose security

2   rating is disclosed in a registration statement from civil liability under § 11." Disclosure of

3   Security Ratings in Registration Statements, SEC Release No. 33-6836, 46 Fed. Reg. 42024-01,

4   42024 (August 18, 1981) (to be codified at 17 C.F.R. pt. 230) (the "Proposal Release"); *see*

5   *also* Adoption of Integrated Disclosure System, SEC Release No. 33-6383, 1982 WL 90370, at

6   *23 (Mar. 3, 1982) ("The Commission continues to believe that . . . it is appropriate to exempt

7   NRSROs from § 11 liability if their ratings are included in Securities Act registration

8   statements."). Rule 436(g) thus provides a "statutory exemption" under the 1933 Act "for § 11

9   claims against credit rating agencies" designated as NRSROs. *In re Enron Corp. Securities,*

10  *Derivative and "ERISA" Litigation,* 511 F. Supp. 2d 742, 817 (S.D. Tex. 2005).[5]

11  This exemption was adopted in full recognition of the concerns raised by some

12  commentators that NRSROs might not give "due attention" to their ratings unless they were

13  subject to potential § 11 liability, and with full appreciation of the "significance" of ratings for,

14  *inter alia*, institutions subject to regulatory requirements as to the securities in which they can

15  invest. Proposal Release, 46 Fed. Reg. at 42026-27 & n.16. In other words, the exemption

16  reflects a deliberate and important public policy determination:  because of their value to

17  investors, the SEC has encouraged the inclusion of ratings in registration statements, but has

18  also recognized that, but for the exemption, no NRSRO would allow such inclusion.

19  The exemption makes sense given the nature of credit ratings. As set forth in the

20  Offering Documents, ratings are opinions about "the likelihood of the receipt by

21

22  [5]  In 1994, in recognition of the "dramatic proliferation in the types of securities offered in the marketplace, with the development of a vast market for mortgage and asset backed securities," the SEC "determined to reconsider its policy of voluntary ratings disclosure" and solicited market comments on several proposed amendments to related

23  SEC rules. Disclosure of Security Ratings, SEC Release No. 33-7086, 1994 WL 469347, at *3 (Aug. 31, 1994) (the "1994 SEC Release"). The 1994 SEC Release sought comment on, *inter alia*, "the continued appropriateness

24  of its policy of exempting NRSROs from providing consents." *Id.* at *8. While adopting some of the measures proposed in the 1994 SEC Release, the SEC ultimately determined not to change its position

25  regarding the disclosure of ratings. Additional Form 8-K Disclosure Requirements and Acceleration of Filing Date, SEC Release No. 33-8400, 69 Fed. Reg. 15594-01 (Mar. 25, 2004) (to be codified at 17 C.F.R. pts. 228,

26  229, 230, 239, 240, 249).

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 9
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

certificateholders of all distributions . . . to which they are entitled." *See, e.g.*, WaMu Mortgage Pass-Through Certificates, Series 2006-AR5 Prospectus Supp., at S-97 (May 23, 2006), Zurofsky Decl., Ex. B. That is, they speak to the likelihood of future events. If, as often happens when dealing with the future, those events turn out differently than anticipated, that does not mean that the initial ratings were "false" when issued or, more to the point, that NRSROs should face liability under § 11 every time they offer an opinion about what may happen in the future.

In proposing Rule 436(g), the SEC emphasized that NRSROs would remain subject to liability under the antifraud provisions of the securities laws, *e.g.*, § 10(b) of the Securities Exchange Act of 1934. Proposal Release, 46 Fed. Reg. at 42028. But, liability under § 11 on the basis of an NRSRO's rating is barred. Because Plaintiffs' § 11 claims here, at their core, seek to hold the RAs liable for their ratings, they must be dismissed.

**B.   The RAs Are Not Subject to Suit Under § 11**

Plaintiffs' § 11 claims must also be dismissed for the independent reason that the RAs do not, as a matter of law, fall within the five categories of persons that can be subject to § 11 liability. Plaintiffs do not specify which of the five categories they believe the RAs fall under, asserting only in the most conclusory fashion that the RAs are subject to § 11 because they were allegedly "involved" in various activities related to the Certificates. AC ¶ 180. It appears that Plaintiffs are attempting to fit the RAs within the categories of "expert" under § 11(a)(4) or "underwriter" under § 11(a)(5). Yet, neither has any application here as a matter of law.

**1.   Plaintiffs Have No Claim Against the RAs Under § 11(a)(4)**

Plaintiffs assert that the RAs may be held liable under § 11 because they allegedly "worked with WaMu in structuring the securitization transactions," "assign[ed] credit ratings," and "participated in drafting and disseminating the Offering Documents for the Certificates." AC ¶¶ 42, 43, 180. It is well-established, however, that "individuals who play a part in preparing the registration statement generally cannot be reached by a Section 11 action."

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 10
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  *Herman & MacLean*, 459 U.S. at 386 n.22.  In certain narrow circumstances, "experts" (such as

2  an "accountant, engineer, or appraiser, or any person whose profession gives authority to a

3  statement made by him") may be subject to § 11(a)(4) but only to the extent the expert has been

4  named to investors — and has consented to being named — as someone who has certified or

5  prepared a portion of the registration statement.  15 U.S.C. § 77k(a)(4).

6      The types of activities the RAs allegedly performed here, *e.g.*, providing opinions and

7  drafting documents, are activities that courts evaluate under this "expert" provision.  *See, e.g.*,

8  *In re Refco, Inc. Securities Litigation*, No. 05 Civ. 8626 (GEL), 2008 WL 3843343, at *3 n.5

9  (S.D.N.Y. Aug. 14, 2008) ("*Refco II*") (noting that § 11 claims against "attorneys who draft the

10  documents on which the public rely" are generally brought, and evaluated, under § 11(a)(4)).

11  *See also In re Global Crossing, Ltd. Securities Litigation*, 313 F. Supp. 2d 189, 208-11

12  (S.D.N.Y. 2003) (evaluating § 11(a)(4) claim against defendant alleged to have reviewed

13  financial and other information and issued fairness opinions included in registration statement);

14  *McFarland* v. *Memorex Corp.*, 493 F. Supp. 631, 643 (N.D. Cal. 1980) (evaluating § 11(a)(4)

15  claim against defendant alleged to have participated in the "preparation and review" of the

16  registration statement).

17      Thus, to state a claim, Plaintiffs were required to allege that the RAs were named, and

18  consented to be named, as endorsing the Registration Statement.  Yet, as the Offering

19  Documents make abundantly clear, the RAs were not so named and did not consent to be

20  named, and Plaintiffs do not allege otherwise.  In fact, § 7 of the 1933 Act provides that where

21  an expert is named as having prepared or certified a portion of the registration statement, its

22  *written consent* "shall be filed with the registration statement." 15 U.S.C. § 77g(a).  No written

23  consent by the RAs was ever filed and the AC makes no claim otherwise.

24      This absence of naming and consent is dispositive of Plaintiffs' § 11 claims.  For

25  conduct that properly falls within § 11(a)(4), a plaintiff cannot end-run the naming and consent

26  requirements by claiming a violation of § 11(a)(5)'s underwriter provision.  Instead, expert-like

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 11
4830-3981-2357.01
012910/1718/45991.00015

1   conduct must be evaluated under § 11(a)(4) and held to that section's requirements.  In *Refco II*,

2   2008 WL 3843343, at *3-*5, the court rejected a claim asserting "underwriter" liability under §

3   11(a)(5) against defendants that, like the RAs here, had not been named to investors as having

4   prepared or certified the registration statement at issue.  The plaintiffs argued (as Plaintiffs do

5   here) that the defendants had been involved in drafting and editing the registration statement

6   and thus could still be held liable under § 11.  In dismissing plaintiffs' claims, the court

7   observed that "Plaintiffs do not cite any case in which a court has held that a party that

8   participated in the drafting of a registration statement, but who was not identified to the public

9   as endorsing the truth of representations contained therein, has been held liable under § 11 as an

10  underwriter." *Id.* at *3.  In fact, the court reasoned, "courts have generally refused to extend §

11  11 liability to those professionals most directly involved in the drafting of registration

12  statements: lawyers." *Id.*  The *Refco* plaintiffs attempted to distinguish the myriad cases

13  holding that lawyers are not subject to § 11 liability, arguing that these cases were decided

14  under the § 11(a)(4) "expert" provision — not the § 11(a)(5) "underwriter" provision.  The

15  court rejected this distinction, noting "it would seem even stranger to classify attorneys who

16  draft the documents on which the public rely as 'underwriters' — a term generally understood

17  to refer to those who undertake actively to sell the securities — than to consider them

18  'profession[als] . . . named as having prepared . . . any part of the registration statement.'" *Id.*

19  at *3 n.5.  This, the court explained, "speaks volumes" against any argument that applying the

20  "underwriter" prong to the defendants would be "a straightforward application of broad and

21  literal language" of § 11(a)(5).  *Id.* [6]

22       Indeed, whatever actions a plaintiff may assert the unnamed "expert" performed in

23  preparing the registered offering are simply irrelevant to § 11 liability.  In *McFarland*, 493 F.

24

---

25  [6]  To the extent an expert does not meet the requirements for § 11(a)(4) liability, a plaintiff is not without remedy for that expert's alleged wrongdoing; it is merely without a Section 11 claim. *See Herman & MacLean*, 459 U.S.

26  at 382 ("While a Section 11 action . . . can only be brought against certain parties, a § 10(b) action can be brought . . . against '*any* person'. . .") (emphasis in original).

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 12
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

Supp. at 643, the court granted a motion to dismiss § 11 claims against an accountant, where the accountant had not been named in the registration statement as having prepared the allegedly misleading financial data in the registration statement. *Id.* The plaintiffs in *McFarland* argued that even though the accountant had not been named as an expert in connection with the allegedly misleading materials, it had prepared and reviewed the unaudited financial statements and other materials that were used in connection with the registered offering and thus, should still be liable under § 11. The court rejected this argument, stating: "This argument is flawed because *section 11(a)(4) limits liability.* Because the accountants are not 'named as' having prepared the allegedly misleading portions of the registration statement, their participation in the preparation of the misleading figures is irrelevant to section 11." *Id.* (emphasis added). *See also In re Global Crossing, Ltd. Securities Litigation*, 322 F. Supp. 2d 319, 327, 348-49 (S.D.N.Y. 2004) (dismissing in part a § 11 claim against an auditor because "it was not named as having certified or prepared" the registration statement even though plaintiff alleged that it had "played a central role in devising and implementing the accounting schemes in question" and "had direct knowledge of the Companies' unaudited pro forma reports") (citation omitted).

Here, where the RAs were not named, and did not consent to be named, as endorsing the representations in the Registration Statement, Plaintiffs have no claim under § 11 against them. Moreover, any attempt to force the RAs into § 11(a)(5) would, in substance, negate the consent requirements and liability limitations of § 11(a)(4) and, as reflected in *Refco* and *McFarland*, is impermissible. Plaintiffs' § 11 claims against the RAs must therefore be dismissed.

