The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10

11

12

13

14

15

| | |
|---|---|
| BOILERMAKERS NATIONAL ANNUITY TRUST FUND, on behalf of itself and all others similarly situated, | Case No. C09-00037MJP |
| Plaintiff, | **THE RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| v. | |
| WAMU MORTGAGE PASS THROUGH CERTIFICATES, SERIES AR1, *et al.*, | **NOTE ON MOTION CALENDAR: May 28, 2010** |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

16

17

18

19

20

21

22

23

24

25

26

RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED COMPLAINT (NO. 09-0037MJP)

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED AND SUMMARY OF ARGUMENT ........................................... 1

BACKGROUND ......................................................................................................... 3

STANDARD OF REVIEW ......................................................................................... 5

ARGUMENT ............................................................................................................. 6

I.  PLAINTIFFS' § 15 CLAIMS AGAINST THE RATING AGENCIES
    SHOULD BE DISMISSED. ................................................................................ 6

    A.  Plaintiffs Do Not Assert A Primary Violation By The Issuing Trusts .......... 7

    B.  The Rating Agencies Are Not "Controlling Persons." ............................... 9

II. PLAINTIFFS' § 15 CLAIMS AGAINST THE RATING AGENCIES ARE
    TIME-BARRED. .............................................................................................. 14

    A.  Plaintiffs' § 15 Claims Against the Rating Agencies Based on 17 of
        the 36 Offerings Are Time-Barred by the Three-Year Statute of
        Repose .................................................................................................. 15

    B.  Plaintiffs' § 15 Claims Against the Rating Agencies Are Time-
        Barred by the One-Year Statute of Limitations. ................................... 15

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ..................................................... 5-6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................. 6

*Berry v. Valence Technology, Inc.*, 175 F.3d 699 (9th Cir. 1999) ................. 16-17

*Dodds v. Cigna Securities, Inc.*, 12 F.3d 346 (9th Cir. 2002) ........................... 14n

*Doral Bank Puerto Rico v. Washington Mutual Acceptance Corp.*, Case No. 09-1557 ............................................................................................. 4

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), *as amended by* 320 F.3d 905 ............................................................................................. 7

*Fouad v. Isilon Systems, Inc.*, 2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ....... 6-7, 10

*Howard v. Everex Systems, Inc.*, 228 F.3d 1057 (9th Cir. 2000) ......................... 6

*In re IndyMac Mortgage-Backed Securities Litigation*, No. 09-cv-04583, Dkt. No. 195 ............................................................................... 1n, 2, 11

*In re Infonet Services Corp. Securities Litigation*, 310 F.Supp.2d 1106 (C.D. Cal. 2010) ............................................................................................. 16

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization LLC*, No. 08-cv-10841, Dkt. No. 101 (S.D.N.Y. Mar. 31, 2010) .......... 1n

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ................................................ 4n

*Kreek v. Wells Fargo & Co.*, 652 F.Supp.2d 1053 (N.D. Cal. 2009) ...................... 16

*In re Lehman Bros.*, 2010 WL 337997 (S.D.N.Y. Feb. 1, 2010) ....................... 1n, 2, 9-12

*Louisiana-Pacific Corp v. ASARCO, Inc.*, 5 F.3d 431 (9th Cir. 1993) ................. 15n

*Lubic v. Fidelity National Financial, Inc.*, 2009 WL 2160777 (W.D. Wash. July 20, 2009) ............................................................................................. 6

*Malone v. Clark Nuber*, 2008 WL 2545069 (W.D. Wash. June 23, 2008) ............ 14n

*McCasland v. Formfactor Inc.*, 2008 WL 2951275 (N.D. Cal. July 25, 2008) ......... 10

*In re Network Commerce Inc. Securities Litigation*, 2006 WL 1375049, at 3 (W.D. Wash. May 16, 2006), *affirmed in part and reversed in part on other grounds* ............................................................................................. 15-16

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

*New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital, Inc.*, No. 08 Civ. 5653 (S.D.N.Y. Mar. 29, 2010) ........................................... 9

*New Jersey Carpenters Health Fund* v. *Residential Capital, LLC*, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ...........................................9, 12

*New Jersey Carpenters Vacation Fund* v. *Harborview Mortgage Loan Trust*, No. 08-cv-5093 ...........................................18

*New Jersey Carpenters Vacation Fund* v. *Royal Bank of Scotland Group, PLC*, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2009) ...........................................1n, 2, 11

*In re Novagold Resources Inc. Securities Litigation*, 629 F.Supp.2d 272 (S.D.N.Y. 2009) ...........................................16

*Paracor Finance, Inc.* v. *General Electric Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) ...........................................10-11

*Pinter v. Dahl*, 486 U.S. 622 (1988) ...........................................8

*Rubke v. Capitol Bancorp Ltd.*, 460 F.Supp.2d 1124 (N.D. Cal. 2006) ...........................................7

*Safeway Portland Employees' Federal Credit Union* v. *C.H. Wagner & Co.*, 501 F.2d 1120 (9th Cir. 1974) ...........................................9

*In re Stac Electronics Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996) ...........................................15-16

*In re Stratosphere Corp. Securities Litigation*, 1 F.Supp.2d 1096 (D. Nev. 1998) ...........................................11-12

*Swartz* v. *Deutsche Bank*, 2008 WL 1968948 (W.D. Wash. May 2, 2008) ...........................................6, 12n

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*, No. 08 Civ. 10637-LAK, Dkt. No. 52 (S.D.N.Y. Feb. 5, 2010) ...........................................1n

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ...........................................4n

*In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation*, 259 F.R.D. 490 (W.D. Wash. 2009) ...........................................7, 10

*In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376, Dkt. No. 198 (N.D. Cal. Apr. 22, 2010) ...........................................1n, 2, 11, 12n

1

## STATUTES

2   15 U.S.C. §77k ....................................................................................*passim*

3   15 U.S.C. §77m ...................................................................................14

4   15 U.S.C. § 77o...................................................................................*passim*

5

## REGULATIONS

6   17 C.F.R. § 229.1100 (2005) ...............................................................8

7   17 C.F.R. § 230.405 (2010) .................................................................9

8

## RULES

9   Fed. R. Civ. P. 8 .................................................................................1

10  Fed. R. Civ. P. 12(b)(6) ......................................................................1

11  Fed.R.Civ.P. 15(c)(1)(C) ....................................................................15n

12

## OTHER AUTHORITIES

13  Asset-Backed Securities, Release Nos. 33-8518, 34-50905, File No. S7-21-04
        (Final Rule Dec. 22, 2004) ........................................................8

14

15

16

17

18

19

20

21

22

23

24

25

26

## RELIEF REQUESTED AND SUMMARY OF ARGUMENT

Defendants The McGraw-Hill Companies, Inc. ("McGraw-Hill")[1] and Moody's Investors Service, Inc. ("Moody's" and collectively, the "Rating Agencies") respectfully move to dismiss the claims asserted against them in the Second Amended Consolidated Class Action Complaint (the "Second Amended Complaint" or the "SAC") pursuant to Fed. R. Civ. P. 8 and 12(b)(6).

