The Honorable Marsha J. Pechman

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

9
10

| | |
|---|---|
| BOILERMAKERS NATIONAL ANNUITY TRUST FUND, on behalf of itself and all others similarly situated, | Master Case No.: C09-0037 (MJP) |
| Plaintiff, | **WAMU DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| WAMU MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-ARI *et al*. | **NOTE ON MOTION CALENDAR: May 28, 2010** |
| Defendants. | |
| DORAL BANK PUERTO RICO, on behalf of Itself and All Others Similarly Situated, | ORAL ARGUMENT REQUESTED |
| Plaintiff, | |
| v. | |
| WASHINGTON MUTUAL ASSET ACCEPTANCE CORPORATION, *et al*. | |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Motion to Dismiss*
*(CV09-0037 MJP)*

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   FACTS .............................................................................. 4

      A.   Plaintiffs .................................................................. 4

      B.   The Securitization Process ....................................... 5

           1.   The Certificates .............................................. 7

           2.   The Loan Pools ............................................... 7

      C.   Plaintiffs' Claims .................................................... 8

      D.   Procedural History .................................................. 9

III.  ARGUMENT ................................................................... 10

      A.   Standard For Motion To Dismiss ............................ 10

      B.   Plaintiffs Lack Standing To Maintain This Action ......................................... 11

           1.   Plaintiffs Lack Standing to Assert any Claim with Respect to
                Certificates Not Purchased by any Named Plaintiff .......................... 11

           2.   Even where Plaintiffs Do Allege They Purchased Certificates,
                They Fail to Meet Section 12(a)(2)'s Direct Purchase
                Requirement ................................................... 13

      C.   Plaintiffs Allege No Actionable Misrepresentation ......................................... 14

           1.   Plaintiffs Fail to Allege any Actionable Misrepresentations or
                Omissions ...................................................... 15

                a.   Plaintiffs Fail to Allege Misrepresentations or
                     Omissions regarding Underwriting Guidelines for the
                     Mortgage Loans ....................................... 15

                b.   Plaintiffs Fail to Allege any Actionable
                     Misrepresentations or Omissions regarding Appraisals
                     or LTV Ratios .......................................... 20

                     i.    Appraisals Are Non-Actionable Opinion .................. 20

                     ii.   The Appraisal Misrepresentation Allegations Are
                           Deficient ....................................... 21

*Motion to Dismiss*
(CV09-0037 MJP) - *Page i*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

<u>TABLE OF CONTENTS</u>
(continued)

<u>Page</u>

        iii.    Because Plaintiffs' Allegations about Purportedly Inflated Appraisals Are Defective, There Can Be No Actionable Misrepresentations or Omissions regarding LTV Ratios .......................... 25

    c.    Plaintiffs Do Not Allege any Actionable Misrepresentations or Omissions Relating to the Ratings Assigned to the Certificates .................................................... 25

    2.    Plaintiffs' Allegations regarding Loan Delinquencies and Ratings Downgrades Constitute Impermissible "Fraud by Hindsight" Allegations ........................................................ 29

    3.    Plaintiffs Do Not Adequately Allege Materiality ............................... 31

D.    Plaintiffs' Sole Remedy Is The Cure Of Non-Complying Loans .................. 32

E.    The SAC Fails To Plead Cognizable Economic Loss Because There Are No Allegations That Plaintiffs Failed To Receive "Pass-Through" Payments ....................................................................................................... 34

F.    The Offering Documents Contained Specific Disclosures That Warned Of The Risks Faced By Investors In The Certificates...................................... 36

G.    The Section 15 Claim Fails As A Matter Of Law............................................ 38

    1.    Because Plaintiffs Have Not Pleaded an Underlying Section 11 or 12 Violation, Their Section 15 Claim Must Be Dismissed............ 38

    2.    Failure to Allege that any of the Individual Defendants or WCC Is a Control Person Is Fatal to the Section 15 Claim ......................... 39

H.    Certain Of Plaintiffs' Securities Act Claims Are Barred By The Statute Of Limitations .................................................................................................. 40

    1.    Plaintiffs' Securities Act Claims Relating to the Doral Bank Certificates Are Barred by the Statute of Limitations........................ 41

    2.    The Appraisal-Related Claims Are Time-Barred for Most Certificates ............................................................................................ 42

IV.    CONCLUSION ................................................................................................ 44

*Motion to Dismiss*
(CV09-0037 MJP) - *Page ii*

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

### TABLE OF AUTHORITIES

Page

**CASES**

*Admiralty Fund v. Hugh Johnson & Co.*,
   677 F.2d 1301 (9th Cir. 1982)........................................................................ 42

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
   646 F. Supp. 2d 385 (S.D.N.Y. 2009)........................................................ 34, 35

*Aizuss v. Commonwealth Equity Trust*,
   847 F. Supp. 1482 (E.D. Cal. 1993)............................................................... 42

*Al-Thani v. Wells Fargo & Co.*,
   No. C 08-1745 CW, 2009 U.S. Dist. LEXIS 2732 (N.D. Cal. Jan. 7, 2009)............... 39

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)..............................................................................42-43

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)............................................................................ 10

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988)........................................................................... 22, 31

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................... 10

*Belodoff v. Netlist, Inc.*,
   No. SA CV 07-00677 (MLGx), 2008 U.S. Dist. LEXIS 45289, at *20 (C.D. Cal.
   May 30, 2008)....................................................................................... 14

*Cooperman v. Individual, Inc.*,
   171 F.3d 43 (1st Cir. 1999)....................................................................... 38

*Dreiling* v. *American Exp. Co.*,
   458 F.3d 942 (9th Cir. 2006)....................................................................... 4

*Durham v. Kelly*,
   810 F.2d 1500 (9th Cir. 1987)..................................................................... 39

*Falkowski v. Imation Corp.*,
   309 F.3d 1123 (9th Cir. 2002)..................................................................... 29

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994)........................................................................ 35

*Motion to Dismiss*
(CV09-0037 MJP) - *Page iii*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

## TABLE OF AUTHORITIES
(continued)

Page

*Garber v. Legg Mason, Inc.*,
   537 F. Supp. 2d 597 (S.D.N.Y. 2008) ........................................................ 32

*Guenther v. Cooper Life Sciences, Inc.*,
   759 F. Supp. 1437 (N.D. Cal. 1990) .......................................................... 12

*Hertzberg v. Dignity Partners, Inc.*,
   191 F.3d 1076 (9th Cir. 1999) ............................................................ 13, 14

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*,
   936 F.2d 759 (2d Cir. 1991) ...................................................................... 15

*In re 2007 NovaStar Fin., Inc., Sec. Litig.*,
   No. 07-0139, 2008 WL 2354367 (W.D. Mo. June 4, 2008) ........................ 4

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
   665 F. Supp. 2d 404 (S.D.N.Y. 2009) ................................................. 24, 31

*In re Broderbund/Learning Co. Sec. Litig.*,
   294 F.3d 1201 (9th Cir. 2002) ................................................................... 34

*In re Charles Schwab Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009) .............................................................. 24

*In re Convergent Techs. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991) ..................................................................... 38

*In re DDi Corp. Sec. Litig.*,
   No. CV 03-7063, 2005 U.S. Dist. LEXIS 28216 (C.D. Cal. July 20, 2005) .................... 41

*In re Downey Sec. Litig.*,
   No. CV 08-3261, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ................. 18

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 ............................................................................................... 32

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   308 F. Supp. 2d 249 (S.D.N.Y. 2004) ...................................................... 20

*In re Leapfrog Enterprise, Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) .................................................... 38

*In re Lehman Bros. Sec. & ERISA Litig.*,
   No. 09 MD 2017 (LAK), 2010 WL 545992 (S.D.N.Y. Feb. 17, 2010).......... 12, 25, 26, 28

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

TABLE OF AUTHORITIES
(continued)

Page

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................. 31, 36

*In re Metricom Sec. Litig.*,
   No. C 01-4085 PJH, 2004 U.S. Dist. LEXIS 7834 (N.D. Cal. Apr. 29, 2004) ................ 23

*In re Silicon Graphics Inc. Sec. Litig.,*
   183 F.3d 970 (9th Cir. 1999) .................................................................................. 4

*In re Valence Tech. Sec. Litig.*,
   No. C 95-20459 JW, 1996 U.S. Dist. LEXIS 22135 (N.D. Cal. Jan. 23, 1996) .............. 13

*In Re Verifone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) .................................................................................. 27

*In re Wash. Mut. Inc. Sec. Litig.*,
   No. 2:08-MD-1919 (MJP), 2009 U.S. Dist. LEXIS 99727 (W.D. Wash. Oct. 27,
   2009) ...................................................................................................... 11, 13

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ...................................................................... 14, 36, 38

*Landmen Partners, Inc. v. Blackstone Group*,
   L.P., No. 08-CV-3601, 2009 WL 3029002 (S.D.N.Y. Sept. 22, 2009) .......................... 20

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383, 389 (5th Cir. 2010) ................................................................ 32, 33, 34

*Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.*,
   652 F. Supp. 2d 576 (E.D. Pa. 2009) ...................................................................... 35

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
   No. 08 CV 5093 (HB), 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ..................... *passim*

*N.J. Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
   No. 08 CV 5653 (PAC), Docket No. 84 (S.D.N.Y. Mar. 25, 2010) .............. 12, 21, 25, 26

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
   98 F.3d 2 (2d Cir 1996) ........................................................................................ 30

*Palmer v. Stassinos*,
   236 F.R.D. 460 (N.D. Cal. 2006) ............................................................................ 43

*Motion to Dismiss*
(CV09-0037 MJP) - *Page v*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

TABLE OF AUTHORITIES
(continued)

Page

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
538 F. Supp. 2d 662 (S.D.N.Y. 2008)..................................................................... 27

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
No. 08-10446 (RGS), 2009 U.S. Dist. LEXIS 91789 (D. Mass. Sept. 30, 2009)
("*Nomura*") ...................................................................................................... *passim*

*RSM Prod. Corp. v. Fridman*,
No. 06-CV-1152 (EJW), 2009 WL 424540 (S.D.N.Y. Feb. 19, 2009) ........................... 22

*Republic Bank & Trust Co. v. Bear, Stearns & Co. Inc., et al.*,
No 09-CV-287 (CRS), Docket No. 32 (W.D. Ky. Apr. 13, 2010) .................................. 17

*Rosenbaum v. Syntex Corp.*,
95 F.3d 922, 935 (9th Cir. 1996)........................................................................... 41

*Rubke v. Capital Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2008)............................................................................... 17

*Rubke v. Capitol Bancorp*,
No. 05-4800, 2006 U.S. Dist. LEXIS 43745 (N.D. Cal. June 16, 2006) ......................... 20

*Stack v. Lobo*,
Civ. No. 95-20049(SW), 1995 U.S. Dist. LEXIS 19966 (N.D. Cal. Apr. 20, 1995)........ 13

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
No. 08 Civ. 10637 (LAK), 2010 WL 816623, at *4 (S.D.N.Y. Mar. 11, 2010)... 21, 26, 28

*Twindle v. Threshold Pharms. Inc.*,
No. 07-CV-4972 (CW), 2008 U.S. Dist. LEXIS 58619 (N.D. Cal. July 11, 2008).......... 24

*Walters v. Edgar*,
163 F.3d 430 (7th Cir. 1998)................................................................................. 43

*Yourish v. Cal. Amplifier,*191
F.3d 983, 997 (9th Cir. 1999)................................................................................

**STATUTES**

15 U.S.C. § 77k(a) .............................................................................................. 14

15 U.S.C. §§ 77k(e), 77l(a)................................................................................... 34

15 U.S.C. § 77l(a)(2).......................................................................................... 14

Hillis Clark Martin &
Peterson, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

TABLE OF AUTHORITIES
(continued)

Page

15 U.S.C. § 77m................................................................................................ 40, 41

15 U.S.C. § 77o.................................................................................................... 38

**OTHER AUTHORITIES**

17 C.F.R. § 229.1111(a)(3) ................................................................................. 21

17 C.F.R. § 230.436(g)(1) ................................................................................... 26

*Asset-Backed Securities*,
    Securities Act Release No. 33-8518, 70 Fed. Reg. 1506, 1508-11 (Jan. 7, 2005)............ 35

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

## I.    INTRODUCTION

The past two years have seen the most stunning collapse of the United States' economy since the Great Depression.  The housing market led the way – home values in most parts of the country crumbled, dropping more than 25% in parts of California since 2008 and more than 40% in parts of Florida over the same period.  The rest of the country suffered similar declines in the historic downturn.

In 2006 and 2007, Plaintiffs purchased Mortgage Pass-Through Trust Certificates (the "Certificates"), a form of mortgage-backed security that gives the holder a right to proceeds of payments made on residential mortgages in an underlying loan pool.  These sophisticated institutional investors thus invested in the real estate market just as the housing bubble peaked and burst.  Now, concerned that the collapse of real estate values could reduce the payments they receive as Certificateholders, and despite their being well aware of the risks associated with a nationwide real estate downturn, Plaintiffs seek to avoid losses by having Defendants insure those payments.  Hence this lawsuit, by which Plaintiffs seek to recover under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 based on unsupported allegations that the Defendants, or some of them, made misstatements in securities offering documents about the appraisals performed for and the underwriting of the loans in the underlying loan pools and about the ratings given the Certificates.

