1  **HONORABLE MARSHA J. PECHMAN**

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
8        FOR THE WESTERN DISTRICT OF WASHINGTON
                          AT SEATTLE
9

10 | BOILERMAKERS NATIONAL ANNUITY
   | TRUST FUND, on behalf of itself and all          Master Cause NO. 2:09-cv-00037-MJP
   | others similarly situated,
11                                                    **LEAD PLAINTIFFS' RESPONSE IN
                                                      OPPOSITION TO WAMU
12 |                  Plaintiff,                       DEFENDANTS' MOTION TO DISMISS**

13 | v.                                               Noted on Motion Calendar:
                                                      May 28, 2010
14 | WAMU MORTGAGE PASS THROUGH
   | CERTIFICATES, SERIES 2006-AR1, et al.,
15
   |                  Defendants.
16

17 | DORAL BANK PUERTO RICO, on behalf of            NO. 2:09-cv-01557-MJP
18 | itself and all others similarly situated,

19 |                  Plaintiffs,
                                                      **ORAL ARGUMENT REQUESTED**
20 | v.

21 | WASHINGTON MUTUAL ASSET
22 | ACCEPTANCE CORPORATION, et al.,

23 |                  Defendants.

24

25

26

27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   ARGUMENT ....................................................................................................... 5

   A.   The Standard on Motion to Dismiss ........................................................... 5

   B.   Lead Plaintiffs Have Standing to Bring This Action .................................. 7

      1.   WaMu Defendants' Challenge to Lead Plaintiffs' Standing Is Premature ........ 7

      2.   Lead Plaintiffs Have Adequately Alleged Standing to Sue on Behalf of
           Purchasers of All Certificates that Were Issued Pursuant to the Registration
           Statements at Issue in this Lawsuit ................................................................... 9

      3.   Lead Plaintiffs Have Standing to Pursue Their § 12(a)(2) Claims Against
           WCC .............................................................................................................. 10

   C.   Lead Plaintiffs Allege Actionable Misrepresentations and Omissions ......................... 12

      1.   Lead Plaintiffs Have Adequately Alleged Misrepresentations and Omissions
           Regarding Underwriting Guidelines ................................................................. 13

      2.   Lead Plaintiffs Have Adequately Alleged Misrepresentations and Omissions
           Regarding Loan-to-Value Ratios ...................................................................... 17

      3.   Lead Plaintiffs Have Adequately Alleged Misrepresentations and Omissions
           Regarding Credit Ratings ................................................................................. 19

   D.   WaMu Defendants Are Not Shielded from Securities Act Liability by the Purchase
        and Sale Agreements ..................................................................................... 20

   E.   Lead Plaintiffs Sufficiently Allege a Cognizable Economic Loss ................................ 23

   F.   Generalized Risk Disclosures Are Not Grounds for Dismissal .................................... 25

   G.   Lead Plaintiffs Adequately Allege that WCC and the Individual Defendants
        Were "Control Persons" for Purposes of Section 15 Liability ...................................... 27

   H.   Plaintiffs' Claims Are Not Time-Barred ........................................................... 28

      1.   The Standard for Inquiry Notice ...................................................................... 28

      2.   WaMu Defendants Have Not Shown that Doral Bank Was on  Inquiry
           Notice Prior to October 30, 2008 ...................................................................... 29

i

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

3.    The Appraisal-Related Claims Are Not Time-Barred ....................................... 31

III.    CONCLUSION .......................................................................................... 32

ii

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

# <u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*,
   651 F.Supp.2d 155 (S.D.N.Y. 2009) ...................................................................21

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ...........................................................................................34

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ..................................................................................6, 15

*Atlas v. Accredited Home Lenders Holding*,
   556 F.Supp. 2d 1142 (S.D. Cal. 2008) ...............................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................6

*Betz v. Trainer Wortham & Co., Inc.*,
   519 F.3d 863 (9th Cir. 2008) ......................................................................31, 34

*California Publ. Employees' Ret. Sys. v. Chubb Corp.*,
   No. 00-4285, 2002 WL 33934282 (D.N.J. June 26, 2002) .................................34

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ...........................................................................13

*Dorchester Investors v. Peak Int'l Ltd.*,
   134 F.Supp.2d 569 (S.D.N.Y. 2001) .................................................................31

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) .....................................................................*passim*

*Gray v. First Winthrop Corp.*,
   82 F.3d 877 (9th Cir. 1996) ...............................................................................28

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ...........................................................................................11

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) .............................................................................................5

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2nd Cir. 2004) ................................................................................8

iii

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000) ........................................................................................... 29

*In re Adaptive Broadband Sec. Litig.,*
No. 01-1092 2002 WL 989478 (N.D. Cal. Apr. 2, 2002) .................................................... 7

*In re CornerStone Propane Partners, L.P.,*
355 F.Supp. 2d 1069 (N.D. Cal. 2005)........................................................................ 18, 29

*In re Countrywide Fin. Corp. Derivative Litig.,*
554 F.Supp.2d 1044 (C.D. Cal. 2008) .............................................................................. 15

*In re Countrywide Fin. Corp. Sec. Litig.,*
588 F.Supp.2d 1132 (C.D. Cal. 2008) ........................................................................passim

*In re Daou Sys.,*
411 F.3d 1006 (9th Cir. 2005) ..................................................................................... 6, 29

*In re Dreyfus Aggressive Growth Mut. Fund Litig.,*
Civ. No. 98-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) ...................................... 9

*In re Enron Corp. Sec. Derivative & ERISA Litig.,*
529 F.Supp.2d 644 (S.D. Tex. 2006)................................................................................. 34

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
352 F.Supp.2d 429 (S.D.N.Y. 2005) ........................................................................... 12, 34

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
618 F.Supp. 2d 311 (S.D.N.Y. 2009) ............................................................................... 17

*In re Fleming Cos. Sec. & Derivative Litig.,*
Civ. No. 03-MD-1530, 2004 WL 5278716 (E.D. Tex. June 16, 2004).............................. 10

*In re Fuwei Films Sec. Litig.,*
634 F.Supp.2d 434 (S.D.N.Y. 2009) ................................................................................. 6

*In re Global Crossing, Ltd. Sec. Litig.,*
313 F.Supp.2d 189 (S.D.N.Y. 2003) .............................................................................. 7, 8

*In re Initial Pub. Offering Sec. Litig.,*
214 F.R.D. 117 (S.D.N.Y. 2002)....................................................................................... 8

*In re Initial Pub. Offering Sec. Litig.,*
341 F.Supp.2d 328 (S.D.N.Y. June 8, 2004)............................................................... 26, 32

*In re LDK Solar Sec. Litig.,*
No. 07 Civ. 05182 2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) ................................... 30

iv

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*In re Lehman Bros. Sec. & Litig.*,
   No. 08 Civ. 6762, 2010 WL 545992 (S.D.N.Y. Feb. 17, 2010)....................................*passim*

*In re Metro. Sec. Litig.*,
   532 F Supp. 2d 1260 (E.D. Wash. 2007)....................................................................16, 27

*In re Metropolitan Sec. Litig.*,
   No. 04 Civ. 25, 2010 WL 300402 (E.D. Wash. Jan. 20, 2010)...............................................5

*In re Moody's Corp. Sec. Litig.*,
   599 F.Supp. 2d 493 (S.D.N.Y. 2009) ............................................................20, 21, 33

*In re Network Equip. Techs., Inc. Litig.*,
   762 F.Supp. 1359 (N.D. Cal. 1991)..........................................................................7

*In re New Century*,
   588 F.Supp. 2d 1206 (C.D. Cal. 2008) ..........................................................................20

*In re PMI Group, Inc. Sec. Litig.*,
   No. 08 Civ. 1405, 2009 WL 3681669 (N.D. Cal. Nov. 2, 2009) .................................15, 18

*In re Scottish Re Group Sec. Litig.*,
   524 F.Supp.2d 370 (S.D.N.Y. 2007) ..........................................................................12

*In re Thoratec Corp. Sec. Litig.*,
   No. 04-03168, 2006 WL 1305226 (N.D. Cal. May 11, 2006) ..........................................28

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   No. 09 Civ. 01376, 2010 WL 1661534 (N.D. Cal. Apr. 22, 2010)............................*passim*

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996) ......................................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ..........................................................................11

*In re Worldcom, Inc. Sec. Litig.*,
   Civ. No. 02-3288, 2004 WL 555697 (S.D.N.Y. Mar. 19, 2004).........................................10

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir.1994) ..............................................................................13

*Korwek v. Hunt*,
   827 F.2d 874 (2d Cir. 1987) ..............................................................................34

*L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ..............................................................................23

v

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Lapin v. Goldman Sachs Group, Inc.*,
   506 F.Supp.2d 221 (S.D.N.Y. 2006) ............................................................. 33

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ......................................................................... 7

*Levitt v. Bear Stearns & Co.*,
   340 F.3d 94 (2d Cir. 2003) ........................................................................... 32

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ................................................................. 16, 27

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
   65 F.3d 1044 (2d Cir. 1995) ......................................................................... 22

*Merck & Co., Inc. v. Reynolds*,
   -- S. Ct. --, 2010 WL 1655827 (April 27, 2010) ......................................... 30

*Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*,
   936 F.2d 759 (2d Cir. 1991). See ................................................................. 17

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ....................................................................... 13

*Mosesian v. Peat, Marwick, Mitchell & Co.*,
   727 F.2d 873 (9th Cir. 1984) ....................................................................... 31

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ......................................................................... 6

*New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ. 5653, 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ............ 26, 27

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08 Civ. 8781, 2010 WL 1257528 (S.D.N.Y. March 31, 2010) ............ 35

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC.*,
   No. 08 Civ. 5093, 2010 WL 1172694 (S.D.N.Y. March 26, 2010) ............ 35

*Newman v. Warnaco Group, Inc.*,
   335 F.3d 92 (2d Cir. 2004) ........................................................................... 32

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ..................................................................................... 11

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   658 F.Supp.2d 299 (D. Mass. 2009) ............................................................ 17

vi

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) ...................................................................... 16, 27

*Schoenhaut v. Am. Sensors*,
    986 F.Supp. 785 (S.D.N.Y. 1997) ...................................................................... 12

*SEC v. Seaboard Corp.*,
    677 F.2d 1301 (9th Cir. 1982) ...................................................................... 31, 34

*Stratmore v. Combs*,
    723 F.Supp. 458 (N.D. Cal. 1989), *aff'd, McGonigle v. Combs*, 968 F.2d 810 (9th
    Cir. 1992) ...................................................................... 22

*Tooley v. Napolitano*,
    556 F.3d 836 (D.C. Cir. 2009) ...................................................................... 18, 19

*TSC Industries, Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ...................................................................... 22

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) ...................................................................... 13

STATUTES

**15 U.S.C.**
§ 77k ...................................................................... *passim*
§ 77k(a) ...................................................................... 12
§ 77l(a)(2) ...................................................................... 11
§ 77k(e) ...................................................................... 25
§ 77l ...................................................................... 5
§ 77m ...................................................................... 30
§ 77n ...................................................................... 6, 22
§ 77o ...................................................................... 1, 29

