UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOILERMAKERS NATIONAL ANNUITY TRUST FUND, on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>WAMU MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-AR1, et al.,<br><br>     Defendants. | Master Cause NO. 2:09-cv-00037-MJP<br><br>**PLAINTIFFS' OPPOSITION TO THE RATING AGENCIES' JOINT MOTION TO DISMISS**<br><br>**Noted on Motion Calendar:**<br>**May 28, 2010**<br><br>**ORAL ARGUMENT REQUESTED** |
| DORAL BANK PUERTO RICO, on behalf of itself and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL ASSET ACCEPTANCE CORPORATION, et al.,<br><br>     Defendants. | NO. 2:09-cv-01557-MJP |

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................2

PROCEDURAL BACKGROUND...........................................................................3

ARGUMENT..........................................................................................................4

A.   This Court Should Grant Leave to Amend to Correct the Name of the Issuer of the MBS ...........................................................................................................4

    1.   Defendant WMAAC Should Have Been Identified as the Entity Controlled by the Rating Agencies .................................................5

    2.   The Court Should Grant Leave to Fix This Technical Mistake..................6

B.   The Rating Agencies Controlled the Issuer .............................................8

C.   The Rating Agency Claims Should Not Be Dismissed On Statute of Limitations Grounds.......................................................................................................14

CONCLUSION......................................................................................................16

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206-682-5600; FAX 206-682-2992

Lead Plaintiffs Doral Bank Puerto Rico and Policemen's Annuity and Benefit Fund of the City of Chicago and Plaintiff Boilermakers National Annuity Trust (collectively, "Plaintiffs") respectfully submit the following memorandum of law 1) in opposition to the Rating Agencies' Joint Motion to Dismiss the Second Amended Consolidated Class Action Complaint; and 2) in support of Plaintiffs' Motion for Leave to Amend Complaint.[1]

## INTRODUCTION

Plaintiffs allege that Defendants Moody's Investors Services, Inc. ("Moody's") and McGraw-Hill Companies, Inc. inclusive of its Standard & Poor's Ratings Service ("S&P") division (collectively, the "Rating Agencies") are liable to them under the Securities Act because they controlled the Issuer of the mortgage-backed securities at issue in this case. However, because, as Defendants point out, Plaintiffs' Complaint inadvertently misidentifies the entity controlled by the Rating Agencies, Plaintiffs now seek permission to fix their relatively minor mistake. Defendants' emphasis on this error is not surprising—the Complaint more than adequately pleads that the Rating Agencies had the ability to control or influence the Issuer of the mortgage-backed securities. In the Ninth Circuit this is sufficient to establish control person liability. Moreover, Defendants are wrong—and present the Court with an inaccurate reading of Plaintiffs' Complaint—when they insist that it is obvious from the face of the Complaint that the claims against the Rating Agencies were filed after the Securities Act's statute of limitations had run.

---

[1] Plaintiffs are separately filing a memorandum of law in opposition to the WaMu Defendants' Motion to Dismiss.

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

As described in more detail in the opposition to Defendants' principal brief, and in the Complaint itself, this lawsuit involves the creation and sale of billions of dollars of mortgage-backed securities ("MBS") by Washington Mutual Inc. ("WaMu") and its affiliates. To facilitate the creation of these securities WaMu established Washington Mutual Asset Acceptance Corporation ("WMAAC"), whose sole purpose was to create the MBS by establishing common law trusts and by depositing in them the ownership of mortgage loans which had been obtained by other WaMu entities. ¶ 24.[2] Upon their creation by WMAAC, the common law trusts issued prearranged classes of mortgage-backed debt securities, of varying credit quality, which entitled the securities' holders to defined portions of loan payments received by the trusts. ¶ 40.

WMAAC was directed by the Rating Agencies in determining what loans went into each trust and the characteristics of each of the numerous classes issued by the trusts, including the interest rate on each class, and, of critical importance, the "credit enhancement" of each class. ¶¶ 10, 12, 40. Credit enhancement is the protection against default built into each class of MBS and is of overriding importance to investors. The three key types of credit enhancement utilized in the MBS were excess spread, or the difference between the interest rate received on the underlying mortgage and the lower interest rate received on the securities; overcollateralization, or the extent to which the face value of the underlying pool of mortgages was greater than the principal amount of the security; and subordination, or the hierarchy of loss absorption among the classes of a security issued by a trust. ¶ 12 & n.3. WMAAC's

---

[2] Unless otherwise specified, ¶ __ refers to paragraphs of the Second Amended Consolidated Class Action Complaint.