## 2.   The RAs Are Not "Underwriters"

In any event, the law is clear that the activities allegedly performed by the RAs even if true simply do not make them "underwriters." On January 26, 2010, Judge Lewis A. Kaplan, sitting in the Southern District of New York, considered and ruled on this exact issue, dismissing from the bench claims against these same RAs under, *inter alia*, § 11 in a case

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 13
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   entitled *In re Lehman Bros. Securities and ERISA Litigation*, Docket Nos. 09-MD-2017, 08-

2   CV-6762. *See* Zurofsky Decl., Ex. C. ("*Lehman* Transcript"); *see also* Consolidated Securities

3   Class Action Complaint, *In re Lehman Bros. Securities and ERISA Litigation*, No. 09-MD-

4   2017 (filed Feb. 23, 2009), Zurofsky Decl., Ex. D ("*Lehman* Complaint"). In doing so, Judge

5   Kaplan rejected plaintiffs' claim – identical to the claim here and commenced by the same

6   counsel – that the RAs' alleged role in structuring the securitization transactions, participating

7   in the drafting and dissemination of the Offering Documents and determining the loans to be

8   included in the securitization and the amount and form of credit enhancement somehow

9   transformed the RAs into "underwriters."[7]

10      An "underwriter" acts as a conduit between the issuer and the investor. "He participates

11   in the transmission process between the issuer and the public." *Ingenito* v. *Bermec Corp.*, 441

12   F. Supp. 525, 536 (S.D.N.Y. 1977). In the 1933 Act, Congress defined "underwriter" to

13   encompass those "'who might operate as conduits for securities being placed into the hands of

14   the investing public.'" *In re Lorsin, Inc.*, 82 S.E.C. Docket 3044, Release No. 250 (May 11,

15   2004) (quoting 1 Thomas Lee Hazen, *The Law of Securities Regulation* 431 (4th ed. 2002));

16   *SEC* v. *Lybrand*, 200 F. Supp. 2d 384, 393 (S.D.N.Y. 2002), *aff'd on other grounds*, 425 F.3d

17   143 (2d Cir. 2005) (same); *Ackerberg* v. *Johnson*, 892 F.2d 1328, 1335-36 (8th Cir. 1989)

18   ("The congressional intent in defining 'underwriter' was to cover all persons who might operate

19   as conduits for the transfer of securities to the public.") (citations omitted); *McFarland*, 493 F.

20   Supp. at 645-46 (defining defendants as underwriters "would affront the statutory scheme"

---

21   [7]   The allegations in the two complaints on this point are virtually identical. *Compare* AC ¶ 9 (alleging that the
22   RAs played a role in "determining which mortgage loans were to be included . . . and in the structuring of the
      Offerings, *i.e.*, determining . . . the amount and type of . . . 'credit enhancement'") *with Lehman* Complaint ¶ 15
23   (alleging that the RAs determined the "loans to be included in the securitization, the amount and form of credit
      enhancement for each Certificate and the Certificate structure"); AC ¶ 60 (alleging that the "Rating Agencies
      participated in all aspects of the formation and structuring of the Certificates") *with Lehman* Complaint ¶¶ 33-34
24   (alleging that the RAs were involved in "forming and structuring the securitization transactions"); and AC ¶ 180
      (alleging that the Rating Agencies "participated in drafting and disseminating the Offering Documents" *with*
25   *Lehman* Complaint ¶¶ 33-34 (alleging that the Rating Agencies "participated in the drafting and dissemination of
      the Prospectus Supplements"). During the January 26, 2010 Conference, Judge Kaplan stated that a written
26   opinion would follow. A copy of that opinion will be provided to the Court once it is issued.

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 14
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

because "they played no direct role in the underwriting, and they had no share or interest

therein").

Specifically, the 1933 Act provides as follows:

> The term 'underwriter' means any person who has purchased from an issuer
> with a view to, or offers or sells for an issuer in connection with, the
> distribution of any security, or participates or has a direct or indirect
> participation in any such undertaking, or participates or has a participation in
> the direct or indirect underwriting of any such undertaking . . . .

15 U.S.C. § 77b(a)(11).  Plaintiffs do not allege (nor could they) that the RAs meet the first

clause of the definition.  Rather, Plaintiffs appear to be advancing a tortured reading of the

second clause of the definition.  *See, e.g.*, AC ¶ 180.

Like the rest of the definition, however, the "participation" necessary to qualify one as a

statutory underwriter must relate to the actual *distribution* of the security.  *Refco II*, 2008 WL

3843343, at *4 ("[T]he breadth of the definition of 'underwriter' is intended to sweep up all —

but only — those who play a role in the distribution of the securities."); *McFarland*, 493 F.

Supp. at 644 ("It is crucial to the definition of 'underwriter' that any underwriter must

participate in the distribution of a security.  There is no allegation here, however, that [the

alleged underwriters] purchased any . . . securities with a view to distribution or that they

offered or sold any security . . ."). Thus, "participation" in the § 11 context equates to

involvement in the "transmission process between the issuer and the public." *Ingenito*, 441 F.

Supp. at 536.[8]

---

[8] This is consistent with the SEC's interpretation of the term "underwriter." Shortly after the passage of the 1933 Act, the SEC in *In re Reiter-Foster Oil Corp.* evaluated the question of what constitutes an "underwriter." 6 S.E.C. 1028, Release No. 33-2201, 1940 WL 36362, at *7-*11 (Mar. 11, 1940). The SEC found that each of five individuals had in fact served as an "underwriter" for the transaction. The Commission pointed to a series of activities by the individuals which evidenced that they had "actively participated in the distribution of the underwritten securities," including that some or all of the individuals had "touted [the] securities in an effort to induce purchases," "contacted security holders," "suggested" names of purchasers and "dealers who might participate in the distribution," attended conferences "relative to arranging the terms of the underwriting," "induced" and/or "was responsible" for the purchase of shares by specific individuals, and "urged" stock sales. In each instance, the focus of the Commission in determining whether an individual had "participated" sufficiently to meet the underwriter definition was on the distribution process and specifically the defendants' roles vis-à-vis the investing public.

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 15
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    Even if the RAs performed the actions alleged in the AC, Plaintiffs offer no basis —

2    and there is none — to support any assertion that the RAs had a role in the "distribution" of the

3    Certificates.  The AC does not (and could not) allege that the RAs acted as a conduit between

4    the issuer and the investors.  The AC does not (and could not) allege that the RAs were named

5    to investors as underwriters.  The AC does not (and could not) allege that the RAs purchased

6    securities from anyone with a view to their distribution.  And the AC does not (and could not)

7    allege that the RAs offered the securities to Plaintiffs or had any contact whatsoever with them.[9]

8    The RAs' only "contact" with the public was through the publication of their ratings on the

9    Certificates, but that, of course, cannot form the basis for § 11 liability.

10    By contrast, the AC *does* assert that WCC was the "underwriter" of the Certificates and

11    performed the typical functions of an underwriter, including promoting and selling the

12    Certificates and distributing the Certificates to the public.  *See, e.g.*, AC ¶ 7 (alleging that WCC

13    purchased the Certificates and then "sold [them] to investors pursuant to the Offering

14    Documents"); AC ¶ 39 ("WCC served as the underwriter and in the sale of the Certificates");

15    AC ¶ 193 ("Defendant WCC, as underwriter, promoted and sold the Certificates pursuant to the

16    defective and misleading Prospectus Supplements for its own financial gain."); AC ¶ 214 ("As

17    the underwriter, WCC was responsible for the due diligence required to verify the accuracy and

18    completeness of the information uniformly presented to Plaintiffs and the Class through the

19    Offering Documents.").  No similar allegations are made with respect to the RAs.

20    Instead, Plaintiffs rely on bare legal conclusions.  *See, e.g.*, AC ¶ 180 (the RAs "directly

21    and indirectly participated in the distribution of the Certificates").  As the Supreme Court

22    reiterated just recently, such allegations are insufficient to state a claim.  *See Iqbal*, 129 S. Ct. at

---

[9]  Similarly, the AC does not (and could not) allege that the RAs had a financial stake in the success of the offerings.  This factor also counsels against any "underwriter" characterization.  *See McFarland*, 493 F. Supp. at 645 ("If the underwriters had been unable to sell the stock to the public, they would have had no recourse against the selling warrantholders.  The Court must consider whether the warrantholders 'participated' in the underwriting from this risk-bearing perspective. . . .  Because the warrantholders took no similar risk and received no corresponding reward, it would be anomalous to include them within the definition of underwriter along with those who engaged in the selling effort.").

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 16
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1949. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.  In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611, 629 (S.D.N.Y. 2007) ("*Refco I*") is also instructive on this point.  In *Refco I*, plaintiffs had asserted that defendants who allegedly "participated" in a public offering could be liable as "underwriters" under § 11.  The court, recognizing that the term "underwriter" is not "a term of unlimited applicability that includes anyone associated with a given transaction," dismissed the claims.  *Id.*  The court found that plaintiffs' "conclusory allegation" "include[d] no detail whatsoever" and failed to set forth any "specific allegations as to the extent of [the alleged] participation or what actual actions the defendants took." *Id.*  The court continued:  "[T]he single sentence alleging that [the defendants] participated in the public offering presents a legal conclusion, not a factual allegation[;]" it is "simply a reproduction of the statutory requirement of 'direct or indirect participation.'" *Id.* at 630-31.  *See also In re Adelphia Communications Corp. Securities and Derivative Litigation*, No. 03 MD 1529 (LMM), 2007 WL 2615928, at *8 (S.D.N.Y. Sept. 10, 2007) (a "bare pleading" that banks "extended loans," "'induced and structured numerous public offerings'" through affiliates and had "'direct or indirect participation in the distribution'" did not "turn lenders into underwriters").

Plaintiffs' allegations that the RAs participated in the drafting of the Offering Documents and "worked with WaMu in structuring the securitization," AC ¶¶ 42, 43, fare no better.  Such roles, even if true, do not relate to the *distribution* of the securities.  On this point, *Refco II* is again telling.  On an amended complaint, the *Refco II* plaintiffs added allegations that the alleged underwriters "played a substantial role in drafting and editing the Bond Registration Statement on the basis of which the registered bonds were sold to the public." *Refco II*, 2008 WL 3843343, at *2.  In dismissing the § 11 claims yet again, the court rejected "Plaintiffs' effort to redeem their complaint by identifying actions taken by defendants *behind*

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 17
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

the scenes . . . ." *Id.* at *4 (emphasis added).  The court cautioned that the definition of the term "underwriter" "must be read in relation to the underwriting function that the definition is intended to capture" — a definition which "primarily references those who 'purchase[ ] from an issuer with a view to . . . the distribution of any security.'"  *Id.*  The alleged "participation" must relate to the specific undertaking of "purchasing securities from an issuer with a view to their resale — that is, the underwriting of a securities offering as commonly understood."  *Id.*; *see also McFarland*, 493 F. Supp. at 645-46 (where warrant holders "had no interest, direct or indirect" in underwriting, "this Court will not strain the definition of a statutory term in order to classify [them] as underwriters" even where they had "structured the transaction . . . to avoid the risks of an underwriter").

Here, even taking Plaintiffs' allegations as true, they involve nothing more than alleged "behind the scenes" (to quote *Refco II*) actions unrelated to the distribution of securities.  If this were enough, the term "underwriter" would — contrary to the holding in *Refco I* – become one of "unlimited applicability" extending to all lawyers, accountants and other third parties who often play important roles in registered offerings and yet generally do not play a role in the distribution and thus, have never been considered "underwriters."  But the 1933 Act has never been interpreted in this manner and, indeed, the Supreme Court's opinion in *Herman & MacLean* precludes it.  459 U.S. at 386 n.22 ("[C]ertain individuals who play a part in preparing the registration statement generally cannot be reached by a Section 11 action.").

Under the 1933 Act, the key in determining whether a defendant is an "underwriter" is whether the defendant actually participated in *distributing* the securities.  Plaintiffs do not provide the Court with any factual or legal basis to conclude that the RAs had such a role.  Plaintiffs' § 11 claims against the RAs must therefore be dismissed for this reason as well.

**C.    Plaintiffs' § 11 Claims Are Time-Barred**

Plaintiffs' claims against the RAs are governed by the statute of limitations set forth in 15 U.S.C. § 77m, which bars any § 11 claim brought more than three years since "the security

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 18
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

was bona fide offered to public" or more than one year after the claim was discovered or should have been discovered "by the exercise of reasonable diligence." 15 U.S.C. § 77m.