The SAC represents Lead Plaintiffs' third attempt to advance a theory of liability against the Rating Agencies in connection with certain mortgage-backed securities allegedly purchased by Plaintiffs. Initially, with their first Consolidated Class Action Complaint filed on November 23, 2009 and their Amended Consolidated Class Action Complaint filed on December 31, 2009, Plaintiffs sought to impose liability against the Rating Agencies under § 11 of the Securities Act of 1933 (the "1933 Act"), asserting that the Rating Agencies were "underwriters" of the securities they rated. To date, that exact theory has been rejected across the country in *six cases*, which have dismissed § 11 claims virtually identical to those asserted in Plaintiffs' earlier complaints.[2] Plaintiffs have since dropped that theory. *Four* of those cases, however, also involved claims seeking to hold the Rating Agencies liable under § 15 of the 1933 Act as "controlling persons," the claim Plaintiffs now advance for the first time against the Rating Agencies in the SAC. That theory too has been rejected by *every* court that has considered it and should be rejected

---

[1] Because the allegations in the Second Amended Complaint regarding McGraw-Hill concern its business unit, Standard & Poor's Ratings Services, we refer to this defendant herein as "S&P."

[2] *See In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376, Dkt. No. 198 (N.D. Cal. Apr. 22, 2010) (Illston, J.) (attached to the Declaration of Floyd Abrams ("Abrams Decl.") submitted herewith, Ex. B); *In re Lehman Bros. Securities and ERISA Litigation*, 2010 WL 337997 (S.D.N.Y. Feb. 1, 2010) (Kaplan, J.); *New Jersey Carpenters Vacation Fund* v. *Royal Bank of Scotland Group, PLC*, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2009) (Baer, J.); *Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*, No. 08 Civ. 10637-LAK, Dkt. No. 52 (S.D.N.Y. Feb. 5, 2010) (Kaplan, J.) (Abrams Decl., Ex. E); *In re IndyMac Mortgage-Backed Securities Litigation*, No. 09-cv-04583, Dkt. No. 195 (S.D.N.Y. Feb. 5, 2010) (Kaplan, J.) (Abrams Decl., Ex. C); *Iron Workers Local No. 25 Pension Fund* v. *Credit-Based Asset Servicing & Securitization LLC*, No. 08-cv-10841, Dkt. No. 101 (S.D.N.Y. Mar. 31, 2010) (Rakoff, J.) (Abrams Decl., Ex. D).

here. *See, e.g., In re Wells Fargo*, No. 09-cv-1376, slip op. at 12-14 (Abrams Decl., Ex. B); *In re Lehman Bros.*, 2010 WL 337997, at *4-*5; *Royal Bank of Scotland Group*, 2010 WL 1172694, at *7; *In re IndyMac*, No. 09-cv-04583, slip op. at 1 (Abrams Decl., Ex. C).

Putting aside the fact that, in the long history of the 1933 Act, no rating agency has ever been deemed a "controlling person" under § 15, Plaintiffs' claims of "control" here must be dismissed for two primary reasons. First, Plaintiffs have not (and cannot) plead, as they must, an underlying primary violation by the allegedly "controlled" entities, *i.e.*, the non-party issuing trusts that issued the securities (the "Issuing Trusts"). *See* Section I.A, *infra.*

Second, even if Plaintiffs had pled an underlying violation, Plaintiffs do not (and cannot) set forth legally sufficient allegations of "control" against the Rating Agencies. Plaintiffs' theory is that the Rating Agencies "controlled" the Issuing Trusts by providing credit ratings for the securities and "determin[ing] the structure and credit support of each of the Issuing Trusts which purportedly justified the ratings." (SAC ¶ 11). But this is the very contention that was rejected in each of the four recent cases cited above and, just like the plaintiffs in each of those cases, Plaintiffs here are entirely unable to allege any facts constituting "control." Moreover, any notion that the Rating Agencies "controlled" anyone is contradicted throughout the SAC as Plaintiffs repeatedly allege that it was "WaMu" (described in the SAC as "Washington Mutual, Inc. and its subsidiaries and affiliates") that was the driving and controlling force behind every aspect of the mortgage origination, securitization and sales process here. *See* Section I.B, *infra.*

Plaintiffs' § 15 claims against the Rating Agencies should also be dismissed for the wholly independent reason that they are time-barred. *See* Section II, *infra.*[3]

---

[3] The Rating Agencies also join in the brief filed by the WaMu Defendants, which further demonstrates that Plaintiffs have not properly pled an underlying violation of the 1933 Act by the Issuing Trusts.

1    In sum, in addition to the numerous complaints filed by the Plaintiffs in this

2    consolidated action which opted not to include *any* claims against the Rating Agencies,

3    Plaintiffs have now attempted three times to plead a viable claim against the Rating

4    Agencies. As the SAC makes clear, they have not done so, because they *cannot* do so.

5    Accordingly, Plaintiffs' claims against the Rating Agencies should be dismissed with

6    prejudice.

7    ## BACKGROUND

8    In August 2008, this purported class action was initiated on behalf of a putative

9    class of purchasers of certain mortgage pass-through certificates (the "Certificates"),

10   commonly referred to as residential mortgage-backed securities ("RMBS"), issued pursuant

11   to allegedly false and misleading Registration Statements, Prospectuses and Prospectus

12   Supplements (collectively, the "Offering Documents"). "In a mortgage securitization,"

13   such as those at issue here, "mortgage loans are acquired, pooled together, and then sold to

14   a common law trust which in turn issues certificates to purchasers[.]" *In re Lehman Bros.*,

15   2010 WL 337997, at *1. By virtue of their purchase, investors become "beneficiaries of

16   the trust" and "receive distributions from the trustee according to the cash flow generated

17   by the pool of mortgages and the rights of the respective classes of certificate holders." *See*

18   *id.*

19   Over a year after the filing of the initial complaint, the first Consolidated Class

20   Action Complaint was filed on November 23, 2009, naming the Rating Agencies for the

21   first time. The Rating Agencies are credit rating agencies registered with the United States

22   Securities and Exchange Commission (the "SEC") as Nationally Recognized Statistical

23   Rating Agencies ("NRSROs"). (SAC ¶ 4). Credit ratings are forward-looking opinions

24   about the creditworthiness of a rated security, *i.e.*, the likelihood that a security will pay

25   interest and principal in accordance with its terms. The Offering Documents made clear

26

the nature and the limitations of credit ratings.  For example, the Offering Documents disclosed that:

> A security rating is not a recommendation to buy, sell or hold securities and may be subject to revision or withdrawal at any time by the assigning rating agency. . . . The ratings on the offered certificates address the likelihood of the receipt by certificateholders of all distributions with respect to the underlying mortgage loans to which they are entitled.