These Plaintiffs are not the only investors in mortgage-backed securities looking to the courts for cover against the consequences of the economic downturn.  Indeed, Plaintiffs' own counsel is pursuing similar actions against other issuers of mortgage-backed securities based on essentially the same allegations.  But those courts that have addressed these allegations have largely found them insufficient to state a claim under the securities laws.  And so, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants WaMu Asset Acceptance Corp. ("WAAC"), WaMu Capital Corp. ("WCC"), Rolland Jurgens, Richard Careaga, Thomas Lehmann, Steven Fortunato, Donald Wilhelm, Diane Novak, and David

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

Beck now move to dismiss Plaintiffs' Second Amended Complaint ("SAC").[1]  The SAC should be dismissed for the following reasons:

*First*, a plaintiff must have standing to pursue its claims.  And in the context of a securities class action asserting claims regarding mortgage pass-through certificates, plaintiffs may only assert claims with respect to offerings in which they purchased.  Here, Plaintiffs cannot meet this requirement for 26 of the 36 offerings identified, and claims as to those securities must be dismissed.  Plaintiffs also lack standing under Section 12(a)(2) with respect to all offerings because they do not allege that they purchased the securities at issue directly from the defendants.

*Second*, claims under the securities laws must be based on allegations that the defendants made misrepresentations or omissions in connection with the sale of the securities at issue.  And, in a post-*Twomby*, post-*Iqbal* world, the allegations cannot be based on glossy generalities.  Plaintiffs' claims here are based on conclusory allegations about the mortgage industry generally and lack specific, factual allegations concerning the securities in which Plaintiffs invested or the loans underlying those securities.  Indeed, the SAC does not contain a single specific factual allegation about the conduct of WAAC, WCC or the Individual Defendants.  Instead, Plaintiffs claim that Washington Mutual Bank ("WMB"), which is not a defendant, engaged in improper loan underwriting and appraisal practices.  But Plaintiffs provide no support for these conclusory assertions.  Indeed, the SAC contains no factual allegations concerning WMB's underwriting, or anything specific to WMB at all.  The SAC further ignores pages of disclosures about the variety of loan underwriting programs used at WMB (including "low-doc" and "no-doc" loans) and pages of data about the specific loans in the Certificate loan pools.  Even Plaintiffs' appraisal allegations, which, as a matter of law are

---

[1] The identified individuals will be called the "Individual Defendants" and, collectively with WAAC and WCC, the "WaMu Defendants."  Plaintiffs also named Thomas Greene as a defendant.  Mr. Greene is deceased and, to the moving defendants' knowledge, his estate has never been served with the complaint.

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

non-actionable opinion, only rehash allegations made by the New York Attorney General ("NYAG") against one of two appraisal management companies WMB used.  Indeed, Plaintiffs make no attempt to link those alleged practices to even a single loan in a single loan pool underlying a single Certificate at issue here.  The District of Massachusetts recently dismissed a substantively similar action brought against another mortgage-backed securities issuer, without leave to amend, because conclusory allegations like Plaintiffs' are insufficient to state a claim.  *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 310 (D. Mass. 2009) ("*Nomura*").

*Third*, as the SEC filings informed investors, a Certificateholder's only remedy for loans that do not comply with the offering disclosures is to request repurchase or substitution for non-complying loans.  Plaintiffs neither identify non-complying loans nor allege any failure to repurchase or replace a non-complying loan or any misrepresentation with respect to the repurchase process itself.  As the Fifth Circuit recently held, the absence of such allegations is fatal to a Securities Act claim based on alleged breaches of representations regarding the loans making up the loan pools.

*Fourth*, a securities plaintiff cannot recover absent a showing that they suffered economic loss.  Here, Plaintiffs have not properly pleaded (and they cannot) that they suffered economic loss.  Purchasers of pass-through certificates, such as the ones at issue here, are entitled to no more than the pass-through payments from their certificates.  Plaintiffs do not allege that they failed to receive any payments.  Instead, they complain that they cannot sell the Certificates for the same price at which they bought them.  But the offering documents specifically warned not only that there might not be a secondary market for the Certificates, but also of the potential effects of a nationwide housing decline.  Plaintiffs cannot overcome these clear risk disclosures.

*Fifth*, Plaintiffs cannot maintain a Section 15 claim absent proper allegations of an underlying violation and specific facts demonstrating control by alleged control persons.

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1    Plaintiffs' allegations fail on both counts, and so none of the Individual Defendants nor WCC

2    can be liable as a "control person."

3         **Sixth,** certain of Plaintiffs' claims are barred by the statute of limitations.  The SAC

4    contains allegations relating to thirteen certificates (the "Doral Bank Certificates") that were

5    not part of the first complaint in this action, which was filed on August 1, 2008.  The claims

6    relating to the Doral Bank Certificates do not relate back to that original filing date.

7    Therefore, the claims as to the Doral Bank Certificates are barred by the Securities Act's one-

8    year statute of limitations.  Additionally, the appraisal related claims concerning most of the

9    Certificates are barred because they were brought more than one year after the NYAG filed its

10   complaint.

11                              *        *        *

12        Through the Certificates, Plaintiffs invested in the United States real estate market.

13   That may turn out to have been a bad investment, but Plaintiffs were fully informed of the

14   risks.  The SAC does not allege facts sufficient to support any other conclusion.  Plaintiffs'

15   claims should be dismissed.

16   **II.    FACTS**[2]

17        **A.    Plaintiffs**

18        Plaintiffs Doral Bank of Puerto Rico ("Doral Bank"), Policemen's Annuity and

19   Benefit Fund of the City of Chicago ("PABF Chicago"), and Boilermakers National Annuity

---

22        [2] As required on a motion to dismiss, the statement of facts assumes the truth of the SAC's well-
pled factual allegations, except to the extent they are shown to be false through judicially noticeable
23   facts.  Defendants' motion also relies on materials referenced and relied upon by Plaintiffs in the SAC,
such as the registration statements, prospectus supplements and other SEC filings at issue.  *See*
24   *Dreiling* v. *Am. Express Co.,* 458 F.3d 942, 946 n.2 (9th Cir. 2006) (stating that a court may take
judicial notice of matters of public record "such as SEC filings"); *In re Silicon Graphics Inc. Sec.*
25   *Litig.,* 183 F.3d 970, 986 (9th Cir. 1999) (holding that, on motion to dismiss, court may consider
documents referenced in complaint).  This Court may also take judicial notice of market phenomena.
26   *See, e.g.*, *In re 2007 NovaStar Fin., Inc., Sec. Litig.*, No. 07-0139, 2008 WL 2354367, at *1 (W.D. Mo.
June 4, 2008) (taking judicial notice of reversals in the housing industry) (applying *Tellabs, Inc. v.*
27   *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).

28

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 4 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

Trust ("Boilermakers") are a "public, diversified financial services company," a public benefits fund and a Taft-Hartley pension fund, respectively.  (SAC ¶¶ 20-22.)  Each is a sophisticated investor with the means (and likely the fiduciary obligation) not to have invested in Certificates without first having reviewed and understood the offering documents provided in connection with the sale of the Certificates.

## B.  The Securitization Process

The process of grouping loans into a pool and issuing securities supported by that pool of loans is called "securitization."  In summary, an entity called the "depositor" or "issuer" purchases a group of loans from one or more loan "originators":  banks or other entities that loaned money to borrowers.  After purchasing the loans, the depositor/issuer places the loans in a trust (the "loan pool") in exchange for securities (here, the "mortgage pass-through trust certificates") that represent a fractional interests in the trust and give the holder a right to a portion of the proceeds of the loans in the trust.  The depositor/issuer then sells the certificates to an underwriter, which then sells the certificates to the initial investors.  (SAC ¶¶ 47, 62, 67.)  In this case, WMB originated the bulk of the loans in the loan pools for the various certificates.  Defendant WAAC is the depositor/issuer, and Defendant WCC is the underwriter.  (*Id.* ¶¶ 23, 24, 37.)  The individual defendants are all alleged to have been officers and/or directors of WAAC and to have "functioned as directors of" the issuing trusts, (*id.* ¶¶ 27-34), but not all of the Individual Defendants signed both Registration Statements.  Messrs. Jurgens and Careaga signed only the 2006 Registration Statement and so cannot be held liable on Certificates issued under the 2007 Registration Statement.  (*Id.* ¶¶ 29-31.)  Messrs. Lehmann, Fortunato and Wilhelm signed only the 2007 Registration Statement and so cannot be held liable on Certificates issued under the 2006 Registration Statement.  (*Id.* ¶¶ 32-34).

Plaintiffs purport to bring claims on behalf of purchasers of thirty-five different series of WAAC-issued Mortgage Pass-Through Trust Certificates.  (SAC ¶¶ 1, 38, 39.)  The Certificates issued in each Series give the holder the right to a portion of the payments made

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 5 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

on the loans in the loan pool for that Series.  (*Id.* ¶ 45.)  For example, Certificates issued for Series 2006-AR1 give rights to the proceeds of payments on the 2,699 individual loans in the loan pool created for Series 2006-AR1, which are held in the WaMu Mortgage Pass-Through Certificates Series 2006-AR1 Trust.  Certificates issued for Series 2006-AR2 give rights to the proceeds of an entirely different set of 471 individual loans, which are held in the Series 2006-AR2 Trust.

Pursuant to the federal securities laws, WAAC filed a registration statement on December 30, 2005, amended on January 3, 2006 (together, the "2006 Registration Statement") (Request for Judicial Notice ("RJN") Ex. 1).  (SAC ¶ 25.)  WAAC filed a further registration statement on March 13, 2007, amended on April 9, 2007 (together, the "2007 Registration Statement" (RJN Ex. 21), and together with the 2006 Registration Statement, the "Registration Statements").  (*Id.* ¶ 26.)  Each Certificate was issued under either the 2006 or the 2007 Registration Statement, but not both.

Because the Certificates themselves were to be linked with specific loan pools, with a new loan pool to be created in connection with each Certificate Series, the Registration Statements contained summary information about the securitization process and the nature of the investment as well as a description of various risks inherent in the purchase of mortgage-backed securities.  They did not describe any of the loans in the prospective loan pools.  Indeed, because the loan pools had not been created at the time the particular Registration Statement was filed, the Registration Statements do not identify, and could not have, the originators for the loans in the loan pools.  *See* 2006 Reg. Stmt., Jan. 3, 2006 amendment at 28 (stating that loans would be purchased by depositor from WMB "or from banks, savings and loan associations, mortgage bankers, mortgage brokers [etc.]") (RJN Ex. 1); 2007 Reg. Stmt., Apr. 9, 2007 amendment at 29 (RJN Ex. 21) (same).  Later, as each Certificate Series was issued, WAAC filed a prospectus supplement that described the loans in the loan pool for that Series as well as the characteristics of the specific Certificates being issued.  This process of filing an original general registration statement and then later individual filings for specific

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

securities offerings is called "shelf registration."  Paragraphs 38 and 39 of the SAC identify the dates of each of the thirty-six different prospectus supplements filed in connection with the thirty-six separate Certificate Series offerings described therein.

In addition to the details about the loan pools, the prospectus supplements each contained detailed risk disclosures.  *E.g.* 2006-AR2 Pros. Supp. at S-13 - S-18; 2006-AR2 Prospectus at 5-24[3] (RJN Ex. 2).  A chart of the risk disclosures, together with the alleged misrepresentations or omissions they refute, is included as Appendix A hereto.

### 1.   The Certificates

The Certificates for each Series were issued at various levels, called "tranches," with different tranches having different payment priorities, different interest rates, and, of course, different risks.  (SAC ¶ 45.)  In other words, holders of the highest tranche in a Series (called "Class 1-A1" in Series 2006-AR2, for example) would be the first to receive their share of the mortgage payments from the loan pool each month.  The second tranche ("Class 1-A2" in Series 2006-AR2) would be the next to receive its share, and so on.  2006-AR2 Pros. Supp. at S-6 (RJN Ex. 2).  Different Series had different numbers of tranches.  For example, there are eight tranches of Certificates in Series 2006-AR2, but eighteen in Series 2006-AR14.  The different tranches of Certificates in a particular Series give their holders different rights.  In general, a lower tranche certificate pays a higher interest rate because it has a lower payment priority and, therefore, carries more risk than a higher tranche Certificate in the same Series.

### 2.   The Loan Pools

The loans that make up the pool for a specific Series are described in the prospectus supplement for that Series.  The prospectus supplement for Series 2006-AR2 explains that the loan pool for that Series contains 471 loans, discloses that all of the loans in the pool have fixed interest rates for either five or ten years, after which the interest rate is adjustable, and

---

[3] The Certificates at issue generally have the same or substantially similar risk disclosures.  For ease of reference, individual documents are cited as representative samples.

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

includes pages and pages of additional information about that loan pool.  The prospectus

supplements also describe the ranges of principal balances owing on the loans, the geographic

distributions of the loans, how many loans were originated with less than full documentation

of the borrower's income, the type of mortgage properties, and the range of loan-to-value

ratios on the loans (calculated at the time of origination).  2006-AR2 Pros. Supp. at S-76-82

(RJN Ex. 2).

>        **C.        Plaintiffs' Claims**

Plaintiffs' claims must be considered in light of the overall economic environment.