**Fed. R. Civ. P.**
Rule 8 ...................................................................... 12
Rule 8(a) ...................................................................... 6, 29
Rule 12(b)(6) ...................................................................... 7, 9, 13
Rule 15(a) ...................................................................... 35
Rule 23 ...................................................................... 34
Rule 23(a)(3) ...................................................................... 9

OTHER AUTHORITIES
17 C.F.R. § 230.436 (g)(1) ...................................................................... 22

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

# I.    PRELIMINARY STATEMENT

This securities class action arises from Defendants' sale of WaMu Mortgage Pass-through Certificates (the "Certificates") using offering documents (the "Offering Documents") that contained misstatements and omitted material facts.  Lead Plaintiffs Doral Bank of Puerto Rico ("Doral Bank") and Policemen's Annuity Benefit Fund of the City of Chicago ("PABF Chicago") ("Lead Plaintiffs"), purchasers of the Certificates, assert claims for violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o (the "Securities Act") against WaMu Asset Acceptance Corporation ("WMACC"), WaMu Capital Corporation ("WCC") and Individual Defendants Rolland Jurgens, Richard Careaga, Thomas Lehmann, Steven Fortunato, Donald Wilhelm, Diane Novak, and David Beck (collectively, "WaMu Defendants") and the Rating Agencies that controlled the structuring process and were necessary participants in distributing the Certificates and who are therefore liable as control persons.[1,2]

Washington Mutual Bank ("WMB") was a major participant in all aspects of the lucrative market for mortgage-backed securities.  From January 26, 2006 and June 26, 2007, the WaMu Defendants securitized and sold over $47.25 billion of Certificates pursuant to two Registration Statements: WMAAC Registration Statement dated December 30, 2005 (SEC File No. 333-134461), thereafter amended on January 6, 2006 on pre-effective Registration Statement Form S-3/A (the "2006 Registration Statement") and WMAAC Registration Statement dated March 13, 2007 (SEC File No. 333-141255), thereafter amended on April 9, 2007 on pre-effective Registration Statement Form S-3/A (the "2007 Registration Statement")

---

[1]    Each of the Individual Defendants signed at least one of the Registration Statements for the offerings detailed in the Second Amended Consolidated Complaint ("Complaint"), ¶¶27-34.

[2]    "Rating Agencies" refers to McGraw-Hill Companies, a division of which is Standard & Poor's ("S&P"), and Moody's Investors Service, Inc. ("Moody's").  The Rating Agencies filed a separate motion to dismiss ("RA Mot.") [Dkt. No. 168] and Lead Plaintiffs are filing a separate brief in opposition herewith.

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   (collectively, the "Registration Statements").[3]   ¶1.[4]   WMB established WMAAC, which

2   acquired and securitized loans for resale to investors in the form of the Certificates.   ¶¶24-26.

3   The Certificates were then sold to investors only after being bestowed investment-grade

4   ratings by the Rating Agencies. ¶¶42-43, 91-97.   More than 93% of the Certificates were

5   initially rated triple-A.   ¶11.  In the months after each of the 36 Offerings the delinquency and

6   default rates on the mortgage collateral underlying each Certificate increased exponentially

7   and the Rating Agencies downgraded over 98.9%, or $46.8 billion, of the Certificates to "junk

8   bond" grade.  ¶13.

9        As set forth below, the Offering Documents purported to accurately describe the loans

10  underlying the Certificates and, thus, the safety of the investment.   However the Offering

11  Documents contained misstatements and omitted material facts that were necessary to make

12  statements therein not misleading.  For example, the Offering Documents claimed that "[t]he

13  sponsor's underwriting guidelines generally are intended to evaluate the prospective

14  borrower's credit standing and repayment ability and the value and adequacy of the mortgaged

15  property as collateral."   ¶143.  In truth, as alleged in the Complaint, WMB, in its drive to

16  increase loan volume, systematically disregarded underwriting guidelines.   ¶8.   WaMu

17  Defendants turned a blind eye to this, as well as manipulated appraisals, of the underlying

18  properties, in securitizing the Certificates.   ¶¶8, 84, 133.  The Complaint also charges that the

19  Offering Documents contained additional misstatements and omissions regarding the credit

20  ratings assigned to the Certificates.  The Complaint's allegations are well supported by, among

21  other facts, witness accounts and internal documents.   Lead Plaintiffs have alleged reliable,

22  contemporaneous facts that collectively demonstrate the misstatements and omissions in the

23  Offering Documents.  As shown herein, nothing more is required at the pleading stage.

24

25  [3]      The Registration Statements, Prospectuses and Prospectus Supplements are referred to collectively herein as the "Offering Documents."

26  [4]      "All '¶' and '¶¶' references are to the Second Amended Consolidated Complaint.

27                                                    2

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   WaMu Defendants attempt to blame the "economic downturn" for the rates of loss,

2   delinquencies and foreclosures in the loan pools underlying the Certificates.   WaMu

3   Defendants' Motion to Dismiss ("WaMu Mot.") [Dkt. No. 170].  If WaMu Defendants wish to

4   attempt to blame other factors, they may do so at trial.  This contention is not a ground for

5   dismissal. At this stage, "[i]t is not the Court's role to speculate on the causes of the current

6   economic situation."  *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1173-74

7   (C.D. Cal. 2008) (rejecting defendants' argument that mortgage lender suffered losses due to

8   "an 'unprecedented' external 'liquidity crisis' and 'other macroeconomic arguments'").   In

9   truth, originating and packaging risky mortgages and selling them to investors as Certificates

10  was a high-margin business for WMB and WaMu Defendants.  ¶¶52-54, 87-90.  Through the

11  Offering Documents, WMB and WaMu Defendants transferred the risk of toxic loans to

12  investors, including public pension funds, while profiting handsomely.   ¶¶87-90.  WaMu

13  Defendants were obligated by law to fully disclose the nature of the risk, including the quality

14  of the underwriting, appraisals and loan-to-value ratios of the loans, and did not.

15  WMAAC, acting at the direction of WCC and the Rating Agencies, sold over $47.25

16  billion of Certificates to investors in 36 different Offerings pursuant to the Offering

17  Documents.  ¶¶2, 39.  The Certificates were sold primarily to conservative institutional

18  investors, such as Lead Plaintiffs here, who purchased the Certificates as purportedly

19  "maximum safety," investment-grade investments.  ¶12.  As detailed in the Complaint, the

20  Offering Documents contained misstatements of material fact, or omitted to state material facts

21  necessary to make the statements therein not misleading, regarding, among other things: the

22  underwriting standards purportedly used in connection with the origination of the underlying

23  mortgages; the maximum loan-to-value ratios used to qualify borrowers; the appraisals of the

24  properties underlying the mortgages; and the ratings of the Certificates.  ¶¶16, 136-171.

25  The facts that were omitted from the Offering Documents were that:  (1) WMB, its

26  affiliates and correspondent lenders had not followed, and indeed, systematically disregarded,

27

3

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   the stated underwriting standards when issuing loans to borrowers; (2) the underlying

2   mortgages were based on appraisals that overstated the value of the underlying properties; and

3   (3) the credit ratings given to the tranches of the Certificates were based on outdated

4   assumptions, relaxed ratings criteria and inaccurate loan information.  As a result, Lead

5   Plaintiffs and the Class purchased Certificates that were far riskier than represented and were

6   not of the "best quality," or even "medium credit quality," and were not equivalent to other

7   investments with the same credit ratings.  ***Rating agencies have now downgraded nearly all***

8   ***of the Certificates***.  ¶¶13, 103.

9   Before the proliferation of mortgage-backed securities, loan originators had financial

10  incentives to use prudent underwriting practices to ensure that the borrower had the ability to

11  repay the note and that the underlying property was sufficiently valuable to serve as collateral.

12  ¶46.  When securitizations of mortgage loans became more widespread, however, this

13  traditional model gave way to an originate-to-sell model.  *Id.*  Under this model, originators

14  were no longer required to hold risky mortgages to maturity, and the credit risk was instead

15  transferred to investors.  *Id*. Loan fees and sales revenue became the originator's primary profit

16  mechanism, making the sheer quantity of loans more important than the quality of the loans.

17  The Rating Agencies rated the Certificates.  ¶¶4, 7, 59, 112-15, 119.  Ratings, which

18  allow investors to compare the risk profiles of different investments in order to determine

19  equivalent levels of risk, are supposed to be objective and independent.  ¶¶4, 11, 42-43.

20  Moody's highest investment rating is "AAA"; S&P's highest rating is "AAA".  ¶11.  These

21  ratings signify the highest investment-grade, are considered to be of the "best quality," and are

22  supposed to carry the smallest degree of investment risk.  Most institutional investors, such as

23  banks, mutual funds and public pension funds, are required to purchase and hold only

24  "investment-grade" instruments and securitized interests.  ¶12.  Thus, it was a condition to the

25  issuance of the Certificates that they receive certain, specified ratings from the Rating

26  Agencies.  *Id*.  Indeed, the Rating Agencies include their proposed ratings as part of their bid

27

4

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  for the rating engagement, in a process called "ratings shopping."  ¶91.  Moreover, the Rating

2  Agencies intentionally used outdated rating models, based on pre-subprime era data, to enable

3  them to award the highest ratings to the Certificates.  ¶¶105-113.  Ratings shopping and the

4  use of outdated analysis tools resulted in over 93% of the Certificates being awarded triple-A

5  ratings.    Accordingly, the Certificates' ratings were unjustifiably high.    The Offering

6  Documents failed to disclose these facts.  *Id.*

7        Nonetheless, WaMu Defendants issued billions of dollars worth of Certificates

8  pursuant to two Registration Statements and their respective Prospectus Supplements.

9  Accordingly, WaMu Defendants undertook strictly liability for misstatements in the

10  documents as, under Sections 11 and 12 of the Securities Act (15 U.S.C. §§ 77k, 771), liability

11  for misstatements is "'virtually absolute, even for innocent misstatements.'"  *In re*

12  *Metropolitan Sec. Litig.*, No. 04 Civ. 25, 2010 WL 300402, at *1 (E.D. Wash. Jan. 20, 2010)

13  (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) and citing 15 U.S.C. §

14  77k(b)).    Section 11 of the Securities Act "was designed to assure compliance with the

15  disclosure provisions of the Act by imposing a stringent standard of liability on the parties who

16  play a direct role in a registered offering."  *Herman*, 459 U.S. at 381-82.  Section 12(a)(2) of

17  the Securities Act similarly holds sellers of securities liable for misstatements in a prospectus.