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)  2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

objective was to maximize WaMu's profits by issuing securities with the highest possible rating with the lowest possible credit enhancement. The Rating Agencies told WMAAC the minimum amount of credit enhancement needed for each class of securities. *See, e.g.,* ¶ 129 (confidential witness explains that "[a]fter the [internal Rating Agency] committee review [of the proposed MBS structure], an S&P analyst called the counterpart at WaMu and reported the credit enhancement levels necessary to obtain the ratings desired by WaMu").

The impact of the Rating Agencies' intervention was long-lasting. Well after the offerings, when losses occurred, the rights of MBS holders to receive payments and the amounts and timing of those payments were determined according to the MBS structure which the Rating Agencies had determined in conjunction with WMAAC.

## PROCEDURAL BACKGROUND

This case is procedurally complex, involving the Private Securities Litigation Reform Act ("PSLRA"); numerous lawsuits filed in both state and federal courts; the bankruptcy of WaMu, a key participant in the events at issue; and now-dismissed claims against the FDIC, a federal agency, which assumed many of WaMu's obligations. The sequence of pleadings filed by Plaintiffs following the appointment of Lead Plaintiffs and Lead Counsel is, however, relatively straightforward. In their initial Consolidated Class Action Complaint, filed on November 23, 2009 (the "November Complaint") shortly after the appointment of Lead Plaintiffs and Lead Counsel, Plaintiffs alleged that the Rating Agencies were liable under state law and under Section 11 of the Securities Act of 1933 (the "Securities Act" or the "Act") because, among other things, they had been "intricately involved in the sale of Certificates issued by the Issuing Trusts." ¶ 184, Dkt. No. 103. On December 31, 2009, pursuant to a December 18, 2009 Order (Dkt. No. 118), Lead Counsel filed an

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

amended complaint (Dkt. No. 130) that was materially identical to the November Complaint,

except that, at the Court's request, it excluded claims made in the related *Doral Bank* case

which had been included in the November Complaint.  On April 1, 2010, after Plaintiffs

requested and received permission to amend, the Second Amended Consolidated Class Action

Complaint (Dkt. No. 164), which is the current operative complaint (the "Complaint"), was

filed.  This Complaint continues to allege that the Rating Agencies' extensive involvement in

the issuance of the relevant MBS constituted a violation of the Securities Act, but now asserts

a claim under the "control person" liability provision of Section 15 of the Act rather than under

Section 11.  The Complaint also voluntarily dismissed state law claims against the Rating

Agencies and the other Defendants.

## ARGUMENT

A.   **This Court Should Grant Leave to Amend to Correct the Name of the Issuer of the MBS**

This lawsuit seeks to hold a number of actors liable for false statements made in

registration statements filed in connection with the offering of certain mortgage-backed

securities by WaMu and its affiliates.  Several WaMu entities are alleged to be directly liable,

pursuant to Sections 11 and 12 of the Securities Act, for these false statements.  Any fair

reading of the Complaint also indicates that Plaintiffs seek to hold the Rating Agencies liable

on the grounds that they "dictate[ed] the structure" of the MBS at issue to the Issuer of these

securities.  ¶ 10.  The Complaint asserts that the Issuer of the MBS is primarily liable for

misstatements in its registration statements under Section 11 and that the involvement of the

Rating Agencies in designing these securities establishes the Rating Agencies' "control" over

the Issuer of these MBS as that term is used in the Securities Act.  Consequently, according to

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)            4

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX  206.682.2992

the Complaint, the Rating Agencies are liable under Section 15 of the Act as persons who controlled a primary violator. Although all of this is clear from the Complaint and, if proven, would cause the Rating Agencies to be found liable as control persons, Defendants demand that the Complaint be dismissed because it incorrectly identifies the Issuer controlled by the Rating Agencies.

### 1. Defendant WMAAC Should Have Been Identified as the Entity Controlled by the Rating Agencies

The Rating Agencies do not suggest that they have any difficulty understanding Plaintiffs' theory of liability, but they emphasize that the Complaint wrongly describes the "Issuing Trusts" as the Issuer of the relevant MBS. On reexamination, Defendants are indeed correct that, although the Issuing Trusts issued the securities in question (the securities are each obligations of one of the trusts), the Issuing Trusts were not the "Issuer" of the securities within the meaning of the Securities Act. Instead, a separate shell company, Defendant WMAAC, was the "Issuer" and the entity that actually signed the registration statements filed with the SEC. This shell entity was the entity controlled by the Rating Agencies, and should have been identified by Plaintiffs in the complaint as the primary violator that the Rating Agencies controlled. Plaintiffs regret their error and any inconvenience it may have caused the Court and Defendants; Plaintiffs would have fixed this mistake without the need for briefing if Defendants had raised the issue with them.