The original complaints underlying this AC, filed beginning in August 2008, did not name the RAs as defendants. The first time the RAs were named was when Plaintiffs filed their Consolidated Class Action Complaint on November 23, 2009.[10] Thus, Plaintiffs' § 11 claims are absolutely barred by the three-year statute of repose to the extent they are based on Offerings preceding November 23, 2006. As detailed below, Plaintiffs' remaining § 11 claims are also barred because it is clear that Plaintiffs were on inquiry notice, and indeed knew or should have known the material facts they allege, at least one year prior to suing the RAs, *i.e.*, November 23, 2008.

### 1. Plaintiffs' § 11 Claims Against the RAs Based on 17 of the 23 Offerings Are Time-Barred by the Three-Year Statute of Repose

The AC lists the "Offering Date" for each of the Offerings at issue. AC ¶ 39. *All but six* have offering dates prior to November 23, 2006. Of these six offerings, Plaintiffs have alleged that they purchased only two of these Certificates. AC ¶¶ 25, 27. Plaintiffs' § 11 claims against the RAs with respect to these securities are thus barred by the three-year statute of repose.

### 2. Plaintiffs' Claims Against the RAs Are Also Time-Barred Because Plaintiffs Were on Inquiry Notice of Their Claims More than One Year Prior to Filing

The remaining claims are also time-barred under § 11's statute of limitations. As the courts of this and other Circuits have consistently observed, a plaintiff may be found to be on inquiry notice as a matter of law — and therefore time-barred — on a motion to dismiss. *See, e.g., In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1411 (9th Cir. 1996); *In re*

---

[10] Plaintiffs cannot possibly contend that the RAs were omitted from the original complaints because of a "mistake" as to their identity. *See, e.g., Louisiana-Pacific Corp* v. *ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993) (Rule 15(c) relation-back doctrine inapplicable where "[t]here was no mistake of identity, but rather a conscious choice of whom to sue").

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 19
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  *Network Commerce Inc. Securities Litigation*, No. C01-0675L, 2006 WL 1375049, at *3 (W.D.

2  Wash. May 16, 2006).

3       The Ninth Circuit applies an "inquiry-notice-plus-reasonable-diligence test" to

4  determine whether a statute of limitations begins running due to inquiry notice. *Betz* v. *Trainer*

5  *Wortham & Co.*, 519 F.3d 863, 876 (9th Cir. 2008). A plaintiff is on "inquiry notice" once

6  "there exists sufficient suspicion . . . to cause a reasonable investor to investigate the matter

7  further." *Id.* If the court determines that a plaintiff was on "inquiry notice" by the relevant

8  date, the claim will be time-barred so long as the court also determines that the plaintiff, "in the

9  exercise of reasonable diligence, should have discovered the facts" allegedly supporting the

10  complaint. *Id.* (citation and internal quotation marks omitted). Where, as here, publicly

11  available information has indisputably put a plaintiff on notice of those facts on or before the

12  inquiry notice date, "the inquiry notice and reasonable diligence tests merge because of the

13  level of detail that was disclosed." *Kreek* v. *Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1060

14  (N.D. Cal. 2009) (public information "not only put plaintiffs on notice," it also "exposed" facts

15  needed to file the action, thus triggering the statute of limitations); *see also In re Novagold*

16  *Resources Inc. Securities Litigation*, 629 F. Supp.2d 272, 288 (S.D.N.Y. 2009) (plaintiff that

17  chooses to assert non-fraud securities claim is "on inquiry notice when it learns of the

18  probability of an earlier 'untrue statement' or 'omission,' not when it learns a misstatement

19  involved fraud").

20       Inquiry notice may be triggered by "any financial, legal, or other data, such as public

21  disclosures in the media about the financial condition of the corporation and other lawsuits . . .

22  that provide the plaintiff with sufficient storm warnings to alert a reasonable person to the

23  probability that there were either misleading statements or significant omissions involved in the

24  sale of securities." *In re Infonet Services Corp. Securities Litigation*, 310 F. Supp. 2d 1106,

25  1113-14 (C.D. Cal. 2003) (citation and internal quotation marks omitted). The Court "can

26  impute knowledge of public information without inquiring into when, or whether, individual

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 20
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  shareholders actually knew of the information in question." *Berry* v. *Valence Technology, Inc.*,

2  175 F.3d 699, 703 n.4 (9th Cir. 1999).  With respect to publicly available information such as

3  press releases and news articles, where there is a "reasonable nexus between the allegations

4  made in the article[s] and the nature of the action subsequently brought," such "article[s] . . .

5  put shareholders on inquiry notice." *Id.* at 705.

6        Here, where Plaintiffs' first complaint was filed over a year before they sued the RAs,

7  and where the AC exclusively relies on *pre-November 2008 disclosures* to support Plaintiffs'

8  allegations, there can be no serious dispute that Plaintiffs were on inquiry notice long before

9  November 23, 2008.  *See, e.g.*, *In re Infonet Services Corp.* 310 F. Supp. 2d 1106 at 1119 (the

10  "stream of negative information available to the public of substantial substance . . . should have

11  excited inquiry, triggering an investor's duty of reasonable diligence") (citation and internal

12  quotation marks omitted).  Indeed, the same counsel for Plaintiffs in this case actually brought

13  claims against the RAs under the 1933 Act in connection with mortgage-backed securities the

14  RAs had rated well before November 23, 2008.  *See New Jersey Carpenters Vacation Fund* v.

15  *Harborview Mortgage Loan Trust*, No. 08-cv-5093 (HB) (complaint filed May 14, 2008).

16        **(a)**     **Plaintiffs' WaMu-Related Claims Are Time-Barred**

17        Plaintiffs' WaMu-related allegations first appeared in the August 2008 Complaint, *New*

18  *Orleans Employees' Retirement System* v. *Washington Mutual, Inc.*, No. 09-CV-00134,

19  Complaint filed August 4, 2008 (Dkt. No. 5, Attached to Verification of State Court Records

20  and Proceedings) ("August 2008 Complaint") — nearly four months *before* the inquiry notice

21  date, November 23, 2008.  In this 178-paragraph complaint, it is alleged that WaMu

22  "systematically inflated" appraised values and that mortgages "were not originated in

23  accordance with stated underwriting standards." *See, e.g.*, August 2008 Complaint ¶¶ 7-11.

24  Plainly, then, Plaintiffs were not merely on inquiry notice, but had all they needed to file a § 11

25  complaint with respect to the WaMu Certificates, long before November 23, 2008.  On this

26  basis alone, the claims against the RAs concerning WaMu-related statements are time-barred.

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 21
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    Moreover, the AC and the underlying complaints confirm, unsurprisingly, that Plaintiffs

2    had inquiry notice of all of WaMu's purported underwriting and appraisal shortcomings alleged

3    in the AC long before November 2008.  The AC notes that in January 2008, a New York

4    Attorney General's investigation – as detailed in the *New York Times*, *Wall Street Journal* and

5    (subsequently) the *Los Angeles Times* – disclosed that the due diligence firms used by

6    underwriters such as WaMu raised red flags that were ignored, and that allegedly underwriters

7    such as WaMu required that no more than 7% of the loans comprising a mortgage-backed

8    security offering pool be reviewed. AC ¶¶ 86-90.  A subsequent complaint filed by Plaintiffs,

9    *Boilermakers National Annuity Trust Fund* v. *WAMU Mortgage Pass-Through Certificates,*

10   *Series AR1, et. al*, No. 09-CV-0037, Complaint filed January 12, 2009 (Dkt. No. 1) (the

11   "Boilermakers CAC"), in particular details WaMu's collapse as a result of its subprime lending:

12   in March 2008, "Fitch downgraded $2.3 billion worth of WaMu mortgage pass-through

13   certificates backed by first lien subprime mortgages originated by WaMu," Boilermakers CAC

14   ¶ 82;[11] in July 2008, "WaMu once again shocked the market," announcing tremendous losses

15   and identifying "significant changes in key assumptions the company used to estimate incurred

16   losses in its loan portfolio," *id.* ¶ 97; the price of the WaMu Certificates, "according to

17   Plaintiff's account statement for the period ended July 31, 2008, sank from $0.7018 to only

18   $0.5725" within a one month span, *id.* ¶ 101; and finally, WaMu's *true deficient lending*

19   *practices have come to light*, which brought about WaMu's filing for Chapter 11 Bankruptcy

20   protection on September 26, 2008," *id.* ¶ 102 (emphasis added).

21       Similarly, with respect to claims that the disclosure materials were misleading because

22   the mortgage-related appraisals were inflated, the AC itself makes crystal clear that Plaintiffs

---

[11] Prior to November 2008, Moody's and S&P also downgraded or placed on review for downgrade hundreds of WaMu mortgage pass-through certificate issuances, including many of those at issue in this action, at all rating levels. *See, e.g.*, Rubins Decl., Ex. A ("July 3, 2008 Global Credit Research Rating Action: Moody's Downgrades Certain WAMU Option ARM Deals"); Zurofsky Decl., Ex. E ("Global Credit Portal: RatingsDirect: Ratings Lowered On 2,183 U.S. Alt-A RMBS Classes Issued In 2006; 487 Ratings On Watch Neg" and "Global Credit Portal: RatingsDirect: U.S. Alt-A RMBS Classes Affected By April 29, 2008, Rating Actions").

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 22
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

were on notice of these allegations by no later than November 1, 2007, the date the New York

Attorney General filed a lawsuit against eAppraiseIT and First American, "alleging that [they]

unlawfully inflated the real property appraisals they performed for WaMu." AC ¶ 119.  In fact,

the AC relies entirely on the NYAG lawsuit in support of its allegations relating to inflated

appraisals, citing to specific emails between eAppraiseIT, First American and WaMu.  AC ¶¶

120-130.  Similarly, both underlying complaints filed by the New Orleans plaintiffs rely almost

exclusively on the NYAG lawsuit, detailing its findings in the section of the complaint entitled

"The Truth is Revealed," *see, e.g., New Orleans Employees' Retirement System, et al.* v.

*Washington Mutual Bank, et al.*, No. 09-CV-00134, Complaint dated December 16, 2008 (Dkt.

No. 1, Attached as Exhibit B to Notice of Removal) ("New Orleans 1 CAC"), New Orleans 1

CAC ¶¶ 54-79, and defining the class period as ending on November 1, 2007.  *Id.*  ¶ 1.

That these events put Plaintiffs on sufficient notice to start the statute of limitations

running no later than November 23, 2008 is beyond reasonable dispute.  *See Aizuss* v.

*Commonwealth Equity Trust*, 847 F. Supp. 1482, 1487 (E.D. Cal. 1993) (claims time-barred

when made in a prior complaint more than a year before); *Kreek*, 652 F. Supp.2d at 1059 (a

public disclosure statement identified in the complaint under the heading "The Truth Begins to

be Disclosed" "practically conceded that they are on inquiry notice"); *see also AIG Retirement*

*Services, Inc.* v. *Altus Finance S.A.*, No. CV 05-1035-JFW, 2006 WL 5971775, at *7-*8 (C.D.

Cal. Mar. 1, 2006) (where, based on statements in the complaint, "a plaintiff admits that it had

actual knowledge of the facts which form the basis of its claims, the Court may rely on that

admission to determine when the statute of limitations commences to run").