WaMu Mortgage Pass-Through Certificates, Series 2006-AR18, Prospectus Supplement at S-81 (dated Dec. 18, 2006) (Abrams Decl., Ex. F).[4]

In their two earlier complaints, Plaintiffs asserted that the Rating Agencies were liable as "underwriters" under § 11 of the 1933 Act.  On January 29, 2010, the Rating Agencies filed a motion to dismiss these claims. (Dkt. 146).  After this matter was consolidated with *Doral Bank Puerto Rico* v. *Washington Mutual Acceptance Corp.*, Case No. 09-1557, Plaintiffs were granted permission to file the SAC.

The SAC names as Defendants:  WMB, the "sponsor" and "seller" for the Certificates and servicer of the underlying mortgage loans (SAC ¶ 23); WMAAC, the "depositor," a wholly-owned subsidiary of WMB and the entity that filed the Registration Statements and Prospectus Supplements (*id.* ¶¶ 24-25); WCC, the "underwriter" of the offerings (*id.* ¶¶ 37-38); the individuals that signed the registration statements (*id.* ¶¶ 27-34); and the Rating Agencies (*id.* ¶¶ 42-43).  In the SAC, Plaintiffs have dropped their claims against the Rating Agencies under § 11, and instead assert only new § 15 claims. Specifically, the SAC asserts that the Rating Agencies "controlled" the Issuing Trusts – entities that are absent from the list of defendants in this action.  Plaintiffs do not allege that the Rating Agencies "controlled" Defendants WMAAC, WCC or any other entity.

---

[4]  This Court may properly consider the Offering Documetns on which Plaintiffs exclusively base their claims.  *See United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003) (courts determining whether a plaintiff has stated a claim may consider documents referenced extensively in the complaint, documents that form the basis of the claim, and matters of judicial notice). *Accord Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED COMPLAINT (NO. 09-0037MJP) - 4

1    Plaintiffs allege that the "Issuing Trusts were shell entities created solely for the

2    purpose of issuing the Certificates." (SAC ¶ 216). The Trusts were formed by trust

3    agreements between WMAAC and the trustee. *See, e.g.,* WaMu Mortgage Pass-Through

4    Certificates, Series 2006-AR18, Prospectus Supplement at S-25, S-26 (dated Dec. 18,

5    2006) (Abrams Decl., Ex. F) ("The issuer of the certificates, the WaMu Mortgage Pass-

6    Through Certificates Series 2006-AR18 Trust (the 'Trust'), will be a statutory trust formed

7    under the laws of the State of Delaware *pursuant to a trust agreement between WaMu*

8    *Asset Acceptance Corp., as depositor, and Christiana Bank & Trust Company Delaware,*

9    *as Delaware trustee.*") (emphasis added). Subsequent agreements, the "pooling and

10   servicing agreement[s]," between WMB and the trustee restated the trust agreements and

11   now serve as the "governing instrument[s] of the Trust[s]." *See, e.g., id.* ("The pooling and

12   servicing agreement . . . *among the depositor, Washington Mutual Bank, as servicer, the*

13   *Delaware trustee and Deutsche Bank National Trust Company, as trustee*, will restate the

14   trust agreement and *will be the governing instrument of the Trust*.") (emphasis added).

15   "The permissible activities of the Trust[s]" can only be modified "by an amendment to the

16   pooling agreement" between WMB and the trustees. *Id.*, at S-26. The Rating Agencies are

17   not alleged to have been parties to any of these agreements.

18      Although Plaintiffs assert no claim against the Issuing Trusts, they summarily state

19   in the SAC that "the Issuing Trusts, as the issuing trusts of the Certificates herein, are

20   strictly liable for misstatements and omissions contained in the Offering Documents under

21   Section 11" of the 1933 Act. (*Id.* ¶ 214). Plaintiffs further allege that the Individual

22   Defendants, WCC and the Rating Agencies all "controlled" the Issuing Trusts and thus, are

23   each liable under § 15 of the 1933 Act. (*Id.* ¶¶ 205, 206, 213).

24                              **STANDARD OF REVIEW**

25      As recently confirmed by the United States Supreme Court, to survive a motion to

26   dismiss, a plaintiff's complaint may not rely merely on "labels and conclusions" but,

RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED COMPLAINT (NO. 09-0037MJP) - 5

instead, must "contain sufficient factual matter, accepted as true, to 'state a claim that is

plausible on its face.'" *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *see also Swartz* v. *Deutsche Bank*,

2008 WL 1968948, at *5 (W.D. Wash. May 2, 2008) ("[C]onclusory allegations and

unwarranted inferences are insufficient to defeat a motion to dismiss.") (citing *Twombly*).

It is not enough to plead facts that are "'merely consistent with'" liability. *Iqbal*, 129 S. Ct.

at 1949 (quoting *Twombly*). A plaintiff must plead "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*;

*see also Lubic* v. *Fidelity National Financial, Inc.*, 2009 WL 2160777, at *2 (W.D. Wash.

July 20, 2009) (same) (quoting *Iqbal* and *Twombly*).

## ARGUMENT

I. **PLAINTIFFS' § 15 CLAIMS AGAINST THE RATING AGENCIES SHOULD BE DISMISSED.**

Section 15 of the 1933 Act provides that:

> Every person who, by or through stock ownership, agency, or
> otherwise, or who, pursuant to or in connection with an
> agreement or understanding with one or more other persons
> by or through stock ownership, agency, or otherwise,
> controls any person liable under sections 11 or 12 of this
> title, shall also be liable jointly and severally with and to the
> same extent as such controlled person, . . . unless the
> controlling person had no knowledge of or reasonable ground
> to believe in the existence of the facts by reason of which the
> liability of the controlled person is alleged to exist.