From 1997 through 2006, housing prices increased at an "unusually rapid rate," far "more

quickly than is customary" nationwide.  Mortgage Bankers Assoc., *Housing & Mortgage

Markets: An Analysis*, Sept. 6, 2005 (RJN Ex. 11).  In fact, home prices nationwide "rose

about 85% from 1997 to 2006 adjusted for inflation;" making it the "biggest national housing

boom in U.S. history."  Emily Freidlander, *Yale's Shiller: U.S. Housing Slump May Exceed

Great Depression*, Wall St. J. Online, Apr. 22, 2008 (RJN Ex. 12).  Seeking to capitalize on

the housing market, Plaintiffs invested in mortgage-backed securities.

The unusually steep increase in house prices came to an abrupt end in 2006 when

began the single largest decline in single-home values in this country's recorded history.

*Dropping a Brick*, The Economist (May 29, 2008) (RJN Ex. 13).  Even in the midst of the

downturn, however, people did not grasp the full extent of the decline.  *See, e.g.*, *Treasury's

Paulson - Subprime Woes Likely Contained*, Reuters Bus. & Fin., Apr. 20, 2007 (RJN Ex. 14)

("U.S. Treasury Secretary Henry Paulson said on Friday ***the housing market correction

appears to be at or near its bottom*** and that troubles in the subprime mortgage market will

not likely spread throughout the economy."  (Emphasis added)).  Ultimately, the rate at which

house prices fell led to a staggering rise in loan defaults.  *See Dropping a Brick*, The

Economist (RJN Ex. 13).  Plaintiffs cannot claim to have been surprised by these events,

however, as the possibility that these events might occur was disclosed in the Offering

Documents.

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

Now seeking to avoid the consequences of their investments, Plaintiffs allege three types of misrepresentations in the offering documents.  Plaintiffs allege that:

- Statements in the registration statements and prospectus supplements that appraisals were made in accordance with established appraisal guidelines and that they are required to conform with Uniform Standards of Professional Appraisal Practice are false because, according to plaintiffs, WMB pressured eAppraiseIT, one of the companies that managed its appraisals, to "hit" the LTV ratios necessary to allow more loans to close.  (SAC ¶¶ 79-81.)  Plaintiffs also allege that this "pressure[]" resulted in "defective LTV ratios" in the offering documents.  (*Id.* ¶ 81.)

- Representations in the prospectus supplements that the loans underlying the Certificates were originated to the underwriting guidelines of WMB and the other originators are false because, according to plaintiffs, WCC did not do sufficient due diligence with respect to the origination of the loans, WMB originated loans with missing or fabricated borrower information (*id.* ¶ 140) and WMB granted improper exceptions to underwriting standards (*id.* ¶ 145).

- The information in the prospectus supplements regarding the ratings of the Certificates was misrepresented because, according to Plaintiffs, the models used by the ratings agencies were outdated and there were allegedly undisclosed conflicts of interest between WMB and WAAC, on the one hand, and the ratings agencies, on the other, such that the ratings agencies had an incentive to issue inflated ratings, which resulted in insufficient credit support for the Certificates.  (*Id.* ¶ 166.)

Plaintiffs do not allege that they have actual knowledge of any of these allegedly misstated or omitted facts.  Instead, the allegations in the SAC, to the extent any source of information is cited at all, are based on statements copied from a separate lawsuit, statements from "confidential witnesses," statements in the press that relate to the mortgage industry and mortgage securitizations as a whole (rather than statements about WMB or any of the WaMu Defendants), and on Plaintiffs' allegation that ratings downgrades and purportedly high delinquency rates on the loans underlying the Certificates are evidence of the alleged misrepresentations.

### D.  Procedural History

This is the sixth complaint filed by a plaintiff in this action – the initial complaint, filed on August 1, 2008, the Boilermakers' original complaint filed on January 20, 2009, the Doral Complaint, filed in October 2009, the first Consolidated Class Action Complaint, filed November 23, 2009, the Amended Consolidated Class Action Complaint, filed December 31,

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 9 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

2009, and the SAC, filed April 1, 2010.  Yet, even with the benefit of nearly ***two years to investigate their claims since filing the initial complaint***, and having the benefit of reading the WaMu Defendants' Memorandum of Law in Support of the Motion to Dismiss the Consolidated Class Action Complaint, Plaintiffs still do not allege any facts about the loans backing Plaintiffs' Certificates or offer anything more than conclusory allegations about purportedly flawed underwriting, inflated appraisals and inaccurate credit ratings.  Moreover, despite promising in their request to file the SAC to drop claims for which they did not have standing, Plaintiffs continue to pursue claims as to the 26 transactions in which they have no interest whatsoever.  *See* Motion (1) For Leave to Amend the Consolidated Complaint; (2) To Deny Defendants' Pending Motions to Dismiss as Moot and without Prejudice; and (3) To Modify the Court's Scheduling Order at 3 (Dkt. No. 152) ("Motion to Amend") (RJN Ex. 24).

## III.  ARGUMENT

### A.  Standard For Motion To Dismiss

Plaintiffs' complaint cannot withstand a motion under Rule 12(b)(6) without having alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do."  *Id.* at 555 (alteration in original).  "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009).  Instead, a plaintiff must establish each element of its claims through ***factual allegations*** sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed.  *Iqbal*, 129 S. Ct. at 1950.

The allegations of the SAC fall far short of this standard.  As set forth below, Plaintiffs' claims are based on theories and conclusions rather than factual allegations.  In particular, Plaintiffs claim that the Registration Statements and the prospectus supplements

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

for the Certificates contained misrepresentations about the appraisals for the mortgage loans in the loan pools. Plaintiffs support their theories with conclusory allegations concerning mortgage loan origination, with literally no factual support, and assertions from a separate complaint brought by the New York Attorney General, none of which alleges facts relating to the origination or performance *of the loans in the pools supporting Plaintiffs' Certificates*. Without factual allegations demonstrating that their claims are more than generic speculation, there is no basis for the Court to allow Plaintiffs to proceed with a potentially massive inquiry into the underwriting of, or the appraisals of the properties securing, the loans in the loan pools for the Certificates at issue here. Plaintiffs fail to satisfy their obligations under Rules 8 and 12(b)(6), and their claims should be dismissed.

Dismissal is also appropriate under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs did not purchase, and thus lack standing to sue with respect to, at least twenty-five of the thirty-five Certificates at issue. This lack of standing deprives the Court of subject matter jurisdiction over claims with respect to the Certificates Plaintiffs did not buy. *See In re Wash. Mut. Inc. Sec. Litig.*, No. 2:08-MD-1919 (MJP), 2009 U.S. Dist. LEXIS 99727, at *55-56 (W.D. Wash. Oct. 27, 2009) (Pechman, J.) ("*WaMu II*") (citing *Casey v. Lewis,* 4 F.3d 1516, 1519 (9th Cir. 1993)); *Nomura*, 658 F. Supp. 2d at 303-04.

### B. Plaintiffs Lack Standing To Maintain This Action

#### 1. Plaintiffs Lack Standing to Assert any Claim with Respect to Certificates Not Purchased by any Named Plaintiff

Plaintiffs do not have standing to assert claims with respect to Certificates they did not purchase, and those claims should be dismissed. Indeed, Plaintiffs explicitly acknowledged this in their Motion to Amend. One of the five purported bases Plaintiffs sought to amend their complaint was "to conform the Complaint to this Court's holding in its October 27, 2009 Order with respect to standing in the *In re Washington Mutual, Inc. Securities Litigation*, No. 2:08-md-1919 (MJP) (the "MDL Action"), by withdrawing allegations related to offerings of

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 11 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1    Certificates that were not purchased by named plaintiffs." *Id*. at 3.  Notwithstanding this

2    promise, the SAC still purports to assert claims with respect to 25 Certificates not purchased

3    by any named plaintiff.

4        A plaintiff has the burden to establish that it has standing.  *See Guenther v. Cooper*

5    *Life Sciences, Inc.*, 759 F. Supp. 1437, 1439 (N.D. Cal. 1990).  "[T]o have standing under

6    section 11, plaintiffs must establish that they purchased shares either (1) directly in the public

7    offering for which the misleading registration statement was filed or (2) traceable to that

8    public offering . . . ."  *Id.*  The standing requirement is no different in a class action, as this

9    Court recently ruled in *WaMu II*.

10        Recent decisions ruling on the issue of plaintiffs' standing to assert Securities Act

11    claims on mortgage-backed securities – including several in which counsel to Plaintiffs here

12    are involved –have consistently agreed with this Court's *WaMu II* holding that plaintiffs may

13    only assert claims as to offerings in which some named plaintiff has purchased.  In *In re*

14    *Lehman Brothers Securities. & ERISA Litigation*, No. 09 MD 2017 (LAK), 2010 WL 545992,

15    at *7 (S.D.N.Y. Feb. 17, 2010) ("*Lehman Bros.*"), for example, the court dismissed claims as

16    to the 85 offerings in which no named plaintiff purchased Certificates, holding, "[n]amed

17    plaintiffs have purchased in nine of the ninety-four offerings.  They have not alleged any

18    personal injury stemming from the other eighty-five.  They therefore have no standing to

19    assert those claims." *Id*. at *3.  The court squarely rejected plaintiffs' argument that, because

20    the offerings were "conducted pursuant to the same shelf registration statements that governed

21    the nine offerings in which plaintiffs did purchase," they had standing to sue on all

22    Certificates.  *Id*.  In *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,

23    No. 08 CV 5093 (HB), 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ("*RBS*"), the court

24    reached the same conclusion, holding – in a case involving the same lead counsel as here –

25    that plaintiffs only had standing with respect to the two offerings in which they purchased,

26    and not 13 others that they never purchased but purported to sue on.  *Id*. at *7-8; *accord, N.J.*

27    *Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08 CV 5653 (PAC), Docket No.

28

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

84, at 6 (S.D.N.Y. Mar. 25, 2010) ("*DLJ*") (dismissing claims with respect to all but the one offering in which plaintiffs purchased); *Nomura*, 658 F. Supp. 2d at 303 ("the named plaintiffs are incompetent to allege an injury caused by the purchase of Certificates that they themselves never purchased.").

Here, Plaintiffs assert claims on behalf of purchasers of no fewer than 36 different Certificates.  (SAC ¶¶ 38, 39.)  But Doral Bank purchased only five different Certificates.  (*Id.* ¶ 20.)  Chicago PABF purchased an additional four.  (*Id.* ¶ 21.)  Named plaintiff Boilermakers purchased only one.  (*Id.* ¶ 22.)  Although not identified in the SAC, the plaintiffs in the original state court complaint, New Orleans Employees' Retirement System and MARTA/ATU Local 732 Employees Retirement Plan, purchased four other certificates (New Orleans Complaint ¶¶ 16-17).  Thus, at best, even assuming that Plaintiffs have standing to pursue claims of a plaintiff no longer a party ***and*** that the claims asserted with respect to the Doral Bank Certificate are not time-barred – and they are, as set forth *infra* at Part H – Plaintiffs have standing as to only ten of the Certificates listed in paragraphs 38 and 39 of the SAC.  And because the Doral Bank claims are time-barred and the New Orleans plaintiffs are gone from the case, that number is really seven.  *See WaMu II*, 2009 U.S. Dist. LEXIS 99727, at \*55-56 ("There is no named plaintiff who can be deemed 'a person acquiring such security' . . . as required by § 11(a), and, thus, no named plaintiff has suffered an actual injury.").

The claims relating to the twenty-five Certificates not purchased by any of the Plaintiffs in this action should be dismissed.  A chart reflecting the Certificates for which Plaintiffs have standing and those they do not is annexed as Appendix B hereto.

2.   Even where Plaintiffs Do Allege They Purchased Certificates, They Fail to Meet Section 12(a)(2)'s Direct Purchase Requirement

A plaintiff seeking to pursue a claim under Section 12(a)(2) must allege that it purchased its securities directly from the issuer of the prospectus in question.  *See Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999) ("Section 12 . . . permits suit

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 13 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

against a seller of a security by prospectus only by 'the person purchasing such security *from him*,' thus specifying that a plaintiff must have purchased the security directly from the issuer of the prospectus.  15 U.S.C. § 77l(a)(2) (emphasis added)."); *see also In re Valence Tech. Sec. Litig.*, No. C 95-20459 JW, 1996 U.S. Dist. LEXIS 22135, at *13-14 (N.D. Cal. Jan. 23, 1996) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 577-78 (1995)) (dismissing Section 12(a)(2) claim where plaintiffs failed to allege the purchase of securities in any public offering)); *Stack v. Lobo*, Civ. No. 95-20049(SW), 1995 U.S. Dist. LEXIS 19966, at *31-32 (N.D. Cal. Apr. 20, 1995) (holding that allegations that plaintiffs purchased pursuant to a prospectus, with nothing more, do not give rise to inference that plaintiffs' purchase had sufficient nexus to IPO and are thus insufficient to state a claim under Section 12(a)(2)).

Here, there is no allegation that any plaintiff purchased Certificates directly from either WAAC or WCC.  Instead, Plaintiffs rely on general allegations that they purchased Certificates "pursuant and traceable to the Registration Statements and subsequent Prospectus Supplements . . . ."  (SAC ¶¶ 20, 21, 22.)  These allegations are insufficient as a matter of law.  *See Hertzberg*, 191 F.3d at 1081.

Because Plaintiffs do not allege that they are direct purchasers, the Section 12(a)(2) claim must be dismissed.