18  *In re Fuwei Films Sec. Litig.*, 634 F.Supp.2d 434 (S.D.N.Y. 2009).  The statute is clear:  Lead

19  Plaintiffs need only allege a false statement and claim a loss, and any mitigation of that loss is

20  a defense left for summary judgment or trial.    15 U.S.C. § 77k.    Contrary to WaMu

21  Defendants' arguments, the Securities Act damages provisions may not be waived by language

22  in the Offering Documents themselves.  15 U.S.C. § 77n.  Additionally, under applicable

23  federal law, Lead Plaintiffs in this action may represent ***all*** investors who purchased the

24  Certificates.

25  **II.    ARGUMENT**

26        **A.    The Standard on Motion to Dismiss**

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    In assessing Lead Plaintiffs' Complaint, the Court must accept the plaintiffs'

2  allegations as true and construe them in the light most favorable to Lead Plaintiffs. *In re Daou*

3  *Sys.*, 411 F.3d 1006, 1013 (9th Cir. 2005). Where, as here, the claims are subject to a Rule

4  8(a) pleading standard, dismissal is appropriate only if, viewed in its totality, a complaint fails

5  to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

6  *Twombly*, 550 U.S. 544, 547 (2007); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

7  Cir. 2009) (to survive a motion to dismiss, a complaint "must be plausibly suggestive of a

8  claim entitling the plaintiff to relief").

9    The Supreme Court clarified the contours of the "plausibility" requirement in *Ashcroft*

10  *v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). According to *Iqbal*, "[a] claim has facial plausibility

11  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

12  that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard

13  is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

14  defendant has acted unlawfully." *Id.* Notably, the Court is not required, at this stage, to

15  believe Plaintiffs' allegations. *Twombly*, 550 U.S. at 556 (citing *Neitzke v. Williams*, 490 U.S.

16  319, 327 (1989) ("Rule 12(b)(6) does not countenance … dismissals based on a judge's

17  disbelief of a complaint's factual allegations."). Indeed, even if a complaint "strikes a savvy

18  judge that actual proof of [its] facts is improbable" and "that a recovery is very remote and

19  unlikely," all *Twombly* requires is "enough fact to raise a reasonable expectation that discovery

20  will reveal evidence" of wrongdoing. *Id.* Plaintiffs must only "nudge[] their claims across the

21  line from conceivable to plausible." *Id.* at 570. As discussed herein, the Complaint's

22  allegations readily satisfy this standard.[5]

23    ───────────────

24  [5]    Defendants improperly seek "judicial notice" of SEC filings and other public documents to introduce disputed facts into the record, and then, on the basis of these disputed facts, assert that Lead Plaintiffs' allegations should not be accepted as true. WaMu Mot. at 6-8, 9, 16-17, 19, 23, 27, 30, 32-33, 35-37, 40. Under Ninth

25  Circuit law, the Court may not take "judicial notice of disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *see also In re Adaptive Broadband Sec. Litig.*, No. 01-1092 2002 WL

26  989478, at *20 (N.D. Cal. Apr. 2, 2002) (same as to SEC filings). The reason for this is a good one: "The Court should not use judicial notice to generate an evidentiary record and then weigh evidence - which plaintiffs have

27    6

**LEAD PLAINTIFFS' RESPONSE**
**IN OPPOSITION TO WAMU DEFENDANTS'**
**MOTION TO DISMISS**
**Master Case No. 2:09-cv-00037-MJP**

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**B.**    **Lead Plaintiffs Have Standing to Bring This Action**

2
        **1.**    **WaMu Defendants' Challenge to Lead Plaintiffs' Standing Is Premature**

3

4
        WaMu Defendants argue that, even though Lead Plaintiffs purchased Certificates that

5
were issued pursuant to both the Registration Statements at issue in this lawsuit, they lack

6
standing to sue under Sections 11 and 12(a)(2) of the Securities Act on behalf of all investors

7
who purchased Certificates that were issued pursuant to the Registration Statements.  This

8
argument fails because it is premature to raise on a motion to dismiss, and is more

9
appropriately raised and addressed during the class certification phase of the case.  *See, e.g., In*

10
*re Global Crossing, Ltd. Sec. Litig.*, 313 F.Supp.2d 189 (S.D.N.Y. 2003).

11
        As the *Global Crossing* court explained:

12
        [N]othing in the PSLRA requires that the lead plaintiffs have standing to assert
        all of the claims that may be made on behalf of all of the potential classes and

13
        subclasses of holders of different categories of security at issue in the case.
        Indeed, the imposition of any such requirement would be at odds with the

14
        purposes of the statute, since in the case of large alleged frauds involving
        issuers of many classes of securities, the consequence would be either the

15
        appointment of a large number of lead plaintiffs (undermining the goal of a
        cohesive leadership and management group) or the premature breakdown of the

16
        action into an unmanageable number of separate cases brought by different lead
        plaintiffs on behalf of each potential subclass of securities holders.

17

18
*Id.* at 204-05; *see also Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 n.13 (2nd Cir. 2004) ("[A]ny

19
requirement that a different lead plaintiff be appointed to bring every single available claim

20
would contravene the main purpose of having a lead plaintiff – namely, to empower one or

21
several investors with a major stake in the litigation to exercise control over the litigation as a

22
whole"); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("The

23
only other possibility–that the court should cobble together a lead plaintiff group that has

24

25
_____

26
not had the opportunity to challenge - to dismiss plaintiffs' complaint."  *In re Network Equip. Techs., Inc. Litig.*,
762 F.Supp. 1359, 1363 (N.D. Cal. 1991).

27

7

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    standing to sue on all possible causes of action–has been rejected repeatedly by courts in this

2    Circuit and undermines the purposes of the PSLRA.").

3        Rather than requiring Lead Plaintiffs to have standing to bring every single claim on

4    behalf of every class and subclass of securities holders, courts have allowed additional named

5    plaintiffs to intervene prior to class certification in order to cure any potential deficiencies in

6    class representation.  *See Hevesi,* 366 F.3d at 82-83 (affirming district court's decision to allow

7    lead plaintiff to add additional named plaintiffs where lead plaintiff did not have standing to

8    bring every available claim); *Initial Pub.   Offering,* 214 F.R.D. at 122-23 (granting lead

9    plaintiff leave to add new named plaintiffs for purposes of conferring standing prior to class

10   certification).   Thus, WaMu Defendants' claim that Lead Plaintiffs lack standing to assert

11   claims on behalf of all investors who purchased Certificates pursuant to the Registration

12   Statements at issue in this case is premature and is more appropriately addressed at the class

13   certification phase of this case.  *See In re Countrywide Fin. Corp. Sec. Litig.,* 588 F.Supp.2d

14   1132, 1167 (C.D. Cal. 2008) ("The well-developed class certification framework will better

15   guide this inquiry and lead to more efficient resolution of the class claims than standing's

16   sometimes-arbitrary distinctions.); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, Civ. No.

17   98-4318, 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000) ("Courts have not addressed this

18   concern vis-à-vis the doctrine of standing, but rather have examined such concerns pursuant to

19   Rule 23(a)(3)'s typicality requirement."); *In re Westinghouse Sec. Litig.,* 90 F.3d 696, 718

20   n.22 (3d Cir. 1996) ("While these [standing] concerns might be relevant on a motion for class

21   certification, they do not address whether, as a threshold matter, plaintiffs properly stated a

22   [Section 12(a)(2)] claim under Rule 12(b)(6).").

23

24

25

26

27

8

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

2.    **Lead Plaintiffs Have Adequately Alleged Standing to Sue on Behalf of Purchasers of All Certificates that Were Issued Pursuant to the Registration Statements at Issue in this Lawsuit**

WaMu Defendants' standing argument also fails because Lead Plaintiffs have adequately alleged standing to sue on behalf of all purchasers of the Certificates that were issued pursuant to the Registration Statements at issue in this case. Indeed, Section 11, by its own terms, confers standing on any person acquiring a security where "any part of the *registration statement*, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statement therein not misleading." 15 U.S.C. § 77k (emphasis added). Here, WaMu Defendants concede that Lead Plaintiffs purchased Certificates pursuant to the 2005 and 2007 Registration Statements, which are the only Registration Statements at issue. WaMu Defendants also concede that every Certificate at issue in this case was issued pursuant to either the 2005 or 2007 Registration Statement. Thus, Lead Plaintiffs have standing to assert Section 11 claims on behalf of all class members who purchased Certificates in reliance on the false and misleading statements in the Registration Statements.

The *Countrywide* opinion is on point. There, the district court analyzed the identical standing issue presented here and determined that the plaintiffs had alleged sufficient Section 11 standing to survive a motion to dismiss:

> The statue contemplates the possibility that the "registration statement" in first clause of § 11 is not the same in every respect as the "registration statement" for a particular security because "parts" of the "registration statement" may "bec[o]me effective" at different times. 15 U.S.C. § 77k(a) ("[A]ny part of the registration statement, *when such part became effective* . . ."). To require that "registration statement" of § 11's first clause be absolutely identical for each security traceable to the same initial registration and prospectus would rewrite "such part" to read "registration statement." *See also* 15 U.S.C. § 77b (defining registration statement "*unless the context otherwise requires*"). *The statute grants standing to anyone who buys "such security" – one traceable to a defective registration statement. Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999). *If the initial shelf registration statement contained an actionable statement or omission that is common to more than one issuance*

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*under the shelf registration, then purchasers in those issuance may be able to trace the same injury to the same "registration statement."*

588 F.Supp.2d at 1166 (emphasis added).  The *Countrywide* court then held: "[s]o long as (1) the securities are traceable to the same initial shelf registration and (2) the registration statements share common 'parts' that (3) were false and misleading at each effective date, there is § 11 standing."  *Id.*; *see also In re Worldcom, Inc. Sec. Litig.,* Civ. No. 02-3288, 2004 WL 555697, at *7 (S.D.N.Y. Mar. 19, 2004) (holding that purchasers of one type of debt security had standing to pursue claims on behalf of purchasers of a second type of debt security so long as both securities were issued pursuant to the same registration statement); *In re Fleming Cos. Sec. & Derivative Litig.,* Civ. No. 03-MD-1530, 2004 WL 5278716, at *49 (E.D. Tex. June 16, 2004) ("[C]ase law hold that purchasers of one type of security have standing to sue on behalf of purchasers of other types of security issued pursuant to a single registration statement.").  Accordingly, there is no merit to WaMu Defendants' claim that Lead Plaintiffs lack standing to pursue the Section 11 claims on behalf of all purchasers of Certificates that were issued pursuant to the Registration Statements at issue in this case.

### 3.    Lead Plaintiffs Have Standing to Pursue Their § 12(a)(2) Claims Against WCC

WCC goes on to challenge Lead Plaintiffs' statutory standing to assert their Section 12(a)(2) claims.  Section 12(a)(2) of the Securities Act imposes liability on any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading . . . "  15 U.S.C. § 77l(a)(2); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 582 (1995).  A defendant is liable as a "seller" under § 12(a)(2) if it "passed title, or other interest in the security, to the buyer for value," or "successfully solicits purchase of securities, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  *Pinter v. Dahl,* 486 U.S. 622, 647 (1988).

10

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Here, WCC argues that the Section 12(a)(2) claims should be dismissed because Lead

2  Plaintiffs have not alleged that they purchased the Certificates directly from WCC in the

3  Offerings.  WCC makes this argument even though it is well-established that a plaintiff need

4  not allege a direct purchase from an underwriter against whom it has brought a Section

5  12(a)(2) claim.  *See, e.g., In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 283 (S.D.N.Y.