Nevertheless, Plaintiffs' pleading error is hardly dispositive. It is a fundamental premise of the Federal Rules that cases should not be decided on such technicalities. Plaintiffs should be granted leave to modify a few words in the Complaint so that the Issuer is properly identified. A motion requesting permission to make such a modification is being filed in

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

conjunction with this brief.

Although they should not have made it, Plaintiffs' error – treating the "Issuing Trusts" rather than WMAAC as the "Issuer" – is understandable. "[S]ection 11 of the 1933 Act imposes strict liability on the issuer" of registered securities for misstatements in the registration statement. Hazen, Law of Securities Regulation § 12.8 (footnote omitted). Normally, the term "issuer" means – both under the Securities Act and in common usage – "[a] person or entity … that issues securities." Black's Law Dictionary (8th ed. 2004). And in this case it is undisputed that the Issuing Trusts literally issued the relevant securities. The Rating Agencies' Joint Motion to Dismiss the Second Amended Consolidated Class Action Complaint ("RA Br.") at 3 (explaining that the "common law trust[s]" created in the securitization process "issue[] certificates to purchasers") (citation omitted). But, as the Rating Agencies correctly note, because of the unique nature of MBS, the SEC has issued Regulation AB, which provides that, for purposes of the Securities Act, the statutory "issuer" of an MBS is not actually the trust that issues the MBS, but the "depositor," who deposits the securities in the trusts and who sets the terms and conditions of the securities to be issued by the trust. RA Br. at 8; *see also* 17 C.F.R. § 229.1100 (2005). Because WMAAC was the depositor with respect to the relevant securities, a fact correctly noted in the Complaint, *see, e.g.,* ¶ 4, pursuant to Regulation AB, it was also the "issuer" of these securities for purposes of the Securities Act.

**2.    The Court Should Grant Leave to Fix This Technical Mistake**

Rule 15(a)(2) provides that, after a motion to dismiss has been filed, a complaint may be amended with leave of the court. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 reflects one "of the

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

most important policies of the federal rules"; its "purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1471. Consequently, the Ninth Circuit has repeatedly held that the policy of allowing amendments where it would be just to do so "is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990))); *see also United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) ("In exercising this discretion [on whether to allow amendment], a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities.").

Allowing Plaintiffs to amend their Complaint at the motion to dismiss stage to identify the proper primary violator in a Section 15 claim would be consistent with the philosophy of the Rules, especially where, as in this case, the Complaint already brings a claim against the primary violator for violating Section 11. Courts routinely allow plaintiffs to correct complaints which mistakenly name the wrong *defendants* – certainly a more serious error than that committed by Plaintiffs here.[3]

---

[3] There are numerous cases in which a court has permitted an amendment to change the identify of a defendant. In *Brown v. TA Operating LLC*, No. 07-CV-308, 2009 U.S. Dist. LEXIS 54278 (D. Nev. June 24, 2009), for example, the court permitted a plaintiff who had initially sued the wrong defendant to amend his complaint to name the correct defendant even though "the case ha[d] been pending for almost two years" when plaintiff sought leave to amend. *Id.* at \*7. The court also held that, for statute of limitations purposes, the amendment related back to the filing of the initial complaint. *Id.* at \*\*9-10. *See also G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498 (9th Cir. 1994) (district court properly allowed complaint to be amended during summary judgment briefing where plaintiff had named the wrong defendant). Similarly, in *Centuori v. Experian Information Solutions, Inc.*, 329 F. Supp. 2d 1133 (D. Ariz. 2004), the court permitted a plaintiff who had sued the wrong defendant to amend his complaint. The court explained that Rule 15 authorizes liberal