**(b)    Plaintiffs' RA-Related Claims Are Also Time-Barred**

The AC itself also demonstrates that, long before November 23, 2008, Plaintiffs were in

possession of sufficient "facts" to bring their claims concerning purported misrepresentations or

omissions about the RAs' role in the securitization process.  Plaintiffs effectively concede that,

*at the very latest*, they were on inquiry notice (and more) in July 2008 after the release of a

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 23
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   report by the SEC (the "July 2008 SEC Report"), the result of "a year-long investigation into

2   the Rating Agencies' activities." AC ¶ 18. According to the AC, the July 2008 SEC Report

3   provided the essential information for their claims relating to the RAs' alleged use of outdated

4   models, their alleged role in structuring the offerings, the alleged "ratings shopping" practice,

5   and alleged conflicts of interest. AC ¶¶ 110-113. Indeed, Plaintiffs summarize and quote at

6   length from the Report, which purportedly: (i) "confirmed significant undisclosed conflicts of

7   interest which gave the Rating Agencies an incentive to issue inflated ratings"; (ii) "confirmed

8   that S&P and Moody's provided 'feedback' to the Sponsor of the Offerings as to structure";

9   (iii) "disclosed that the Rating Agencies were typically chosen by way of *ratings shopping*";

10  and (iv) "explained that the Rating Agencies were incentivized, due to the highly profitable

11  nature of these mortgage-backed securities engagements, to *not update their models* . . . ." AC

12  ¶¶ 18, 110-113 (emphasis added). Plaintiffs' comprehensive reliance on the July 2008 SEC

13  Report, along with press reports in October 2008 (AC ¶ 109), is, in itself, dispositive as to the

14  time-bar applicable to Plaintiffs' ratings-related claims.).

15      Moreover, all of these allegations were the subject of public discussion well *before* the

16  SEC Report. Indeed, as the AC acknowledges, the agreement between the RAs and the NYAG

17  (AC ¶ 108), reported in the *Washington Post* in June 2008, discussed the alleged practice of

18  "rating shopping" and announced the end of practices which "encourage[ed] the rating agencies

19  to give high ratings to win business." AC ¶ 114. And countless other mainstream press reports

20  as well made the very same conflict-of-interest allegations contained in the AC. *See, e.g.,*

21  Rubins Decl., Ex. B, R. Beales, et al., "Failing Grades?" *Financial Times*, May 16, 2007 (the

22  RAs' "dependence on investment banks for structured finance business gives them a significant

23  incentive to look kindly on the products they are rating, critics say."); Rubins Decl., Ex. C,

24  "How Rating Firms' Calls Fueled Subprime Mess," *Wall Street Journal*, Aug. 15, 2007

25  (reporting that underwriters took their business to "another rating company if they couldn't get

26  the rating they needed.").

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 24
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1      Similarly, the AC unequivocally asserts that the purportedly "outdated" and inadequate

2   nature of the RAs' models was widely reported in the New York Times and elsewhere by no

3   later than April 2008.  AC ¶¶ 98-100.  And allegations regarding the alleged "true" role of the

4   RAs in purported "structuring," AC ¶ 110, were widely publicized beginning in 2007.  *See, e.g.,*

5   Rubins Decl., Ex. D, "Investing Marketplace: CDOs Mask Subprime Loan Losses,"

6   *International Herald Tribune*, June 1, 2007, at 17 (reporting that RAs played an "integral role"

7   in structuring the transactions); Rubins Decl., Ex. C, "How Rating Firms' Calls Fueled

8   Subprime Mess," *Wall Street Journal*, Aug. 15, 2007 (front-page discussion of "a less-

9   recognized role of the rating companies: their collaboration, behind the scenes, with the

10   underwriters that were pulling those securities together"); Rubins Decl., Ex. E, "Overrated,"

11   *Conde Nast Portfolio*, September 2007.

12      In sum, Plaintiffs were plainly on inquiry notice of *everything* alleged in the AC well

13   before November 23, 2008, and there are certainly no material factual allegations in the AC that

14   Plaintiffs could not have discovered with due diligence.  Accordingly, Plaintiffs' § 11 claims

15   against the RAs are time-barred and should be dismissed with prejudice.

16   **II.      THE ALLEGED MISSTATEMENTS AND OMISSIONS BY THE RATING
           AGENCIES ARE NOT ACTIONABLE**

17      As noted, Plaintiffs assert that the Offering Documents contained misrepresentations

18   and omissions regarding the RAs' credit ratings.  It is an absolutely essential element to both of

19   Plaintiffs' claims that they identify an actionable misstatement or omission of *fact*.  15 U.S.C.

20   § 77k(a); *Swartz*, 2008 WL 1968948, at *22 (to state a WSSA claim "plaintiff must show the

21   defendant made either an untrue statement of material fact or omitted such a fact . . .").  As

22   detailed below, even if the RAs were proper defendants here (and they are not), both of

23   Plaintiffs' claims must also be dismissed because the alleged "misstatements" and "omissions"

24   in the AC are not actionable as a matter of law.[12]

25   ────────────────────

26   [12] Plaintiffs also appear to seek to hold the RAs liable under § 11 for other allegedly "misleading" statements in the
     Registration Statements relating to mortgage underwriting guidelines and property appraisal standards — areas

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 25
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    First, the ratings themselves are clearly nonactionable expressions of opinion.  As

2    detailed in Section III.B *infra*, numerous courts, including multiple Circuit Courts of Appeal,

3    have found ratings to be expressions of opinion.  *See, e.g., Compuware Corp.* v. *Moody's*

4    *Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) ("A Moody's credit rating is a

5    predictive opinion, dependent on a subjective and discretionary weighing of complex factors.");

6    *Jefferson County School District No. R-1* v. *Moody's Investors Services, Inc.*, 175 F.3d 848,

7    856 (10th Cir. 1999) (finding ratings to be expressions of opinion).  This is not surprising given

8    their inherently subjective and forward-looking nature.  It is also well-established that

9    statements of opinion are only actionable if a plaintiff alleges and proves that the speaker did

10   not subjectively believe the opinions when issued.  *See Virginia Bankshares, Inc.* v. *Sandberg*,

11   501 U.S. 1083, 1095 (1991) (statements of opinion are actionable "solely as a misstatement of

12   the psychological fact of the speaker's belief in what he says"); *Rubke* v. *Capitol Bancorp Ltd.*,

13   551 F.3d 1156, 1162 (9th Cir. 2009) (an allegedly misleading opinion may "give rise to a claim

14   under section 11 only if the complaint alleges with particularity that the statements were both

15   objectively and subjectively false or misleading").  Plaintiffs do not even attempt to plead that

16   either RA subjectively did not believe its rating opinions when issued.  In fact, Plaintiffs plead

17   the opposite, confirming that the AC "asserts no allegations or claims sounding in fraud."  AC ¶

18   3.

19       As detailed below, no better are Plaintiffs' allegations that the Offering Documents

20   allegedly omitted that: (1) "the Rating Agencies largely determined the amount and kind of

21   Credit Support"; (2) "the amounts and kind of Credit Support . . . [were] faulty, erroneous and

22   inaccurate since the models used to determine such had not been updated properly and failed to

23   accurately or adequately reflect the performance of the underlying collateral"; and (3) "there

24   were material undisclosed conflicts of interest between WaMu and the Rating Agencies."  AC

25   ¶¶ 20, 160.

26   with which the RAs indisputably had nothing to do.  Such statements are not actionable.

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 26
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

A.   **No Actionable "Omissions" Are Alleged**

Plaintiffs allege material omissions of information regarding what they contend to be the use of "outdated" models by the RAs. AC ¶ 97. That contention, however, is itself based almost exclusively on hindsight criticisms of the RAs from 2008, well after the relevant events in the AC. Virtually identical allegations were just recently held insufficient as a matter of law by another federal court in dismissing similar misstatement claims with prejudice. In that case, which also concerned *post-hoc* statements about the RAs' ratings on residential mortgage-backed securities ("RMBS") and the very same models at issue here, the court recognized that plaintiff's allegations "rest[ed] on uncited and undated after-the-fact admissions and laments by purported insiders." *Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 309 (D. Mass. 2009). In finding that no actionable omission had been pled, the court reasoned that "[n]one of the purported comments made by S&P and Moody's employees in the wake of the collapse of the sub-prime mortgage market (in 2007) 'support the inference' that the ratings were compromised as of the dates (in 2005 and 2006) when the registration statements and prospectus supplements became effective." *Id.* at 309-10 (citation omitted). The same is true here. Even at the pleading stage, a "cognizable claim" "requires plaintiffs to, 'at a minimum, plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering.'" *Lin* v. *Interactive Brokers Group, Inc.*, 574 F. Supp. 2d 408, 421 (S.D.N.Y. 2008) (citation omitted). "A securities case must be dismissed where a complaint merely pleads subsequent facts and developments in the attempt to establish an inference that these eventualities must have been known (or knowable) to defendants on the effective date of the registration statement." *Nomura*, 658 F. Supp. 2d at 309.

In addition, the asserted "omissions" are not actionable because the basic underlying facts Plaintiffs cite were the subject of broad public awareness and/or debate. For example, the fact that the RAs are engaged and paid by the issuers of the securities they rate, and the related

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 27
4830-3981-2357.01
012910/1718/45991.00015

1   potential conflicts of interest, AC ¶ 114, has long been well-known and the subject of public

2   debate. *See, e.g., SEC Report on the Role and Function of Credit Rating Agencies in the*

3   *Operation of the Securities Markets*, at 23, 40 (Jan. 2003) ("January 2003 SEC Report"),

4   Zurofsky Decl., Ex. F.  Similarly, the allegedly omitted fact that the RAs did not and do not

5   undertake to independently verify the data provided to them during the rating process, AC ¶

6   102, has also long been part of the "total mix" of public information. *See, e.g.,* January 2003

7   SEC Report, at 26, Zurofsky Decl., Ex. F.  Lastly, while Plaintiffs may now characterize them

8   as "outdated," the RAs' U.S. RMBS ratings models have long been publicly available via their

9   Web sites (*see, e.g.,* www.sandp.com) and thus subject to inspection and scrutiny by investors

10  and issuers alike.

11          The contemporaneous public availability of this information fatally undermines

12  Plaintiffs' claims.  For an alleged omission to be actionable, there must be "a substantial

13  likelihood that the disclosure of the omitted fact would have been viewed by the reasonable

14  investor as having significantly altered the 'total mix' of the information made available." *TSC*

15  *Industries, Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976).  By definition, public information

16  is part of the "total mix" of information, and thus an alleged failure to disclose again

17  information that is already publicly known cannot be the basis for a claim under the securities

18  laws. *See In re Tseng Labs, Inc. Securities Litigation*, 954 F. Supp. 1024, 1029 (E.D. Pa. 1996)

19  ("[T]here can be no liability under the securities laws because of an alleged failure to disclose

20  information that is already available to the public."), *aff'd*, 107 F.3d 8 (3d Cir. 1997).  *See also*

21  *Starr ex rel. Estate of Sampson* v. *Georgeson Shareholder, Inc.*, 412 F.3d 103, 110 (2d Cir.

22  2005).

23          Finally, it is well-established that "[t]he person who omitted the material information

24  must have had a duty to disclose it to the person supposedly harmed by the omission." *Desai* v.