15 U.S.C. § 77o. To state a claim for control person liability, Plaintiffs must allege that:

(1) the alleged primary violators (here, the Issuing Trusts) violated §§ 11 or 12 of the 1933

Act; and (2) the Rating Agencies exercised actual "control" over the Issuing Trusts within

the meaning of § 15. *See, e.g., Fouad* v. *Isilon Systems, Inc.*, 2008 WL 5412397, at *11

(W.D. Wash. Dec. 29, 2008 (citing *Howard* v. *Everex Systems, Inc.*, 228 F.3d 1057, 1065

(9th Cir. 2000)) (dismissing allegations of control based on minority ownership that were

unsubstantiated and conclusory). Plaintiffs' § 15 claims against the Rating Agencies fail

1   on both points.  First, the SAC contains absolutely no allegation that would support the

2   inference that the Issuing Trusts have primary liability here under §§ 11 or 12.  *See* Section

3   I.A.  Second, the SAC fails, in any event, to provide any plausible factual basis to support

4   Plaintiffs' conclusory allegation that the Rating Agencies "controlled" the Issuing Trusts.

5   *See* Section I.B.

6       **A.    Plaintiffs Do Not Assert A Primary Violation By The Issuing Trusts.**

7           It is black letter law that a § 15 claim must fail if a plaintiff does not allege that the

8   allegedly controlled entity actually committed a primary violation of the 1933 Act (*i.e.*,

9   either a § 11 or § 12 violation).  *See, e.g.*, *Falkowski* v. *Imation Corp.*, 309 F.3d 1123, 1132

10   n.2 (9th Cir. 2002), *amended by* 320 F.3d 905 (9th Cir. 2003) (Section 15 does not set forth

11   "separate grounds for liability"); *In re Washington Mutual, Inc. Securities, Derivative &*

12   *ERISA Litigation*, 259 F.R.D. 490, 508-09 (W.D. Wash. May 15, 2009) ("To state a claim

13   for control person liability, Plaintiffs must allege . . . a primary violation of the securities

14   laws. . . ."); *Fouad*, 2008 WL 5412397, at *11; *Rubke* v. *Capitol Bancorp Ltd.*, 460 F.

15   Supp. 2d 1124, 1151 (N.D. Cal. 2006) ("Adequate pleading of a primary violation is

16   required for a plaintiff to adequately plead control person liability.").  Here, Plaintiffs

17   neither expressly assert §§ 11 or 12 claims against the Issuing Trusts, nor plead facts

18   sufficient to support such claims even if they were made.  This defect is fatal to Plaintiffs'

19   § 15 claims against the Rating Agencies.

20           The few allegations in the SAC actually concerning the Issuing Trusts merely state

21   that the Issuing Trusts held "the mortgage loans" that served as collateral for the

22   Certificates, issued the Certificates, received the mortgage payments collected by WMB,

23   and "periodically distributed payments to investors as specified by the terms of the

24   Certificates." (SAC ¶¶ 7, 10, 23, 40, 216).  These few allegations fall far short of

25   demonstrating that the Issuing Trusts fall into any of the categories of persons subject to

26   primary liability under §§ 11 or 12(a)(2) of the Act.

Section 11 liability is limited, on its face, to the following entities:

> (1) every person who signed the registration statement; (2) every person who was a director . . . or partner in the issuer at the time of the filing . . .; (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner; (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him; [and] (5) every underwriter with respect to such security. 15 U.S.C. §77k(a).

Similarly, § 12 liability is limited to those entities that were direct sellers or solicitation sellers of the securities at issue. *See Pinter* v. *Dahl*, 486 U.S. 622, 642-43 (1988).

Here, the SAC contains no allegation that the Issuing Trusts sold the Certificates or performed any of the actions or roles that would trigger potential liability under §§ 11 or 12. For example, the Plaintiffs do not and cannot allege that the Issuing Trusts signed the Registration Statements or acted as "experts" or "underwriters" under § 11(a)(1), (a)(4) or (a)(5). Further, the Issuing Trusts — which Plaintiffs themselves assert are mere "shell entities" that performed no meaningful role here (SAC ¶ 216) — were not the registrants of the Certificates at issue and, by SEC regulation, are not the "Issuers" of the Certificates as that term is defined in the federal securities laws. Regulation AB, adopted by the SEC in January 2005, makes clear that it is the "depositor" in an asset-backed securities transaction that is considered the "issuer" of the Certificates – not the issuing trusts. 17 C.F.R. § 229.1100 (2005). *See also* Asset-Backed Securities, Release Nos. 33-8518, 34-50905, File No. S7-21-04 (Final Rule Dec. 22, 2004) ("[W]e are adopting our proposed specification that the depositor is the 'issuer' for purposes of Exchange Act reporting regarding asset-backed securities."). Accordingly, the Depositor — WMAAC — registered the Certificates here and acted as the "Issuer" for purposes of the federal securities laws. *See,*

1   *e.g.,* SAC ¶ 4 (alleging that WMAAC "prepared and filed the Registration Statements and

2   was the depositor of the underlying mortgage collateral into the Issuing Trusts"). There is

3   no allegation in the SAC — nor could there be — that the Rating Agencies "controlled"

4   WMAAC.

5   Similarly, Plaintiffs do not plead that the Issuing Trusts sold the Certificates to the

6   Plaintiffs to trigger potential liability under § 12(a)(2). Rather, it is WCC — an entity that

7   plaintiffs never allege the Rating Agencies controlled — that is alleged to have sold the

8   Certificates. *See, e.g.,* SAC ¶ 197 ("Defendant WCC . . . sold the Certificates pursuant to

9   the defective and misleading Prospectus Supplements for its own financial gain."). *See*

10   *also New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital, Inc.*, No. 08 Civ. 5653

11   (S.D.N.Y. Mar. 29, 2010) (dismissing § 12 claim against Issuing Trust where plaintiffs had

12   not pled that they "purchased the Certificates directly from the Issuing Trust").

13   In summary, Plaintiffs simply have not pled that the alleged controlled entities —

14   the Issuing Trusts — committed a primary violation under the 1933 Act. Accordingly, any

15   derivative claim for "controlling person" liability must be dismissed.

16   **B.     The Rating Agencies Are Not "Controlling Persons."**

17   Separate and apart from Plaintiffs' failure to plead a primary violation by the

18   Issuing Trusts, their § 15 claims against the Rating Agencies also must fail because the

19   SAC does not (and cannot) allege that the Rating Agencies "controlled" anyone, let alone

20   the Issuing Trusts.

21   Control is "the power to direct or cause the direction of the management and

22   policies of a person, whether through the ownership of voting securities, by contract, or

23   otherwise." 17 C.F.R. § 230.405 (standard adopted in *Safeway Portland Employees'*

24   *Federal Credit Union* v. *C.H. Wagner & Co.*, 501 F.2d 1120, 1124 n.17 (9th Cir. 1974)).