### C.     Plaintiffs Allege No Actionable Misrepresentation

To state a Section 11 claim, a plaintiff must allege facts showing that the defendant issued a registration statement containing a material misrepresentation or omission.  *See* 15 U.S.C. § 77k(a); *Belodoff v. Netlist, Inc.¸* No. SA CV 07-00677 (MLGx), 2008 U.S. Dist. LEXIS 45289, at *20 (C.D. Cal. May 30, 2008).  Similarly, for a Section 12(a)(2) claim, a plaintiff must allege facts showing that the defendant sold securities through use of materials containing a material misrepresentation or omission.  *See* 15 U.S.C. § 77l(a)(2).  The standard of materiality under these statutes is the same.  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1423-24 (9th Cir. 1994) (agreeing with the District Court that "[t]he analysis this court applied to Plaintiffs' Section 11 claims . . . applies equally to Plaintiffs' claims under

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 14 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

Section 12(2).").  "The central inquiry in determining whether a prospectus is materially misleading . . . is . . . whether defendants' representations, ***taken together and in context***, would have [misled] a reasonable investor about the nature of the investment."  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 761 (2d Cir. 1991) (emphasis added) (internal quotations omitted).  Here, Plaintiffs' allegations fail to identify (1) any misrepresentations or omissions that (2) do not impermissibly allege fraud by hindsight and (3) are actionably material.

> 1.  Plaintiffs Fail to Allege any Actionable
> Misrepresentations or Omissions

Plaintiffs essentially allege three categories of purported misrepresentations or omissions:  (a) misrepresentations concerning adherence to underwriting guidelines (*e.g.*, SAC ¶¶ 136-45, 149); (b) failure to disclose the risk that appraisals would not accurately reflect the value of the properties underlying the mortgages in a mortgage pool and that LTV ratios would be misstated due to inflated appraisals (*id.* ¶¶ 147-48, 150-59, 165-67); and (c) allegedly erroneous credit ratings of the Certificates and the failure to disclose the role of the Rating Agencies in the securitization process and the impact of allegedly inaccurate ratings on the adequacy and nature of credit enhancement built into the Certificates (*id.* ¶¶ 160-64, 168-71).  But Plaintiffs fail to support any of their allegations with factual assertions sufficient to suggest that any purported misrepresentation or omission was made. Nor do Plaintiffs even attempt to allege any failure to cure a defective loan, the only remedy to which they are entitled under the offering documents.  In short, the SAC lacks factual allegations supporting any of Plaintiffs' theories, and Plaintiffs' claims must be dismissed.

> a.  Plaintiffs Fail to Allege Misrepresentations or
> Omissions regarding Underwriting Guidelines
> for the Mortgage Loans

Plaintiffs' claim that the loans in the loan pools were not originated as described in the SEC filings is not based on any allegation of facts relating to those loans, or, for that matter, any allegations of facts at all.  Instead, the allegation is based on generalized assertions that

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 15 of 44*

A/73363528.1

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

WCC did not perform sufficient due diligence regarding the loans in the loan pools (because the industry did not), and that in its zeal to originate loans WMB did not adhere to its underwriting guidelines.  These allegations are insufficient to state a claim.

*First*, Plaintiffs' allegations ignore that the offering documents specifically disclosed that loans were originated using different documentation programs, some with little or no verification of borrower income or assets, and that the originator would make exceptions to the guidelines for each of these programs.  So long as the underwriting guidelines applicable to the particular loan documentation type were accurately disclosed in the Prospectus Supplements – and there is no allegation that they were not – the offering documents were not misleading.  As fully disclosed, WMB used a number of documentation programs that called for less-than-full documentation of borrower income and assets:

- "The sponsor has several 'streamline' documentation programs under which the prospective borrower *income and assets either are not required to be obtained or are obtained but not verified*."  2006-AR1 Pros. Supp. at S-28 (RJN Ex. 3); 2007-HY1 Pros. Supp. at S-27 (emphasis added) (RJN Ex. 4).

- "For some mortgage loans that qualify under these programs, the *borrower's income and assets are not required to be obtained*.  For some other mortgage loans that qualify under these programs, the borrower's income and assets are obtained but not verified, the borrower's employment is verified with the employer by telephone, and the borrower's stated income must be reasonable for the borrower's occupation and assets (as determined in the underwriter's discretion)."  2007-HY1 Pros. Supp. at S-27 (emphasis added) (RJN Ex. 4).

- "Limited documentation and no documentation mortgage loans are mortgage loans which require less documentation and verification than other mortgage loans, and *which may be originated with minimal or no investigation into the related borrower's credit history and income profile by the originator.*  The underwriting for limited documentation or no documentation loans may be based primarily or entirely on an appraisal or other valuation of the mortgaged property and the LTV or combined LTV ratio at origination."  2006-AR1 Prospectus at 32 (emphasis added) (RJN Ex. 3).

Even with respect to these varied documentation programs, it was made abundantly clear that in certain circumstances, they would not be followed.  "*Exceptions to the sponsor's loan program parameters may be made* on a case-by-case basis if compensating factors are present."  2006-AR1 Pros. Supp. at S-30 (RJN Ex. 3) (emphasis added); 2007-HY1 Pros. Supp. at S-27 (RJN Ex. 4)  With these full and clear disclosures, Plaintiffs cannot now be

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

heard to complain that WMB did not verify information in loan applications.  Nor do Plaintiffs allege facts sufficient to infer that the fully disclosed documentation programs were not followed, or even that any exceptions to them were made.  *See Republic Bank & Trust Co. v. Bear, Stearns & Co. Inc., et al.*, No 09-CV-287 (CRS), Docket No. 32, at 12 (W.D. Ky. Apr. 13, 2010) (holding that disclosures in prospectus supplements for mortgage-backed securities concerning originators' alternative documentation programs, loans made to higher risk borrowers, the fact that Fannie Mae or Freddie Mac would not purchase the loans, and the fact that there would be exceptions to stated underwriting guidelines required dismissal of a complaint alleging misstatements in offering materials regarding these guidelines.

In addition, the specific characteristics of the loans were disclosed in the tables describing each loan pool.  For example, the Prospectus Supplement for the 2007-HY1 offering discloses that 892 (or approximately 91%) of the loans in Group 2 of the mortgage pool were "Reduced Documentation" loans that required little or no verification of income and no written verification of employment.  *See* 2007-HY1 at S-111 (RJN Ex. 4).  (The other loan groups for this Certificate have similar characteristics.)  Plaintiffs do not allege that this number is inaccurate.  Instead, ignoring the plain language of the descriptions of the various loan programs (including reduced documentation programs) and the extensive risk disclosures, as well as the table setting forth the number of reduced documentation loans, Plaintiffs blindly argue that the underwriting guidelines did not comply with the underwriting guidelines selectively quoted in the SAC.  But the offering documents did not state that every loan was originated in accordance with the particular guidelines Plaintiffs chose to quote.  The offering documents do disclose the specific number of loans in each pool originated under each of the various documentation programs, however, including "low-doc" and "no-doc" programs, as well as the nature of those programs.  The offering documents' extensive disclosures about WMB's actual underwriting of the loans in the loan pools thus directly refute Plaintiffs' claim that the offering documents were misleading.  *See Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1163-64 (9th Cir. 2008) (dismissing Sections 11 and 12(a)(2)

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 17 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

claims because alleged omissions are specifically disclosed in offering documents); *In re Downey Sec. Litig.*, No. CV 08-3261, 2009 WL 2767670, at *6 (C.D. Cal. Aug. 21, 2009) (rejecting plaintiff's allegation that "Downey failed to verify borrower's income and ability to make loan payments" because "Downey disclosed the extent of its use of stated income loans and the reduced documentation required to underwrite those loans").

        *Second,* rather than offering factual allegations about the origination of any of the *actual* loans held by the trusts issuing Plaintiffs' Certificates, Plaintiffs resort to generalized statements that "WMB lending officers regularly dealt with adverse information in a borrower's credit report by simply ignoring such information" (SAC ¶ 144(c)), and that "WaMu's emphasis on increasing the volume of loans at the expense of the quality of loans gave rise to an increasing number of defectively originated mortgage loans" (*id*. ¶ 144(b)). But Plaintiffs offer zero support for these statements. As the District of Massachusetts recently held, such allegations are insufficient as a matter of law:

> [P]laintiffs argue that the banks were hellbent on originating as many loans as possible with an eye to short-term profit without any regard to the ability of the borrowers to repay.
>
> Plaintiffs, however, omit numerous warnings flagging the permissive underwriting practices underlying the mortgage pools . . . .
>
> [T]he offering materials revealed the fact that ***the vast majority of the loans securing the 2006-AP1 and 2006-AF1 Certificates had been originated under limited documentation programs and that the borrower's income as a result had not been verified.*** Plaintiff's argument that they were not on notice of the originator's "soft" underwriting practices begs credulity.

*Nomura*, 658 F. Supp. 2d. at 306 (dismissing Section 11 and 12(a)(2) claims). As discussed above, the offering documents disclosed precisely the information that the *Nomura* court held to defeat the *Nomura* plaintiff's allegations. Moreover, like the plaintiff in *Nomura*, Plaintiffs' allegations here ignore the additional risk disclosures and the disclosure of the *actual makeup* of the mortgage pool. The disclosures include:

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

- "The Interest Only Loans Have a Greater Degree of Risk if a Default Occurs Because They do not Provide for any Payments of Scheduled Principal Until the Fifth, Seventh or Tenth Anniversary, as applicable, of their First Due Dates.  Approximately 98.4% of the mortgage loans in loan group 1, approximately 96.9% of the mortgage loans in loan group 2, approximately 96.4% of the mortgage loans in loan group 3, approximately 99.8% of the mortgage loans in loan group 4 and approximately 94.4% of the mortgage loans in loan group 5 (in each case, by principal balance as of January 1, 2007) do not provide for any payments of scheduled principal."  2007 HY-1 at S-20 (RJN Ex. 4).

- "Each mortgage loan owned by the Trust is an adjustable rate mortgage loan with an initial fixed-rate period."  *Id.* at S-16.

- "The mortgage loan sellers will generally review only a limited portion of the mortgage loans in any delivery of such mortgage loans for conformity with the applicable credit, appraisal and underwriting standards."  Reg. Stmt. at 43 (RJN Ex. 1).

In the face of these disclosures, Plaintiffs' conclusory allegation that, as a general matter, WaMu did not adhere to its underwriting guidelines "offer[s] nothing . . . to tie the alleged conduct *to the loans at issue in this litigation*."  *Nomura*, 658 F. Supp. 2d. at 306, n.5 (emphasis added).

*Third*, Plaintiffs' allegations as to WCC's diligence is conclusory at best.  Plaintiffs allege that WCC did "cursory" due diligence on loans and that WCC outsourced the due diligence process to outside firms.  (SAC ¶¶ 85-86.)  But Plaintiffs point to no statement in the offering documents that is made inaccurate by either of these assertions, even if true.  Those statements establish absolutely nothing about the diligence performed as to the loans in the loan pools for these Certificates.  Nor do Plaintiffs allege that either of the firms was the due diligence provider for WCC on these Certificates (and, in fact, neither Clayton nor Bohan provided diligence services to WCC in connection with the Certificates listed in the SAC).  They do not allege what WCC's due diligence practices were.  Nor do they show that the due diligence performed on the loans in these loan pools missed any loan origination problems.

*Fourth*, as disclosed in the prospectus supplement, the loans in the mortgage loan pool for the WMALT 2007-OA5 offering were originated primarily by MortgageIT, Inc (27.7%), Virtual Bank (16.3%), and SunTrust Mortgage, Inc. (11.4%).  WMALT Series 2007-OA5 Pros. Supp. at S-5.  (RJN Ex. 22.)  As the SAC is barren of any allegations regarding the

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

origination practices of any of these three loan originators, Plaintiffs cannot state a claim as to this offering.  Of course, the absence of allegations related to these originators also exposes more generally the essentially rote nature of Plaintiffs' allegations.

*Fifth*, Section 1111 of SEC Regulation AB requires only that "known" deviations from stated underwriting guidelines be disclosed in offering materials for mortgage-backed securities, and Plaintiffs do not even allege that Defendants were aware of any non-complying loans, itself a basis for dismissal.  *See* 17 C.F.R. § 229.1111(a)(3); *Rubke v. Capitol Bancorp*, No. 05-4800, 2006 U.S. Dist. LEXIS 43745, at *38-39 (N.D. Cal. June 16, 2006) (dismissing Section 11 claims because plaintiff failed to identify the SEC Regulation or other legal authority requiring disclosure); *Landmen Partners, Inc. v. Blackstone Group*, L.P., No. 08-CV-3601, 2009 WL 3029002, at *9 (S.D.N.Y. Sept. 22, 2009) (dismissing Securities Act claims where SEC regulation required disclosure of "known trends" and plaintiff did not allege that defendants had knowledge of omitted information); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 255 (S.D.N.Y. 2004) ("When a plaintiff claims that the defendant failed to disclose information in a prospectus, the plaintiff must plead facts demonstrating the defendant possessed the omitted information when the registration statement became effective and that the defendant had a duty to disclose that information.").

*Twombly* and *Iqbal* demand that a complaint not be based on a plaintiff's conjecture. That is all that is contained in Plaintiffs' allegations regarding the underwriting of and diligence performed on the loans in the loan pools.  Their claims should be dismissed.