6  2003) ("Since [plaintiff] purchased its bonds during the [offering], [plaintiff] would have

7  standing to bring a § 12(a)(2) claim against any underwriter [in the offering].").  Indeed, when

8  a plaintiff acquires the securities in the same offerings in which the firm commitment

9  underwriter defendant sells those securities to the public, this is sufficient to establish Section

10  12(a)(2) standing because it creates "[a] reasonable inference that plaintiffs acquired their

11  securities from the [exact] [u]underwriter [d]efendants" they sued.  *In re Scottish Re Group

12  Sec. Litig.,* 524 F.Supp.2d 370, 399-400 (S.D.N.Y. 2007); *see also In re Flag Telecom

13  Holdings, Ltd. Sec. Litig.,* 352 F.Supp.2d 429, 456-57 (S.D.N.Y. 2005) (allegations that shares

14  were purchased in IPO in which Citigroup served as the lead underwriter were sufficient to

15  state § 12(a)(2) claim); *Schoenhaut v. Am. Sensors,* 986 F.Supp. 785, 790 n.6 (S.D.N.Y. 1997)

16  ("plaintiffs need not specify which underwriter sold securities to each plaintiff" to establish "a

17  buyer-seller relationship" sufficient for Section 12(a)(2) standing) (quoting *In re Westinghouse

18  Sec. Litig.,* 90 F.3d 696, 715-16 (3d Cir. 1996)).

19    The Complaint alleges that WCC sold the Certificates as part of the Offerings, and that

20  Plaintiffs acquired the Certificates sold as part of those Offerings.  ¶¶25-39.  No more

21  specificity is required under Rule 8.  *See Scottish Re.,* 524 F.Supp.2d at 400 (holding that the

22  "Complaint adequately alleges that defendants, including the Underwriter Defendants, sold the

23  securities as part of the Offerings, and Plaintiffs acquired securities in the Offerings.  A

24  reasonable inference is that Plaintiffs acquired their securities from the Underwriter

25  Defendants.").

26

27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    **C.    Lead Plaintiffs Allege Actionable Misrepresentations and Omissions**

2    Section 11 liability exists when, as here, a registration statement "contained an untrue

3    statement of a material fact or omitted to state a material fact required to be stated therein or

4    necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  To state a

5    claim under Section 11, a plaintiff must plead: (1) that the registration statement at issue

6    contained an omission or misstatement; and (2) that the omission or misstatement was

7    material, "that is, it would have misled a reasonable investor about the nature of his or her

8    investment."  *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir.1994).  A complaint sufficiently

9    pleads falsity where, as here, it includes (1) each statement or omission alleged to have been

10   misleading; (2) the reason or reasons why the statement or omission is misleading; and (3) all

11   facts on which that belief is formed.  *See Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th

12   Cir. 2000).  The Ninth Circuit "recognize[s] that statements literally true on their face may

13   nonetheless be misleading when considered in context."  *Miller v. Thane Int'l, Inc*., 519 F.3d

14   879, 886 (9th Cir. 2008).

15
16
17
18
> [A]n issuer's public statements cannot be analyzed in complete isolation.
> "Some statements, although literally accurate, can become, through their
> context and manner of presentation, devices which mislead investors. For
> that reason, the disclosure required by the securities laws is measured not
> by literal truth, but by the ability of the material to accurately inform
> rather than mislead prospective buyers."

19   *Id.* (quoting *In re Convergent Tech. Sec. Litig*., 948 F.2d 507, 512 (9th Cir.1991)).  Indeed,

20   whether securities offering documents contain materially untrue statements is a mixed question

21   of fact and law and is generally inappropriate for determination on a motion to dismiss.  *See*

22   *Warshaw v. Xoma Corp*., 74 F.3d 955, 959 (9th Cir. 1996).  A complaint may not be properly

23   dismissed pursuant to Rule 12(b)(6) on the ground that the alleged misstatements or omissions

24   are not material unless it is "so obvious that reasonable minds [could] not differ" as to the

25   materiality of the misstatement. *Fecht v. Price Co*., 70 F.3d 1078, 1081 (9th Cir. 1995)

26   (quoting *Durning v. First Boston Corp*., 815 F.2d 1265, 1268 (9th Cir. 1987)).

27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Lead Plaintiffs' Complaint adequately alleges that the Offering Documents contained misstatements of material facts and omitted to state material facts necessary to make the statements made, not misleading.   Specifically, the Complaint alleges that the Offering Documents contained material misstatements and omissions regarding: (1) the underwriting standards purportedly used in connection with the origination of the underlying mortgages; (2) the due diligence conducted to ensure the originators' compliance with the loan underwriting guidelines stated in the Offering Documents; (3) the maximum loan-to-value ratios used to qualify borrowers; (4) the appraisals of the properties underlying the mortgages; and (5) the credit ratings of the Certificates. ¶16.

### 1.   Lead Plaintiffs Have Adequately Alleged Misrepresentations and Omissions Regarding Underwriting Guidelines

The Complaint identifies specific false statements in the Offering Documents that described the underwriting standards used to originate the underlying mortgage loans.   For example, both Registration Statements stated that:

> The mortgage loan seller's underwriting standards are intended to evaluate a prospective mortgagor's credit standing and repayment ability, and the value and adequacy of the proposed mortgage property as collateral. In the loan application process, prospective mortgagors generally will be required to provide information regarding such factors as their assets, liabilities, income, credit history, employment history and other related items.   Each prospective mortgagor generally will also provide an authorization to apply for a credit report which summarizes the mortgagor's credit history.   With respect to establishing the prospective mortgagor's ability to make timely payments, the mortgage loan seller may require evidence regarding the mortgagor's employment and income, and of the amount of deposits made to financial institution where the mortgagor maintains demand or savings accounts . . . .

¶138.  Likewise, the Prospectus Supplements stated that:

> The sponsor's underwriting guidelines generally are intended to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral.

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    ¶143.  These statements were materially untrue because WMB and the third-party originators

2    systematically disregarded their stated underwriting standards, issuing loans that were

3    increasingly unlikely to be repaid, and making exceptions to the underwriting standards as a

4    matter of course.  WaMu did not investigate the underwriting standards and the validity of

5    appraisal values on the underlying mortgaged properties prior to securitization.  ¶¶139, 144.

6    Specifically, only a small sampling of the mortgage loan pool, no more than 5%-7%, was

7    reviewed before WaMu securitized the loans.  *Id*.  Moreover, WMAAC made no attempt to

8    confirm the underwriting standards and appraisal standards employed by correspondent and

9    third party lenders from which they acquired mortgages.  *Id*.  Far from evaluating "the

10   applicant's credit standing and ability to repay the loan," WMB actually weakened its

11   underwriting standards and increased its exceptions to those standards in order to increase loan

12   volume. ¶¶9, 144, 149.  In sum, the Complaint alleges sufficient facts to state a claim that the

13   Offering Documents contained untrue statements and omissions regarding the underwriting

14   standards and quality of the mortgages underlying the certificates that is "'plausible on its

15   face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

16   550 U.S. 544, 570 (2007)).

17          Underwriting is fundamental to mortgage loans, and statements about loan standards

18   and quality are material to investors whose securities are backed by those loans.  *See In re PMI*

19   *Group, Inc. Sec. Litig*., No. 08 Civ. 1405, 2009 WL 3681669, at *4 (N.D. Cal. Nov. 2, 2009)

20   (statements regarding the quality of company's underwriting practices and exposure to risk

21   were false and misleading); *Atlas v. Accredited Home Lenders Holding* Co., 556 F.Supp. 2d

22   1142, 1155 (S.D. Cal. 2008) (denying lending company's motion to dismiss and noting that

23   "underwriting practices would be among the most important information looked to by

24   investors"); *In re Countrywide Fin. Corp. Derivative Litig*., 554 F.Supp.2d 1044, 1057 (C.D.

25   Cal. 2008) (false statements included representations that Countrywide actively managed

26

27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  credit risk, applied more stringent underwriting standards for riskier loans such as ARMs, and

2  only retained high credit quality mortgages in its loan portfolio).

3       WaMu Defendants contend that Lead Plaintiffs have failed to allege any misstatements

4  or omissions because such alleged omissions, according to WaMu Defendants, were disclosed

5  in the Offering Documents. *See* WaMu Mot. at 16-18. As an initial matter, WaMu Defendants

6  must satisfy a high burden to demonstrate that the misstatements and omissions are immaterial

7  as a matter of law. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947

8  (9th Cir. 2005); *In re Metro. Sec. Litig.*, 532 F Supp. 2d 1260, 1291 (E.D. Wash. 2007) ("there

9  is 'sufficient' cautionary language or risk disclosure [such] that reasonable minds could not

10 disagree that the challenged statements were not misleading").  Indeed, "defendants bear a

11 heavy burden of proof" before they can succeed on this defense. *Cf. Provenz v. Miller*, 102

12 F.3d 1478, 1493 (9th Cir. 1996) (defining a "truth-on-the-market" defense and refusing to rule

13 as a matter of law that investors were not misled by defendants' statements).

14       WaMu Defendants' contention that the Offering Documents adequately disclosed the

15 true risk of the Certificates is both wrong and too fact-intensive for resolution on the

16 pleadings.  WaMu Defendants claim that the Offering Documents revealed the rampant

17 violations of underwriting standards by stating, for example, that "[e]xceptions to the

18 sponsor's loan program parameters may be made on a case-by-case basis if compensating

19 factors are present." WaMu Mot. at 16.  This statement does not disclose, however, that WMB

20 repeatedly made exceptions to its underwriting standards in order to increase loan volume.

21 ¶149.   In other words, Lead Plaintiffs here allege that the Offering Documents were

22 misleading as to the extent to which WMB and their correspondent third-party originators

23 deviated from their origination guidelines, and thus have pled an "actionable category of

24 misstatements." *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09 Civ. 01376,

25 2010 WL 1661534, at *11 (N.D. Cal. Apr. 22, 2010); *see also In re Lehman Bros. Sec. &*

26 *Litig.*, No. 08 Civ. 6762, 2010 WL 545992, at *5 (S.D.N.Y. Feb. 17, 2010).

27

**LEAD PLAINTIFFS' RESPONSE**
**IN OPPOSITION TO WAMU DEFENDANTS'**
**MOTION TO DISMISS**
**Master Case No. 2:09-cv-00037-MJP**

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    WaMu Defendants also argue that there can be no actionable omissions regarding

2    underwriting standards because "specific characteristics of the loans were disclosed in the

3    tables describing each loan pool" in the Offering Documents. WaMu Mot. at 17-18. In truth,

4    however, the information included in the Offering Documents utterly fails to disclose the

5    borrowers' creditworthiness or the true risks of the loans. The mere fact that the Offering

6    Documents included tabular data provides no information to investors about violations of

7    underwriting standards. For example, disclosing the averages and breakdowns of the FICO

8    scores and principal amounts says nothing about the failure to properly value the collateral or

9    the creditworthiness of borrowers. As such, the data does not, and cannot, cure the material

10   omissions alleged in the Complaint. "[A] violation of Section 11 will be found when material

11   facts have been omitted or presented in such a way as to 'obscure[] or distort[]' their

12   significance." I. *Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 761

13   (2d Cir. 1991). *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F.Supp. 2d 311,

14   320 (S.D.N.Y. 2009).