1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Not only is Plaintiffs' error far less significant than naming the wrong defendant – an error courts routinely allow plaintiffs to correct – but the Rating Agencies have suffered no prejudice here. The Complaint named the Rating Agencies as defendants in this lawsuit and accurately described why Plaintiffs believe that the Rating Agencies are liable to them. Moreover, the Rating Agencies were apparently aware, almost immediately, that Plaintiffs had identified the wrong entity. Plaintiffs have corrected their error at the motion to dismiss stage, less than two months after inadvertently incorrectly identifying the controlled entity. Courts have allowed amendments to complaints at much later stages of a proceeding. *See Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (district court did not err in allowing amendment after remand from Ninth Circuit); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 21359 (S.D.N.Y Dec. 1, 2003) (modifying scheduling order during discovery to allow plaintiffs to add new defendants). Moreover, in this case the Rating Agencies could have virtually eliminated the need for the Court or the parties to deal with this issue. If they had informally brought this error to Plaintiffs' attention, Plaintiffs would have acknowledged it and promptly fixed their mistake. *Cf. Barrett v. Qual-Med, Inc.*, 153 F.R.D. 653, 655 (D. Colo. 1994) ("Of course the normal, and decent, procedure in situations such as this is to raise the matter by a telephone call notifying opposing counsel she has sued the wrong entity, so that a correction can be made with a minimum of wasted time and expense.").

## B. The Rating Agencies Controlled the Issuer

To establish "controlling person" liability under Section 15, a plaintiff must show that "a primary violation was committed and that the defendant 'directly or indirectly' controlled

---

underlying it required that leave to amend be granted even where a plaintiff's mistake was "easily avoidable" and even if it involved "an element of negligence, carelessness, or fault" by the plaintiff. *Id.* at 1138 (quoting *Leonard v. Parry*, 219 F.3d 25, 28 (2d Cir. 2000)).

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)          8

HENDRICKS & LEWIS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the violator." *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

Control person liability, like the other provisions of the Securities Act, is subject to a Rule 8(a)

pleading standard. Thus, the standard is one of "facial plausibility"; Plaintiffs must plead

"factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To demonstrate control, a plaintiff need only show that the defendant had "[t]he

possession, direct or indirect, of the power to direct or cause the direction of the management

and policies of a person [who is a primary violator of the securities laws], whether through

ownership of voting securities, by contract, or otherwise." *Howard v. Everex Sys., Inc.*, 228

F.3d 1057, 1065 n.9 (9th Cir. 2000) (quoting 17 C.F.R. § 230.405).[4] Whether a defendant is a

controlling person is an "intensely factual question." *Everex*, 228 F.3d at 1065 (citing *Kaplan*

*v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994)); *see also In re HiEnergy Techs., Inc. Sec. Litig.*,

No. SA CV 04-1226 DOC (JTLx), 2005 U.S. Dist. LEXIS 47044, at **36-37 (C.D. Cal. Oct.

24, 2005) ("The question of who is a control person is tremendously fact intensive.") (citing

*Arthur Children's Trust v. Kelm*, 994 F.2d 1390, 1396 (9th Cir. 1993); *In re Musicmaker.com*,

2001 U.S. Dist. LEXIS 25118, at *56 ("the determination of whether a defendant has power or

---

[4]     Notably, in the Ninth Circuit, it is sufficient to show that the defendant had the *power* to control the primary violator; "it is not necessary to show ... the *exercise* of actual power." *Id.* at 1065 (emphasis added). Thus, on a motion to dismiss, the Court must determine "whether plaintiffs have adequately alleged that defendants possessed power or influence over the controlled person, but not whether such power or influence was in fact exercised in the transactions in question." *In re Musicmaker.com Sec. Litig.*, No. CV 00-2018 CAS (MANx), 2001 U.S. Dist. LEXIS 25118, at *56 (C.D. Cal. June 4, 2001); *see also Wojtunik v. Kealy*, No. CV-03-2161-PHX-PGR, 2006 U.S. Dist. LEXIS 73448, at *15 (D. Ariz. Sept. 30, 2006) ("[A] complaint need only allege that the defendant had the power to control or influence the primary violators.") (citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987)).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

influence over an allegedly controlled person is a complex factual question") (quoting *Kersh v. Gen. Council*, 804 F.2d 546, 548 (9th Cir. 1986)). Accordingly, courts in this Circuit have concluded that it is generally improper to resolve such a question on a motion to dismiss. *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008) ("Whether a defendant is a control person is a fact question rarely appropriate for motion practice."); *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863 DOC (RNBx), 2008 U.S. Dist. LEXIS 68419, at *36 (C.D. Cal. July 10, 2008) ("[T]he fact intensive control issue is particularly difficult to resolve at the motion to dismiss stage.").