25  *Deutsche Bank Securities Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009); *In re Morgan Stanley*

26  *Information Fund Securities Litigation*, Docket Nos. 09-0837-cv, 09-0858-cv, 2010 WL

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 28
4830-3981-2357.01
012910/1718/45991.00015

1   252294, at *15 (2d Cir. Jan. 25, 2010) (affirming dismissal of § 11 claim and holding that the

2   "Offering Documents' disclosures did not trigger a generalized duty requiring defendants to

3   disclose the entire corpus of their knowledge regarding M S & Co"); *In re Merrill Lynch & Co.*

4   *Research Reports Securities Litigation*, 272 F. Supp. 2d 243, 248 (S.D.N.Y. 2003) (dismissing

5   §§ 11 and 12 claims with prejudice where plaintiff "failed to plead facts sufficient to show that

6   the Defendants had a duty to disclose the information allegedly omitted," including information

7   regarding asserted conflicts of interest).   Here, Plaintiffs cannot establish that any of the

8   Defendants had a duty to disclose the allegedly omitted information regarding the RAs' ratings

9   assumptions or their compensation.   Plaintiffs do not and cannot point to any rule or regulation

10  that required the disclosure of this information.   In fact, in the 1994 SEC Release, discussed in

11  Section I, *supra*, the SEC considered – and ultimately rejected – proposals "to require

12  disclosure in the prospectus on the method of compensating the rating organization," "the

13  extent of the rating organization involvement in the structuring of the security" and "whether

14  issuers should be required to disclose activities that could be viewed as 'rating shopping.'"

15  SEC Release No. 33-7086, 1994 WL 469347, at *9-*10.   The alleged omission of this

16  information thus cannot be actionable.

**B.     The Ratings-Related Statements in the Offering Documents Are Entitled to Protection Under the "Bespeaks Caution" Doctrine**

17

18        As in the recent *Nomura* case, where the court dismissed strikingly similar misstatement

19  claims with prejudice, the Offering Documents here "duly cautioned that '[t]he security ratings

20  assigned to the Offering Certificates should be evaluated independently from similar ratings on

21  other types of securities.   A security rating is not a recommendation to buy, sell or hold

22  securities.'" *Nomura*, 2009 WL 3149775, at *8.   Plaintiffs' claims of alleged misstatements

23  relating to the RAs thus fail because the Offering Documents "bespoke caution."

24        Under this doctrine, courts have regularly dismissed § 11 claims where the relevant

25  offering documents acknowledge the pertinent risk and set forth warnings specifically

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 29
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   addressing the nature of that risk.  *See, e.g.*, *In re Worlds of Wonder Securities Litigation*, 35

2   F.3d 1407, 1414 (9th Cir. 1994); *In re Britannia Bulk Holdings Securities Litigation*, -- F.

3   Supp.2d ---, Master File No. 08 Civ. 9554(DLC), 2009 WL 3353045, at *8-*10 (S.D.N.Y. Oct.

4   19, 2009) (dismissing 1933 Act claims where the offering documents "contain an abundance of

5   cautionary language about Britannia's use of [the contracts] that Plaintiff simply ignores").

6       Here, the Offering Documents contained meaningful cautionary language regarding the

7   ratings and the securities at issue.  As an example, the Offering Documents at issue contained

8   warnings to purchasers about the nature and limitation of ratings and the distinct possibility of

9   losses in connection with the Certificates such as the following:

10          A security rating is not a recommendation to buy, sell or hold securities and
            may be subject to revision or withdrawal at any time by the assigning rating
11          agency . . . . The ratings assigned to this issue do not constitute a
            recommendation to purchase or sell these securities.  Rather, they are an
12          indication of the likelihood of the payment of principal and interest as set forth
            in the transaction documentation.  The ratings do not address the effect on the
13          certificates' yield attributable to prepayments or recoveries on the underlying
            mortgage loans.
14
    WaMu Mortgage Pass-Through Certificates, Series 2006-AR5 Prospectus Supp., at S-97 (May
15
    23, 2006), Zurofsky Decl., Ex. B; *see also* Zurofsky Decl., Ex. A.[13]
16
        The cautionary language contained in the Offering Documents renders Plaintiffs'
17
    alleged "misstatements" regarding the RAs and their ratings immaterial as a matter of law.  *See,*
18
    *e.g.*, *Halperin* v. *Ebanker USA.COM, Inc.*, 295 F.3d 352, 360 (2d Cir. 2002) (holding that
19
    where offering memoranda contained "numerous warnings that the securities were not presently
20
    registered for resale and there could be no assurance that they ever would be registered," the
21
    "cautionary language addresses the relevant risk directly" and was not "misleading"); *see also*
22

23   [13]  Language identical or substantially similar to that cited above is also contained in the prospectus supplements
    for the other offerings at issue in this case.  *See, e.g.*, WaMu Mortgage-Pass Through Certificates, Series 2006-
24   AR16 Prospectus Supp., at S-81 (Nov. 16, 2006); WaMu Mortgage Pass-Through Certificates, Series 2007-OA1
    Prospectus Supp., at S-96 (Jan. 23, 2007); WaMu Mortgage Pass-Through Certificates, Series 2007-HY3
25   Prospectus Supp., at S-92 (Feb. 23, 2007); and WaMu Mortgage Pass-Through Certificates, Series 2007-HY7
    Prospectus Supp., at S-91 (June 21, 2007).  These and other prospectus supplements at issue are publicly available
26   on the SEC's website (www.sec.gov).

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 30
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    *In re Worlds of Wonder*, 35 F.3d at 1413-15 (affirming dismissal of claims that debenture

2    prospectus statements were misleading because language bespoke caution to investors).

3    **III.    PLAINTIFFS' WSSA CLAIMS MUST BE DISMISSED (COUNT IV)**

4          In addition to their 1933 Act claims, Plaintiffs also assert claims against the RAs under

5    the WSSA. As demonstrated below, those claims fail as a matter of law for the following

6    reasons: (i) they are preempted under federal law, which gives the SEC exclusive authority in

7    this area and bars state law regulation of the "substance" of ratings and the methodologies by

8    which they were generated (Section II.A, *infra*); (ii) the claims, which attempt to hold the RAs

9    strictly liable for alleged errors in constitutionally protected statements, are barred by the First

10   Amendment (Section II.B, *infra*); and (iii) the AC does not state facts that, even if true, are

11   sufficient to state a claim under the WSSA, (Section II.C, *infra*).

12         **A.     The Claims Are Preempted By Federal Law**

13         The heart of Plaintiffs' WSSA claims against the RAs is that the credit ratings assigned

14   to the Certificates at issue were "unjustifiably high" because they were issued pursuant to

15   "outdated models" and affected by purported conflicts of interest. *See, e.g.*, AC ¶ 97. In short,

16   Plaintiffs allege that the RAs "should have" used different methodologies in rating the

17   Certificates at issue, which in turn "should have" resulted in different ratings.

18         But these very subjects — the methodologies used by the RAs and the substance of their

19   resulting ratings opinions — are ones that Congress has declared off-limits to state oversight,

20   whether through legislation or litigation. Indeed, in the Credit Rating Agency Reform Act of

21   2006 ("CRARA"), Congress recognized the significance of ratings and the vital importance of

22   protecting the ability of rating agencies to make their best analytical judgment free of concern

23   about later second-guessing if events turn out differently than they anticipated when they issued

24   their opinions. Specifically, the CRARA provides that:

25               The [SEC] shall have *exclusive authority* to enforce the provisions of this
               section in accordance with this chapter with respect to any [NRSRO], if such
26               [NRSRO] issues credit ratings in material contravention of those procedures

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 31
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

relating to such [NRSRO], including procedures relating to the prevention of misuse of nonpublic information and conflicts of interest . . . . *Notwithstanding any other provision of law, neither the [SEC] nor any State (or political subdivision thereof) may regulate the substance of credit ratings or the procedures and methodologies by which any [NRSRO] determines credit ratings.*

15 U.S.C. § 78o-7(c)(1)-(2) (emphasis added).

This provision thus contains *two* preemption clauses, both of which bear directly on this case.  The first makes clear that the SEC has "exclusive authority" in situations when an NRSRO is alleged to have issued ratings in "material contravention" of its procedures, including procedures related to the management of conflicts of interest.  The second provides that "notwithstanding" any other law, the substance of ratings and the methodologies used to generate them are matters to be addressed by the rating agencies that issue them, not external regulation.  In other words, the SEC — and the SEC alone — is responsible for regulating an NRSRO's compliance with its procedures, but in order to protect the independence of the agencies, Congress concluded that no one, including the SEC, may regulate the substance of those procedures or an NRSRO's credit ratings.

Courts have repeatedly recognized that the type of language contained within the CRARA preempts state law, including state statutory claims such as those asserted here.  *See Jones* v. *Rath Packing Co.*, 430 U.S. 519, 525 (1977) (recognizing that preemption "is compelled [where] Congress' command is explicitly stated in the statute's language").  With respect to the first of the CRARA's preemption provisions, it is well settled that a grant of "exclusive authority" to a federal agency necessarily preempts state law in the relevant area. *See, e.g., Train* v. *Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 15-16 (1976) (noting that the Atomic Energy Commission "was to retain full authority to regulate the materials covered by the [Atomic Energy Act]" and that the Act vested "exclusive authority to regulate" radioactive discharge in the Commission and preempted state regulation); *Brown* v. *Earthboard Sports USA, Inc.*, 481 F.3d 901, 909-12 (6th Cir. 2007) (National Securities

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 32
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   Markets Improvement Act, providing for exclusive federal regulation of covered securities by

2   the SEC, preempts state blue sky laws with respect to such securities); *Freeman* v. *Burlington*

3   *Broadcasters, Inc.*, 204 F.3d 311, 320 (2d Cir. 2000) (combined effect of several statutory

4   provisions in the Federal Communications Act was to preempt defined field and "make it clear

5   that Congress intended the [Federal Communications Commission] to possess exclusive

6   authority over technical matters related to radio broadcasting").

7       With respect to the CRARA's second preemption clause, the statutory language could

8   hardly be clearer: *notwithstanding* any and all other laws, *no one*, including the SEC itself, may

9   *regulate* the substance of NRSROs' rating opinions or the process by which they derive those

10  opinions. Courts — including the Supreme Court — have repeatedly interpreted such language

11  as constituting an explicit announcement of Congress's preemptive intent, including an intent to

12  preempt claims under state law brought by private litigants. *See, e.g., Cisneros* v. *Alpine Ridge*

13  *Group*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals

14  the drafter's intention that the provisions of the 'notwithstanding' section override conflicting

15  provisions of any other section. . . . '[a] clearer statement is difficult to imagine.'") (citation

16  omitted); *BMW of North America, Inc.* v. *Gore*, 517 U.S. 559, 572 n.17 (1996) ("State power

17  may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a

18  statute.") (citation omitted); *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236, 247

19  (1959) ("[R]egulation can be as effectively exerted through an award of damages as through

20  some form of preventive relief. The obligation to pay compensation can be, indeed is designed

21  to be, a potent method of governing conduct and controlling policy."); *Lowden* v. *T-Mobile*

22  *USA, Inc.*, No. C05-1482 MJP, 2009 WL 537787, at *2 (W.D. Wash. Feb. 18, 2009) (Pechman,

23  J.).

24      The Supreme Court recently addressed preemption of state claims in an analogous case.

25  *See Riegel* v. *Medtronic, Inc.*, 128 S. Ct. 999 (2008). In *Riegel*, the Supreme Court considered

26  a provision of the Medical Devices Act ("MDA"), which provided in relevant part that "no

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 33
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   State or political subdivision of a State may establish or continue in effect . . . *any requirement*"

2   regarding the safety or effectiveness of medical devices, if such requirement is different from,

3   or in addition to, any requirement under federal law. 128 S. Ct. at 1003 (emphasis added). The

4   Court found that this language preempted claims "challenging the safety and effectiveness of a

5   medical device given premarket approval by the [FDA] . . . ." *Id.* at 1002. In finding that the

6   MDA's preemption provision reached state law claims, the Court explained that "a liability

7   award 'can be, indeed is designed to be, a potent method of governing conduct and controlling

8   policy.'" *Id.* at 1008 (citation omitted).