25   "The power to influence or persuade," however, "is not control for purposes of Section 15

26   of the 1933 Act." *In re Lehman Bros.*, 2010 WL 337997, at *5. "What is required is 'the

1    practical ability to *direct* the actions of people who issue or sell securities.'" *Id.* (emphasis

2    in original) (citation omitted).

3        Accordingly, in order to state a claim for control person liability, a plaintiff must set

4    forth facts that raise an inference that the defendant actually controlled the primary

5    violator's day-to-day affairs. "[T]he defendant's involvement in an isolated corporate

6    action" cannot be the basis for a control person claim; the control person inquiry

7    "revolve[s] around the 'management and policies' of the corporation, not around discrete

8    transactions." *Paracor Finance, Inc.* v. *General Electric Capital Corp.*, 96 F.3d 1151,

9    1162 (9th Cir. 1996). Moreover, conclusory allegations of control are insufficient as a

10   matter of law. *See, e.g., Fouad*, 2008 WL 5412397, at *13 (dismissing claims against

11   venture capital firms because plaintiffs relied upon conclusory allegations for § 15

12   liability); *McCasland* v. *Formfactor Inc.*, 2008 WL 2951275, at *11 n.27 (N.D. Cal. July

13   25, 2008) (allegations that defendants had the "power and authority to control information

14   released to the public by virtue of their position" were insufficient to "plead specific facts

15   upon which a fact finder could reasonably conclude that the individual defendants violated

16   the federal securities laws").

17       Here, Plaintiffs' allegations regarding the Rating Agencies are entirely devoid of

18   any of the hallmarks generally considered adequate to plead "control." *Cf. Fouad*, 2008

19   WL 5412397, at *12 (allegations of control found to be sufficient when defendant outside

20   directors were members of primary violator's audit committee, which was responsible for

21   internal controls, independent auditors, and review of financial results, press releases and

22   code of ethics, "the very mechanisms intended to prevent the alleged fraud"); *In re*

23   *Washington Mutual*, 259 F.R.D. at 509 (allegations of control found to be sufficient where

24   defendants had signed offering documents, served on the board and participated in the

25   board's audit committee and/or finance committee, especially where SEC filing stated that

26   entire board had been engaged in "'formulating and overseeing management's

1   implementation of risk management policies'"). Plaintiffs provide no factual basis to

2   assert that the Rating Agencies directed the day-to-day management or policies of the

3   Issuing Trusts.

4       Instead, Plaintiffs' § 15 claims against the Rating Agencies rely exclusively on the

5   strained theory that because the Rating Agencies allegedly controlled and determined the

6   "structure and levels of credit support" necessary to support the assigned credit ratings,

7   they "controlled" the Issuing Trusts. *See, e.g.*, SAC ¶¶ 10, 43. They plead nothing more

8   than that the rating process may have persuaded persons who controlled the issuer to

9   structure the securities in a certain manner. To date, ***every court*** to consider this theory has

10  rejected it. Indeed, identical claims against the Rating Agencies under § 15 have been

11  dismissed as a matter of law in the four cases that have decided the issue. *See In re Wells*

12  *Fargo*, No. 09-cv-1376, slip op. at 12-14 (Abrams Decl., Ex. B); *In re Lehman Bros.*, 2010

13  WL 337997, at *4-*5; *In re IndyMac*, No. 09-cv-04583, slip op. at 1 (Abrams Decl., Ex.

14  C); *Royal Bank of Scotland*, 2010 WL 1172694, at *7.

15      Most recently, on April 22, 2010, a federal court in California dismissed on a

16  motion to dismiss virtually identical § 15 claims with prejudice. *In re Wells Fargo*, slip op.

17  at 12-14 (Abrams Decl., Ex. B). The court specifically considered the plaintiffs' allegation

18  — like the allegation pled here — that "the Rating Agencies were able to influence certain

19  portions of the transactions at issue." *Id.* at 13. But this, the court found, was "insufficient

20  to plead a control person theory" because plaintiffs did not plead that the Rating Agencies

21  "had any sort of general 'power to direct or cause the direction of the management and

22  policies' of the originators and underwriters — the primary parties to the creation and

23  issuance of the Certificates.'" *Id.* (citing *Paracor*, 96 F.3d at 1162; *In re Stratosphere*

24  *Corp. Securities Litigation*, 1 F. Supp. 2d 1096, 1122 (D. Nev. 1998) ("Plaintiffs have

25  merely alleged that 'but for' the Underwriters' participation, the Stock Offering could not

26  have been accomplished. This type of proximate causation is not a sufficient basis for

RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED COMPLAINT (NO. 09-0037MJP) - 11

1    'control person' liability, which requires the exercise of actual power or influence over a

2    company.")[5]

3          The same compelling reasoning was set forth in *In re Lehman Bros.*, where another

4    court unequivocally rejected similar § 15 claims against the Rating Agencies. The *Lehman*

5    court held that the complaint there, like the SAC here:

6          > fairly read, alleges only that the Rating Agencies had the
          > power to influence [the alleged primary violators, including
7          > the issuing trusts] with respect to the composition of the
          > pools of mortgages to be securitized and the credit
8          > enhancements the Rating Agencies regarded as necessary to
          > obtain the desired ratings. *But those allegations fall*
9          > *considerably short of anything that could justify a*
          > *reasonable trier of fact in concluding that the decision*
10         > *making power lay entirely with the Rating Agencies.*

11   *Lehman*, 2010 WL 337997, at *5 (emphasis added). *See also New Jersey Carpenters*

12   *Health Fund* v. *Residential Capital, LLC*, 2010 WL 1257528, at *7 (S.D.N.Y. Mar. 31,

13   2010) (dismissing § 15 claims and holding that allegations were insufficient to plead that

14   "distinct, nonsubsidiary banks" that acted as underwriters were "control persons" of the

15   "companies that securitized and issued" the securities at issue).   Plaintiffs' § 15 claims

16   against the Rating Agencies here similarly should be dismissed.[6]

17         Moreover, Plaintiffs' conclusory allegations of "control" are directly refuted by

18   other allegations of the SAC, as well as the Offering Documents on which Plaintiffs base

19   their claims. For example, as noted above, pursuant to the Offering Documents, the Rating

20   Agencies were parties to neither the agreements that created the trusts nor to the

---

21   [5] The court further held that "plaintiffs' control person theory of liability overlaps substantially
22   with the theory by which plaintiffs seek to hold the Rating Agency Defendants directly liable
     under Section 11" — a theory that the court in *In re Wells Fargo* also rejected. *In re Wells Fargo*,
23   slip op. at 13. *See also supra* n.2 and accompanying text.