> b.   Plaintiffs Fail to Allege any Actionable Misrepresentations or Omissions regarding Appraisals or LTV Ratios

> i.   Appraisals Are Non-Actionable Opinion

As several recent decisions from the Southern District of New York have confirmed, a plaintiff cannot base a misrepresentation claim on purportedly inflated property appraisals for the evident reason that appraisals are matters of opinion and thus not actionable.  "[N]either an appraisal nor a judgment that a property's value supports a particular loan amount is a

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

statement of fact.  Each is instead a subjective opinion based on the particular methods and assumptions the appraiser uses." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, No. 08 Civ. 10637 (LAK), 2010 WL 816623, at *4 (S.D.N.Y. Mar. 11, 2010); *see also RBS*, 2010 WL 1172694, at *10; *DLJ*, Docket No. 84, at 12.  The *Tsereteli* court specifically held that allegations that offering documents failed to disclose that appraisals were not conducted in accordance the Uniform Standards of Professional Appraisal Practice and were inflated did not state a claim under Section 11.  2010 WL 816623, at *4.  The reasoning was clear:  "A subjective opinion is actionable under the Securities Act only if the . . . complaint alleges that the speaker did not truly have the opinion *at the time it was made public*."  *Id.* (emphasis added).  Finding the complaint devoid of such allegations, the court dismissed plaintiffs' claims.  *Id.*

Here, Plaintiffs allege that "WaMu's appraisals did not conform to the USPAP standards and did not portray accurate market data and valuation."  (SAC ¶ 62.)  This says nothing about whether any appraisal was believed inaccurate at the time the appraisal was made.  The remaining allegations of inflated appraisals are borrowed entirely from the NYAG Complaint against eAppraiseIT.  (SAC ¶¶ 64-84)  But again, nothing Plaintiffs cite supports the inference that any Certificate was backed by a loan (let alone a material number of loans) with an appraisal that the appraiser did not believe at the time it was made.  Plaintiffs have thus alleged only disagreement with appraisal values, which is not actionable as a matter of law.  *Tsereteli*, 2010 WL 816623, at *4; *RBS*, 2010 WL 1172694, at *10.

ii.     The Appraisal Misrepresentation Allegations Are Deficient

Plaintiffs' allegations of improper appraisal practices are further defective because Plaintiffs do not purport to have knowledge of any facts showing that the appraisal of any loan underlying their Certificates was inflated.  Instead, they rely almost entirely on wholesale copying of the allegations contained in the NYAG Complaint against eAppraiseIT (one of two primary independent appraisers used by WMB.)  But Plaintiffs cannot satisfy their pleading burden simply by borrowing another plaintiff's allegations.  *See Tsereteli*, 2010 WL 816623,

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

at *4 (holding that quoting from a third party's report, which concluded defendants' appraisals were not in compliance, did not satisfy pleading standard on motion to dismiss); *RSM Prod. Corp. v. Fridman*, No. 06-CV-1152 (EJW), 2009 WL 424540, at *12 (S.D.N.Y. Feb. 19, 2009) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976) (holding that "paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f).").  In order to prevail on their appraisal-related claims, Plaintiffs must demonstrate that because of WMB's purportedly improper appraisal practices, the appraisals for the loans *in the loan pools* were **materially** inflated; that enough actual loans in the pools, in other words, were inflated to such an extent that disclosure of "true" appraisal values would have impacted an investor's view of investing in the Certificates.  *See Basic, Inc. v. Levinson,* 485 U.S. 224, 231-32 (1988) ("there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.").  This is a standard Plaintiffs cannot meet, and their generalized appraisal allegations fail to raise Plaintiffs' claims above the speculative level, for a number of reasons.

   ***First,*** is simply a question of sheer number.  Plaintiffs have not alleged facts sufficient to show that the appraisal for even a single loan in a single Certificate loan pool was inflated, let alone that so many of the loans were based on inflated appraisals that the alleged inflation would have impacted an investor's view of the investment.  Indeed, Plaintiffs do not allege that the loans in their Certificate pools were appraised using an allegedly flawed process.  Nor do they identify even a single loan, in any of the separate mortgage pools at issue, that was based on an "artificially" high appraisal or was "not prepared in conformance with Fannie Mae or Freddie Mac appraisal standards."  (SAC ¶ 147(a)).

   Instead, Plaintiffs offer only generalized allegations that "WaMu pressured independent appraisal firms . . . to artificially inflate property appraisals" (SAC ¶ 139(a)), that "appraisals were not obtained from independent appraisers . . . [and thus] were not prepared in

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 22 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

conformance with Fannie Mae or Freddie Mac appraisal standards," and that "WaMu failed to confirm that appraisers were following the [USPAP] Guidelines" (*id.* ¶ 147(b)).  These unsupported sweeping generalities say nothing about the ***actual*** appraisals performed for the ***actual*** loans underlying the Certificates and, as a matter of law, are insufficient.  *See In re Metricom Sec. Litig.*, No. C 01-4085 PJH, 2004 U.S. Dist. LEXIS 7834, at *42 (N.D. Cal. Apr. 29, 2004) (granting dismissal, with prejudice, where documents contradict allegations, and holding that "[t]he court may also disregard allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

     ***Second***, Plaintiffs' reliance on the NYAG's allegations is misplaced as, on its face, the NYAG Complaint does not support Plaintiffs' theory.  Among other things, the NYAG Complaint focuses primarily on 2007 appraisal practices (NYAG Compl. ¶¶ 37-90 (RJN Ex. 19)), and in any event, alleges no wrongdoing prior to August of 2006 at the earliest (*see id.* ¶ 30).  But many, if not most, of the loans in the loan pools at issue here were originated prior to August 2006.  Indeed, Certificate Series 2006-AR1 through 2006-AR9 were issued before August 2006 and, therefore, all of the loans in the loan pools for those Certificates had to have been originated before that time.  *See, e.g.,* 2006-AR9 Pooling and Servicing Agreement at 1 (transaction dated July 1, 2006) (RJN Ex. 5).  And even some Certificates issued after August 2006 had loan pools in which the vast majority of loans were originated before August 2006.  For example, the loan pool for Certificate Series 2007-HY2, which was issued in February 2007, held 2,442 loans.  At most, 144 of these loans – approximately 5.9% – were originated in or after August 2006.  Series 2007-HY2 Pros. Supp. at S-96, S-100, S-103 (RJN Ex. 6).

     Moreover, the NYAG Complaint only contains allegations relating to eAppraiseIT, and Plaintiffs do not allege that eAppraiseIT was the appraiser for any of the loans in the Certificate loan pools.  Nor could they.  As Plaintiffs admit, WMB used Lender Services, Inc. ("LSI") as an appraiser along with eAppraiseIT, and the New Orleans plaintiffs originally alleged that, from December 2006 through February 2007, WMB used LSI exclusively.  (New

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 23 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

Orleans Complaint ¶¶ 59, 66, 68).  Yet, the SAC does not allege any facts relating to LSI, let alone facts demonstrating that LSI-performed appraisals were inflated.

*Third*, Plaintiffs' sole attempt to tie their appraisal allegations to actual loans in the loan pools itself demonstrates the insufficiency of Plaintiffs' allegations.  After alleging that a "Review of Value" process resulted in inflated appraisals, Plaintiffs alleged that, in the six-month period from November 2006 to May 2007, eAppraiseIT performed eight such reviews for WMB in New York.  For seven of those appraisals, the appraised value after the review was between 1.2% and 5% higher than the original appraised value.  (*See* SAC ¶ 83.) Plaintiffs did not allege that any of these eight loans is in a pool underlying the Certificates here, that the reviews were improper or inconsistent with appraisal standards or regulations or with the disclosures in the registration statements or prospectus supplements, or that the reconsidered values were in fact inflated.  The allegations about these eight loans are thus without substance.  *See In re Charles Schwab Sec. Litig.*, 257 F.R.D. 534, 560-61 (N.D. Cal. 2009) (granting motion to dismiss Section 11 claims because the allegedly mispriced assets do not align with those identified in auditing reports).  *See also In re Britannia Bulk Holdings, Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 418 (S.D.N.Y. 2009) (post-offering statements regarding company's speculative investments in forward freight agreements "cannot support Plaintiff's allegations of a widespread speculative practice, untethered to identifiable shipments or anticipated transactions, that went undisclosed in the Offering Documents").  Moreover, even if, in the context of the thousands of loans underlying the Certificates at issue here, a few loans were supported by inflated appraisal values, that inflation would not be material.  *See* Part B(3), *infra*.

The SAC does not contain any factual allegations regarding the appraisals underlying the loans in the mortgage pools, much less any factual allegations contradicting the disclosures in the offering documents.  *See Twinde v. Threshold Pharms. Inc.*, No. 07-CV-4972 (CW), 2008 U.S. Dist. LEXIS 58619, at *27 (N.D. Cal. July 11, 2008) (dismissing claim

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1  where "Lead Plaintiff has failed to allege any misstatements or omissions" in offering

2  documents).  Accordingly, Plaintiffs' appraisal allegations fail to support a claim.

3              iii.      Because Plaintiffs' Allegations about Purportedly
                         Inflated Appraisals Are Defective, There Can Be
4                        No Actionable Misrepresentations or Omissions
                         regarding LTV Ratios
5
6          Plaintiffs' claim relating to loan-to-value ratios should be dismissed "for the evident

7  reason that it is dependent upon plaintiffs' unsubstantiated allegations . . . with regard to the

8  appraisal methods."  *Nomura*, 658 F. Supp. 2d. at 308.  Indeed, the allegations of the SAC

9  make clear that the LTV ratio allegations are duplicative of, and derived entirely from,

10  Plaintiffs' flawed appraisal allegations:  "An accurate appraisal is critical in determining the

11  usable loan-to-value ("LTV") ratio for a mortgaged property."  (SAC ¶ 57.)

12         The SAC lacks any factual allegations demonstrating either that the appraisals on

13  properties securing loans in the loan pools were inflated or that this conjectured inflation

14  resulted in materially misstated LTV information in the offering documents.  Instead,

15  Plaintiffs rely on unsupported allegations about eAppraiseIT's practices that are insufficient to

16  support their claims.

17              c.       Plaintiffs Do Not Allege any Actionable
                         Misrepresentations or Omissions Relating to the
18                       Ratings Assigned to the Certificates

19         Plaintiffs fail to plead any actionable misrepresentations or omissions relating to the

20  ratings assigned to their certificates.  *See Nomura*, 658 F. Supp. 2d. at 309 (dismissing

21  Securities Act claims relating to ratings assigned to mortgage pass-through certificates);

22  *Lehman Bros.*, 2010 WL 545992, at *7 (holding that credit ratings are opinions and thus non-

23  actionable unless not truly held beliefs); *DLJ*, Docket No. 84, at 12 (same).

24         *First*, the ratings assigned to Plaintiffs' certificates cannot give rise to liability under

25  the Securities Act because, *inter alia*, they are not considered part of the registration statement

26  for the certificates.  *See* 17 C.F.R. § 230.436(g)(1) ("[T]he security rating assigned to a class

27  of debt securities, a class of convertible debt securities, or a class of preferred stock by a

28

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 25 of 44*

A/73363528.1

1   nationally recognized statistical rating organization . . . shall not be considered a part of the

2   registration statement.").

3        ***Second***, Plaintiffs allege that the offering documents "contain material misstatements

4   and omissions of fact, including the failure to disclose that the amounts and forms of credit

5   enhancement were understated and insufficient because they were largely determined by

6   Rating Agencies' models that had not been materially updated since 1999 (for S&P) and 2002

7   (for Moody's). . . ."  (SAC ¶ 105).  As an initial matter, there is no duty to disclose the

8   methodologies or models used by the Rating Agencies, so the alleged failure to disclose this

9   information cannot constitute an omission.  *Tsereteli*, 2010 WL 816623, at *5.  Moreover,

10  ratings are "a statement of opinion by each agency that it believed, based on the models it

11  used and the factors it considered, that the credit quality of the mortgage pool underlying each

12  Certificate was sufficient to support the assigned rating."  *Id.*  These statements are not

13  actionable because the SAC fails to allege that the speaker "did not truly hold [these] opinions

14  at the time they were made public."  *Id; see also Lehman Bros.*, 2010 WL 545992, at *7

15  (same); *DLJ*, Docket No. 84, at 12 (same).

16       Plaintiffs attempt to cure this fatal deficiency by offering excerpts from various news

17  articles, confidential witness testimony, and after-the-fact statements by Moody's and S&P

18  employees (*see* SAC ¶¶ 107-13), but none of the proffered quotations relates to the ratings of

19  the Certificates at issue.  In *Nomura*, the court held that similar snippets of quotations failed to

20  show that an opinion was an actionable misstatement.  To the extent that any of the statements

21  cited by Plaintiffs were made prior to the effective date of the Offering Documents – and

22  Plaintiffs have not alleged that they were – these statements are also insufficient because

23  Plaintiffs "offer nothing that suggests" that the statements are related to the ratings of the

24  Certificates at issue here.  *Nomura*, 658 F. Supp. 2d at 307-08.  At best, Plaintiffs' allegations

25  support an inference that some people believe credit ratings in unidentified deals may have

26  been inaccurate, or that a "different set of models, based on a different set of assumptions,

27

28

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

might have resulted in a different rating." *Tsereteli*, 2010 WL 816623, at *5.  Such allegations are not actionable and must be dismissed.  *Nomura*, 658 F. Supp. 2d at 309-10.