15   WaMu Defendants rely heavily on the recent decision in *Plumbers' Union Local No.*

16   *12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F.Supp.2d 299 (D. Mass. 2009).

17   *Nomura* is an out-of-circuit opinion, which is currently on appeal. The court in *Nomura* did

18   not hold that plaintiffs failed to plead falsity. Rather, the court held that the extensive risk

19   disclosures present there sufficiently warned of the potential perils of subprime mortgage loans

20   (*i.e.*, that the loans in the mortgage pools may not conform to Fannie Mae and Freddie Mac,

21   and therefore may experience rates of delinquency, foreclosure and borrower bankruptcy that

22   are higher, and that may be significantly higher, than those experienced by mortgage loans

23   underwritten in strict compliance with Fannie Mae or Freddie Mac). *Nomura*, 658 F.Supp.2d

24   at 306. Here, in stark contrast to *Nomura*, the purported disclosures are far more general.

25   Therefore, the deviations from underwriting standards, which are detailed in the Complaint,

26   dramatically affected the total mix of information available to investors. ¶¶52-90. In short,

27

16

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  the disclosures here fail to protect WaMu Defendants as they did in *Nomura* because they

2  "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that

3  actually exist[ed]." *PMI Group*, 2009 WL 1916934, at *7 (citing *Brody v. Transitional Hosp*.

4  *Corp.*, 280 F.3d 997, 1005-06 (9th Cir. 2002)).

5       Moreover, "whether adverse facts are adequately disclosed is a mixed question to be

6  decided by the trier of fact." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). "The

7  adequacy of a disclosure should be resolved at the motion to dismiss stage, therefore, only

8  when the adequacy is so obvious that reasonable minds [could] not differ." *Id.* "It would be

9  premature for this court to evaluate the actual materiality of defendants' omissions, because

10 the materiality of an omission is a question reserved for a jury unless 'reasonable minds could

11 not differ' on the adequacy of the disclosure and the question is appropriate for resolution as a

12 matter of law." *In re CornerStone Propane Partners, L.P.*, 355 F.Supp. 2d 1069, 1086 (N.D.

13 Cal. 2005) (quoting *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996)); *see also*

14 *Lehman Bros. Sec. Litig.*, 2010 WL 545992, at *5.

15      In essence, WaMu Defendants contend that the Complaint must allege information

16 specific to each mortgage loan underlying each Certificate, including that deviations from

17 WMB's stated underwriting standards and failure to conduct due diligence occurred in

18 specific, individual loans at issue in this action.  WaMU Mot. at 19-20.  WaMu Defendants

19 ignore the extraordinary ratings collapse from triple-A to junk bond grade.  ¶13.  WaMu

20 Defendants' demand for further detail improperly seeks to require Lead Plaintiffs ***to prove***

21 their claims at this stage of the litigation.  *See Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C.

22 Cir. 2009) ("*Twombly* leaves the longstanding fundamentals of notice pleading intact.").

23            **2.    Lead Plaintiffs Have Adequately Alleged Misrepresentations and**
24            **Omissions Regarding Loan-to-Value Ratios**

25      The fundamental basis upon which the Certificates are valued is the ability of

26 borrowers to repay the loans and the adequacy of the collateral for those loans in case of

27                                              17

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

default.  ¶58.  Accordingly, accurate appraisals of the collateralized real estate, and the calculated LTV ratios and averages based on those appraisals, were essential to assessment of the price and risk of the Certificates.  *Id*.  Here, WaMu Defendants misrepresented the value of the underlying real estate securing the loans pooled in the respective Issuing Trusts, in terms of LTV averages and the appraisal standards by which such real estate values were measured; and, as a result, the LTV ratios in the Offering Documents were artificially low, making it appear that the loans underlying the trust, and thus the Certificates, were safer than they were.  ¶¶62-84.

The Complaint details that appraisers "experience[d] systemic problems of coercion" whereby they were forced to raise property valuations or suffer "negative ramifications" and other repercussions.  *Id*.  These allegations are supported by documentary evidence obtained in the course of the New York Attorney General's investigation of WaMu and its appraisers in *People of the State of New York v. First American Corporation and First American eAppraiseIT*, No. 07-406796 (N.Y.Sup.Ct. Nov. 1, 2007).  ¶¶68-83.  These allegations sufficiently allege misstatements regarding loan appraisals and loan-to-value ratios.

The Offering Documents included comprehensive and detailed data on LTV ratios, which - if accurate – would enable investors to properly assess the extent of the afforded protections against such known risks.  Here, the LTV ratios in the Offering Documents would have been higher if the underlying properties were appraised according to the originators' pre-established, independent appraisal procedures, in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP"), as stated in the Registration Statements and Prospectus Supplements.  ¶¶60, 61, 146. As a result of over-inflated appraisals, WaMu Defendants misrepresented the risk of the Certificates.  Lead Plaintiffs have alleged that

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    WaMu Defendants' practices permitted the pervasive and systematic use of inflated appraisals,

2    affecting all types of mortgages.  Lead Plaintiffs need not allege anything further in order to

3    state a claim.  *Wells Fargo Mortgage-Backed Certificates*, 2010 WL 1661534, at *12.

4        As discussed above, the fact that the housing downturn occurred is not a defense to

5    liability for these misrepresentations, and is not appropriately considered for other purposes at

6    this stage of the litigation.  *See, e.g., Countrywide*, 588 F.Supp. 2d at 1173-74; *In re New*

7    *Century*, 588 F.Supp. 2d 1206, 1230 (C.D. Cal. 2008) (rejecting claim that mortgage lender

8    and securitizer was "taken by surprise when the [housing] market took an unexpected turn for

9    the worse"); *In re Moody's Corp. Sec. Litig.*, 599 F.Supp. 2d 493 (S.D.N.Y. 2009) (rejecting

10   defendants' argument that the decline in stock price was due to intervening cause of market

11   collapse as result of subprime mortgage crisis).

12

13           **3.    Lead Plaintiffs Have Adequately Alleged Misrepresentations and
                     Omissions Regarding Credit Ratings**

14

15       The credit ratings in the Offering Documents constitute affirmative representations of

16   the purported character and investment risk of the Certificates at the time of issuance. The

17   Certificates' ratings, however, were based on outdated models.  ¶¶15-16,  Updated models

18   were developed but not implemented.  ¶¶105-113. In fact, a former S&P executive in the

19   Ratings Services group confirmed that S&P made a conscious decision between at least 2001

20   and 2008 to use an outdated version of its LEVELs model for rating MBS.  ¶110.  The

21   decision was motivated by S&P's desire to continue to assign triple-A ratings with minimal

22   credit enhancement in order to preserve its market share.  *Id.*  Accordingly, the credit ratings

23   reported by WMAAC in the Offering Documents affirmatively misrepresented the

24   Certificates' risk profile, which, in truth, were "far riskier than represented," and were not

25   equivalent to other investments with the same credit rating.  ¶171.  In similar context, credit

26   ratings have been held to be actionable misstatements.  *See Abu Dhabi Commercial Bank v.*

27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  *Morgan Stanley & Co., Inc.*, 651 F.Supp.2d 155 (S.D.N.Y. 2009) (finding high ratings and the

2  information they conveyed to be actionable misstatements).

3      In addition, the Offering Documents omitted facts necessary to make statements

4  regarding the ratings not misleading.  For example, WaMu Defendants failed to disclose that

5  the Rating Agencies' compensation created conflicts of interest that were exacerbated when

6  the Rating Agencies rated structured products such as the Certificates.  ¶¶16, 91-97.  Likewise,

7  WaMu Defendants did not disclose that the Rating Agencies' fees were based on the issuance

8  of the ratings sought by WaMu, rather than an objective and independent analysis.

9  Accordingly, investors were unaware of the Rating Agencies' significant conflicts of interest,

10  and that those conflicts could interfere with purportedly independent ratings. The fact that

11  investors were unaware of these facts defeats WaMu Defendants' claim that the issuer-pay

12  compensation model was "publicly known."  WaMu Mot. at 36.  The degree to which the

13  MBS compensation model "exacerbated" the conflicts of interest inherent in the issuer-pay

14  model was unknown until the SEC published the Summary Report in July 2008.

15      In sum, the misstatements and omissions related to the Certificates' ratings are well-

16  pled, and are not so obviously unimportant to a reasonable investor that reasonable investors

17  "cannot not differ on the question of their materiality."  *TSC Industries, Inc. v. Northway, Inc.*,

18  426 U.S. 438, 450 (1976).  Lead Plaintiffs' allegations with respect to the rating process are

19  sufficient to establish an actionable misstatement.  *See Wells Fargo Mortgage-Backed*

20  *Certificates*, 2010 WL 1661534, at *12.[6]

21      **D.      WaMu Defendants Are Not Shielded from Securities Act Liability by the**
        **Purchase and Sale Agreements**

22      Effectively admitting that the Class has suffered damages, WaMu Defendants contend

23  that they should be relieved of liability because the Offering Documents purportedly describe a

24

---

25  [6]      WaMu Defendants alternatively argue that SEC Rule 436(g) immunizes them from liability, however
26  Rule 436(g) does not provide broad insulation to all parties against all causes of action.  Section (g)(1) is
    expressly limited to "sections 7 and 11 of the Act."  17 C.F.R. § 230.436 (g)(1).

27                                              20

**LEAD PLAINTIFFS' RESPONSE**
**IN OPPOSITION TO WAMU DEFENDANTS'**
**MOTION TO DISMISS**
**Master Case No. 2:09-cv-00037-MJP**                    TOUSLEY BRAIN STEPHENS PLLC
                                                        1700 Seventh Avenue, Suite 2200
                                                        Seattle, Washington  98101
                                                        TEL. 206.682.5600 ● FAX 206.682.2992

1    process by which bad loans could be "cured" or replaced at the request of the investor.  *See*

2    WaMu Mot. at 32-33.  Defendants' assertion has no relevance here, as liability exists under

3    Sections 11 and 12(a)(2) for a misstatement in the Offering Documents irrespective of any

4    other remedial relief.  *See* 15 U.S.C. § 77k.  These provisions may not be waived, and

5    language to the contrary in any offering document is void *ab initio*.  15 U.S.C. § 77n ("Any

6    condition, stipulation, or provision binding any person acquiring any security to waive

7    compliance with any provision of this title . . . or of the rules and regulations of the

8    Commission shall be void.").[7]  Significantly, "[t]he statutory framework of the 1933 and 1934

9    Acts compels the conclusion that individual securityholders may not be forced to forego their

10   rights under the federal securities laws due to a contract provision."  *McMahan & Co. v.*

11   *Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1050-51 (2d Cir. 1995) (holding that claims under the

12   federal securities laws may not be precluded by a "no-action clause" in an indenture).