Here, Plaintiffs allege that the Rating Agencies controlled the management, policies, and actions of the Issuer, including which loans would be included in the mortgage pools underlying the Certificates, the number of classes or tranches in each Offering, and the amount and type of investment protection or "credit enhancement" built into the Offering. Proposed Third Amended Consolidated Class Action Complaint ¶¶ 10-12. Thus, Plaintiffs allege that the Rating Agencies not only assigned ratings to the Certificates, but dictated the levels of credit support necessary for the Certificates to be issued, and the rights of each Certificate class in the event of default. *Id.* But for the Rating Agencies' role in directing the activities of the Issuer and dictating the policies of the Issuer, the Certificates would never have been issued. *Id.* ¶¶ 10, 12. Indeed, the Rating Agencies expressly approved the structure of the trust created by the Issuer. *Id.* ¶ 217.

Plaintiffs cite multiple sources which confirm the controlling role of the Rating Agencies. In January 2009, for example, a Congressional Oversight Panel issued a report which found that "major credit rating agencies played an important – and perhaps decisive – role in enabling (and validating) much of the behavior and

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

decision making" in the subprime mortgage-backed securities market. *Id.* ¶ 97.  Similarly, in October 2008, *The Financial Times* reported the following excerpts from interviews with employees of Moody's:

> "The rating is what gives birth to the structure in the first place." ... "You start with a rating and build a deal around a rating."

*Id.* ¶ 122.  Finally, based on information provided by a confidential witness, Plaintiffs allege, in detail, how the Rating Agencies controlled the Issuer from the very beginning:

> First, upon receiving a set of statistical data on a pool of mortgage loans from WaMu, S&P assigned a lead analyst to the transaction. ... The S&P analyst was responsible for analyzing the loan pool, proposed capital structure, and proposed credit enhancement levels provided by the Issuer. ... The junior analyst then took the proposed financing structure to an internal S&P committee.  CW1 stated that the committee process rarely changed suggested ratings and subordination levels. ***After the committee review, an S&P analyst called the counterpart at WaMu and reported the credit enhancement levels necessary to obtain the ratings desired by WaMu.***

*Id.* ¶¶ 124-29 (emphasis added).  Thus, from day one, the Rating Agencies directed the management of the Issuer and controlled the policies of the Issuer.

Unable to deny their role in controlling the Issuer, the Rating Agencies cite the incorrect legal standard for "control" in this Circuit, and then deem Plaintiffs' allegations, measured against that standard, to be "conclusory."  RA Br. at 9-10 (citing *In re Lehman Bros. Sec. and ERISA Litig.*, 681 F. Supp. 2d 495, 500 (S.D.N.Y. 2010)).  The Rating Agencies are wrong.  In fact, all Plaintiffs must allege is that the Rating Agencies had *the ability to control or influence* the Issuer, which was in turn a primary violator.  *Everex*, 228 F.3d at 1065.  The Rating Agencies' role in directing the activities of the Issuer and determining the policies that would govern the creation and issuance of the Certificates is

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

more than sufficient to satisfy that standard. Indeed, the Rating Agencies' degree of control over the Issuer exceeds the degree of control found to be sufficient in the cases the Rating Agencies cite. *See* RA Br. at 10 (citing *Fouad v. Isilon Sys., Inc.*, Case No. C07-1764 MJP, 2008 U.S. Dist. LEXIS 105870, at **35-36 (W.D. Wash. Dec. 29, 2008) (defendants were members of the primary violator's audit committee); *In re Washington Mutual, Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 509 (W.D. Wash. 2009) (defendants engaged in "formulating and overseeing [the primary violator's] implementation of risk management policies")).

Contrary to the Rating Agencies' assertions, moreover, <u>no</u> federal court has rejected the theory of control that Plaintiffs have pled here. Indeed, in no other case have plaintiffs pled, with the degree of factual detail they have here, that the Rating Agencies controlled the Issuer, as opposed to some other primary violator. This is a case of first impression. *Cf. In re Wells Fargo Mortgage-backed Certificates Litig.*, No. C 09-01376 SI, 2010 U.S. Dist. LEXIS 39825, at *33 (N.D. Cal. Apr. 22, 2010) (plaintiffs only pled, in conclusory fashion, that the Rating Agencies "exercise[d] substantial control over many parties to the securitization process, including the Depositor"); *In re Lehman Bros.*, 2010 U.S. Dist. LEXIS 7964, at *13 (applying the Second Circuit's standard of "control" to a complaint that alleged "only that the Rating Agencies had the power to influence Lehman with respect to the composition of the pools of mortgages to be securitized and the credit enhancements [required]"); *In re Indymac Mortgage-Backed Sec. Litig.*, No. 09 Civ. 4583 (LAK), slip op. at 1 (S.D.N.Y. Feb. 5, 2010) (adopting Court's opinion in *Lehman Bros.*); *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, No. 08 CV 5093 (HB), 2010 U.S. Dist. LEXIS 29711, at *26 (S.D.N.Y. Mar. 26, 2010) (declining to decide Section 15 claim

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

because plaintiffs "failed to allege primary liability against the Ratings Agency Defendants").