9       The language of the CRARA is even broader than the language at issue in *Riegel* in that it

10  expressly precludes ***all*** forms of regulation. Indeed, given Congress's clear intent to preclude

11  both the SEC — the NRSROs' exclusive regulator — and the States from regulating the

12  substance of an NRSRO's credit ratings or rating methodologies, it would be a perverse result

13  to permit juries across the country who are not experts in this complicated area to develop and

14  enforce varying standards for NRSROs under state laws such as the WSSA, while the SEC —

15  an agency with specific expertise and "exclusive authority" to oversee NRSROs — is prevented

16  from doing the same. *See Riegel*, 128 S. Ct. at 1008 ("[I]t is implausible that the [statute] was

17  meant to 'grant greater power (to set state standards 'different from, or in addition to' federal

18  standards) to a single state jury than to . . . officials acting through . . . administrative or

19  legislative lawmaking processes.'") (citation omitted).

20      Here, it is evident that Plaintiffs' claims against the RAs are based, at their core, on an

21  allegation that the RAs published ratings that were too "high." *See AC ¶ 97; see also AC ¶¶ 20,*

22  96, 97, 102, 103. This is a direct challenge to the "substance" of ratings. Plaintiffs allege more

23  specifically that the ratings were "inflated" because the models used by the RAs in determining

24  the ratings, were "woefully outdated" and resulted in "faulty" determinations, *see AC ¶¶ 17, 97,*

25  98, 103, and that the RAs "should have" used different methods and taken other actions when

26  evaluating the risk of and assigning ratings to the Certificates. AC ¶ 103 (alleging that "[a]s a

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 34
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   result of their lack of due diligence, Moody's and S&P were using flawed information and

2   models to generate their ratings.  As a result, the ratings assigned to the Certificates did not

3   accurately reflect their risk. . ."); *see also* AC ¶¶ 166(a), 220, 222.  It is hard to imagine a more

4   direct — and more directly preempted — challenge to the "substance" of ratings and the

5   "methodologies" of the RAs than what Plaintiffs are asserting here.

6        In addition, Plaintiffs' attempt also runs afoul of the SEC's "exclusive authority."

7   Indeed, many of Plaintiffs' allegations rely upon the SEC's "Summary Report of Issues

8   Identified in the Commission Staff's Examination of Select Rating Agencies," which was

9   issued pursuant to the SEC's authority under the CRARA.  *See* AC ¶¶ 110-113.  In this regard,

10  Plaintiffs simply attempt to "piggy-back" on the SEC's examination, all but admitting not only

11  that their claims are within the SEC's exclusive jurisdiction, but that the underlying allegations

12  have already been examined and addressed by Commission staff in connection with its

13  discharge of its exclusive regulatory duties under the CRARA.  There is no breathing room

14  between the "exclusive authority" granted to the SEC under the CRARA and Plaintiffs'

15  preempted WSSA claims.

16       In short, Plaintiffs attempt to use state law to do precisely what Congress prohibited in the

17  CRARA: "second guess" the substance of the RAs' rating opinions and the "methodologies" by

18  which those ratings were generated.  As such, Plaintiffs' WSSA claims are preempted and must

19  be dismissed.[14]

20       **B.      The First Amendment Bars Plaintiffs' WSSA Claims**

21       Plaintiffs' WSSA claims against the RAs are also barred by the First Amendment to the

22  United States Constitution.  Rating agencies offer forward-looking opinions about the

23  creditworthiness of hundreds of thousands of issuers and securities representing trillions of

24  dollars of debt.  These opinions provide national and international markets with insights into

---

25  [14]  In addition to being expressly preempted by the CRARA, Plaintiffs' claims are also preempted under the
      principle of conflict preemption, which mandates that "state law is nullified to the extent that it actually conflicts

26  with federal law."  *Fidelity Federal Savings and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

RATING AGENCY DEFENDANTS' MOTION TO DISMISS                Riddell Williams P.S.
CASE NO. C09-0037MJP - 35                                   1001 FOURTH AVENUE
                                                               SUITE 4500
4830-3981-2357.01                                          SEATTLE, WA 98154-1192
012910/1718/45991.00015                                        206.624.3600

1   important financial matters of broad public concern.  It would materially inhibit the free flow of

2   the important information credit rating agencies provide if they were forced to defend hindsight

3   claims of "erroneous" or "mistaken" analysis every time the future turns out differently than

4   expected.  As a result, courts have afforded substantial constitutional protection to rating

5   agency statements.  Those protections require the dismissal of Plaintiffs' WSSA claim against

6   the RAs here.

7         Courts around the country, including in this Circuit, have recognized that the very RAs

8   sued here are entitled to First Amendment protection in a wide variety of contexts.  *See, e.g.,*

9   *Compuware*, 499 F.3d at 529 (dismissing contract and defamation claims on the grounds that

10  credit ratings are "predictive opinion[s], dependent on a subjective and discretionary weighing

11  of complex factors" entitled to full First Amendment protection); *Jefferson County*, 175 F.3d at

12  856 (dismissing injurious falsehood and tortious interference claims in connection with a bond

13  rating report on the grounds that analysis of creditworthiness constitutes a "protected expression

14  of opinion"); *County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 138, 145 (C.D. Cal. 1997)

15  (finding in an action brought by a rated issuer that "S&P's expression is entitled to First

16  Amendment protection.  The Court cannot analyze the County's claims without reference to

17  S&P's constitutional protection."); *In re Enron*, 511 F. Supp. 2d at 817-26 (finding ratings to be

18  expressions of "opinion" on "matters of public concern" and dismissing on First Amendment

19  grounds negligent misrepresentation claims with respect to securities).  *See also Abu Dhabi*

20  *Commercial Bank* v. *Morgan Stanley & Co., Inc.*, 651 F. Supp. 2d 155, 175 (S.D.N.Y. 2009)

21  ("It is well-established that, under typical circumstances, the First Amendment protects rating

22  agencies, subject to an 'actual malice' exception, from liability arising out of their issuance of

23  ratings and reports because their ratings are considered matters of public concern.") (citation

24  omitted).[15]

---

25  [15]  While recognizing the constitutional protections applicable to ratings generally, the court in *Abu Dhabi*, in the

26  context of a case, unlike this one, in which fraud was alleged, determined that it could not dismiss the asserted claims based on those protections at the motion to dismiss stage because the plaintiffs had pled that, unlike in

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 36
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   These cases are entirely consistent with the law in this District.  Indeed, Judge Lasnik

2   recently held that "ratings" regarding the quality of attorneys resulting from an "evaluative

3   process" were entitled to absolute constitutional protection noting that "[r]atings and reviews

4   are, by their very nature, subjective and debatable." *Browne* v. *Avvo, Inc.*, 525 F. Supp. 2d

5   1249, 1252, 1253 n.1 (W.D. Wash. 2007) (citing *Aviation Charter, Inc.* v. *Aviation Research*

6   *Group/US*, 416 F.3d 864, 870 (8th Cir. 2005)).  As the Sixth Circuit has recognized, the same is

7   true of credit ratings.  *Compuware*, 499 F.3d at 529 (ratings are "predictive opinion[s],

8   dependent on a subjective weighing of complex factors").  Indeed, because ratings speak to

9   future events — *i.e.*, the likelihood that a particular bond or issuer will default — they are, by

10   definition, statements that cannot "reasonably [be] interpreted as stating actual facts." *Hustler*

11   *Magazine* v. *Falwell*, 485 U.S. 46, 50 (1988); *see also Lieberman* v. *Fieger*, 338 F.3d 1076,

12   1079 (9th Cir. 2003) ("[T]he First Amendment shields 'statements of opinion on matters of

13   public concern that do not contain or imply a provable factual assertion.'").

14   These principles fully apply to the ratings at issue in this case.  For example, the

15   Offering Documents themselves make clear that ratings are statements of opinion involving

16   subjective judgments and the evaluation of multiple factors:

17   > The rating assigned to each class of offered certificates by each rating agency is
> based on that rating agency's independent evaluation of that class of
18   > certificates. The rating assigned to a class of offered certificates by one rating
> agency may not correspond to any rating assigned to that class by any other
19   > rating agency.  The ratings assigned to this issue do not constitute a
> recommendation to purchase or sell these securities. Rather, they are an
20   > indication of the likelihood of the payment of principal and interest as set forth
> in the transaction documentation. . . .

21   WaMu Mortgage Pass-Through Certificates, Series 2006-AR5 Prospectus Supp., at S-97 (May

22   23, 2006), Zurofsky Decl., Ex. B.  Plaintiffs' own criticisms of the RAs underscore the

23   subjective, evaluative nature of ratings.  For example, in Paragraph 98, Plaintiffs assert their

24

25   "typical circumstances," the ratings at issue in that case, which related to a different category of securities than at
issue here, were disseminated "to a select group of investors rather than to the public at large." *Id.* at 175-76.
Here, by contrast, there is no such allegation, nor could there be since the securities at issue were publicly
26   registered and, as Plaintiffs acknowledge, the ratings were "published." AC ¶ 103.

1   (subjective) view that "the RAs' models used statistical assumptions that were too heavily

2   based on the performance of 30-year fixed mortgages . . . ." Plaintiffs also acknowledge that

3   ratings are opinions by highlighting their forward-looking nature. *See, e.g.*, AC ¶ 12 ("the

4   ratings were a reflection of the risk or probability of default . . .").

5        Nor is there any doubt that the creditworthiness of the Certificates is an issue of public

6   concern. Those certificates were publicly registered with the SEC and thereby offered to the

7   investment community at large. *See, e.g.*, AC ¶¶ 78, 218. Plaintiffs themselves assert that the

8   class of investors who allegedly relied on the applicable ratings to their detriment includes

9   "hundreds of members." AC ¶ 168. In short, the First Amendment protections recognized

10  repeatedly by courts across the country are applicable here.

11       Two Circuit Courts of Appeals have held that those protections are absolute and require

12  the dismissal of claims brought against the RAs based on their ratings, as is the case here. *See*

13  *Compuware*, 499 F.3d at 531 ("[T]his argument is grounded in negligence, and amounts to

14  nothing more than a backdoor attempt to recover damages for the harm allegedly caused by

15  Moody's protected expression of its opinion of Compuware's financial condition."); *Jefferson*

16  *County*, 175 F.3d at 856 ("Moody's article constitutes a protected expression of opinion.").

17  The ratings at issue here qualify for these same absolute protections and Plaintiffs' WSSA

18  claims must accordingly be dismissed as a matter of law.

19       Even in cases where the RAs' statements have not been afforded absolute protection,

20  courts have repeatedly required that a plaintiff must sufficiently allege that those statements

21  were published with "actual malice" — that is, with actual knowledge that the statement was

22  false or, at a minimum, with serious doubts on the part of the individuals issuing the statement

23  as to its truth. *See, e.g.*, *County of Orange*, 245 B.R. at 151; *In re Enron*, 511 F. Supp. 2d at

24  825. The standard is a subjective one, requiring the plaintiff to establish that "the defendant in

25  fact entertained serious doubts as to the truth" of his statement. *Id.; see also Bose Corp.* v.

26  *Consumer Union of United States, Inc.*, 466 U.S. 485, 511 n.30 (1984) (there is no "actual

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 38
4830-3981-2357.01
012910/1718/45991.00015

malice" unless "the defendant realized that his statement was false or . . . *subjectively* entertained serious doubt as to the truth of his statement") (emphasis added).