     [6] Indeed, accepting Plaintiffs' theory here would expand the 1933 Act beyond recognition.  Their
24   theory necessarily would convert all lawyers, accountants and other third-parties that advise
     issuers and underwriters into "controlling persons" of the entities that follow that advice.
25   Plaintiffs provide no legal authority for such an expansion of the 1933 Act and, indeed, there is
     none. *See Swartz*, 2008 WL 1968948, at *19-*20 (an assertion that an employee provided
26   economic and investment advice "is not an allegation of control").

RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED COMPLAINT (NO. 09-0037MJP) - 12

"governing instrument[s]" for the trusts. *See supra* pp. 4-5. In fact, the agreements setting

forth the "permissible activities" of the Issuing Trusts are agreements solely between the

trustee and WMAAC and/or WMB. Indeed, WMB and WMAAC are the entities that the

SAC asserts effectively controlled every aspect of the creation and issuance of the

Certificates, from "acquir[ing] the underlying mortgage loan collateral" to "deposit[ing] the

mortgage loans in each of the Issuing Trusts" to "fil[ing] the common Registration

Statements" and selling the Certificates. *See, e.g.,* SAC ¶¶ 2, 10, 23, 24, 35, 37, 89, 90,

184, 197. In their prior complaints, the Plaintiffs even said so in so many words. *See*

Amended Consolidated Class Action Complaint (Dec. 31, 2009) ¶ 7 ("WaMu controlled

almost every aspect of the creation and issuance of the Certificates — from origination and

pooling of the underlying mortgage loans, through the securitization of the loans and the

sale of the Certificates representing interests in the loans to Plaintiffs and the Class.").

Plaintiffs have since dropped this sentence from the SAC.

Plaintiffs' "control" theory is also contradicted throughout the SAC by Plaintiffs'

repeated allegations that the Wamu Defendants controlled the ratings assigned to the

Certificates through an alleged "ratings shopping" process. For example, the SAC alleges

that: "[i]n order to ensure that a substantial portion of the Certificates were awarded the

AAA ratings, WaMu had the Rating Agencies *compete* for the engagement by including

their proposed ratings as part of their bid for the Certificate ratings engagement." (SAC ¶

91) (emphasis added). *See also* SAC ¶ 115 ("In order to obtain the highest ratings for each

Certificate, WaMu *leveraged* the 'Big Three' credit rating agencies (Moody's, S&P and

Fitch) off one another and shopped around until it found the best ratings.") (emphasis

added); ¶ 117 ("WaMu would then again *'negotiate'* with S&P before the engagement was

finalized, in order to decrease the amount of loss coverage and credit enhancement S&P's

model required for the specific deal, while still maintaining the highest percentage of

AAA-rated Certificates.") (emphasis added). *See also* SAC ¶ 94 ("Rating Agencies may be

*pressured* by arrangers to produce a more favorable outcome or reduce credit enhancement levels, thus reducing the cost of the debt for a given level of cash inflows from the asset pool.") (emphasis added and other emphasis omitted).

For each of these reasons, Plaintiffs simply have not pled that the Rating Agencies "controlled" the Issuing Trusts — or any other entity — and their § 15 claims against the Rating Agencies should accordingly be dismissed.

## II.   PLAINTIFFS' § 15 CLAIMS AGAINST THE RATING AGENCIES ARE TIME-BARRED.

Plaintiffs' § 15 claims against the Rating Agencies should also be dismissed for the independent reason that they are time-barred.  Section 13 of the 1933 Act provides as follows:

> No action shall be maintained . . . under [11 or 12(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . . In no event shall any such action be brought to enforce a liability created under [ 11] more than three years after the security was bona fide offered to the public, or under [12(a)(2)] of this title more than three years after the sale.  15 U.S.C. §77m.[7]

Here, to the extent Plaintiffs' § 15 claims are based on offerings preceding November 23, 2006 — *i.e.*, three years before filing their claims against the Rating Agencies — they are absolutely barred by the three-year statute of repose.  In addition, with respect to *all* of the offerings at issue, Plaintiffs knew or should have known the material facts on which they base their § 15 claims against the Rating Agencies more than one year prior to filing their

---

[7] The limitations periods set forth in Section 13 are equally applicable to Section 15 claims because they are merely derivative of Section 11 or 12(a)(2) claims. *See Malone* v. *Clark Nuber*, 2008 WL 2545069, at *5) (W.D. Wash. June 23, 2008), *reconsideration granted in part on other grounds in* 2008 WL 4279502 (W.D. Wash. Sept. 12, 2008) ("Since Section 15 merely creates a derivative liability for violations of Sections 11 and 12, Section 13 applies to it as well") (quoting *Dodds* v. *Cigna Securities, Inc.*, 12 F.3d 346, 349 n. 1 (2d Cir. 1993).

1  claims on November 23, 2009.[8]   For this reason as well, they are barred by the one-year

2  statute of limitations.

### A.   Plaintiffs' § 15 Claims Against the Rating Agencies Based on 17 of the 36 Offerings Are Time-Barred by the Three-Year Statute of Repose.

The SAC lists the "Approximate Offering Date" for each of the offerings at issue.

(SAC ¶ 38). Seventeen of these have offering dates prior to November 23, 2006.

Accordingly, Plaintiffs' § 15 claims against the Rating Agencies with respect to these

securities are barred by the three-year statute of repose.  Of the remaining 19 offerings,

Plaintiffs have alleged that they purchased from only 5. (SAC ¶¶ 20-22).

### B.   Plaintiffs' § 15 Claims Against the Rating Agencies Are Time-Barred by the One-Year Statute of Limitations.

Plaintiffs' remaining § 15 claims against the Rating Agencies are also time-barred

under the applicable statute of limitations.  As the courts of this and other Circuits have

consistently observed, a plaintiff may be found to be on inquiry notice as a matter of law —

and therefore time-barred — on a motion to dismiss.  *See, e.g., In re Stac Electronics*

*Securities Litigation*, 89 F.3d 1399, 1411 (9th Cir. 1996); *In re Network Commerce Inc.*

*Securities Litigation*, 2006 WL 1375049, at *3 (W.D. Wash. May 16, 2006), *affirmed in*

*part and reversed in part on other grounds by Sherman* v. *Network Commerce Inc.*, 346

Fed. App'x. 211 (9th Cir. Sept. 22, 2009).