**Third**, the offering documents disclosed the ratings assigned to the certificates at the time.  *See Nomura*, 658 F. Supp. 2d. at 309 (dismissing Securities Act claims because "plaintiffs do not allege that defendants inaccurately reported the actual ratings awarded by Moody's and S&P").  The Rating Agency Defendants' later downgrades do not mean that the ratings were not properly disclosed when issued.  As courts across the country agree, such hindsight pleading does not satisfy *Twombly*.  *See In Re Verifone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993) (affirming dismissal with respect to incorrect projections because "[t]he fact that the prediction proves to be wrong in hindsight does not render the statement untrue when made."); *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669-70 (S.D.N.Y. 2008) (allegations implying "that what only became clear due to subsequent events was somehow known [to defendants] far earlier" is speculative hindsight pleading that fails to satisfy the *Twombly* notice pleading standard); *RBS*, 2010 WL 1172694, at *14 (dismissing allegations that ratings downgrades supporting Securities Act claims).  Indeed, it is more plausible that ratings downgrades resulted from the unprecedented collapse of the residential real estate market.  The offering documents expressly warned investors that:

- A security rating is not a recommendation to buy, sell or hold securities and **may be subject to revision or withdrawal at any time** by the assigning rating agency."  2006-AR2 Pros. Supp. at S-74 (emphasis added) (RJN Ex. 2).

- The ratings on the offered certificates address the likelihood of the receipt by certificateholders of all distributions with respect to the underlying mortgage loans to which they are entitled. ***The ratings do not represent any assessment of the likelihood that the rate of principal prepayments by mortgagors might differ from those originally anticipated***.  As a result of differences in the rate of principal prepayments certificateholders might suffer a lower than anticipated yield to maturity."  *Id*. at S-74 (emphasis added).

- "[T]he rate and timing of defaults and liquidations on the mortgage assets will be affected by the general economic condition of the region of the country in which the related mortgaged properties are located.  The risk of delinquencies and loss is greater and prepayments are less likely in regions where a weak or deteriorating economy exists, as may be evidenced by, among other factors, increasing unemployment or falling property values."  *Id*. at 40.

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1  In light of these disclosures, and the undisputed real estate decline, Plaintiffs cannot now

2  claim they were misled in purchasing the Certificates.

3      **Fourth**, the SAC pleads no factual basis for the claim that the Rating Agency

4  Defendants used "outdated" models or issued "inflated ratings."  (SAC ¶¶ 92, 105-13.)

5  Instead, Plaintiffs rely entirely on hindsight criticism of the Rating Agencies' general

6  practices.  (*Id.* ¶¶ 99-102), and their claims are insufficient as a matter of law.  *See Nomura*,

7  658 F. Supp. 2d. at 309-10 (lack of factual allegations indicating that ratings were

8  compromised at the time they were made and reliance on after-the-fact admissions that

9  models were wrong requires dismissal of Section 11 claim).

10      **Fifth**, the SEC has previously considered, and declined to adopt, any requirement that

11  offering documents disclose (i) "the method of compensating the rating organization";

12  (ii) "the extent of the rating organization involvement in the structuring of the security"; or

13  (iii) "activities that could be viewed as 'ratings shopping.'"  SEC Proposed Rules, Securities

14  Act Release No. 33- 7086, 1994 WL 469347, at *9-10 (Aug. 31, 1994).  Accordingly, the

15  allegations that the Rating Agencies played a role in structuring the offerings (SAC ¶¶ 121-

16  29), that there was a conflict of interest between WaMu and the Rating Agencies (*id.* ¶¶ 92-

17  97) and the purportedly insufficient credit enhancement (which Plaintiffs concede actually was

18  sufficient "to achieve and be awarded the highest possible credit rating from the Rating Agencies

19  engaged on the securitization") (*id.* ¶ 164) are insufficient as a matter of law.

20      **Sixth**, the same SEC Proposed Rules demonstrate that the very issues that Plaintiffs

21  allege were not disclosed – that the Rating Agencies played a role in structuring transactions

22  and received payment from the issuer – were in fact known as early as 1994.  *See Tsereteli*,

23  2010 WL 816623, at *5.  There is no duty to disclose that which is publicly known, *RBS*,

24  2010 WL 1172694, at *12, and "[t]he rating agencies' role in structuring the Certificates is

25  not material as a matter of law."  *Lehman Bros.*, 2010 WL 545992, at *4.  Plaintiffs' attempt

26  to allege that the Rating Agencies' role in structuring transactions were not well-known

27  merely by citing to a 2008 report which confirms information that has been available to

28

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

investors for more than 15 years is wholly deficient.  *See RBS*, 2010 WL 1172694, at *14

(citing to the same SEC report cited by Plaintiffs and noting that the rating agencies' role in

structuring transactions and conflict of interests when issuers pay for ratings).  "A reasonable

investor would be expected to know that the rating agencies were paid by the investment

banks that hired them, and that they had a hand in determining the structure of

securitizations."  *RBS*, 2010 WL 1172694, at *14.  There was thus no duty to disclose the

Rating Agencies' role in rating the Certificates.

> 2.  Plaintiffs' Allegations regarding Loan Delinquencies
>       and Ratings Downgrades Constitute Impermissible
>       "Fraud by Hindsight" Allegations

A plaintiff in the Ninth Circuit may not plead fraud by hindsight.  *Falkowski v.

Imation Corp*., 309 F.3d 1123, 1133 (9th Cir. 2002) (one purpose of the PSLRA is to "put an

end to the practice of pleading fraud by hindsight") (internal quotation omitted).  Yet that is

exactly what Plaintiffs attempt to do here.  They do not allege that, at any time, anyone made

any disclosure relating to the loans in the loan pools for these Certificates that revealed that

even one loan, much less a material number of loans, was originated in a manner that was

inconsistent with the information in the SEC filings.  Instead, they claim, again based on

uncited authority and alleged in the most conclusory manner, that delinquency and default

rates on the mortgages underlying the Certificates "increased by a staggering amount" four

months after the offering.  (SAC ¶ 132.)  Plaintiffs go on to state that the delinquency rate on

the loans underlying these certificates rose to "approximately 40%" and that at the time of the

filing the delinquency rate was over 51%.  (*Id. ¶* 134.)  Plaintiffs also assert that subsequent

ratings downgrades demonstrate that misrepresentations were made in the issuance of their

Certificates.  Plaintiffs' allegations about default rates and ratings downgrades are legally

insufficient and wrong in any event.

The *Nomura* court rejected similar performance-based allegations as insufficient to

show that there was a misrepresentation.  "A securities case must be dismissed where a

complaint merely pleads subsequent facts and developments in the attempt to establish an

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

inference that these eventualities must have been known (or knowable) to defendants on the effective date of the registration statement." *Nomura*, 658 F. Supp. 2d. at 309; *see also Yourish v. Cal. Amplifier*¸ 191 F.3d 983, 997 (9th Cir. 1999) ("It is clearly insufficient for plaintiff to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood."); *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 8 (2d Cir 1996) (plaintiff seeing recovery under federal securities laws must do more than complain in hindsight about the poor performance and riskiness of its investment).

Plaintiffs' default and ratings-downgrade allegations are unattributed and inaccurate in any event. As is set out in the Request for Judicial Notice, delinquency information for the Certificates at issue in this action is publicly available on the internet. Review of that publicly available information shows that, as of March 2010, the delinquency rate on the Certificates owned by Plaintiffs averaged 17.6%, and only one of the Certificates had a delinquency rate higher than 20% (WMALT 2007-OA5, with 24.5% and backed primarily by non-WaMu loans). *See* RJN Ex. 7 (chart); Ex. 8 (supporting documents). Excluding the one WMALT offering, the average delinquency rate is 16.8%. While these delinquency rates are likely disappointing to investors, they are hardly "staggering" given that the overall delinquency rate in the United States at the end of 2009 was 15.02%. *See* Press Release, Mortgage Bankers Association, Delinquencies, Foreclosure Starts Fall in Latest MBA National Delinquency Survey (Feb. 19, 2010) (RJN Ex. 9).

The fact that the ratings on these Certificates were downgraded does not help Plaintiffs either. Not surprisingly, given the significant difficulties in the housing sector in the last year or so, the ratings agencies have been downgrading thousands of mortgage-backed securities issued by virtually every issuer. *See* Erkan Erturk & Thomas G. Gillis, *Transition Study: Structured Finance Rating Transition and Default Update as of Feb. 27, 2009*, Standard & Poor's Ratings Direct at 2 (Mar. 6, 2009) (RJN Ex. 10) (31% of all U.S. securities in this sector issued from 2005 through 2007 have been downgraded. Another 27% are on CreditWatch negative). Plaintiffs do not point to any announcement made in connection with

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 30 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

any downgrade of any of the Certificates at issue here that indicates that the downgrade was the result of information regarding improper loan underwriting or appraisals.

### 3.    Plaintiffs Do Not Adequately Allege Materiality

Plaintiffs' vague and conclusory allegations also fail because they are insufficient to meet the materiality requirement of the Securities Act. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1261 (N.D. Cal. 2000) (dismissing Section 11 claim where misstatements were "immaterial as a matter of law."). "The materiality standard requires a showing of a substantial likelihood that, under the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable [investor]." *Basic*, 435 U.S. at 232. The recent decision in *Britannia Bulk Holdings* is instructive. There, the plaintiff alleged that the offering documents for the common stock of Britannia, a shipping company, were misleading because "Britannia misstated or failed to disclose . . . that Britannia used FFAs [forward freight agreements] to hedge against increases, and not merely decreases, in charter rates." 665 F. Supp. 2d at 406. The court dismissed the plaintiff's Section 11 and 12(a)(2) claims because "the Complaint specifies only one FFA [out of 37] as being inconsistent with its characterization of Britannia's disclosures" and "Plaintiff does not allege that any FFA other than the Armada FFA hedged against increases in charter rates." *Id.* at 416. The court rejected the plaintiff's attempt to "blunt the impact of this deficiency" by asserting that it had identified "simply one example" of Britannia's allegedly misleading use of FFAs because "[i]t is the Complaint's allegations and not vague assertions . . . that must be able to withstand a motion to dismiss." *Id.* at 416 n.8.

Here, despite alleging that WMB originated over $229 billion in loans in 2005 alone (SAC ¶ 54), the SAC does not identify, even roughly, the number or volume of loans in any of the mortgage pools that were not consistent with the characteristics disclosed in the offering documents. Generalized allegations about WMB and speculation that *some* loans backing *some* certificates in *some* offering were affected are insufficient to establish that a material level of the hundreds, and sometimes thousands, of loans in each of the mortgage

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

pools backing the Certificates was "non-complying."  Even assuming that some "non-complying" loans were included in some loan pool for some offering, Plaintiffs do not allege that the purported deviations reached material levels, either relative to the number of loans held in the mortgage pools or to the performance of similarly-situated loans during the housing meltdown.  Without such allegations to establish materiality, Plaintiffs cannot state a claim.  *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 52 (2nd Cir. 2007) (allegation that if it happened there it could have happened here is not sufficient factual basis for complaint); *Garber v. Legg Mason, Inc.,* 537 F. Supp. 2d 597, 613-14 (S.D.N.Y. 2008) (dismissing securities claims where "[t]he pleadings are simply too conclusory as they offer no possibility at all of assessing materiality.").

### D.     Plaintiffs' Sole Remedy Is The Cure Of Non-Complying Loans

Even if Plaintiffs were correct that there were material misrepresentations or omissions regarding the loans backing the Certificates – and as shown above their allegations do not support such an inference – under the Offering Documents, Plaintiffs' sole remedy for breach of any representations or warranties would be for the seller to repurchase or replace that specific loan.  This "sole remedy" provision negates Plaintiffs' 1933 Act claims.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 389 (5th Cir. 2010).

As part of the structure of each securitization, the seller of the loans made certain representations and warranties in the mortgage loan purchase and sale agreement ("MLPSA") regarding each loan.  *See, e.g.*, WaMu Mortgage Pass-Through Certificates 2006-AR5, MLPSA § 3.1.  (RJN. Ex. 23).  These included representations that:

> (xix) Prior to origination or refinancing, an appraisal of each Mortgaged Property was made by an appraiser on a form satisfactory to Fannie Mae or Freddie Mac;

> (xx) The Mortgage Loans have been underwritten substantially in accordance with the applicable Underwriting Standards; . . . .

*Id.*, § 3.1.  Such provisions are part of the Offering Documents' representations concerning the loan pools, and are specifically referenced in the relevant Prospectuses.

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 32 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1    To the extent there was a breach of these representations, or any other representations

2  and warranties regarding the loans, the MLPSA provided the remedy for such a breach:

3    It is understood and agreed that the obligations of a Breaching
     Seller set forth in this Section 3.3 constitute the sole remedies
4    available to the Purchaser or its transferee respecting a breach
     of the representations and warranties by such Breaching Seller
5    set forth in Section 3.1.

6  *Id.*, § 3.3(c).  The MLPSAs for the offerings were incorporated by reference in the Offering

7  Documents.  Moreover, each Prospectus contained similar language, describing the "sole

8  remedy" for the breach of representations and warranties made about the individual loans.

9  *See, e.g.*, WaMu Mortgage Pass-Through Certificates 2006-AR5 Prosp. at 54 ("The obligation

10 to repurchase or, other than with respect to the insurability representation if applicable, to

11 substitute mortgage loans constitutes ***the sole remedy available to the securityholders*** or the

12 trustee ***for any breach of the representations***.") (RJN Ex. 25).  Plaintiffs' remedy for any

13 non-complying loans was thus explicitly built into the Offering Documents.