13        WaMu Defendants rely on one decision from the Northern District of Texas, *Lone Star*

14   *Fund V(U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 389 (5th Cir. 2010).  However, the

15   court's opinion in *Lone Star* turned on a single issue which has no application to the instant

16   case.  Specifically, in *Lone Star* the court determined that:

17        ***All*** of Appellants' various claims are predicated upon Barclays' alleged
         misrepresentation that there were *no* delinquent loans in the BR2 and BR3
18        Trusts when Lone Star purchased the securities.  Consequently, to prevail,
         Appellants must successfully allege [] that Barclays represented that the BR2
19        and BR3 Trusts had no delinquent mortgages . . . .

20   *Id.* at 388 (emphasis added).

21        As a result, when the *Lone Star* court found that "Barclays did not represent that the

22   BR2 and BR3 mortgage pools were absolutely free from delinquent loans at the time of

23

24   _____

     [7]      Because of the express terms of § 14 of the Securities Act, "courts have been careful in securities cases
25   to preserve the rights of private action under the securities laws."  *Stratmore v. Combs*, 723 F.Supp. 458, 461
     (N.D. Cal. 1989) (***"Since the securities laws are a remedial measure intended to encourage the prosecution of***
26   ***securities fraud actions, the Court refuses to enforce this indemnity provision."***), *aff'd, McGonigle v. Combs*,
     968 F.2d 810 (9th Cir. 1992).

27                                                    21

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  purchase," it dismissed plaintiffs' claims in that case.  This has *no* application to the instant

2  case because the Complaint here ***does not even include***, much less rely on, the misstatement at

3  issue in *Lone Star*.  In this case, Lead Plaintiffs allege multiple separate and distinct actionable

4  misstatements and omissions in the Registration Statements and Prospectuses as detailed in the

5  Complaint – ***none*** of which mirror the single allegation in the *Lone Star* case.    The

6  misstatements and omissions at issue here include alleged non-compliance with stated

7  underwriting guidelines and appraisal standards, understated loan-to-value ratios and

8  understated credit enhancement.  Needless to say, the Fifth Circuit decision in *Lone Star* does

9  not address ***any*** of these alleged misstatements and omissions.

10         Furthermore, although the Complaint here does make allegations regarding

11  misstatements and omissions in the Complaint regarding delinquencies, Lead Plaintiffs'

12  challenge to the delinquency representations contained in the Registration Statements and

13  Prospectuses here is fundamentally different from the alleged misrepresentation in *Lone Star*.

14  The Complaint here does not claim that the Registration Statements and Prospectuses

15  promised that there would be ***no*** delinquent loans.  Instead, the Complaint alleges as follows:

16
17         Each of the Prospectus Supplements contained the language set forth above or
           some variation of it, indicating, as of the "cut-off date" (defined differently in
           each Prospectus Supplement), the percentage of mortgage loan collateral that
18         was 30-59 and 60 days delinquent….

19         [Charts Omitted]

20         ***Omitted Information:*** *These statements masked the true impaired nature of the*
21         *collateral since the delinquency rates for these loan pools followed the same*
           *pattern of skyrocketing delinquencies immediately following the Offering dates.*
22         *Specifically, within four months after the respective "cut-off dates,*
           *delinquencies and defaults increased by an average of 1,020%, from 0.76% to*
23         *over 8% of the outstanding pool balances, and within six months that figure*
           *further rose to over 12% of the balances.  As of the date of the filing of this*
24         *Complaint, borrower delinquency and defaults have increased to over 51% of*
           *the outstanding collateral balance.*
25
26  ¶¶179-81.

27                                                    22

1    As Judge Kaplan recently put it when he upheld similar allegations to those in this

2  Complaint in *In re Lehman Bros.*, "Plaintiffs allege that the delinquency and foreclosure rates

3  of loans in the pools underlying the Certificates increased after the Certificates were issued."

4  2010 WL 545992, at *4.  Further, defendants in similar MBS cases in the Southern District of

5  New York have already attempted to rely on *Lone Star* to support their argument to no avail.

6  In fact, courts have rejected the *Lone Star* case's applicability without so much as even a

7  footnote discussion.

8         **E.      Lead Plaintiffs Sufficiently Allege a Cognizable Economic Loss**

9    WaMu Defendants argue that the only legally cognizable injury that Lead Plaintiffs can

10  assert is that they failed to receive a timely principal or interest payment pursuant to the

11  Certificates.  WaMu Defendants are wrong.  The Complaint alleges that Lead Plaintiffs and the

12  Class have suffered damages as a result of WaMu Defendants' Section 11 and 12(a)(2)

13  violations.   The value of the Certificates purchased by Lead Plaintiffs and the Class has

14  dramatically plummeted since the Offerings.   At this stage, the Complaint need not allege

15  more.

16    Section 11 of the Securities Act states that a plaintiff who purchases a security may

17  "recover such damages as shall represent the difference between the amount paid for the

18  security . . . and . . . the value thereof as of the time such suit was brought."   15 U.S.C. §

19  77k(e).  The type of injury that the statute contemplates is "a decline in investment value due

20  to materially false or misleading information in the registration statement."  *Countrywide*, 588

21  F.Supp.2d at 1168.   A plaintiff pleading a Section 11 claim is required to allege (1) the

22  purchase of relevant securities and (2) facts creating the reasonable inference that the value of

23  the securities at the presumptive damages date is *less* than the purchase price.  *Id.* at 1169-70.

24  Section 12(a)(2) requires an allegation of "[s]ome cognizable loss."  *Id.* at 1183.  So long as

25  the other allegations in the complaint (and other matters of which the Court may take judicial

26  notice) do not conclusively demonstrate that plaintiffs cannot prove a loss, the complaint will

27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    survive a motion to dismiss. *Id.* at 1169-70. It cannot be disputed that Lead Plaintiffs have

2    alleged a diminution in value of the securities they purchased. No loss causation issues are

3    raised on the face of the Complaint; nor do WaMu Defendants suggest that Lead Plaintiffs

4    cannot, as a matter of law, prove that the alleged diminution in value of the securities is related

5    to the alleged material misstatements and omissions. At this stage, nothing more is required.

6    *Countrywide,* 588 F.Supp.2d at 1169-70.

7         WaMu Defendants assert that in order to state a claim upon which relief may be

8    granted and survive a motion to dismiss, Plaintiffs must allege that they "have not received the

9    payments due from their Certificates." WaMu Mot. at 35. However, nothing in the statue or

10   in the applicable case law supports WaMu Defendants' assertion, and it is simply wrong on its

11   face. *Countrywide,* 588 F.Supp. 2d at 1168-70. Furthermore, although "Section 11(e) sets the

12   measure of damages for a plaintiff still holding her securities at the 'value' of those securities

13   at the time of suit . . . the determination of value is a fact-intensive inquiry" that is

14   "inappropriate to resolve at the motion to dismiss stage." *In re Initial Pub. Offering Sec.*

15   *Litig.,* 341 F.Supp.2d 328, 351 n.80 (S.D.N.Y. June 8, 2004). WaMu Defendants will have the

16   opportunity to offer evidence in support of their argument that the type of economic injury

17   Plaintiffs allege is somehow not recoverable and to contest the appropriate measure of such

18   damages. But, at this stage, with all inferences properly made in Plaintiffs' favor, the

19   Complaint's damages allegations are more than sufficient to withstand a motion to dismiss.

20        In fact, district courts have already rejected this exact argument in the context of

21   mortgage-backed securities. In *New Jersey Carpenters Health Fund v. DLJ Mortg. Capital,*

22   *Inc.,* No. 08 Civ. 5653, 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010), Judge Crotty of the

23   Southern District of New York held that this economic loss theory represented far "too

24   cramped a reading of damages." Judge Crotty explained:

25        Since Plaintiff does not allege that it failed to receive any principal or interest
26        payments due under its Certificates, Defendants argue that Plaintiff failed to
          allege a cognizable injury. The alleged injury – 79% diminution of market

27                                                    24

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

value – is said to be immaterial in the context of mortgage-backed securities Certificates. Plaintiff might suffer a loss from the impairment of cash flow, but loss of value is not a cognizable loss. ***This is too cramped a reading of damages.***

Many fixed-income debt securities, such as corporate bonds, do not trade on national exchanges and yet institutional investors routinely purchase corporate bonds hoping to realize a profit through resale. Plaintiff may have purchased the Certificates expecting to resell them, making market value the critical valuation marker for Plaintiff. This is a securities claim, not a breach of contract case. Mortgage-backed Certificates are a type of security, which is why, in fact, the SEC has adopted a regulatory scheme relating to pooled asset-backed securities: 17 C.F.R. § 229.1111. At this stage all that may be said is Plaintiff's market value allegations are sufficient.

2010 WL 1473288, at *5. Clearly, Lead Plaintiffs' allegations of economic loss are sufficient.

## F.    Generalized Risk Disclosures Are Not Grounds for Dismissal

WaMu Defendants also argue that Lead Plaintiffs have failed to allege any misstatements or omissions because the Offering Documents contained sufficient "cautionary language" to render the misstatements and omissions immaterial as a matter of law. WaMu Mot. at 36-38. WaMu Defendants must satisfy a high burden to demonstrate that the misstatements and omissions are immaterial as a matter of law. *See, e.g., Livid Holdings Ltd. V. Salomon Smith Barney, Inc.,* 416 F.3d 940, 947 (9th Cir. 2005) ("Dismissal on the pleadings under the bespeaks caution doctrine, however, requires a stringent showing: There must be sufficient 'cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading.'") (quotation omitted); *In re Metro. Sec. Litig.,* 532 F.Supp.2d 1260, 1291 (E.D. Wash. 2007) (same); *Provenz,* 102 F.3d at 1493 (holding that "defendants bear a heavy burden of proof" on a "bespeaks caution" defense and refusing to rule as a matter of law that investors were not misled by defendants' statements).

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Here, WaMu Defendants' contention that the Offering Documents adequately disclosed the true risk of the Certificates is both wrong and too fact-intensive for resolution on the pleadings.   Importantly, none of the "risk disclosures" informed investors that WaMu Defendants were systematically disregarding their own loan origination standards.  ¶15.  Nor did the risk disclosures inform investors that WaMu Defendants were using inflated and inaccurate appraisals to secure the underlying mortgage loans.  The risk disclosures also did not disclose that:

- WaMu Defendants engaged the Rating Agencies by way of "ratings shopping" – the practice of having the Rating Agencies provide proposed ratings on the Certificates as part of their bid for Certificate engagements.  ¶10;

- WaMu Defendants relied wholly on inadequate reviews of the underlying mortgages conducted by third-party firms, who were engaged by WCC to examine small samples – 5%-7% at most – of the mortgage loans in WMB's loan portfolio.  ¶16;

- The Rating Agencies' models for assigning rates to the Certificates were woefully outdated, employing obsolete statistical assumptions based on the performance of mortgage loans and underwriting standards for mortgages loans issued prior to 2003.  ¶17;

- The material financial conflicts of interest between the Rating Agencies and WaMu, including WaMu's engagement of the Rating Agencies through ratings shopping.  ¶18; and

- That mortgage loans underlying the Certificates were not originated in accordance with the loan underwriting guidelines stated in the Offering Documents; that the appraisals on many of the properties collateralizing the mortgages underlying the Certificates were inflated; that the amount of credit enhancement provided to the Certificates was inadequate to support AAA and investment grated ratings.  ¶20.