The Rating Agencies' remaining arguments are equally unavailing. First, it is irrelevant that the Rating Agencies were not parties to "the agreements that created" the Issuer, the "governing instrument[s]" of the Issuer, or "the agreements setting forth the 'permissible activities'" of the Issuer. Control is "the power to direct or cause the direction of the management and policies of a person ... by contract, *or otherwise*." 17 C.F.R. § 230.405 (emphasis added). Moreover, it is no defense to the Rating Agencies' control person liability that some other party, *e.g.*, one of the WaMu entities, might also have controlled the Issuer. More than one person can control the same primary violator. 15 U.S.C. § 77o (holding liable "*[e]very* person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under section 77k or 77l") (emphasis added). Nor is it any defense that the Rating Agencies themselves were controlled by one of the WaMu entities – which Plaintiffs do not allege. Even assuming they were, a person can be both a controlled and a controlling person. *In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1267 (S.D.N.Y. 1996) (denying motion for summary judgment, holding that "questions of fact exist... regarding whether [defendant] was a controlled person, a controlling person or, perhaps, both"). Defendants have not cited any authority to the contrary.

Accordingly, Plaintiffs have adequately pled that the Rating Agencies controlled the Issuer.

**C.**   **The Rating Agency Claims Should Not Be Dismissed On Statute Of Limitations Grounds**

In this Circuit a motion to dismiss on statute of limitations grounds may be granted

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

"only where 'the running of the statute is apparent from the face of the complaint,' and the motion should be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1097 (N.D. Cal. 2008) (quoting *Durning v. First Boston Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987)). In this case there is simply no basis to conclude that Plaintiffs cannot prove that they filed their claim against the Rating Agencies within the one year limitations period. To the contrary, the facts alleged in the Complaint strongly suggest that Plaintiffs will be able to rebut any statute of limitations defense Defendants may raise on summary judgment or at trial.

Defendants insist that Plaintiffs' November 23, 2009 complaint (which named the Rating Agencies) was not filed within the Securities Act's one-year statute of limitations because "pre-November 23, 2008 public reports... put Plaintiffs on inquiry notice of their claims." RA Br. at 18. The Rating Agencies argue that this is so because the Complaint "exclusively relies on pre-November 2008 disclosures to support Plaintiffs' allegations . . . ." *Id.* at 17. But this description of the Complaint is simply wrong. In addition to the 2008 report, the Complaint's allegations against the Rating Agencies also rely on events in 2009—additional revelations made public by Congressional investigators, continued downgrades of the relevant MBS and a dramatic increase in the delinquency rate of these MBS.

The January 2009 Congressional report discussed in the Complaint, and ignored by Defendants, provided Plaintiffs with considerable additional detail on the role of the Rating Agencies. ¶ 97. For example, as the Complaint notes, the report discloses that "[t]he major credit rating agencies played [a] ... perhaps decisive-role in enabling (and validating) much of

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the behavior and decision making that now appears to have put the broader financial system at risk." *Id.*

Furthermore, Plaintiffs had little reason to believe that the Rating Agencies had done anything wrong until they knew not only that some MBS had been downgraded, but that there had been a series of downgrades of unprecedented scope and magnitude. Although some downgrades occurred prior to late November 2008, the true scale that these downgrades would eventually reach was not apparent until last year. *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, 2010 U.S. Dist. LEXIS 39825, at *24 (N.D. Cal. Apr. 22, 2010) (whether downgrade of MBS was substantial enough to put Plaintiffs on notice of true facts, and commence running limitation period, was "a factual question not appropriate for resolution on a motion to dismiss"). As the Complaint notes, it was only "in or around *February 2009* that the true deterioration of the underlying mortgage collateral began to surface to the public. Borrower delinquency and default rates rose to an average of approximately 40% of the mortgage loan collateral, forcing the Rating Agencies to downgrade substantially all of the [MBS] to junk bond status." ¶ 134 (emphasis added). In total, approximately 94%, or $41.3 billion, of the $44.6 billion in Certificates initially awarded triple-A ratings (which constituted 93.5% of the total Certificate value at the time of the Offerings) were not downgraded to below investment grade levels until after November 24, 2008. Bloomberg database.[5] In fact, nearly all of those downgrades from AAA to "junk" status did not occur until February 2009— ***over $41.2 billion worth of AAA certificates were not downgraded to "junk" until on or after***