In *County of Orange*, 245 B.R. at 156 & n.4, the court applied the actual malice standard to claims against S&P arising out of purportedly "false" ratings of Orange County's debt: "Because the County alleges harm arising from S&P's expressive activity," *i.e.*, its credit ratings, "the County must . . . satisfy the heightened pleading standards of the First Amendment." *Id.* at 156 (quotation marks omitted); *see also In re Enron*, 511 F. Supp. 2d at 825 (dismissing claim where plaintiff "ha[d] not alleged facts showing that the Rating Agencies were at fault because they knew or had significant suspicions that their statements were false and thus acted with actual malice."); *First Equity Corp.* v. *Standard & Poor's Corp.*, 690 F. Supp. 256, 258 (S.D.N.Y. 1988) *aff'd on other grounds*, 869 F.2d 175 (2d Cir. 1989) (applying actual malice standard to claim that S&P disseminated a false bond description).[16]

Here, Plaintiffs do not allege that anyone at either Rating Agency issued ratings opinions or made any other statements with actual malice. In fact, the AC goes out of its way to make clear that Plaintiffs' WSSA claim is based in negligence and that Plaintiffs make *no* allegations about any fraudulent intent on the part of the RAs. The AC thus not only fails to allege actual malice, but it affirmatively disavows it. *See, e.g.*, AC ¶¶ 3, 174, 191, 199, 208, 239, 254. Because Counts I and IV seek to hold the RAs liable for allegedly negligent conduct in disseminating information on matters of strong public concern, they are irreconcilable with established constitutional principles. Plaintiffs' WSSA claims must be dismissed with prejudice.

### C.   Plaintiffs Fail To State a Claim Under the WSSA

---

[16]   The cases in the text have focused on federal constitutional protection for rating agency speech, but the Washington State Constitution free speech clause extends even broader protection to speech and thus provides a separate basis for protection — and dismissal — here. *See JJR Inc.* v. *City of Seattle*, 126 Wash. 2d 1, 8 (1995) ("[I]t is well settled that article 1, section 5 of the Washington State Constitution provides broader free speech protection than the first amendment to the United States Constitution").

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 39
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    Plaintiffs also fail to state a cognizable claim against the RAs under the WSSA.  As
2  already demonstrated, they identify no actionable misstatements or omissions of fact made by
3  the RAs as required under the WSSA. *See* Section II, *supra*.  In addition, the RAs were not, as
4  a matter of law, "sellers" of the Certificates for purposes of the WSSA and Plaintiffs have not
5  as a matter of law alleged the requisite reliance to state a claim.

6         **1.      The RAs Are Not "Sellers" as a Matter of Law**

7    To establish liability under RCW Ch. 21.20.430(1) of the WSSA, Plaintiffs must allege
8  and prove that each of the RAs was a "seller" of the Certificates.  *Haberman v. Washington*
9  *Public Power Supply System*, 109 Wash.2d 107, 132-33 (1987); *Swartz*, 2008 WL 1968948, at
10  *22.  As demonstrated below, Plaintiffs' attempt to fit the RAs into the category of a "seller"
11  of the Certificates cannot withstand scrutiny.

12    First, it is uncontested that the RAs are not alleged to have engaged — and, indeed, did
13  not engage — in any of the activities one typically associates with "selling."  For example, they
14  are not parties to any actual sales agreements and there is no allegation that either RA ever
15  owned the Certificates or transferred title with respect to them.  Nor is there any allegation that
16  either RA ever had any personal contact with any investor regarding the Certificates,
17  participated in any sales "pitch", or urged anybody to invest in the Certificates  Similarly, the
18  RAs are not alleged to have brokered any specific transaction, advised any investor with respect
19  to any sale, or received the proceeds of such a sale.  The absence of such allegations is not
20  surprising considering that the essence of what RAs do is evaluate and opine on securities, not
21  participate in actual securities sales transactions.

22    Another indisputable point is that neither Rating Agency — nor, in fact, *any* rating
23  agency, *see Shain* v. *Duff and Phelps Credit Rating Co.*, 915 F. Supp. 575 (S.D.N.Y. 1966) —
24  has ever been found to be a "seller" within the meaning of either the 1933 Act (on which the
25  WSSA is modeled and with which it is intended to operate in "harmony," *Haberman*, 109
26  Wash. 2d at 125, or under the "Blue Sky" laws of any state.  In short, Plaintiffs' attempt to hold

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 40
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   the RAs liable as "sellers" is, by its very nature, not only at odds with a common sense

2   understanding of the term, but has also never been adopted by any court.

3        Plaintiffs ground their audacious attempt to expand the scope of the securities laws in,

4   *inter alia*, their assertion that "[i]ndependent ratings are required by the SEC for securities to

5   issue . . . Absent the certified ratings, the Certificates could not have issued. ***Thus***, the conduct

6   of the Rating Agency Defendants was a substantially contributing factor to the offer and sale of

7   the Certificates." AC ¶ 219 (emphasis added); *see also* AC ¶¶ 217, 220. Plaintiffs'

8   fundamental premise, however, is wrong as a matter of law. While certain investors may be

9   limited in their ability to invest in non-rated securities, there is ***no*** SEC "requirement" that a

10  security cannot issue without "independent ratings." Plaintiffs cite none and none exists.

11  Therefore, as a threshold matter, Plaintiffs' theory that the RAs are "sellers" is legally deficient

12  and must be rejected.

13       Plaintiffs' attempt also fails because at most it alleges "but for" causation. That is,

14  Plaintiffs assert that the RAs are "sellers" because without their actions the Certificates would

15  never have existed and therefore never been sold. It is settled law, however, that merely

16  establishing that a sale would not have gone forward *but for* a party's actions is not enough to

17  render that party a "seller" under the WSSA. *See Tuscany* v. *Paragon Capital Corp., Inc.*, No.

18  44637-1-I, 2000 WL 1224795, at *13 (Wash. Ct. App. Div. 1 Aug. 28, 2000) (affirming trial

19  court's dismissal of WSSA claims brought against an underwriter and its counsel as purported

20  sellers "even if the Investors would not have purchased securities . . . 'but for' their assurances

21  and representations"); *Brin* v. *Stutzman*, 89 Wash. App. 809, 830 (1998) (defendant who

22  affirmatively advised plaintiff to purchase certain securities not a "seller"; "[a]lthough

23  [defendant's] acts were a 'but for' cause of [plaintiff's] injuries in that she would not have

24  purchased the options but for [defendant's] advice, 'but for' causation alone does not satisfy

25  proximate causation.").

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 41
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    Instead, in order to be a "seller" under RCW 21.20.430(1), a defendant must be either

2    the literal seller or have the "attributes of a seller," or "a substantial contributive factor in the

3    sales transaction." *Haberman*, 109 Wash. 2d at 131-32.  A defendant must have played a role

4    in the "actual sales process." *Brin*, 89 Wash. App. at 830.  The purpose of the "substantial

5    contributive factor" test is not to expose anyone and everyone involved in a securities

6    transaction to strict liability as a "seller," but rather, as the Supreme Court of Washington has

7    stated, to "simply expand[] the strict privity approach to sellers so as to include those parties

8    who have the attributes of a seller and thus who policy dictates should be subject to liability

9    under RCW § 21.20.430(1), but who would escape primary liability for want of privity."

10   *Haberman*, 109 Wash. 2d at 132.  For example, "sellers" include those "who were the actual

11   beneficiaries of the sale proceeds," or those who attempt to "insulate themselves from liability

12   to ultimate purchasers simply by selling to middlemen beyond their control, even . . . where

13   they know that the securities will be resold immediately to buyers who will rely on the Official

14   Statements and Annual Reports written by the issuer to facilitate the sales." *Id.*

15   The RAs have *none* of the "attributes of a seller," even taking the allegations of the AC

16   as true.  They are not alleged to have had *any* personal contact with any investor regarding the

17   Certificates.  Nor are they alleged to have played any role in the actual *sales* process (as

18   opposed to the process of creating the securities).  No actual solicitations are alleged.  Nor, of

19   course, is there any allegation that the RAs ever owned any of the Certificates, transferred title

20   with respect to them, were the "actual beneficiaries of the sale proceeds" or used a

21   "middleman" to affect a sale.  *Haberman*, 109 Wash. 2d at 132.  Dismissal is thus warranted

22   here because there is no factual allegation that the RAs "had any personal contact with any of

23   the investors or [were] in any way involved in the solicitation process." *Hines* v. *Data Line*

24   *Systems, Inc.*, 114 Wash. 2d 127, 149 (1990) (affirming dismissal of "seller" claim against law

25   firm that drafted portions of the offering materials and provided advice to the issuer about their

26   contents but had no "active participation in the sales transactions"); *Schmidt* v. *Cornerstone*

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 42
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  *Investments, Inc.*, 115 Wash2d 148, 166 (1990) (en banc) (affirming dismissal of WSSA

2  "seller" claim where defendants had no "contact with plaintiffs regarding investment" and no

3  "involvement in negotiations"); *see also Wade* v. *Skipper's Inc.*, 915 F.2d 1324, 1328 (9th Cir.

4  1990) (citing *Hines* and finding franchisor not liable under RCW 21.20.010 where, among other

5  things, it had no personal contact with any of the investors and was not involved in the

6  solicitation process); *Tuscany*, 2000 WL 1224795, at *12-*13 (citing lack of personal contact

7  with any investors and lack of involvement in soliciting investors in support of refusal to find

8  underwriter and its counsel to be "sellers").

9        Indeed, conduct significantly more involved than what is alleged against the RAs here

10  has been found insufficient to establish "seller" status. *See, e.g., In re Activision Securities*

11  *Litigation*, 621 F. Supp. 415, 420-21 (N.D. Cal. 1985) (holding that "[a] defendant is

12  considered a substantial factor if he or she 'actively solicits an order, participates in the

13  negotiations, or arranges the sale.' . . . [S]eller status [has] to be predicated on actual

14  participation in the selling process" and accordingly, refusing to find accountants, underwriters

15  and others to be § 12(a)(2) "sellers" despite allegations about their planning the offering,

16  drafting the prospectus, participating in "road shows" and negotiating the price of the offered

17  securities); *see also Brin*, 89 Wash. App. at 830 (finding defendant who affirmatively advised

18  plaintiff to purchase not to be a "seller").

19        In *Haberman*, the court laid out a series of factors relevant to the "substantial

20  participation" analysis, the first of which is "the number of other factors which contribute to the

21  sale and the extent of the effect which they have in producing it." *Haberman*, 109 Wash. 2d at

22  131. This point underscores how inappropriate it would be to consider the RAs "sellers," here.

23  Indeed, as detailed in the discussion on pages 6-7, *supra*, the AC goes out of its way to explain

24  both in prose and diagrams all of the important steps that went into the creation and sale of the

25  Certificates that did not involve the RAs. These include:  appraising the underlying properties,

26  brokering the mortgages, originating them, bundling and selling them, creating issuing trusts,

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 43
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   serving as depositor, identifying potential investors, communicating with those investors,

2   marketing the securities, and, of course, executing sales transactions. *See, e.g.*, AC ¶¶ 7, 28, 31,

3   213, 216. *See also, supra*, at Section I.B. According to the AC, each of the defendants in this

4   case played a "substantial" role in bringing about sales of the Certificates. AC ¶¶ 212-216, 223-

5   227. But there can only be so many "substantial" contributors to any particular event and, here,

6   the allegations of the AC make clear as a matter of law that the RAs are not among them.

7          The AC's detailed description of the many actors and activities that led to the creation

8   and sale of the Certificates also speaks to the second factor set forth by the court in *Haberman*:

9   whether the RAs' conduct created a series of forces which were in continuous and active

10   operation up to the time of the sale. *Haberman*, 109 Wash. 2d at 131-32. Given Plaintiffs'

11   emphasis on the roles played by others, particularly WaMu, which is twice alleged to have

12   "controlled almost every aspect of the creation and issuance of the Certificates," AC ¶ 7, *see*

13   *also* AC ¶ 216, it is simply not "plausible," as would be required under *Iqbal*, for Plaintiffs to

14   argue that it was the *RAs* who somehow put in place the "series of forces" that brought about

15   the sale of the Certificates. Indeed, Plaintiffs never claim that the RAs knew of, or played a role

16   in, the litany of alleged underlying problems with the Certificates including, according to

17   Plaintiffs, poor mortgage underwriting, inadequate due diligence, faulty appraisals, and a host

18   of purportedly inaccurate disclosures. *See, e.g.*, AC ¶ 16.