---

[8] Plaintiffs' claims against the Rating Agencies do not relate back to the filing of their initial complaint. Under Fed. R. Civ. P. 15(c)(1)(C)(ii), claims against a new defendant do not relate back unless the plaintiff can establish that the defendant was omitted from the original complaint due to a "mistake concerning the proper party's identity." Here, where the Rating Agencies' ratings were a part of the Registration Statements — and their identities thus known — Plaintiffs cannot possibly contend that the Rating Agencies were omitted from the original complaints because of a "mistake" as to their identity. *See, e.g., Louisiana-Pacific Corp v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993) (Rule 15(c) relation-back doctrine inapplicable where "[t]here was no mistake of identity, but rather a conscious choice of whom to sue").

In any event, as explained in the WaMu Defendants' brief, which the Rating Agencies join, Plaintiffs' claims were already time-barred in August 2008 when Plaintiffs filed their initial complaint.

1  The one-year period begins to run when the plaintiff receives either actual or

2  inquiry notice of a potential violation. *See, e.g., In re Stac Electronics Securities*

3  *Litigation*, 89 F.3d 1399, 1411 (9th Cir. 1996); *In re Network Commerce Inc. Securities*

4  *Litigation*, 2006 WL 1375049, at *3 (W.D. Wash. May 16, 2006). The Ninth Circuit

5  applies an "inquiry-notice-plus-reasonable-diligence test" to determine whether a statute of

6  limitations begins running due to inquiry notice. In other words, if the court determines

7  that a plaintiff was on "inquiry notice" by the relevant date, the claim will be time-barred

8  so long as the court also determines that the plaintiff, "in the exercise of reasonable

9  diligence, should have discovered the facts" allegedly supporting the complaint. *Id.*

10  (citation and internal quotation marks omitted). Where, as here, publicly available

11  information has indisputably put a plaintiff on notice of those facts on or before the inquiry

12  notice date, "the inquiry notice and reasonable diligence tests merge because of the level of

13  detail that was disclosed." *Kreek* v. *Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1060 (N.D.

14  Cal. 2009) (public information "not only put plaintiffs on notice," it also "exposed" facts

15  needed to file the action, thus triggering the statute of limitations); *see also In re Novagold*

16  *Resources Inc. Securities Litigation*, 629 F. Supp. 2d 272, 288 (S.D.N.Y. 2009) (plaintiff

17  that chooses to assert non-fraud securities claim is "on inquiry notice when it learns of the

18  probability of an earlier 'untrue statement' or 'omission,' not when it learns a misstatement

19  involved fraud").

20  Inquiry notice may be triggered by "any financial, legal, or other data, such as

21  public disclosures in the media about the financial condition of the corporation and other

22  lawsuits . . . that provide the plaintiff with sufficient storm warnings to alert a reasonable

23  person to the probability that there were either misleading statements or significant

24  omissions involved in the sale of securities." *In re Infonet Services Corp. Securities*

25  *Litigation*, 310 F. Supp. 2d 1106, 1113-14 (C.D. Cal. 2003) (citation and internal quotation

26  marks omitted). The Court "can impute knowledge of public information without

1   inquiring into when, or whether, individual shareholders actually knew of the information

2   in question." *Berry* v. *Valence Technology, Inc.*, 175 F.3d 699, 703 n.4 (9th Cir. 1999).

3   With respect to publicly available information such as press releases and news articles,

4   where there is a "reasonable nexus between the allegations made in the article[s] and the

5   nature of the action subsequently brought," such "article[s] . . . put shareholders on inquiry

6   notice." *Id.* at 705.

7          Here, where Plaintiffs' first complaint was filed over a year before they sued the

8   Rating Agencies, and where the SAC exclusively relies on *pre-November 2008 disclosures*

9   to support Plaintiffs' allegations, there can be no dispute that Plaintiffs were on inquiry

10  notice of the facts supporting their claims long before November 23, 2008.  For example,

11  Plaintiffs effectively concede that, *at the very latest*, they were on inquiry notice (and

12  more) of their claims in July 2008 after the release of a report by the SEC (the "July 2008

13  SEC Report"). (SAC ¶ 92 ("The July 2008 SEC Report confirmed significant undisclosed

14  conflicts of interest which gave the Rating Agencies an incentive to issue inflated ratings.

15  The July 2008 SEC Report found, in violation of SEC Rules, that 'key participants' in the

16  securitization process negotiated fees the Rating Agency would receive in exchange for its

17  high ratings.") (citation omitted)).  According to the SAC, the July 2008 SEC Report

18  provided the essential information for Plaintiffs' claims relating to the Rating Agencies'

19  alleged use of outdated models, their alleged role in structuring the offerings, the alleged

20  "ratings shopping" practice, and alleged conflicts of interest.  (SAC ¶¶ 92-94).  *See also*

21  SAC ¶¶ 95-96, 108-09, 122  (quoting and relying on press reports in April, June and

22  October 2008).  Indeed, the same counsel for Plaintiffs in this case actually brought claims

23  against the Rating Agencies under the 1933 Act based on similar allegations well before

24  November 23, 2008.  *See New Jersey Carpenters Vacation Fund* v. *Harborview Mortgage*

25  *Loan Trust*, No. 08-cv-5093 (HB) (complaint filed May 14, 2008).

26

1    Putting aside the merits, if any, of these pre-November 23, 2008 public reports,

2 each of these events as reported in the SAC put Plaintiffs on inquiry notice of their claims.

3 As such, these claims are now time-barred and should be dismissed.

### CONCLUSION

5    Plaintiffs' § 15 claims against the Rating Agencies should be dismissed.

7    DATED this 27th day of April, 2010.

8 RIDDELL WILLIAMS P.S.                          LANE POWELL PC

10 By ____/s/ Paul J. Kundtz_____        By ____/s/ Larry S. Gangnes_____
     Paul J. Kundtz, WSBA #13548                Larry S. Gangnes, WSBA #8118
11   Gavin W. Skok, WSBA #29766                 Lane Powell PC
     Riddell Williams P.S.                      1420 Fifth Avenue, Suite 4100
12   1001 Fourth Avenue, Suite 4500             Seattle, Washington 98101-2338
     Seattle, Washington 98154-1192             Telephone: 206-223-7036
13   Telephone: 206-624-3600
                                                Joshua M. Rubins
14   Floyd Abrams (pro hac vice)                James J. Coster
     Adam Zurofsky (pro hac vice)               SATTERLEE STEPHENS BURKE &
15   Tammy L. Roy (pro hac vice)                BURKE LLP
     CAHILL GORDON & REINDEL LLP                230 Park Avenue, Suite 1130
16   80 Pine Street                             New York, New York 10169
     New York, New York 10005                   Telephone: 212-818-9200
17   Telephone: 212-701-3000                    Facsimile: 212-818-9606
     Facsimile: 212-269-5420
18                                              Counsel for Moody's Investor Services, Inc.