14    In *Lone Star*, the Fifth Circuit held that an identical "sole remedy" provision appearing

15 in a prospectus for an essentially identical offering precluded the plaintiffs' Securities Act

16 claims because the sole remedy provision "change[s] the nature of [the issuer's]

17 representation."  594 F.3d at 390.  In essence, the court concluded, the issuer had represented

18 that "the mortgages *should* be non-delinquent, but if some mortgages were delinquent then

19 [defendants] would either repurchase them or substitute performing mortgages into the trusts.

20 One way or another, [defendants] committed that the mortgage loan pools would be free of

21 delinquent mortgages."  *Lone Star*, 594 F.3d at 389 (emphasis in original).  In dismissing

22 plaintiffs' Section 11, 12(a)(2) and 15 claims, the Fifth Circuit held that plaintiffs, as

23 sophisticated investors, had "no basis to ignore these provisions or their consequences."  *Id.*

24    This reasoning applies equally to Plaintiffs' Certificates.  The Offering Documents for

25 each of the Certificates incorporated the MLPSA and set forth Plaintiffs' "sole remedy" for

26 any breach of a representation or warranty regarding a loan in the Prospectuses, *i.e.*,

27 repurchase or replacement of specific loans.  This was a critical component of the deal

28

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 33 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

structure that "change[d] the nature of" the representations at issue here. *Id.* Absent allegations that the defendants have failed to consider and repurchase specific loans that did not live up to the representations and warranties in the MLPSAs, therefore, there is thus no misrepresentation upon which Plaintiffs can base a claim, and the Complaint must be dismissed. *Id.* at 389-90.

      **E.**    **The SAC Fails To Plead Cognizable Economic Loss Because There Are No Allegations That Plaintiffs Failed To Receive "Pass-Through" Payments**

The SAC should be dismissed for the independent reason that there are no factual allegations supporting a legally cognizable economic loss, an essential element of Plaintiffs' claims for damages under both Sections 11 and 12(a)(2) of the Securities Act. *See* 15 U.S.C. §§ 77k(e), 77l(a); *In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203-05 (9th Cir. 2002) (affirming dismissal of Section 11 and 12(a)(2) claims for failure to plead a cognizable loss). Indeed, no such facts exist, as Plaintiffs do not allege that they have not received all required "pass-through" payments from their Certificates. Plaintiffs concede that the Certificates give investors the "rights in the income flowing from the mortgage pools." (SAC ¶ 45; *see also id.* ¶ 7.) Plaintiffs could not reasonably have expected any other benefit from the Certificates. As recently described by the Southern District of New York, unlike stock in which "shares are purchased for the purpose of investment and their true value to the investor is the price which they may later be sold," asset-backed securities are securitized contract rights that provide investors "with the expectation that they would receive a stream of interest payments for the life of the securitization and, at the end of the securitization, the return of their principal." *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 646 F. Supp. 2d 385, 403 (S.D.N.Y. 2009); *see also Asset-Backed Securities*, Securities Act Release No. 33-8518, 70 Fed. Reg. 1506, 1508-11 (Jan. 7, 2005) (in which the SEC noted that "[a]sset-backed securities and ABS issuers differ from corporate securities and operating companies" in that "ABS investors are generally interested in the characteristics and quality of the underlying assets, the standards for their servicing, the timing and receipt of cash flows

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 34 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

from those assets and the structure for distribution of those cash flows."). Plaintiffs thus

suffer actionable damages only when there is a failure to distribute the "pass-through" cash

flows, not an alleged decline in the "market value" of the certificates. *AIG Global Sec.*

*Lending Corp.*, 646 F. Supp. 2d at 403 (plaintiffs suffered losses on asset-backed securities

"not [because of] a decrease in market price, but [because of] a decrease in the amount of

money returned to them over the course of the securitization."). Indeed, the offering

documents specifically warned investors that "[a] secondary market for the offered certificates

may not develop. If a secondary market does develop, it might not continue or it might not be

sufficiently liquid to allow you to resell any of your certificates." 2006-AR2 Pros. Supp. at S-

17 (RJN Ex. 2).

The SAC is barren of any allegations that Plaintiffs have not received the payments

due from their Certificates. Instead, Plaintiffs allege "Plaintiffs and other Class members

have sustained damages as a result of the wrongful conduct alleged and the violations of the

defendants. Specifically, as set forth herein, the delinquency, foreclosure, repossession and

bankruptcy rates for the collateral underlying the Certificates . . . triggered unprecedented

downgrades of the Certificates' credit ratings by the Rating Agencies and attendant declines

in the value of the Certificates." (SAC ¶¶ 191, 211.) Accordingly, they seek "damages" for

an increase in the risk that the Certificates will not perform in the future. That kind of

speculative injury is not actionable. *See First Nationwide Bank v. Gelt Funding Corp.*, 27

F.3d 763, 768 (2d Cir. 1994) ("[The plaintiff] does not allege actual injury by simply claiming

that it incurred additional risk of loss as a consequence of the fraud. Thus, we reject [the

plaintiff's] novel theory that it was damaged simply by being undersecured when, with

respect to those loans not yet foreclosed, the actual damages it will suffer, if any, are yet to be

determined.") (internal citation omitted); *Luminent Mortgage Capital, Inc. v. Merrill Lynch &*

*Co.*, 652 F. Supp. 2d 576, 590-92 (E.D. Pa. 2009) (rejecting plaintiffs' argument that high

rates of default on underlying mortgage loans, standing alone, caused plaintiffs an economic

loss; plaintiffs could suffer an economic loss only if their income stream was diminished).

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 35 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1  Because Plaintiffs have not suffered any cognizable economic loss, their Section 11

2  and 12(a)(2) claims must be dismissed.  *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.

3  Supp. 2d at 1261.

4  **F.      The Offering Documents Contained Specific Disclosures
        That Warned Of The Risks Faced By Investors In The
5        Certificates**

6          In complaining about alleged failures to disclose, Plaintiffs ignore the substantial risks

7  that were disclosed to them.  These disclosures, which warned Plaintiffs of various risks

8  involved in purchasing the Certificates, including that the Certificates could lose their value if

9  housing prices decline, are fatal to Plaintiffs' claims.  As the Ninth Circuit made clear in

10  *Worlds of Wonder*, a Section 11 plaintiff cannot pursue claims when their losses are allegedly

11  due to events that had been warned of in a prospectus:

12          When a company fails, it does not automatically mean that a
        violation of the securities laws has occurred.  There are a number
13        of risks involved whenever one invests in any company. . . .  The
        securities laws do not insulate investors against stock downturns
14        which are caused by events not foreseeable to the company's
        management, nor do they provide insurance against risks that were
15        disclosed to investors at the time they purchased the securities.

16  35 F.3d at 1420 (internal quotation omitted).

17          The offering documents here contain specific risk disclosures that warn of potential

18  events that could affect the value of the Certificates.  The Registration Statement itself warned

19  Plaintiffs of various risks associated with their purchases:

20
21  •   The securities will have limited liquidity, and investors may be precluded from selling
        or forced to sell at a discount.  Reg. Stmt. at 5 (RJN Ex. 1);

22  •   The mortgaged properties might not provide adequate security for the mortgage loans.
23        "If the mortgaged properties fail to provide adequate security for the mortgage loans
        held by the trust, any resulting losses . . . will; be allocated to the related
24        securities . . . ."  (*Id.*).

25  •   "For some mortgage loans, the values of the related mortgaged properties may have
26        substantially declined since the appraisals were obtained . . . ."  (*Id.* at 6).

27  •   "[T]he underwriting standards, including documentation requirements, of some
        originators may be less restrictive that those of other originators.  Moreover, some
28        underwriting standards may result in a less accurate assessment of a borrower's credit

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 36 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

standing and repayment ability and/or the value and adequacy of the related property as collateral."  (*Id.*).

- Ratings may be lowered or withdrawn, thus devaluing the Certificates.  (*Id.* at 8).

Similarly, the prospectus for each Certificate Series also contained a lengthy "Risk Factors" section warning that disclosed, among other things, that:

- Certificates may be illiquid, forcing purchasers to either hold them to maturity or sell them at a discount (*e.g.*, 2006 AR-2 Prospectus at 5) (RJN Ex. 2);

- Ratings may be lowered or withdrawn, thus devaluing the Certificates (*id.* at 8);

- Credit support may be inadequate to cover all losses on the mortgages (*id.* at 5);

- If the mortgaged property fails to provide sufficient security for the loans, losses are possible (*id.* at 5);

- Foreclosures on mortgages may result in losses (*id.* at 6);

- Values of the properties securing some loans may have declined substantially since the appraisals were obtained (*id.* at 6);

- Underwriting standards may vary significantly depending on the originator (*id.* at 7);

- Interest-only loans are more likely to default (*id.* at 14);

- Declining interest rates may lead to an early reduction in principal value (*id.* at 27); and

- The value of any commercial or multifamily mortgaged property may be adversely affected by risks generally incident to interests in real property, including:

> changes in general or local economic conditions and/or specific industry segments; [and]
>
> declines in real estate values. . . .

(*Id.* at 29).

Plaintiffs were warned:  deteriorating economic conditions, particularly in the real estate market, could cause their Certificates to lose value.

Each prospectus supplement contains similar language warning of the risks of investing in the Certificates, including advising of the risks of losses on mortgage loans (*see, e.g.*, 2006-AR2 Pros. Supp. at S-15 (RJN Ex. 2)), the higher risk of default for interest only

HILLIS CLARK MARTIN & PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

loans (*id.* at S-16), risk of illiquidity of the Certificates (*id.* at S-17), and the risk that an adverse housing market in regions where the underlying loans were originated could negatively impact the Certificate value (*id*. at S-19).

There is no dispute that a massive decline in real estate values and a significant change for the worse in economic conditions have occurred since the issuance of the Certificates. The offering documents contained specific disclosures warning that such events could negatively affect the value of the Certificates, which is exactly what Plaintiffs are alleging has occurred.  Therefore, the disclosures negate Plaintiffs' misrepresentation allegations.  *See In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 515-16 (9th Cir. 1991) (affirming dismissal of Section 11 claim where risk disclosures sufficiently warned that company's strategy involved certain risks which later materialized); *In re Leapfrog Enterprise, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1048 (N.D. Cal. 2007) (where cautionary language relates directly to subject matter of plaintiffs' claims there is no misrepresentation).

### G.    The Section 15 Claim Fails As A Matter Of Law

Plaintiffs allege that WCC and the Individual Defendants are controlling entities or control persons of WAAC and thus liable under Section 15 of the Securities Act for WAAC's alleged violations of Sections 11 and 12(a)(2).  (SAC ¶¶ 205-07.)  To maintain this claim, Plaintiffs must allege that the named defendants "control[] any person liable" under Sections 11 or 12.  15 U.S.C. § 77o.  Plaintiffs' control-person claims fail because (1) they cannot establish the underlying liability of WAAC and (2) the other defendants are not control persons as a matter of law.

1.    Because Plaintiffs Have Not Pleaded an Underlying
Section 11 or 12 Violation, Their Section 15 Claim Must
Be Dismissed

A necessary element of every control-person claim is that the plaintiff first plead an underlying violation of Sections 11 or 12.  *See Worlds of Wonder*, 35 F.3d at 1428 n.9 (holding there can be no violation of Section 15 without a "primary violation"); *Cooperman v. Individual, Inc.*, 171 F.3d 43, 52 (1st Cir. 1999) (dismissing Section 15 control person liability

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1    claim where underlying claims under Sections 11 and 12 were defective).  As demonstrated

2    above, Plaintiffs have not done so and, therefore, the Section 15 claim should be dismissed.

3              2.        Failure to Allege that any of the Individual Defendants
                         or WCC Is a Control Person Is Fatal to the Section 15
4                        Claim

5         Even if Plaintiffs had alleged an underlying violation – and they have not – the

6    Section 15 claim still would fail because their allegations do not establish that any of the

7    Individual Defendants or WCC is a control person of WAAC or WCC within the meaning of

8    the statute.

9         The sum total of the allegations regarding the Individual Defendants is to name each

10   one and identify each person's position at WAAC – either officer or director – and allege that

11   each signed the Registration Statement.  (SAC ¶¶ 27-34.)  That is all.  There are no other

12   factual allegations, just legal conclusions stating that they are control persons "by virtue of

13   their control, ownership, offices, directorship, and specific acts."  These conclusory

14   allegations fall far short of the requirements for pleading control person liability under

15   Section 15.  *See Al-Thani v. Wells Fargo & Co.*, No. C 08-1745 CW, 2009 U.S. Dist. LEXIS

16   2732, at *25-26 (N.D. Cal. Jan. 7, 2009) (dismissing control person liability claim under

17   Section 20 of the Securities and Exchange Act of 1934 for failure to allege facts indicating the

18   authority held and the role played by the alleged control person); *Durham v. Kelly*, 810 F.2d

19   1500, 1503 (9th Cir. 1987) (standard for control person liability is the same under Section 20

20   of the '34 Act and Section 15 of the '33 Act).  Nor can the Individual Defendants be held

21   liable for offerings issued under a Registration Statement they did not sign.

22        The allegations regarding WCC are similarly deficient.  The only fact alleged about

23   WCC's "control" relationship is that WCC "served as the underwriter for all of the Certificate

24   Offerings and was intimately involved in all of the Offerings" for each of the Registration

25   Statements.  (SAC ¶¶ 38, 39.)

26

27

28

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

Plaintiffs' failure to plead any facts suggesting the existence of a control relationship requires that, even if Plaintiffs had pled an underlying violation, the Section 15 claim would still be dismissed as to WCC and the Individual Defendants.