In addition, WaMu Defendants' "cautionary language" is too fact-intensive for resolution on a motion to dismiss.  Indeed, "whether adverse facts are adequately disclosed is a mixed question to be decided by the trier of fact." *Fecht*, 70 F.3d at 1081.  Indeed, numerous courts have held that the adequacy of such disclosures should be decided on a motion to dismiss only when the adequacy is so obvious that "reasonable minds [could] not differ." *Id.*;

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1  *see also Gray v. First Winthrop Corp.*, 82 F.3d 877, 883 (9th Cir. 1996) (same); *In re Thoratec*

2  *Corp. Sec. Litig.,* No. 04-03168, 2006 WL 1305226, at *10 (N.D. Cal. May 11, 2006) ("courts

3  generally may not dismiss a complaint on the basis of a truth-on-the-market defense to a fraud-

4  on-the market theory").  Thus, "[i]t would be premature for this court to evaluate the actual

5  materiality of defendants' omissions, because the materiality of an omission is a question

6  reserved for a jury unless 'reasonable minds could not differ' on the adequacy of the disclosure

7  and the question is appropriate for resolution as a matter of law."  *CornerStone Propane*

8  *Partners*, 355 F.Supp.2d at 1086.

9    **G.    Lead Plaintiffs Adequately Allege that WCC and the Individual**
       **Defendants Were "Control Persons" for Purposes of Section 15 Liability**

10    The Complaint pleads a claim for control person liability under § 15 of the Securities

11  Act by alleging both a primary violation of the Securities Act and that WCC and the Individual

12  Defendants controlled the primary violators.  *See* 15 U.S.C. § 77o.  To plead control, a

13  plaintiff need only allege that the defendant possessed the power to direct or cause the

14  direction of the management and policies of a person, whether through the ownership of voting

15  securities, by contract, or otherwise.  *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1065 n.9

16  (9th Cir. 2000); *see also Daou Systems, Inc.*, 411 F.3d at 1029-30.  Control allegations are

17  governed by Rule 8(a), and whether or not a particular defendant had power to control the

18  primary violator is an intensely factual question that typically is not appropriate to decide on a

19  motion to dismiss.  *See, e.g., Howard v. Everex Sys.,* 228 F.3d 1057, 1065 (9th Cir. 2000)

20  ("Whether [the defendant] is a controlling person is an intensely factual question, involving

21  scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the

22  defendant's power to control corporate actions.").

23    Here, there can be no question that WMAAC was controlled within the meaning of

24  Section 15 by WCC.  WCC created and controlled WMAAC for the sole purpose of issuing

25  the Certificates.  ¶¶55-60.  WCC served as the lead underwriter for all of the securities that

26  were issued by WMAAC.  ¶¶82-84.  As for the Individual Defendants, they were all either

27                                               27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    directors and/or officers at the time of an Offering, and signed one or more of the false and

2    misleading Registration Statements.  This alleges more than mere status since these defendants

3    had the power to control and approve the disclosures made in the Offerings.  *See, e.g., In re*

4    *LDK Solar Sec. Litig.,* No. 07 Civ. 05182 2008 WL 4369987, at *2 (N.D. Cal. Sept. 24, 2008)

5    (holding that signing or authorizing the signing of the registration statements at issue in the

6    suit are "activities typical of managers with the ability to control or influence a corporation").

7         **H.    Plaintiffs' Claims Are Not Time-Barred**

8         WaMu Defendants assert that all of Doral Bank's claims are time-barred under § 13 of

9    the Securities Act because, according to WaMu Defendants, Doral Bank was on inquiry notice

10   of the causes of action asserted in the Complaint before October 30, 2008 – more than one year

11   prior to Doral Bank's filing of the first complaint in this action.  WaMu Defendants also assert

12   that the appraisal-related claims are time-barred for most Certificates because Plaintiffs were

13   supposedly on inquiry notice of the appraisal claims more than one year prior to the date when

14   the Lead Plaintiffs filed their first complaints.  WaMu Defendants are wrong on both counts.

15        **1.    The Standard for Inquiry Notice**

16        Section 13 of the Securities Act provides, in part, that "[n]o action shall be maintained

17   to enforce any liability created under [Section 11] of this title unless brought within one year

18   after the discovery of the untrue statement or the omission, or after such discovery should have

19   been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  The U.S. Supreme

20   Court recently explained what is required to put a plaintiff on inquiry notice in *Merck & Co.,*

21   *Inc. v. Reynolds,* -- S. Ct. --, 2010 WL 1655827 (April 27, 2010).  There, the Supreme Court,

22   when dealing with a similar statute contained in the Securities Exchange Act of 1934, held

23   that:

24        ***We conclude that the limitations period … begins to run once the plaintiff did***
         ***discover or a reasonably diligent plaintiff would have "discover[ed] the facts***
25       ***constituting the violation" – whichever comes first.***  In determining the time at
         which the "discovery" of those "facts" occurred, terms such as "inquiry notice"
26       and "storm warning" may be useful to the extent that they identify a time when

27                                                    28

**LEAD PLAINTIFFS' RESPONSE**
**IN OPPOSITION TO WAMU DEFENDANTS'**
**MOTION TO DISMISS**
**Master Case No. 2:09-cv-00037-MJP**

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

the facts would behave prompted a reasonable diligent plaintiff to begin investigating. ***But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation,"***….

*Id.* at *15 (emphasis added).

The Ninth Circuit has further held that defendants bear a "considerable burden" in demonstrating that a plaintiff's claim is time-barred, the question of whether a plaintiff is on inquiry notice for purposes of the statute of limitations is typically one for the trier of fact. *Betz v. Trainer Wortham & Co., Inc.*, 519 F.3d 863, 876-77 (9th Cir. 2008); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1309-10 (9th Cir. 1982) (same); *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 879 (9th Cir. 1984). "The facts constituting inquiry 'notice must be sufficiently probative of [a claim] – sufficiently advanced beyond the stage of mere suspicion … to incite the victim to investigate." *Betz,* 519 F.3d at 876. Federal courts have repeatedly held that the question of when the statute of limitations begins to run on federal securities law claims in inherently fact-specific. *See Dorchester Investors v. Peak Int'l Ltd.*, 134 F.Supp.2d 569, 577 (S.D.N.Y. 2001) (finding that "the issue of whether Plaintiffs were on inquiry notice, and thus whether their claims are barred by the statue of limitations, is a factual one to be resolved by the trier of fact").

### 2.    WaMu Defendants Have Not Shown that Doral Bank Was on Inquiry Notice Prior to October 30, 2008

WaMu Defendants claim that Doral Bank's claims are barred on statute of limitations grounds because they were supposedly on inquiry notice prior to October 30, 2008 – which is more than one year prior to the date when Doral Bank filed its initial complaint in this action. In making this argument, WaMu Defendants point to both the August 1, 2008 complaint that was filed by other investors who held Certificates that Doral Bank did not own (the "New Orleans Complaint"), and the August 20, 2008 complaint that was filed by investors who held Washington Mutual common stock (the "Federal Securities Complaint"). WaMu Defendants make this argument even though the New Orleans and Federal Securities cases involved

29

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    different securities, different underlying mortgages from different years, and different

2    defendants.

3         Tellingly, WaMu Defendants point to nothing **specific** in the New Orleans complaint

4    that could have put Doral on inquiry notice that it had securities law claims based on the

5    specific Certificates it owned. This is not surprising because the allegations concerning the

6    misstatements made in the New Orleans case, and the downgrades that affected those

7    securities are different and therefore distinguishable from the Certificates and misstatements at

8    issue in the Doral complaint. For this reason alone, they cannot be said to have put a

9    reasonable investor on notice that the existence of the claims alleged in the Doral complaint.

10   *Newman v. Warnaco Group, Inc.,* 335 F.3d 92, 193 (2d Cir. 2004) (holding that, under the

11   "objective standard for inquiry notice, the information provided must trigger notice with

12   sufficient storm warning to alert a reasonable person to the probability that there were either

13   misleading statements or significant omissions involved"); *Levitt v. Bear Stearns & Co.,* 340

14   F.3d 94 (2d Cir. 2003) ("[W]hen the circumstances would suggest to an investor of ordinary

15   intelligence the probability that she has been defrauded, a duty of inquiry arises.").

16        Moreover, defendants must present **uncontroverted** evidence showing that a plaintiff

17   knew or should have know about its securities law claim in order to establish that the plaintiff

18   was on inquiry notice as a matter of law. *See In re Initial Publ. Offering Sec. Litig.,* 341

19   F.Supp.2d 328, 347 (S.D.N.Y. 2004); *see also Newman,* 335 F.3d at 193-95. Where

20   defendants offer reasonable words of comfort, or repeat the misstatements that form the basis

21   for the securities law violation in the first instance, the storm warning become "controverted"

22   and inquiry notice is defeated. *In re Moody's Corp. Sec. Litig.,* 599 F.Supp.2d 493, 506

23   (S.D.N.Y. 2009) (plaintiffs are not put on inquiry notice when they "reasonably rely" on

24   "reliable words of comfort from management'); *Lapin v. Goldman Sachs Group, Inc.,* 506

25   F.Supp.2d 221, 234 (S.D.N.Y. 2006) ("A plaintiff may not be considered to have been placed

26   on inquiry notice, 'despite the presence of some ominous indicators,' when 'the warning signs

27

30

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    are accompanied by reliable words of comfort from management.'"").    Here, WaMu

2    Defendants continued to file materially misleading Prospectus Supplements throughout the

3    Class Period that continued to reassure investors and negated any claim WaMu Defendants

4    may have that Doral Bank could have been on inquiry notice of its securities law claims.

5    Accordingly, there is no merit to WaMu Defendants' argument that Doral Bank's claims are

6    time-barred on statute of limitations grounds.

7             **3.    The Appraisal-Related Claims Are Not Time-Barred**

8         WaMu Defendants go on to argue that most of the appraisal claims asserted in the

9    Complaint are time barred on statute of limitations grounds.  In making this argument, WaMu

10   Defendants point to the Complaint that the New York Attorney General filed against First

11   American and eAppraiseIT on November 1, 2007, and argue that the allegations contained in

12   this Complaint put Plaintiffs on notice of the appraisal-related claims at issue in this suit.  This

13   argument fails for the same reason that WaMu Defendants' Doral Bank statute of limitations

14   argument fails: WaMu Defendants have failed to provide any specifics from the New York

15   Attorney General complaint that would have put a reasonable investor on notice that the

16   Defendants in the present suit were using inflated appraisals when issuing the specific

17   mortgages underlying the specific Certificates at issue in this case.   Without any such

18   specifics, WaMu Defendants cannot satisfy their heavy burden of showing that Plaintiffs were

19   on inquiry notice of the appraisal-related claims as a matter of law.  *Betz,* 519 F.3d at 876-77;

20   *SEC v. Seaboard Corp.,* 677 F.2d at 1309-10.