---

[5]     Bloomberg provides respected and widely-used databases which include information about the ratings of MBS by rating agencies. The Court can properly take judicial notice of facts, such as the ratings of particular MBS, that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1 | *February 11, 2009*. *Id.* Moreover, by the time the Complaint was filed on November 23,

2 | 2009, the delinquency and default rate, one of the best indicators of the degree to which the

3 | Rating Agencies' ratings had been wrong, had increased to more than 51%. ¶ 134.

4 |     Plaintiffs are free to argue at summary judgment or trial that the public information

5 | about the Rating Agencies was sufficient to put investors on notice prior to late November

6 | 2008 that the Rating Agencies were a proper party to any Section 11 claim. But at this stage,

7 | looking at what the Complaint actually alleges about the Rating Agencies as opposed to what

8 | Defendants claim it alleges, it is far from clear that Defendants' statute of limitations

9 | arguments will prevail. The issue of when sufficient information was available to investors to

10 | put them on notice of the Rating Agencies' liability under the Securities Act is an intensely

11 | factual determination that cannot properly be made on a motion to dismiss.

## CONCLUSION

    For the foregoing reasons, Plaintiffs' Motion for Leave to Amend Complaint should be granted, and the Rating Agencies' Joint Motion to Dismiss the Second Amended Consolidated Class Action Complaint should be denied.

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

(NO. 2:09-cv-00037-MJP)    16

Dated: May 18, 2010

Respectfully submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

By: /s/ Nancy A. Pacharzina
Nancy A. Pacharzina, WSBA #25946
Kim D. Stephens, WSBA #11984
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
kstephens@tousley.com

*Liaison Counsel for the Proposed Class*

**SCOTT+SCOTT LLP**
Arthur L. Shingler III (admitted pro hac vice)
Hal D. Cunningham (admitted pro hac vice)
600 B Street, Suite 1500
San Diego, California 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

Joseph P. Guglielmo (admitted pro hac vice)
500 Fifth Avenue, 40th Floor
New York, New York 10110
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

*Counsel for Lead Plaintiff Chicago PABF
and the Proposed Class*

**COHEN**

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**MILSTEIN SELLERS & TOLL PLLC**
Joel P. Laitman (admitted pro hac vice)
Christopher Lometti (admitted pro hac vice)
Daniel B. Rehns (admitted pro hac vice)
Kenneth M. Rehns (admitted pro hac vice)
88 Pine Street
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
jlaitman@cohenmilstein.com
clometti@cohenmilstain.com
drehns@cohenmilstein.com
krehns@cohenmilstein.com

Steven J. Toll
Joshua S. Devore
Matthew B. Kaplan
S. Douglas Bunch
1100 New York Avenue, NW
Suite 500 West
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
mkaplan@cohenmilstein.com
dbunch@cohenmilstein.com

*Counsel for Lead Plaintiff Doral Bank,*
*Plaintiff Boilermakers and the Proposed*
*Class*

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)                    18

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record and additional persons listed below.

Adam Zurofsky     azurofsky@cahill.com

Andrew B Brettler     abrettler@stblaw.com

Arthur L Shingler     ashingler@scott-scott.com, efile@scott-scott.com

Barry Robert Ostrager     bostrager@stblaw.com, managingclerk@stblaw.com

Bradley T. Meissner     bradley.meissner@dlapiper.com

Brian C Free     bcf@hcmp.com, gcp@hcmp.com

Bruce Earl Larson     blarson@karrtuttle.com, psteinfeld@karrtuttle.com

Christopher E Lometti     clometti@cohenmilstein.com

Christopher M Huck     Christopher.huck@dlapiper.com, karen.hansen@dlapiper.com

Corey E Delaney     corey.delaney@dlapiper.com, kerry.cunningham@dlapiper.com, patrick.smith@dlapiper.com, richard.hans@dlapiper.com