19          The flaws in Plaintiffs' theory are even deeper, however. The Supreme Court of

20   Washington has made clear that professional service providers such as the RAs will only be

21   considered "sellers" if they did "something more" than render "routine professional services in

22   connection with an offer"; instead, courts will look to see if the defendant engaged in "active

23   participation in the sales transactions." *Hines*, 114 Wash. 2d at 149. Plaintiffs are aware of this

24   requirement, yet they offer only the conclusory allegation that "the Rating Agency Defendants

25   went beyond provision of routine professional services because they knew WaMu would

26   provide the ratings to investors to induce them to purchase the Certificates." AC ¶ 221. Such

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 44
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   an allegation not only fails under *Iqbal*, but it confirms that the RAs are not actually being

2   accused here of *doing* anything other than rating the Certificates, which, of course, is precisely

3   the work they routinely perform in the market.  Nonetheless, according to Plaintiffs, the RAs

4   should be "sellers" because of their state of mind — *i.e.*, because they allegedly knew that

5   *WaMu* was going to use the resulting ratings.  This position is entirely without force.  For

6   example, lawyers are well aware that clients intend to use the language they draft for offering

7   materials in soliciting investors, but the *Hines* court expressly rejected the proposition that a

8   lawyer can be a WSSA "seller" for merely performing its usual services.  *Hines*, 114 Wash. 2d

9   at 149.  Accordingly, Plaintiffs' allegations are insufficient to transform the RAs into "sellers."

10   *See Reale* v. *Ernst & Young, LLP*, No. 43932-4-I, 2000 WL 949388, at *6 (Wash. Ct. App. Div.

11   1 July 10, 2000) (affirming dismissal of WSSA claim against auditor that provided a "clean

12   opinion" used in offering documents; "[a]s a matter of law E&Y is not liable because it is not a

13   seller under the WSSA").

14          Finally, Plaintiffs' position is directly at odds with established public policy.  As

15   discussed in Section I.A, *supra*, the SEC adopted Rule 436(g) expressly to promote the

16   inclusion of NRSRO ratings in registered offerings.  To accomplish that, the SEC exempted

17   those NRSROs from potential Section 11 liability for their ratings work.  Here, however,

18   Plaintiffs are seeking to turn the fact that the policy accomplished its goal — *i.e.*, the ratings on

19   the Certificates were publicly disclosed in the Offering Documents — into a basis on which to

20   hold the RAs strictly liable for enormous potential liability.  If sustained, Plaintiffs' effort

21   would directly undermine the policy goals of increased disclosure of ratings information to

22   investors under the federal securities laws.  *See Haberman*, 109 Wash. 2d at 125 (WSSA

23   intended to act in "harmony" with federal securities laws).

24          In short, the key question is whether the actual conduct the RAs are alleged to have

25   engaged in amounts to the "attributes of a seller."  It plainly does not.  Plaintiffs' allegations

26   about what they feel the RAs *should have* done (for example, further update their models) do

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 45
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   not bear on whether what they are alleged *actually* to have done fills the shoes of a "seller." In

2   the long history of the federal and state securities laws, no court has ever found that the issuing

3   of rating opinions to be included in offering materials and performing the work that goes into

4   doing that, provide a basis for the liability assigned to "sellers." There is absolutely no reason

5   for that to change based on the allegations at issue here.

6       **2.**    **Plaintiffs Fail To Allege Reasonable Reliance**

7          Lastly, Plaintiffs' WSSA claims fail for the additional reason that Plaintiffs have not

8   pled the essential element of reliance. Plaintiffs must show that they reasonably "relied on the

9   misrepresentations in connection with the sale of the securities." *Hines*, 114 Wash. 2d at 134;

10   *Stewart* v. *Estate of Steiner*, 122 Wash. App. 258, 263-64 (Div. 1 2004). Here, while Plaintiffs

11   generically assert that ratings "are relied on by investors to evaluate a given investment

12   product," AC ¶ 219, they have not alleged that they actually saw, let alone relied, upon the

13   RAs' ratings or any other purported misstatement by the RAs. Such an omission is fatal to their

14   WSSA claims.

15          No doubt aware of this flaw, Plaintiffs ask instead to be excused from pleading reliance

16   because they claim they are entitled to a "presumption of reliance." AC ¶¶ 247-251. The

17   "presumption of reliance" is a doctrine, developed in the context of federal securities fraud

18   claims, which has been applied to WSSA claims only sparingly, and almost exclusively, in

19   cases that are "primarily" non-disclosure cases. Here, Plaintiffs have alleged *both* mixed claims

20   of omissions *and* misrepresentations. *See, e.g.*, AC ¶¶ 3, 15, 20, 21, 24, 39, 96, 152, 155, 183,

21   232. Accordingly, Plaintiffs are not entitled to a reliance presumption under a theory that this is

22   a case "primarily" of omissions. *In re Metropolitan Securities Litigation*, 532 F. Supp. 2d

23   1260, 1302 (E.D. Wash. 2007) ("While the law does not limit this presumption to cases that

24   allege only omissions, the presumption does not apply in 'mixed claim' cases where

25   misstatements and omissions are pled equally.").

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 46
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    Plaintiffs instead appear to be arguing for the presumption either on a theory of "fraud

2   on the market," *see* AC ¶ 250, or on the theory that the securities would not have been

3   marketable but for the alleged misrepresentations.  AC ¶¶ 248, 249.  Neither theory has merit.

4   First, only *one* Washington court has ever applied the presumption to a WSSA claim under

5   these theories.  That case, *In re Metropolitan*, made clear, however, that a plaintiff attempting

6   to benefit from the presumption may avoid dismissal only where plaintiff "allege(s) facts

7   indicating that . . . one of these circumstances exist[s]."  *Id.* at 1301-02.  Putting aside that it is

8   not entirely clear that Washington law permits a reliance presumption in the situations noted in

9   *In re Metropolitan*, Plaintiffs have not provided any facts that, if proven, would allow them to

10  invoke either theory here.

11   A presumption under a "fraud on the market" theory requires, in the first instance, the

12  existence of "an efficient market."  *In re Metropolitan*, 532 F. Supp. 2d at 1302.  The only

13  allegation Plaintiffs make in this regard is a claim that the purported efficiency of the market

14  here is "evidenced by the rapid downgrading of all the Certificates . . . resulting . . . from (1) the

15  belated disclosure of material facts omitted at the time of sale; and (2) the unexpected high rate

16  of default on the mortgages underlying the Certificates that was only unexpected primarily

17  because of the material information omitted from the Offering Documents."  AC ¶ 250.

18  Plaintiffs provide no explanation as to why the alleged "rapid downgrading" of the credit

19  ratings for the Certificates, even if true, relates in any way to the alleged *efficiency* of the

20  *market* for the Certificates.  If anything, it speaks to the efficiency of the RAs.  Moreover, even

21  if the AC actually spoke to the efficiency of the market, such an allegation would expressly

22  contradict the clear terms of the Offering Documents, which clearly warned investors that the

23  Certificates may very well have *no* secondary market, never mind an efficient one, make the

24  point clear:

25          The offered certificates will not be listed on any securities exchange. A
         secondary market for the offered certificates may not develop. If a secondary

26          market does develop, it might not continue or it might not be sufficiently liquid

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 47
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

to allow you to resell any of your certificates. You should not expect to be able to obtain a published quotation to sell any of the offered certificates.

*See, e.g.,* WaMu Mortgage Pass-Through Certificates, Series 2006-AR5 Prospectus Supp., at S-25 (May 23, 2006), Zurofsky Decl., Ex. B.

Nor can Plaintiffs invoke the presumption based on an "unmarketability" theory. As demonstrated in Section III.C *supra*, Plaintiffs' allegation that the Certificates "could not legally have been offered for sale" is demonstrably false and entitled to no weight. *See, supra,* pages 40-41. Moreover, to the extent this theory is legally cognizable, it requires a showing that the alleged "fraudster directly interfered with the market by introducing . . . an objectively unmarketable security that has no business being there.' *The promoter must know the enterprise was 'patently worthless.'"* *In re Metropolitan Securities Litigation,* 2009 WL 36776, at *5 (E.D. Wash. 2009) (citations omitted; emphasis added). Here, there is no allegation of fraudulent conduct by the RAs, or by any of the other defendants. Indeed, the AC disclaims such allegations. *See* AC ¶ 3. Consequently, even if the doctrine were viable,[17] it has not been pled here.

In short, Plaintiffs fail to plead facts sufficient to warrant a presumption of reliance by doctrines actually recognized by Washington courts and their WSSA claims must be dismissed.

## CONCLUSION

The claims asserted against the RAs should be dismissed with prejudice.

---

[17] *See, e.g., Eckstein* v. *Balcor Film Investors,* 8 F.3d 1121, 1130-31 (7th Cir. 1993) (Easterbrook, J.), *aff'd,* 58 F.3d 1162 (7th Cir. 1995) ("We agree with the sixth circuit [in "repudiat[ing] . . .outright" this theory] . . .[Its] linchpin . . . – that disclosing bad information keeps securities off the market, entitling investors to rely on the presence of the securities just as they would rely on statements in a prospectus – is simply false."); *In re MDC Holdings Securities Litigation,* 754 F. Supp. 785, 805 (S.D. Cal. 1990) (noting that the "fraud-created-the-market" theory "has not been adopted by the Ninth Circuit and it has been criticized by courts and commentators"); *see also Desai* v. *Deutsche Bank Securities Ltd.,* 573 F.3d 931, 944 (9th Cir. 2009) (questioning the viability of the "fraud-created-the-market" theory).

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 48
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

2    DATED this 29th day of January, 2010.

3                    RIDDELL WILLIAMS P.S.

4                    By      /s/   Paul J. Kundtz

5                        Paul J. Kundtz, WSBA #13548
                         Gavin W. Skok, WSBA #29766

6
                         Riddell Williams P.S.
7                        1001 Fourth Avenue
                         Suite 4500
8                        Seattle, Washington 98154-1192
                         Telephone:  206-624-3600

9
                    Floyd Abrams (pro hac vice)
10                   Adam Zurofsky (pro hac vice)
                    Tammy L. Roy (pro hac vice)
11                   CAHILL GORDON & REINDEL LLP
                    80 Pine Street
12                   New York, New York 10005
                    Telephone: (212) 701-3000
13                   Facsimile: (212) 269-5420

14                   Counsel for The McGraw-Hill Companies, Inc.
                    LANE POWELL PC
15

16
                    By      /s/ Larry S. Gangnes
17                       Larry S. Gangnes, WSBA #8118

18                       Lane Powell PC
                         1420 Fifth Avenue, Suite 4100
19                       Seattle, Washington 98101-2338
                         Telephone: 206-223-7036

20
                    Joshua M. Rubins
21                   James J. Coster
                    SATTERLEE STEPHENS BURKE & BURKE
22                   LLP
                    230 Park Avenue, Suite 1130
23                   New York, New York 10169
                    Telephone: (212) 818-9200
24                   Facsimile: (212) 818-9606

25                   Counsel for Moody's Investor Services, Inc.

26

RATING AGENCY DEFENDANTS' MOTION TO DISMISS
CASE NO. C09-0037MJP - 49
4830-3981-2357.01
012910/1718/45991.00015

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600