19 Counsel for The McGraw-Hill Companies,

20 Inc.

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

Donna Hammonds, declares as follows:

I am over 18 years of age and a citizen of the United States. I am employed as an executive assistant by the law firm of Riddell Williams P.S.

On the date noted below, I electronically filed the foregoing document using the CM/ECF system which will notify the following:

- **Floyd Abrams**
  fabrams@cahill.com

- **David M Balabanian**
  david.balabanian@bingham.com

- **Michael H. Barr**
  mbarr@sonnenschein.com

- **Walter Eugene Barton**
  gbarton@karrtuttle.com, nrandall@karrtuttle.com, danderson@karrtuttle.com

- **Steve W. Berman**
  steve@hbsslaw.com, robert@hbsslaw.com, heatherw@hbsslaw.com

- **Andrew B Brettler**
  abrettler@stblaw.com

- **Frank Busch**
  frank.busch@bingham.com, theo.robins@bingham.com,
  frank.downing@bingham.com

- **Steven P Caplow**
  stevencaplow@dwt.com, patrickwatts@dwt.com, robinklein@dwt.com,
  sheilarowden@dwt.com

- **Kevin P Chavous**
  kchavous@sonnenschein.com

- **James J. Coster**
  jcoster@ssbb.com, managingclerk@ssbb.com, jregan@ssbb.com

- **Hal D Cunningham**
  hcunningham@scott-scott.com, halcunningham@gmail.com, efile@scott-scott.com

RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED COMPLAINT (NO. 09-0037MJP) - 19

- **Kerry F Cunningham**
  kerry.cunningham@dlapiper.com

- **Leslie D Davis**
  ldavis@sonnenschein.com

- **Corey E Delaney**
  corey.delaney@dlapiper.com, kerry.cunningham@dlapiper.com,
  richard.hans@dlapiper.com, patrick.smith@dlapiper.com

- **Joseph A. Fonti (Terminated)**
  jfonti@labaton.com, ElectronicCaseFiling@labaton.com

- **Brian C Free**
  bcf@hcmp.com, gcp@hcmp.com

- **Larry Steven Gangnes**
  gangnesl@lanepowell.com, sebringl@lanepowell.com, docketing-
  sea@lanepowell.com, donnellyjossm@lanepowell.com

- **Jonathan Gardner**
  jgardner@labaton.com

- **Joseph P Guglielmo**
  jguglielmo@scott-scott.com, efile@scott-scott.com

- **Richard F Hans**
  richard.hans@dlapiper.com, dorinda.castro@dlapiper.com

- **David Daniel Hoff**
  dhoff@tousley.com, efile@tousley.com

- **Julie Hwang (Terminated)**
  jhwang@labaton.com, ElectronicCaseFiling@labaton.com

- **Stellman Keehnel**
  stellman.keehnel@dlapiper.com, patsy.howson@dlapiper.com

- **Paul Joseph Kundtz**
  pkundtz@riddellwilliams.com, mdowns@riddellwilliams.com,
  mbergquam@riddellwilliams.com

- **Joel P Laitman**
  jlaitman@cohenmilstein.com

- **Bruce Earl Larson**
  blarson@karrtuttle.com, psteinfeld@karrtuttle.com

RATING AGENCIES' JOINT MOTION TO DISMISS THE SECOND
AMENDED CONSOLIDATED COMPLAINT (NO. 09-0037MJP) - 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

- **Mike Liles , Jr**
  mliles@karrtuttle.com

- **Christopher E Lometti**
  clometti@cohenmilstein.com

- **John D Lowery**
  jlowery@riddellwilliams.com, dhammonds@riddellwilliams.com

- **Douglas C McDermott**
  doug@mcdermottnewman.com, eric@mcdermottnewman.com

- **Bradley T. Meissner**
  bradley.meissner@dlapiper.com

- **Timothy Michael Moran**
  moran@kiplinglawgroup.com, cannon@kiplinglawgroup.com

- **Brian O. O'Mara**
  bomara@csgrr.com

- **Barry Robert Ostrager**
  bostrager@stblaw.com, managingclerk@stblaw.com

- **Nancy A Pacharzina**
  npacharzina@tousley.com, mhottman@tousley.com

- **John D Pernick**
  john.pernick@bingham.com

- **Louis David Peterson**
  ldp@hcmp.com, smp@hcmp.com

- **Kenneth J Pfaehler**
  kpfaehler@sonnenschein.com, nreeber@sonnenschein.com

- **Robert J Pfister (Terminated)**
  rpfister@stblaw.com

- **Daniel B Rehns**
  drehns@cohenmilstein.com

- **Kenneth M Rehns**
  krehns@cohenmilstein.com

- **Serena Richardson (Terminated)**
  srichardson@labaton.com, ElectronicCaseFiling@labaton.com

- **Rogelio Omar Riojas**
  omar.riojas@dlapiper.com, nina.marie@dlapiper.com, karen.hansen@dlapiper.com

- **Darren J Robbins**
  e_file_sd@csgrr.com

- **Tammy Roy**
  troy@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com, managingclerk@ssbb.com, jregan@ssbb.com

- **Stephen M. Rummage**
  steverummage@dwt.com, jeannecadley@dwt.com

- **Hollis Lee Salzman (Terminated)**
  hsalzman@labaton.com, ElectronicCaseFiling@labaton.com

- **Paul Scarlato**
  pscarlato@labaton.com, ElectronicCaseFiling@labaton.com

- **Arthur L Shingler**
  ashingler@scott-scott.com, efile@scott-scott.com

- **Gavin Williams Skok**
  gskok@riddellwilliams.com, dhammonds@riddellwilliams.com

- **Kim D Stephens**
  kstephens@tousley.com, kzajac@tousley.com, cbonifaci@tousley.com

- **Robert D Stewart**
  stewart@kiplinglawgroup.com, cannon@kiplinglawgroup.com

- **Steven J Toll**
  stoll@cohenmilstein.com, efilings@cohenmilstein.com

- **Mary Kay Vyskocil**
  mvyskocil@stblaw.com

- **Dennis H Walters**
  dwalters@karrtuttle.com, wbarker@karrtuttle.com

- **Adam Zurofsky**
  azurofsky@cahill.com

1    I declare under penalty of perjury under the laws of the United States that the

2    foregoing is true and correct.

3        DATED this 27th day of April, 2010.



Donna Hammonds