### H.     Certain Of Plaintiffs' Securities Act Claims Are Barred By The Statute Of Limitations

Doral Bank was on inquiry notice of potential claims relating to its Certificates more than one year before it filed its complaint on October 30, 2009.  An action asserting a claim under Sections 11 or 12(a)(2) of the Securities Act must be filed within the earlier of "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise or reasonable diligence," or three years from the date of the transaction,  15 U.S.C. § 77m.  Plaintiffs had such notice.

Claims asserted by the plaintiffs in the Consolidated Class Action Complaint (the "WaMu Complaint," RJN Ex. 20) *In Re Washington Mutual, Inc. Sec. Litig.*, No. C08-387 (MJP) (W.D. Wash.) ("*In re WaMu*"), filed August 20, 2008, put Doral Bank on inquiry notice.  The plaintiffs therein asserted claims that WaMu inflated appraisals (*id.* ¶ 2) and used "dangerously lax underwriting standards" in originating loans (*id.*).  Indeed, plaintiffs in *In re WaMu*, devote over 25 pages of allegations to WaMu's loan origination practices, and more than 50 pages to allegations of appraisal inflation.  (*See id.* ¶¶ 65-125, 126-306.)  The alleged class period is October 2005 through July 2008.  (*Id.* ¶ 5.)  These allegations cover the very subjects that form the bases for Doral Bank's allegations, and the allegedly improper underwriting and appraisal practices occurred when the loans backing the Doral Bank Certificates were made.  Doral Bank cannot credibly claim that it was not on notice of its potential claims.

The Doral Complaint was thus not timely filed and Plaintiffs' claims under the 2007 Registration Statement are late.  Similarly, all claims based on alleged misrepresentations or omissions with respect to appraisal practices are time-barred (except as to the Certificates at issue in the original New Orleans Complaint) because they were filed more than one year after the NYAG Complaint was filed.

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 40 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1.      Plaintiffs' Securities Act Claims Relating to the Doral
        Bank Certificates Are Barred by the Statute of
        Limitations

The original complaint in this action, which was filed on August 1, 2008, purported to state claims relating to Certificates WaMu 2006-AR1-AR19 and WaMu 2007-HY1-HY4.  On October 30, 2009, Doral Bank filed its complaint alleging Securities Act and other claims relating to ten Certificates which had never been included in any prior complaint.  The number of Certificates not identified in the original complaint has now grown to thirteen.

Plaintiffs initially tried to add these claims to the present action, rather than filing a new action, presumably in the hope of avoiding the one-year statute of limitations by arguing that these new claims should relate back to the filing date of the original complaint.  Without relation back, there can be no dispute that the Securities Act claims relating to the Doral Bank Certificates are time-barred.  The statute of limitations for Securities Act claims is "one year after the discovery of the untrue statement or the omissions, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  But these new claims do not relate back.  *See In re DDi Corp. Sec. Litig.*, No. CV 03-7063, 2005 U.S. Dist. LEXIS 28216, at *28 (C.D. Cal. July 20, 2005) (claims brought by new plaintiffs regarding new securities do not relate back).  The Ninth Circuit has limited relation back to cases where "1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff."  *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 935 (9th Cir. 1996).  There is, at minimum, no identity of interests between plaintiffs owning different securities.  *Id.*

Here, no prior complaint made any reference to the WaMu 2006-OA4-OA6 or 2007-HY5-HY7 Certificates, nor to the WMALT Series 2007-OA4, OA5, OC1, OC2 or 2007-1-3 Certificates identified in Paragraph 39 of the SAC.  Nor were they identified in the PSLRA class notice published when the original complaint was filed.  The claims in the SAC

*Motion to Dismiss*
(CV09-0037 MJP) - *Page 41 of 44*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

concerning the twenty-three offerings in the original complaint are made on behalf of purchasers of other Certificate Series, each with its own prospectus supplement describing a unique loan pool.  Therefore, there is no tolling of the statute of limitations as to these and the limitations period is not tolled merely because the original complaint was filed by a different class of Certificateholders.  Accordingly, the Sections 11, 12(a)(2) and 15 claims relating to the Certificates issued under the 2007 Registration Statement must be dismissed.

> 2.  The Appraisal-Related Claims Are Time-Barred for
> Most Certificates

The New York Attorney General filed its complaint against First American and eAppraiseIT on November 1, 2007.  There can be no dispute that, as of that date, investors were, at the very least, on inquiry notice as to alleged misrepresentations in SEC filings regarding the appraisals underlying the loans in the loan pools.  *See Aizuss v. Commonwealth Equity Trust*, 847 F. Supp. 1482, 1487 (E.D. Cal. 1993) (dismissing as time-barred claims based on allegations that had been made in a separate action filed more than a year before); *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1314 (9th Cir. 1982) (dismissing as time-barred claims based on allegations that had been made in an SEC enforcement action filed more than one year before).  But the only plaintiffs who filed claims alleging misrepresentations relating to appraisals before November 1, 2008 were the plaintiffs who filed the August 1, 2008 New Orleans Complaint.  Although those plaintiffs purported to bring claims relating to twenty-six Certificates, they had only purchased, and therefore only had standing to bring claims relating to, seven of those Certificates, six of which are purportedly part of this action (WaMu 2006-AR2, AR14, AR16, AR18 and WaMu 2007-HY2, and HY4).  (New Orleans Complaint ¶¶ 16, 17.)

At later dates, after November 1, 2008 (one year after the NYAG's filing), additional plaintiffs came forward purporting to assert claims relating to appraisals, including Lead Plaintiff PABF Chicago (on March 16, 2009), Lead Plaintiff Doral Bank (October 30, 2009), and named plaintiff Boilermakers (January 12, 2009).  Under *American Pipe & Construction*

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

*Co. v. Utah*, 414 U.S. 538 (1974), the statute of limitations was tolled as of the filing of the August 1, 2008 New Orleans Complaint, but only as to claims relating to the Certificates owned by the plaintiffs in that complaint.  The statute was ***not*** tolled as to other securities described in the New Orleans Complaint because the plaintiffs did not have standing to pursue claims relating to those securities.  *See Palmer v. Stassinos*, 236 F.R.D. 460, 465-66 (N.D. Cal. 2006) (holding that statute of limitations on California statutory claim that original plaintiff did not have standing to bring was not tolled by filing of original class action complaint).  The *Palmer* court followed the reasoning of the Seventh Circuit in *Walters v. Edgar*, 163 F.3d. 430 (7th Cir. 1998), which held that, because a plaintiff without standing presents no live case or controversy, the federal courts do not have the power to toll the statute as to claims when a plaintiff does not have standing:

> It is one thing to toll a period of limitations because of the discretionary act of one judge seeking to manage his or her docket in an efficient manner, but it would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it.

*Palmer*, 236 F.R.D. at 465 n.6 (citing *Walters*, 163 F.3d at 432-33).

Therefore, the only Certificates as to which Plaintiffs can pursue claims relating to alleged misrepresentations concerning appraisals are the six Certificates that were owned by the plaintiff in the New Orleans Action.  For the same reason, claims relating to the 2006-AR17 Series Certificates, purchased only by Doral Bank among the named plaintiffs, are time barred.  Doral Bank filed its complaint on October 30, 2009, more than two years after the NYAG filed its Complaint and more than one year after the New Orleans Complaint was filed – in other words, well more than one year after Doral Bank and other purchasers of WaMu Certificates were on notice of potential claims with respect to their Certificates.

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

1

## IV.   CONCLUSION

2
For all of the foregoing reasons, the SAC must be dismissed.

3

4
DATED this 27th day of April, 2010.

5

| BINGHAM McCUTCHEN LLP | HILLIS CLARK MARTIN & PETERSON |
|---|---|
| David M. Balabanian (*Pro Hac Vice*)<br>John D. Pernick (*Pro Hac Vice*)<br>Frank Busch (*Pro Hac Vice*)<br>Three Embarcadero Center<br>San Francisco, CA  94111-4067<br>Tel:       (415) 393-2544<br>Fax:      (415) 262-9203<br>Email: david.balabanian@bingham.com<br>          john.pernick@bingham.com<br>          frank.busch@bingham.com<br>- *and* -<br>Susan L. Hoffman (*Pro Hac Vice*)<br>355 South Grand Avenue, Suite 4400<br>Los Angeles, CA  90071-3106<br>Tel:       (213) 680-6454<br>Fax:      (213) 680- 6499<br>Email:    susan.hoffman@bingham.com | By: /s/  Louis D. Peterson<br>      Louis D. Peterson, WSBA #5776<br>      Brian C. Free, WSBA #35788<br>      1221 Second Ave, Suite 500<br>      Seattle, WA 98101-2925<br>      Tel:       (206) 470-7646<br>      Email:    ldp@hcmp.com<br>                    bcf@hcmp.com<br><br><br>*Counsel for Defendants WaMu Asset Acceptance Corporation, WaMu Capital Corporation, Washington Mutual Mortgage Securities Corporation, David Beck, Diane Novak, Rolland Jurgens and Richard Careaga* |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILLIS CLARK MARTIN &
PETERSON, P.S.

1221 Second Avenue, Suite 500
Seattle WA 98101-2925
206.623.1745; fax 206.623.7789

A/73363528.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of April, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ramzi Abadou  - rabadou@btkmc.com,knguyen@btkmc.com

Michael H. Barr - mbarr@sonnenschein.com

Walter Eugene Barton
gbarton@karrtuttle.com,nrandall@karrtuttle.com,danderson@karrtuttle.com

Andrew B Brettler - abrettler@stblaw.com

Frank Busch - frank.busch@bingham.com,frank.downing@bingham.com

Steven P Caplow - stevencaplow@dwt.com,belenjohnson@dwt.com

Kevin P Chavous - kchavous@sonnenschein.com

James J. Coster - jcoster@ssbb.com; jregan@ssbb.com; managingclerk@ssbb.com

Hal D Cunningham - hcunningham@scott-scott.com

Kerry F Cunningham  - kerry.cunningham@dlapiper.com

Leslie D Davis - ldavis@sonnenschein.com

Corey E Delaney
corey.delaney@dlapiper.com,kerry.cunningham@dlapiper.com,
lorna.bernard@dlapiper.com,richard.hans@dlapiper.com,patrick.smith@dlapiper.com

Jonathan Gardner - jgardner@labaton.com

Joseph P Guglielmo - jguglielmo@scott-scott.com,efile@scott-scott.com

Richard F Hans - richard.hans@dlapiper.com,dorinda.castro@dlapiper.com

David Daniel Hoff - dhoff@tousley.com,efile@tousley.com

Christopher M Huck - Christopher.huck@dlapiper.com,karen.hansen@dlapiper.com

Stellman Keehnel - stellman.keehnel@dlapiper.com,patsy.howson@dlapiper.com

Paul Joseph Kundtz
pkundtz@riddellwilliams.com, mbergquam@riddellwilliams.com,
mdowns@riddellwilliams.com

Joel P Laitman - jlaitman@cohenmilstein.com

Bruce Earl Larson - blarson@karrtuttle.com,psteinfeld@karrtuttle.com

Mike Liles , Jr - mliles@karrtuttle.com

Christopher E Lometti - clometti@cohenmilstein.com

Bradley T. Meissner  - bradley.meissner@dlapiper.com

Timothy M. Moran - moran@kiplinglawgroup.com,cannon@kiplinglawgroup.com

Barry Robert Ostrager - bostrager@stblaw.com,managingclerk@stblaw.com

Nancy A Pacharzina - npacharzina@tousley.com,kzajac@tousley.com

*Certificate of Service  (CV09-037 MJP)*

HILLIS CLARK MARTIN & PETERSON, P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    Erik D Peterson - epeterson@btkmc.com,knguyen@btkmc.com

2    Kenneth J Pfaehler - kpfaehler@sonnenschein.com,nreeber@sonnenschein.com

3    Daniel B Rehns - drehns@cohenmilstein.com

     Kenneth M. Rehns - krehns@cohenmilstein.com

4    Rogelio Omar Riojas - omar.riojas@dlapiper.com,nina.marie@dlapiper.com

5    Joshua M. Rubins - jrubins@ssbb.com; lregan@ssbb.com; managingclerk@ssbb.com

     Stephen M. Rummage - steverummage@dwt.com,jeannecadley@dwt.com

6    Paul Scarlato - pscarlato@labaton.com,ElectronicCaseFiling@labaton.com

7    Arthur L Shingler -

8    ashingler@scott-scott.com,cmcgowan@scott-scott.com,efile@scott-scott.com

     Kim D Stephens - kstephens@tousley.com,bkinsey@tousley.com

9    Steven J. Toll - stoll@cohenmilstein.com

10    Robert D Stewart - stewart@kiplinglawgroup.com,cannon@kiplinglawgroup.com

11    Mary Kay Vyskocil - mvyskocil@stblaw.com

     Dennis H Walters - dwalters@karrtuttle.com,wbarker@karrtuttle.com

12

13    DATED this 27th day of April, 2010 at Seattle, Washington.

14               By___s/ Louis D. Peterson_____

15                  Louis D. Peterson, WSBA #5776

                   1221 Second Avenue, Suite 500

16                 Seattle WA 98101-2925

17                 Telephone:  (206) 623-1745

                   Facsimile:  (206) 623-7789

18                 Email:  ldp@hcmp.com

19

20

21

22

23

24

25

26

27

28

HILLIS CLARK MARTIN & PETERSON, P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789