21        WaMu Defendants' argument also fails because Plaintiffs filed a Complaint on behalf

22   of all investors who purchased Certificates pursuant to the same registration statement that is

23   at issue in this lawsuit on August 1, 2008, which was within the one-year notice inquiry period

24   set forth in the Securities Act.  Thus, the statute of limitations was tolled with respect to any

25   later-filed claims.  *See, e.g, American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)

26   ("[T]he commencement of a class action suspends the applicable statute of limitations as to all

27

**LEAD PLAINTIFFS' RESPONSE**
**IN OPPOSITION TO WAMU DEFENDANTS'**
**MOTION TO DISMISS**
**Master Case No. 2:09-cv-00037-MJP**

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   asserted class members of the class who would have been parties had the suit been permitted to

2   continue as a class action.").  Under the tolling doctrine, the filing of a class action tolls any

3   applicable statute of limitations or statute of repose for all putative members of the potential

4   class when an action is pending, up to the point that the court denies class certification.  *Flag*

5   *Telecom,* 352 F.Supp.2d at 455; *see also Korwek v. Hunt,* 827 F.2d 874, 876-77 (2d Cir. 1987).

6        Moreover, whether or not the specific named plaintiff has standing to assert claims on

7   behalf of members of the entire class is irrelevant when it comes to the application of the

8   *American Pipe* tolling doctrine.  As the court in *Flag Telecom* explained: "[T]he failure to

9   apply the *American Pipe* rule to cases where a class action was dismissed for lack of standing

10  undermines the policies underlying Rule 23 and is inconsistent with the Court's reasoning in

11  *American Pipe.*"; *see also In re Enron Corp. Sec. Derivative & ERISA Litig.,* 529 F.Supp.2d

12  644, 709 (S.D. Tex. 2006) (rejecting argument that doctrine of relation back cannot save

13  Securities act claims of a newly added plaintiff by acknowledging that class actions are tolled

14  under *American Pipe*); *California Publ. Employees' Ret. Sys. v. Chubb Corp.*, No. 00-4285,

15  2002 WL 33934282, at *27 (D.N.J. June 26, 2002) (finding that limitations period was tolled

16  upon filing of original class action complaint which allowed proper class representatives to be

17  substitute for standing purposes to assert additional claims in amended complaint).  Tolling is

18  therefore available and it protects all of Plaintiffs' appraisal-related Securities Act claims

19  asserted in the August 1, 2008 New Orleans complaint.

20  **III.    CONCLUSION**

21       The vast majority of the federal district courts have now rejected dismissal of

22  Securities Act claims (based on less egregious facts) brought on behalf of mortgage pass-

23  through certificate purchasers alleging that the issuer and investment banking underwriter

24  systematically disregarded the loan origination guidelines contained in the offering documents.

25  *See, e.g., In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09 Civ. 01376, 2010 WL

26  1661534 (N.D. Cal. April 22, 2010); *New Jersey Carpenters Health Fund v. Residential*

27

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1 | *Capital, LLC*, No. 08 Civ. 8781, 2010 WL 1257528 (S.D.N.Y. March 31, 2010); *New Jersey*

2 | *Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC.*, No. 08 Civ. 5093, 2010

3 | WL 1172694 (S.D.N.Y. March 26, 2010); *In re Lehman Bros. Sec. Litig.*, No. 08 Civ. 6762,

4 | 2010 WL 545992 (S.D.N.Y. Feb. 17, 2010).

5 |       For the above reasons, Lead Plaintiffs respectfully request the Court deny WaMu

6 | Defendants' motion to dismiss in its entirety. If, however, the Court dismisses all or part of

7 | the Complaint, Lead Plaintiffs respectfully request leave to amend. Federal Rule of Civil

8 | Procedure 15(a).

9 | DATED: May 18, 2010

10 | Respectfully submitted,

11 |

**TOUSLEY BRAIN STEPHENS PLLC**
By: /s/ Nancy A. Pacharzina
Nancy A. Pacharzina, WSBA #25946
Kim D. Stephens, WSBA #11984
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
*kstephens@tousley.com*

*Liaison Counsel for the Class*

**SCOTT+SCOTT LLP**
Arthur L. Shingler III (admitted pro hac vice)
Hal D. Cunningham (admitted pro hac vice)
600 B Street, Suite 1500
San Diego, California 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

33

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Joseph P. Guglielmo (admitted pro hac vice)
500 Fifth Avenue, 40th Floor
New York, New York 10110
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

*Counsel for Lead Plaintiff and the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Joel P. Laitman (admitted pro hac vice)
Christopher Lometti (admitted pro hac vice)
Daniel B. Rehns (admitted pro hac vice)
Kenneth M. Rehns (admitted pro hac vice)
150 East 52nd Street, Thirtieth Floor
New York, New York 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
jlaitman@cohenmilstein.com
clometti@cohenmilstain.com
drehns@cohenmilstein.com
krehns@cohenmilstein.com

Steven J. Toll
1100 New York Avenue, NW, Suite 500 West
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com

*Additional Plaintiffs' Counsel*

34

LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1

### CERTIFICATE OF SERVICE

2          I hereby certify that on May 18, 2010, I electronically filed the foregoing with the

3    Clerk of the Court using the CM/ECF system which will send electronic notification of such

4    filing to all counsel of record and additional persons listed below.

5    Adam Zurofsky        azurofsky@cahill.com

6    Andrew B Brettler        abrettler@stblaw.com

7    Arthur L Shingler        ashingler@scott-scott.com, efile@scott-scott.com

8    Barry Robert Ostrager        bostrager@stblaw.com, managingclerk@stblaw.com

9    Bradley T. Meissner        bradley.meissner@dlapiper.com

10   Brian C Free        bcf@hcmp.com, gcp@hcmp.com

11   Bruce Earl Larson        blarson@karrtuttle.com, psteinfeld@karrtuttle.com

12   Christopher E Lometti        clometti@cohenmilstein.com

13   Christopher M Huck        Christopher.huck@dlapiper.com, karen.hansen@dlapiper.com

14   Corey E Delaney        corey.delaney@dlapiper.com, kerry.cunningham@dlapiper.com,

15   patrick.smith@dlapiper.com, richard.hans@dlapiper.com

16   Daniel B Rehns        drehns@cohenmilstein.com

17   David Daniel Hoff        dhoff@tousley.com, efile@tousley.com

18   David M Balabanian        david.balabanian@bingham.com

19   Dennis H Walters        dwalters@karrtuttle.com, wbarker@karrtuttle.com

20   Floyd Abrams        fabrams@cahill.com

21   Frank Busch        frank.busch@bingham.com, frank.downing@bingham.com

22   Gavin Williams Skok        gskok@riddellwilliams.com, dhammonds@riddellwilliams.com

23   Hal D Cunningham        hcunningham@scott-scott.com, efile@scott-scott.com,

24   halcunningham@gmail.com

25   Hollis Lee Salzman (Terminated)        hsalzman@labaton.com,

26   ElectronicCaseFiling@labaton.com

27                                              35

**LEAD PLAINTIFFS' RESPONSE**
**IN OPPOSITION TO WAMU DEFENDANTS'**
**MOTION TO DISMISS**
**Master Case No. 2:09-cv-00037-MJP**

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   James J. Coster      jcoster@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

2   Joel P Laitman      jlaitman@cohenmilstein.com

3   John D Lowery      jlowery@riddellwilliams.com, dhammonds@riddellwilliams.com

4   John D Pernick      john.pernick@bingham.com

5   Jonathan Gardner      jgardner@labaton.com

6   Joseph A. Fonti (Terminated)      jfonti@labaton.com, ElectronicCaseFiling@labaton.com

7   Joseph P Guglielmo      jguglielmo@scott-scott.com, efile@scott-scott.com

8   Joshua M. Rubins      jrubins@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

9   Julie Hwang (Terminated)      jhwang@labaton.com, ElectronicCaseFiling@labaton.com

10  Kenneth J Pfaehler      kpfaehler@sonnenschein.com, nreeber@sonnenschein.com

11  Kenneth M Rehns      krehns@cohenmilstein.com

12  Kerry F Cunningham      kerry.cunningham@dlapiper.com

13  Kevin P Chavous      kchavous@sonnenschein.com

14  Kim D Stephens      kstephens@tousley.com, cbonifaci@tousley.com, kzajac@tousley.com

15  Larry Steven Gangnes      gangnesl@lanepowell.com, docketing-sea@lanepowell.com,

16  donnellyjossm@lanepowell.com, sebringl@lanepowell.com

17  Leslie D Davis      ldavis@sonnenschein.com

18  Louis David Peterson      ldp@hcmp.com, smp@hcmp.com

19  Mary Kay Vyskocil      mvyskocil@stblaw.com

20  Michael H. Barr      mbarr@sonnenschein.com

21  Mike Liles , Jr      mliles@karrtuttle.com

22  Nancy A Pacharzina      npacharzina@tousley.com, kzajac@tousley.com

23  Paul Scarlato      pscarlato@labaton.com, ElectronicCaseFiling@labaton.com

24  Paul Joseph Kundtz      pkundtz@riddellwilliams.com, mbergquam@riddellwilliams.com,

25  mdowns@riddellwilliams.com

26  Richard F Hans      richard.hans@dlapiper.com, dorinda.castro@dlapiper.com

27

36

**LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP**

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Robert D Stewart       stewart@kiplinglawgroup.com, cannon@kiplinglawgroup.com

2    Robert J Pfister      rpfister@stblaw.com

3    Rogelio Omar Riojas      omar.riojas@dlapiper.com, nina.marie@dlapiper.com

4    Serena Richardson (Terminated)      srichardson@labaton.com,

5    ElectronicCaseFiling@labaton.com

6    Stellman Keehnel      stellman.keehnel@dlapiper.com, patsy.howson@dlapiper.com

7    Stephen M. Rummage      steverummage@dwt.com, jeannecadley@dwt.com

8    Steve W. Berman      steve@hbsslaw.com, heatherw@hbsslaw.com, robert@hbsslaw.com

9    Steven J Toll      stoll@cohenmilstein.com, efilings@cohenmilstein.com

10   Steven P Caplow      stevencaplow@dwt.com, belenjohnson@dwt.com

11   Tammy Roy      troy@cahill.com

12   Timothy Michael Moran      moran@kiplinglawgroup.com, cannon@kiplinglawgroup.com

13   Walter Eugene Barton      gbarton@karrtuttle.com, danderson@karrtuttle.com,

14   nrandall@karrtuttle.com

15                                    /s/ Nancy A. Pacharzina
                                      Nancy A. Pacharzina, WSBA #25946
16                                    Kim D. Stephens, P.S., WSBA #11984
                                      Email:  kstephens@tousley.com
17                                    Liaison Counsel for the Class
                                      TOUSLEY BRAIN STEPHENS PLLC
18                                    1700 Seventh Avenue, Suite 2200
                                      Seattle, Washington  98101-4416
19                                    Tele:   206.682.5600
                                      Fax:    206.682.2992
20

21

22

23

24

25

26

27
LEAD PLAINTIFFS' RESPONSE
IN OPPOSITION TO WAMU DEFENDANTS'
MOTION TO DISMISS
Master Case No. 2:09-cv-00037-MJP

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992