Daniel B Rehns     drehns@cohenmilstein.com

David Daniel Hoff     dhoff@tousley.com, efile@tousley.com

David M Balabanian     david.balabanian@bingham.com

Dennis H Walters     dwalters@karrtuttle.com, wbarker@karrtuttle.com

Floyd Abrams     fabrams@cahill.com

Frank Busch     frank.busch@bingham.com, frank.downing@bingham.com

Gavin Williams Skok     gskok@riddellwilliams.com, dhammonds@riddellwilliams.com

Hal D Cunningham     hcunningham@scott-scott.com, efile@scott-scott.com, halcunningham@gmail.com

Hollis Lee Salzman (Terminated)     hsalzman@labaton.com, ElectronicCaseFiling@labaton.com

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)         19

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   James J. Coster    jcoster@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

2   Joel P Laitman    jlaitman@cohenmilstein.com

3   John D Lowery    jlowery@riddellwilliams.com, dhammonds@riddellwilliams.com

4   John D Pernick    john.pernick@bingham.com

5   Jonathan Gardner    jgardner@labaton.com

6   Joseph A. Fonti (Terminated)    jfonti@labaton.com, ElectronicCaseFiling@labaton.com

7   Joseph P Guglielmo    jguglielmo@scott-scott.com, efile@scott-scott.com

8   Joshua M. Rubins    jrubins@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

9   Julie Hwang (Terminated)    jhwang@labaton.com, ElectronicCaseFiling@labaton.com

10   Kenneth J Pfaehler    kpfaehler@sonnenschein.com, nreeber@sonnenschein.com

11   Kenneth M Rehns    krehns@cohenmilstein.com

12   Kerry F Cunningham    kerry.cunningham@dlapiper.com

13   Kevin P Chavous    kchavous@sonnenschein.com

14   Kim D Stephens    kstephens@tousley.com, cbonifaci@tousley.com, kzajac@tousley.com

15   Larry Steven Gangnes    gangnesl@lanepowell.com, docketing-sea@lanepowell.com,

16   donnellyjossm@lanepowell.com, sebringl@lanepowell.com

17   Leslie D Davis    ldavis@sonnenschein.com

18   Louis David Peterson    ldp@hcmp.com, smp@hcmp.com

19   Mary Kay Vyskocil    mvyskocil@stblaw.com

20   Michael H. Barr    mbarr@sonnenschein.com

21   Mike Liles , Jr    mliles@karrtuttle.com

22   Nancy A Pacharzina    npacharzina@tousley.com, kzajac@tousley.com

23   Paul Scarlato    pscarlato@labaton.com, ElectronicCaseFiling@labaton.com

24   Paul Joseph Kundtz    pkundtz@riddellwilliams.com, mbergquam@riddellwilliams.com,

25   mdowns@riddellwilliams.com

26   Richard F Hans    richard.hans@dlapiper.com, dorinda.castro@dlapiper.com

27

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Robert D Stewart    stewart@kiplinglawgroup.com, cannon@kiplinglawgroup.com

Robert J Pfister    rpfister@stblaw.com

Rogelio Omar Riojas    omar.riojas@dlapiper.com, nina.marie@dlapiper.com

Serena Richardson (Terminated)    srichardson@labaton.com,

ElectronicCaseFiling@labaton.com

Stellman Keehnel    stellman.keehnel@dlapiper.com, patsy.howson@dlapiper.com

Stephen M. Rummage    steverummage@dwt.com, jeannecadley@dwt.com

Steve W. Berman    steve@hbsslaw.com, heatherw@hbsslaw.com, robert@hbsslaw.com

Steven J Toll    stoll@cohenmilstein.com, efilings@cohenmilstein.com

Steven P Caplow    stevencaplow@dwt.com, belenjohnson@dwt.com

Tammy Roy    troy@cahill.com

Timothy Michael Moran    moran@kiplinglawgroup.com, cannon@kiplinglawgroup.com

Walter Eugene Barton    gbarton@karrtuttle.com, danderson@karrtuttle.com,

nrandall@karrtuttle.com

/s/ Nancy A. Pacharzina
Nancy A. Pacharzina, WSBA #25946
Kim D. Stephens, P.S., WSBA #11984
Email: kstephens@tousley.com
Liaison Counsel for the Class
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tele:   206.682.5600
Fax:    206.682.2992

PLAINTIFFS' OPPOSITION TO THE RATING
AGENCIES' JOINT MOTION TO DISMISS

(NO. 2:09-cv-00037-MJP)                21