The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BOILERMAKERS NATIONAL ANNUITY TRUST FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAMU MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-AR1 *et al.*,<br><br>Defendants. | No. 09-037 MJP<br><br>[Consolidated with: Case Nos. CV09-0134 MJP, CV09-0137 MJP, and CV09-01557 MJP] |
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, *et al.*,<br><br>Defendants. | **NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING THE PENDING MOTIONS TO DISMISS** |
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION, *et al.*,<br><br>Defendants. | |

*Notice of Supplemental Authority Regarding the Pending Motions to Dismiss: (CV09-037 MJP) - 1*

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

| | |
|---|---|
| 1 | DORAL BANK PUERTO RICO, on behalf of itself and all others similarly situated, |
| 2 | Plaintiffs, |
| 3 | |
| 4 | v. |
| 5 | WASHINGTON MUTUAL ASSET ACCEPTANCE CORPORATION, *et al*., |
| 6 | Defendants. |

Defendants WaMu Asset Acceptance Corporation, WaMu Capital Corporation, Washington Mutual Mortgage Securities Corporation, David Beck, Diane Novak, Rolland Jurgens and Richard Careaga (the "WaMu Defendants") submit this Notice of Supplemental Authority to apprise the Court of a recent ruling from Judge Laura Taylor Swain in *In Re Morgan Stanley Mortgage Pass-Through Certificates Litig.*, Master File No. 09 Civ. 2137 (LTS)(MHD), 2010 U.S. Dist. LEXIS 84146 (S.D.N.Y. Aug. 17, 2010). The ruling is relevant to both pending Motions to Dismiss (Dkt Nos. 168 and 170) and is attached hereto as Exhibit A. Specifically, Judge Swain ruled that (1) plaintiffs lacked standing to assert claims regarding certificates in trusts they did not own, regardless of whether they shared a shelf registration statement (*15-16); (2) alleging that a party acquired its Certificates "pursuant and/or traceable to the Offering Documents" is no demonstration of Section 12(a)(2) standing (*18); (3) ratings downgrades, news reports, reports showing increasing delinquency rates, and other lawsuits can trigger a duty to inquire (*25-26); and

//
//
//
//

*Notice of Supplemental Authority Regarding the Pending Motions to Dismiss: (CV09-037 MJP)* - 2

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

(4) a later-filed complaint does not relate back to the original complaint where it adds plaintiffs and trusts because "Rule 15(c) may not be used as an end-run around the statute of limitations" (*28-30).

DATED this 20th day of August, 2010.

          HILLIS CLARK MARTIN & PETERSON P.S.

By    s/ Louis D. Peterson
    Louis D. Peterson, WSBA #5776
    Brian C. Free, WSBA #35788
    Hillis Clark Martin & Peterson P.S.
    1221 Second Avenue, Suite 500
    Seattle WA 98101-2925
    Telephone: (206) 623-1745
    Facsimile: (206) 623-7789
    Email: ldp@hcmp.com; bcf@hcmp.com

OF COUNSEL
ADMITTED PRO HAC VICE
BINGHAM MCCUTCHEN LLP
    David M. Balabanian
    John D. Pernick
    Frank Busch
    Three Embarcadero Center
    San Francisco, CA 94111-4067
    Telephone: (415) 393-2000
    Facsimile: (415) 393-2286
    Email: david.balabanian@bingham.com;
    john.pernick@bingham.com;
    frank.busch@bingham.com
Attorneys for Defendants
WaMu Asset Acceptance Corporation, Washington Mutual Mortage Securities Corporation, WaMu Capital Corporation, David Beck, Richard Careaga, Rolland Jurgens, and Diane Novak

*Notice of Supplemental Authority Regarding the Pending Motions to Dismiss: (CV09-037 MJP) - 3*

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ramzi Abadou - rabadou@btkmc.com,knguyen@btkmc.com
Michael H. Barr - mbarr@sonnenschein.com
Walter Eugene Barton gbarton@karrtuttle.com,nrandall@karrtuttle.com,danderson@karrtuttle.com
S Douglas Bunch dbunch@cohenmilstein.com
Frank Busch - frank.busch@bingham.com,frank.downing@bingham.com
Steven P Caplow - stevencaplow@dwt.com,belenjohnson@dwt.com
Kevin P Chavous - kchavous@sonnenschein.com
James J. Coster - jcoster@ssbb.com; jregan@ssbb.com; managingclerk@ssbb.com
Hal D Cunningham - hcunningham@scott-scott.com
Kerry F Cunningham - kerry.cunningham@dlapiper.com
Leslie D Davis - ldavis@sonnenschein.com
Corey E Delaney corey.delaney@dlapiper.com,kerry.cunningham@dlapiper.com, lorna.bernard@dlapiper.com,richard.hans@dlapiper.com,patrick.smith@dlapiper.com

Joshua S. Devore jdevore@cohenmilstein.com
Jonathan Gardner - jgardner@labaton.com
Joseph P Guglielmo - jguglielmo@scott-scott.com,efile@scott-scott.com
Richard F Hans - richard.hans@dlapiper.com,dorinda.castro@dlapiper.com
David Daniel Hoff - dhoff@tousley.com,efile@tousley.com
Christopher M Huck - Christopher.huck@dlapiper.com,karen.hansen@dlapiper.com
Matthew B. Kaplan mkaplan@cohenmilstein.com
Stellman Keehnel - stellman.keehnel@dlapiper.com,patsy.howson@dlapiper.com
Paul Joseph Kundtz pkundtz@riddellwilliams.com, mbergquam@riddellwilliams.com, mdowns@riddellwilliams.com
Joel P Laitman - jlaitman@cohenmilstein.com
Bruce Earl Larson - blarson@karrtuttle.com,psteinfeld@karrtuttle.com
Mike Liles , Jr - mliles@karrtuttle.com

*Certificate of Service  (CV09-037 MJP)*

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Christopher E Lometti - clometti@cohenmilstein.com  
Bradley T. Meissner - bradley.meissner@dlapiper.com  
Timothy M. Moran - moran@kiplinglawgroup.com,cannon@kiplinglawgroup.com  
Barry Robert Ostrager - bostrager@stblaw.com,managingclerk@stblaw.com  
Nancy A Pacharzina - npacharzina@tousley.com,kzajac@tousley.com  
Erik D Peterson - epeterson@btkmc.com,knguyen@btkmc.com  
Kenneth J Pfaehler - kpfaehler@sonnenschein.com,nreeber@sonnenschein.com  
Daniel B Rehns - drehns@cohenmilstein.com  
Kenneth M. Rehns - krehns@cohenmilstein.com  
Rogelio Omar Riojas - omar.riojas@dlapiper.com,nina.marie@dlapiper.com  
Joshua M. Rubins - jrubins@ssbb.com; lregan@ssbb.com; managingclerk@ssbb.com  
Stephen M. Rummage - steverummage@dwt.com,jeannecadley@dwt.com  
Paul Scarlato - pscarlato@labaton.com,ElectronicCaseFiling@labaton.com  
Arthur L Shingler - ashingler@scott-scott.com,cmcgowan@scott-scott.com,efile@scott-scott.com  
Kim D Stephens - kstephens@tousley.com,bkinsey@tousley.com  
Steven J. Toll - stoll@cohenmilstein.com  
Robert D Stewart - stewart@kiplinglawgroup.com,cannon@kiplinglawgroup.com  
Mary Kay Vyskocil - mvyskocil@stblaw.com  
Dennis H Walters - dwalters@karrtuttle.com,wbarker@karrtuttle.com  

DATED this 20th day of August, 2010 at Seattle, Washington.

By   s/ Louis D. Peterson  
Louis D. Peterson, WSBA #5776  
1221 Second Avenue, Suite 500  
Seattle WA 98101-2925  
Telephone: (206) 623-1745  
Facsimile: (206) 623-7789  
Email: ldp@hcmp.com

*Certificate of Service  (CV09-037 MJP)*

**HILLIS CLARK MARTIN & PETERSON P.S.**  
1221 Second Avenue, Suite 500  
Seattle, Washington  98101-2925  
Telephone: (206) 623-1745  
Facsimile: (206) 623-7789

# EXHIBIT A



1 of 1 DOCUMENT

IN RE MORGAN STANLEY MORTGAGE PASS-THROUGH CERTIFICATES LITIGATION This Document Relates to All Actions

Master File No. 09 Civ. 2137 (LTS)(MHD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2010 U.S. Dist. LEXIS 84146*

August 17, 2010, Decided
August 17, 2010, Filed

**COUNSEL:** [*1] For Plaintiff: COUGHLIN STOIA GELLER, RUDMAN & ROBBINS LLP, By: David A. Rosenfeld, Esq., Samuel H. Rudman, Esq., Carolina C. Torres, Esq., Jarrett S. Charo, Esq., Melville, NY; By: Arthur C. Leahy, Esq., Thomas E. Egler, Esq., Scott H. Saham, Esq., Susan G. Taylor, Esq., Courtland W. Creekmore, Esq., Nathan R. Lindell, Esq., Matthew I. Alpert, Esq., San Diego, CA.

For Defendant: DAVIS POLK & WARDWELL LLP, By: Hayward H. Smith, Esq., James P. Rouhandeh, Esq., William J. Fenrich, Esq., New York, NY.

**JUDGES:** LAURA TAYLOR SWAIN, United States District Judge.

**OPINION BY:** LAURA TAYLOR SWAIN

**OPINION**

MEMORANDUM OPINION AND ORDER

LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

Two putative class actions have been consolidated under the above caption. Non-named Plaintiff Public Employees' Retirement System of Mississippi ("PERS") filed suit in California state court in December 2008, asserting securities fraud claims relating to the marketing and sale of mortgage-backed security ("MBS") pass-through certificates issued by Morgan Stanley Capital I Incorporated ("MSCII") and several Morgan Stanley Mortgage Loan Trusts. PERS had purchased certificates from one such trust, Morgan Stanley Mortgage Loan Trust 2006-14SL ("2006-14SL"). [*2] PERS' action was subsequently removed to the United States District Court for the Central District of California, and then transferred to this Court in March 2009. Following the publication of notice of the action in accordance with the Private Securities Litigation Reform Act of 1995, *15 U.S.C. § 77z-1(a)(3)(A)(I)*, [1] West Virginia Investment Management Board ("WVIMB"), which had commenced a separate action against Defendants [2] in this District on May 7, 2009, was appointed Lead Plaintiff and its case was consolidated with PERS' action. (Docket Entry No. 32.) WVIMB also asserts claims relating to MBS certificates issued by MSCII and several Morgan Stanley Mortgage Loan Trusts. Like PERS, WVIMB had purchased certificates from one such trust, Morgan Stanley Mortgage Loan Trust 2007-11AR ("2007-11AR"). (CAC ¶ 9.) The trusts that issued PERS' 2006-14SL certificates and WVIMB's 2007-11AR certificates were related in that they shared a common shelf registration statement. A separate prospectus supplement detailing information specific to

the particular trust was, however, issued with respect to certificate offerings from each of the trusts. On September 15, 2009, Lead Plaintiff WVIMB filed [*3] the CAC, in which it asserts claims concerning these two certificates, although it only identifies WVIMB as named Plaintiff. The CAC also asserts claims regarding MBS certificates issued by twenty-nine other Morgan Stanley Mortgage Loan Trusts. [3] The additional trust certificates were based on the same shelf registration used for 2006-14SL and 2007-11AR; separate prospectus supplements were issued for each of the trusts. The Court has jurisdiction of the action pursuant to *28 U.S.C. § 1331*.

> 1  Notice was published on or about April 6, 2009. (See Docket Entry No. 10 at 1.)
>
> 2  The Defendants are as follows: MSCII, which purchased the mortgages, sold them to trusts which it controlled in exchange for the certificates, and then sold the certificates (Consol. Am. Compl. Violation Fed. Sec. Laws ("CAC") ¶¶ 1, 11-12, 42); Morgan Stanley Mortgage Capital Incorporated, which later merged into Morgan Stanley Mortgage Capital Holdings LLC ("MSMCH"), was the parent of MSCII, and originated or acquired mortgages from other mortgagors, served as the sponsor and a seller in the securitization of the trusts, and worked with various entities in negotiating and structuring the securitization transactions [*4] (id. ¶¶ 10-11); Morgan Stanley & Company Incorporated, which served as a broker, seller, drafter, and underwriter, was the sole lead manager and bookrunner of the certificates, and was an affiliate of MSCII, Morgan Stanley Mortgage Capital Incorporated, and MSMCH (id. ¶¶ 2, 9, 11, 14); Morgan Stanley, the parent corporation (id. ¶ 10); David R. Warren, a director of the trusts and the President of MSCII at the time (id. ¶¶ 15, 19); Anthony B. Tufariello, a director of the trusts and the Principal Executive Officer of MSCII at the time (id. ¶¶ 16, 19); William J. Forsell, a director of the trusts and the treasurer and controller of MSCII at the time (id. ¶¶ 17, 19); and Steven S. Stern, a director of the trusts at the time (id. ¶ 18). David R. Warren, Anthony B. Tufariello, William J. Forsell, and Steven S. Stern are hereinafter referred to as the "Individual Defendants."
>
> 3  In the CAC, WVIMB asserts claims regarding all of the trusts discussed in PERS' original complaint, as well as seventeen additional trusts. (See CAC ¶ 13; Docket Entry No. 1, Part 1 at 26-27, ¶ 23.) WVIMB initially named the thirty-one Morgan Stanley Mortgage Loan Trusts as defendants, but later voluntarily dismissed [*5] them from the action. (Docket Entry No. 47.)

Defendants now move to dismiss the CAC, arguing (1) that Lead Plaintiff WVIMB lacks standing to prosecute claims concerning certificates other than the one it purchased, 2007-11AR, such that the Court lacks subject matter jurisdiction of those additional claims; and (2) that the CAC fails to state claims upon which relief may be granted because Lead Plaintiff's claims are untimely and because the CAC is legally and factually insufficient in a number of respects. For the following reasons, Defendants' motion is granted in part, and Lead Plaintiff is granted leave to amend the CAC.

BACKGROUND

The following facts are taken from the CAC, the documents incorporated by reference therein, and other documents of which the Court may take judicial notice. Plaintiff's factual allegations are taken as true for purposes of this motion practice.

In a mortgage securitization, mortgage lenders--also known as originators--sell mortgages to third-party financial institutions. (CAC ¶ 36.) The financial institutions then securitize the mortgages by pooling them together, depositing them in a trust, and selling interests in the trusts to investors in the form of MBS. [*6] (Id. ¶¶ 37, 41.) Servicers of the loans receive the principal and interest payments on the mortgages from the borrowers, and convey those payments to the holders of the MBS, minus a service fee. (Id. ¶ 43.)

In this case, various Morgan Stanley entities acquired mortgages from several originators--including American Home Mortgage Corporation (id. ¶ 78); Fifth Third Mortgage Company (id. ¶ 93); First National Bank of Nevada (id. ¶ 97); GreenPoint Mortgage Funding, Incorporated (id.¶ 108); and Morgan Stanley Credit Corporation (id. ¶ 116). MSCII then deposited the mortgages in a number of trusts. (Id.¶ 11). The trust holdings generally consisted of residential mortgages including conventional, adjustable-rate, hybrid adjustable-rate, and negative amortization loans. (Id. ¶ 3.) On December 23, 2005, MSCII filed a shelf registration statement with the Securities and Exchange Commission

Case 2:09-cv-00037-MJP   Document 194   Filed 08/20/10   Page 9 of 15

Page 3
2010 U.S. Dist. LEXIS 84146, *6

("SEC") for the purpose of issuing MBS through the various trusts, and filed amendments to the shelf registration on February 17, 2006 and March 14, 2006. (Id. ¶ 3.) MSCII filed separate prospectus supplements for each trust with the SEC. (Id. ¶ 20.) From December 2005 to January 2007, MSCII and each individual [*7] trust issued different tranches of MBS. The tranches were differentiated based on several factors, including credit risks associated with the underlying mortgages and varying priority rights to payment from the mortgages. (Id. 3 n.1, ¶¶ 1, 2, 38, 42.) WVIMB purchased certificates of 2007-11AR on June 6, 2007, and again on November 11, 2007. (Id. ¶ 9.) PERS purchased certificates of 2006-14SL on August 18, 2007. (See Docket Entry No. 1, Part 1 ("PERS Compl.") at 24 ¶ 14.) As noted above, the CAC asserts claims with respect to both of these certificates, as well as with respect to certificates issued by twenty-nine other Morgan Stanley Mortgage Loan Trusts.

WVIMB alleges that the registration statement and prospectus supplements that accompanied the certificates issued by MSCII and each of the thirty-one trusts contained materially false and misleading statements regarding (1) the underwriting standards used to evaluate the credit profiles of the mortgage borrowers, (2) the standards used to appraise the value of the underlying mortgaged properties and the adequacy of the properties as security for the mortgages, (3) the loan-to-value ratios 4 of the underlying mortgages, and (4) the [*8] risk associated with the mortgages due to inadequate evaluations by rating agencies. (CAC ¶ 5.) In support of these allegations, WVIMB cites generalized language in the shelf registration document (See CAC ¶ 56, 66; Egler Decl. Ex. A), specific disclosures concerning loan originators, underwriting and appraisal policies and rating information in prospectus supplements relating to particular trusts, and allegations concerning the actual practices of the particular originators and ratings agencies referred to in the prospectus supplements (See, e.g., CAC ¶¶ 79-92, 123-152; Decl. James P. Rouhandeh Supp. Defs.' Mot. Dismiss Consol. Am. Compl. ("Rouhandeh Decl.") Ex. AA at S-27, 47-48).

> 4   A loan-to-value ratio, or a "LTV" ratio, is the amount of a mortgage as a percentage of the total appraised value of a property. (CAC ¶ 68.) For example, a transaction in which a mortgagor borrows $90,000 to purchase a $100,000 house has an LTV ratio of 90%. (Id.)

WVIMB alleges that, "[a]t the time of their purchases of the Certificates, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not reasonably have discovered these [*9] facts prior to mid-2008." (CAC ¶ 164.) In support of the statute of limitations aspect of its motion, Defendant has proffered disclosure documents demonstrating that the proportion of the mortgages underlying 2007-11AR that were sixty days or more delinquent climbed from almost 9% in October 2007, to more than 13% in December 2007, and to more than 20% in March 2008. (See Rouhandeh Decl. Exs. F-K.) Plaintiff proffers that S&P began downgrading 2007-11AR in December 2007, and Moody's followed suit in January 2008. (See Decl. Thomas E. Egler Supp. Lead Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss Consol. Am. Compl. ("Egler Decl.") Ex. B.) According to WVIMB, by the middle of 2008 the cumulative impact of these developments reached a critical mass and alerted it to misrepresentations by Defendants concerning the quality of the underlying mortgages. (CAC ¶ 6.)

WVIMB asserts claims for violations of the Securities Act of 1933 (the "Securities Act"), Section 11, *15 U.S.C. § 77k* ("*Section 11*"), Section 12(a)(2), *15 U.S.C. § 77l(a)(2)* ("Section 12(a)(2)"), and Section 15, *15 U.S.C. § 77o* ("Section 15").

DISCUSSION

Sections 11, 12(a)(2), and 15 of the Securities Act impose civil liability on certain [*10] persons when a registered securities offering contains material misstatements or omissions. *15 U.S.C. §§ 77k*, *77l(a)(2)*; *77o*; *In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 358 (2d Cir. 2010)*. Section 11 provides a cause of action regarding registration statements, and Section 12(a)(2) provides a cause of action regarding prospectuses and oral communications. *15 U.S.C. §§ 77k*, *77l(a)(2)*; see also *In re Morgan Stanley, 592 F.3d at 358-59*. Section 15 provides a cause of action against "[e]very person who . . . controls any person liable under [Sections 11 or 12(a)(2)] of this title." *15 U.S.C. § 77o*. A claim under Section 15, therefore, can only succeed if a plaintiff can first demonstrate liability under Section 11 or Section 12. See *In re Morgan Stanley, 592 F.3d at 358*. Plaintiff asserts its Section 15 claim against the Individual Defendants.

Defendants move to dismiss the CAC as to the thirty

trusts from which WVIMB did not purchase certificates on the basis that WVIMB lacks standing to assert claims regarding those trusts. Defendants further move to dismiss the CAC as to the one trust from which WVIMB did purchase certificates, 2007-11AR, for failure to state a claim [*11] upon which relief may be granted. In deciding such motions the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *In re AIG Advisor Group Sec. Litig., 309 F. App'x 495, 497 (2d Cir. 2009)*.

### *Defendants' Motion to Dismiss the CAC Pursuant to Rule 12(b)(1) for Lack of Standing*

On a motion to dismiss a complaint pursuant to *Federal Rule of Civil Procedure 12(b)(1)*, the party invoking the Court's jurisdiction bears the burden of demonstrating that subject matter jurisdiction exists. *Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003)*. As noted above, PERS' December 2008 complaint asserted claims regarding certificates issued by several trusts, even though PERS only alleged that it had purchased certificates from 2006-14SL. Likewise, WVIMB's initial complaint filed in May 2009 in this Court asserted claims regarding several trusts, even though WVIMB only alleged that it had purchased certificates from 2007-11AR. The CAC asserts claims regarding all of these trusts and twenty-nine others, and specifically identifies only WVIMB as a named Plaintiff. It proffers no further allegations [*12] regarding specific purchases.

In order to have standing, a plaintiff must have "suffered an injury in fact that is distinct and palpable; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006)* (citing *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)* (internal quotation marks omitted)). Defendants argue that WVIMB lacks standing to assert claims regarding certificates from all trusts other than 2007-11AR because it did not purchase certificates from any of those trusts and thus cannot claim any injury in fact with respect to such certificates. (Defs.' Mem. Law 7.) WVIMB, citing decisions in which plaintiffs asserting claims as to one type of securities of an issuer have been held to have standing to sue on behalf of holders of other types of the issuer's securities where the claims are based on the same underlying misrepresentations concerning the issuer, argues that it has the requisite standing as to all of the trusts, [5] and further argues that any issues regarding its ability to represent purchasers of other certificates is more properly [*13] dealt with during the class certification stage. (Pl.'s Mem. Law 6-9.)

> 5   The cases cited by Plaintiff in this regard are inapposite to the instant case. See, e.g., *In re Countrywide Fin. Corp. Sec. Litig, 588 F. Supp. 2d 1132, 1164-67 (C.D. Cal. 2008)* (plaintiffs deemed to have standing regarding securities they had not purchased because a common shelf registration statement and documents incorporated therein shared sufficiently similar alleged misrepresentations and/or omissions); *In re Worldcom, Inc., No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 4240, 2004 WL 555697, at *1-2, 7 (S.D.N.Y. Mar. 19, 2004)* (plaintiffs deemed to have standing regarding securities they had not purchased because the securities were issued in the same offering as securities purchased by plaintiffs and involved similar wrongdoing).

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)* (internal citations and quotation marks [*14] omitted). "In conducting the lawsuit on behalf of all class members and all those who have brought complaints that have been consolidated under their leadership, Lead Plaintiffs have a responsibility to *identify and include named plaintiffs* who have standing to represent the various potential subclasses of plaintiff who maybe determined, at the class certification stage, to have distinct interests or claims." *In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003)* (emphasis added); see also *In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 122 (S.D.N.Y. 2002)* (stating that "[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the *named* plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim." (internal citation and quotation marks omitted)).

WVIMB's reliance, in the CAC, on allegations concerning the activities of particular originators, service providers and rating agencies, and the alleged falsity of prospectus supplement disclosures [*15] concerning the policies and activities of such entities, precludes its argument that it can demonstrate standing to sue on behalf of the holders of trust certificates of which WVIMB was not a purchaser. The particulars of the holdings, originators, policies, practices and ratings relevant to each trust were detailed in that trust's prospectus supplement only. WVIMB can make no viable claim of reliance on the alleged misrepresentations or omissions concerning the particulars of certificates that it did not purchase, nor can it demonstrate that it has been injured by such misrepresentations or omissions. Its position thus is unlike those of plaintiffs who, for instance, sue based on the content of Form 10-K reports incorporated by reference into the registration documents pertaining to multiple classes of securities issued by a company. Here, the certificates were issued by separate trusts pursuant to separate sets of operative documents notwithstanding the common thread of the shelf registration statements and their generic disclosure content. [6]

> 6  To the extent Lead Plaintiff's expansive assertion of standing is based on the principle that the registration statement for each trust incorporates [*16] by reference the prospectus supplement and that, by virtue of the common shelf registration, all of the specific prospectus supplements are part of the registration statement for each trust for which the same shelf registration was used, its argument is unsupported by any proffer of authority and is unavailing insofar as standing is concerned. As noted above, standing requires the ability to demonstrate an injury arising from the actions complained of. Lead Plaintiff, having never purchased certificates representing interests in the other trusts as to which particular disclosures are claimed to have been false or insufficient, cannot make the requisite showing.

WVIMB therefore lacks standing to pursue its claims concerning any certificates other than 2007-11AR. PERS' original Complaint, however, includes an allegation that PERS purchased certificates of the 2006-14SL trust, as to which claims are asserted in the CAC. As previously noted, this is a consolidated class action in which WVIMB has been designated as Lead Plaintiff for purposes of pre-certification representation of other plaintiffs, including PERS. Although the CAC did not specifically mention PERS as a purchaser, its intent [*17] is clearly to prosecute the claims asserted in the PERS action as well as those originally asserted in WVIMB's complaint. PERS' complaint, which is part of the record in this consolidated action, clearly identified PERS as a purchaser of the securities at issue. The record thus is sufficient to demonstrate the existence and identity of a class representative with constitutional standing to pursue claims concerning certificates issued by 2006-14SL. Accordingly, Defendants' Motion to Dismiss the CAC for lack of standing is denied insofar as the CAC asserts claims relating to 2006-14SL and 2007-11AR, and WVIMB is directed to amend the CAC to identify PERS as a named plaintiff in the body of the CAC.

Defendants also argue that Plaintiff lacks statutory standing to bring its Section 12(a)(2) claim because WVIMB has not alleged that it purchased certificates in a public offering as opposed to the aftermarket, citing *Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 407-08 (S.D.N.Y. 2007)*, for the proposition that WVIMB's Section 12(a)(2) claim thus fails. (Mem. Law Supp. Defs.' Mot. Dismiss Consol. Am. Compl. ("Defs.' Mem. Law") 9 n.5.) Section 12(a)(2) only provides a cause of action to [*18] persons who purchase a security from an offeror or seller. *15 U.S.C. § 77l(a)(2)*; see also *In re Morgan Stanley, 592 F.3d at 359*. Because the CAC alleges that Morgan Stanley & Company Incorporated "acted as a broker and seller in these transactions" (CAC ¶ 9), it does not, read in the light most favorable to Plaintiff, allege aftermarket purchases only; thus the CAC is not deficient as to Plaintiff's surviving 12(a)(2) claim. The CAC makes no specific allegation regarding PERS' purchase, however, and PERS' original complaint merely alleges that it "acquired [2006-14SL] Certificates pursuant and/or traceable to the Offering Documents." (PERS Compl. ¶ 14.) Thus there is no demonstration in the current record of Section 12(a)(2) standing with respect to any security other than the 2007-11AR certificates.

Accordingly, Defendants' motion to dismiss the CAC pursuant to *Rule 12(b)(1)* for lack of subject matter jurisdiction is denied with respect to Plaintiffs' Section 11, Section 12(a)(2) and related Section 15 claims regarding certificates issued by the 2007-11AR trust, and

with respect to Plaintiffs' Section 11 and related Section 15 claims regarding certificates issued by the 2006-14SL [*19] trust, and is granted in all other respects.

*Defendants' Motion to Dismiss the CAC Pursuant to Rule 12(b)(6)*

On a motion to dismiss a complaint pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, the movant bears the burden of demonstrating that the complaint fails to state a claim upon which relief may be granted. *Lerner v. Fleet Bank, N.A., 318 F.3d at 128*. To survive a motion to dismiss brought pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, a complaint must "plead enough facts to state a claim that is plausible on its face." *Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008)* (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*.

Defendants assert that the CAC must be dismissed for failure to plead sufficiently the timeliness of the claims asserted and, based on information that was publicly available and reports that were issued to investors in the 2007-11AR trust certificates more than [*20] a year before the May 2009 filing date of WVIMB's original complaint, argue that WVIMB cannot demonstrate that its claims are timely. WVIMB asserts that its claims should be deemed to relate back to the filing date of the PERS Complaint and therefore can be maintained. [7] The Court will first address the sufficiency of the CAC and the timeliness of WVIMB's claims as originally asserted, and then turn to the relation back issue.

> 7 Defendants do not argue that PERS' lawsuit was untimely.

*Timeliness*

Section 13 of the Securities Act requires in pertinent part that claims under Section 11 and Section 12 be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." *15 U.S.C. § 77m*. This same limitations period applies to Section 15 claims. *Dodds v. Cigna Sec., Inc., 12 F.3d 346, 349-50 n.1 (2d Cir. 1993)*. A plaintiff is required to plead, among other things, the time and circumstances of its discovery of the fraudulent statement upon which its claim is based. *In re Chaus Sec. Litig., 801 F. Supp. 1257, 1265 (S.D.N.Y. 1992)*. Here, WVIMB merely alleges that "[a]t the time of their [*21] purchases of the Certificates, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to mid-2008. Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which this action is based until the time that the first complaint was filed." (CAC ¶ 164.) Lead Plaintiff does not allege the precise timing or the means by which it gained knowledge of the relevant facts.

The timeliness allegation of the CAC is plainly insufficient to address the requisite issues of time and circumstances. It is equally plain that, unless the claims first asserted in WVIMB's original complaint can be deemed to relate back to PERS' original filing date, any amendment of the timeliness allegations as to the WVIMB claims would be futile. The Section 13 statute of limitations begins running when a plaintiff had actual notice or inquiry notice of the alleged conduct. *In re WorldCom Sec. Litig., 496 F.3d 245, 249 (2d Cir. 2007)*. A plaintiff need not know all of the details of the conduct or know about "the entire fraud being [*22] perpetrated to be on inquiry notice," *Dodds, 12 F.3d at 352*, but instead merely must be aware of the "general fraudulent scheme," *In re Integrated Res. Real Estate Ltd. P'ships Sec., 815 F. Supp. 620, 637 (S.D.N.Y. 1993)* (quoting *Robertson v. Seidman & Seidman, 609 F.2d 583, 587 (2d Cir. 1979))*. Inquiry notice exists where sufficient facts would suggest to a plaintiff of normal intelligence that wrongdoing is "probable, not merely possible." *Newman v. Warnaco Group, 335 F.3d 187, 193 (2d Cir. 2003)*. Courts may determine as a matter of law whether inquiry notice existed in a particular case, using an objective standard and evaluating the totality of the circumstances. *Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 427 (2d Cir. 2008)*.

The statute of limitations begins to run, and knowledge of an injury is imputed on the basis of inquiry notice, as follows: (1) if a plaintiff "makes no inquiry once the duty arises, knowledge will be imputed as of the date the duty arose"; but (2) if "some inquiry is made [after the duty arises], [the court] will impute knowledge

of what [a plaintiff] in the exercise of reasonable diligence should have discovered concerning the [injury], and [*23] in such cases the limitations period begins to run from the date such inquiry should have revealed the [injury]." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 167-68 (2d Cir. 2005) (third alteration in the original) (internal citation and quotation marks omitted). It is proper to dismiss a complaint on the basis of inquiry notice when the complaint and other "uncontroverted evidence clearly" support such a finding. Id. In this analysis courts may take judicial notice of financial data, *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 343 (S.D.N.Y. 1999), news coverage, and prior lawsuits without converting a motion to dismiss into a motion for summary judgment, *Staehr*, 547 F.3d at 425. Courts merely note the existence of the information without analyzing whether the information is true. Id. Even a single news article may give rise to inquiry notice. See, e.g., *Shah v. Meeker*, 435 F.3d 244, 250-51 (2d Cir. 2006); *In re MBIA Inc.*, No. 05 Civ. 3514, 2007 U.S. Dist. LEXIS 10416, 2007 WL 473708 (LLS), at *6-7 (S.D.N.Y. Feb. 14, 2007) (collecting cases).

Defendants argue that WVIMB was on inquiry notice by the end of 2007 or the beginning of 2008, and that WVIMB's complaint, which was filed in May 2009, was therefore untimely. [*24] (Defs.' Reply Mem. Law 9-10.) Plaintiff argues that inquiry notice did not arise until sometime in mid-2008, when "the truth about the [the risk associated with the] mortgage loans that secured the Certificates began to be revealed to the public . . . [and] credit rating agencies began . . . to downgrade previously assigned ratings." (CAC ¶ 6; see also Pl.'s Mem. Law 22.) In support of this argument Plaintiff cites several news items from April 11, 2008 to October 22, 2008, including a Wall Street Journal article discussing the "erosion" of standards at Moody's rating agency (CAC ¶ 141); a statement to Congress by Christopher Cox, the former Chairman of the SEC, which called into question "the integrity of the ratings process as a whole" (id. ¶ 142); Senate testimony by the President and Chief Executive Officer of the Fitch rating agency that Fitch's antiquated rating models did not account for "the dramatic shift in borrower behavior brought on by changing practices in the market" (id. ¶ 130), and that in issuing ratings Fitch did not "appreciate the extent of shoddy mortgage origination practices and fraud in the 2005-07 period" (id. ¶ 145); and an analyst's statement that Fifth [*25] Third Mortgage Company "was pursuing poor lending habits and that is why it got into so much trouble" (id. ¶ 94).

Defendants point to downgrades of the ratings of the 2007-11AR certificates commencing in October 2007, and pre-2008 news reports of questions regarding the integrity of ratings of subprime instruments. (See Def's Mem. Law 24-25.) Defendants also proffer monthly reports to investors in the 2007-11AR which indicate that the proportion of the underlying mortgages that were sixty days or more delinquent climbed from almost 9% in October 2007, to more than 13% in December 2007, and to more than 20% in March 2008. (See Rouhandeh Decl. Exs. F-K.) Plaintiff's own summary of these materials acknowledges that S&P began downgrading 2007-11AR in December 2007, and that Moody's followed suit in January 2008. (See Egler Decl. Ex. B.) Indeed, according to Plaintiff's own Declaration, thirteen of sixteen downgrades by Moody's of 2007-11AR occurred before May 2008, and four out of sixteen downgrades by S&P of 2007-11AR occurred before May 2008. (Id.) Defendants also cite another lawsuit filed by Lead Plaintiff's counsel on January 31, 2008 [8] (Defs.' Mem. Law 25), which involved similar [*26] allegations regarding MBS-related misconduct by First National Bank of Nevada ("FNBN"), the key originator of mortgages held by 2007-11AR (CAC ¶ 97). In addition, Defendants proffer an SEC report from January 2003 and news articles from May 2007 to September 2007 regarding conflicts of interest on the part of rating agencies. (Rouhandeh Decl. Exs. M-S.)

> 8 See *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 305-06 (D. Mass 2009).

This body of information makes it plain that inquiry notice arose well before May 2008. Accordingly, it would be futile to permit Lead Plaintiff to amend its timeliness allegations in connection with its May 2009 filing date. The Court therefore turns to the question of whether WVIMB's original filing may be deemed to relate back to the date of PERS' original filing.

*Relation Back*

WVIMB argues that the proper date for statute of limitations analysis is not the date WVIMB filed suit in this Court, but the date PERS filed suit in California. (Pl.'s Mem Law 22.) The Court construes this argument as one that the CAC should be deemed an amendment to PERS' complaint that added WVIMB and its putative

class as plaintiffs, [*27] rather than merely a consolidation of the untimely WVIMB claims with PERS' claims.

*Federal Rule of Civil Procedure 15(c)* governs whether a pleading that adds a party may relate back to the original filing date for statute of limitations purposes. *Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 36 (2d Cir. 1996)*. It provides in relevant part:

> **(1)** *When an Amendment Relates Back*. An amendment to a pleading relates back to the date of the original pleading when . . .
>
> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if *Rule 15(c)(1)(B)* is satisfied and if, within the period provided by *Rule 4(m)* for serving the summons and complaint, the party to be brought in by amendment:
>
> **(I)** received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Fed. R. Civ. P. 15(c)*. While *Rule 15(c)* "is framed in terms of an amendment [*28] that would change the party against whom a claim is asserted and of the new party's ability to maintain a defense, it is also applicable to a proposed change of plaintiffs." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11,19 (2d Cir. 1997)* (internal quotation marks omitted) (emphasis added). Indeed, the Advisory Committee Notes to the Rule instruct that "the attitude taken in revised *Rule 15(c)* toward change of defendants extends by analogy to amendments changing plaintiffs." *Fed. R. Civ. P. 15(c)* Advisory Committee Notes (1966); see also *In re S. African Apartheid Litig., 617 F. Supp. 2d 228, 289-90 (S.D.N.Y. 2009)*.

Here, while WVIMB's complaint arguably arises out of the same "conduct, transaction, or occurrence" that formed the basis of PERS' complaint, the other elements of *Rule 15(c)* are not satisfied. See *Fed. R. Civ. P. 15(c)(1)(B)*. *Federal Rule of Civil Procedure 4(m)* requires that a defendant be served within 120 days after a complaint is filed. *Rule 15(c)(1)(C)* requires that, within this period, the defendant have received adequate notice of the new plaintiff's claims against it so that it will not be prejudiced in forming a defense on the merits, and that [*29] the defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Fed. R. Civ. P. 15(c)(1)(C)*; see also *Soto, 80 F.3d at 35*. PERS filed suit in December 2008, more than 120 days before WVIMB filed suit in May 2009. Accordingly, Defendants did not receive notice of WVIMB's suit against it within the period required by *Rule 4(m)*. Nor is there any indication that Defendants knew or should have known prior to the filing of the initial WVIMB complaint that WVIMB's claims would have been asserted against them but for a mistake concerning the proper plaintiff's identity. Cf. *Krupski v. Costa Crociere S.p.A., 130 S. Ct. 2485, 2493, 2496-97, 177 L. Ed. 2d 48 (2010)* (the issue under *Rule 15(c)(1)(C)(ii)* is whether a defendant knew it would have been named as a party by a plaintiff but for a mistake concerning the defendant's identity; the speed with which a plaintiff seeks to file an amended complaint after learning of its mistake is irrelevant).

There is also no indication that PERS failed to add WVIMB as a plaintiff because of a mistake concerning WVIMB's identity, and WVIMB itself does not allege that any such mistake was [*30] made. A mistake about a party's identity in the context of *Rule 15(c)* can be either (1) a factual mistake, such that a party "misapprehended the identit[y]" of a party to be added; or (2) a legal mistake, such that a party "misunderstood the legal

Case 2:09-cv-00037-MJP   Document 194   Filed 08/20/10   Page 15 of 15

Page 9
2010 U.S. Dist. LEXIS 84146, *30

requirements of her cause of action." *Soto, 80 F.3d at 36*. Nothing in PERS' complaint indicates that it intended to sue regarding 2007-11AR or any of the other trusts that are identified in the CAC but not in PERS' complaint, or that it failed to add those claims or WVIMB because of a factual or legal mistake. [9] WVIMB's untimely suit is a separate litigation from PERS' suit, and there is no sign that WVIMB or any of its putative class members had any relationship to PERS' complaint before that action was transferred to this Court. *Rule 15(c)* may not be used as an end-run around the statute of limitations to add a party that "filed a separate complaint that was time barred." *Levy v. U.S. Gen. Accounting Office, 175 F.3d 254 (2d Cir. 1999)*. WVIMB's claims regarding the 2007-11AR certificate were untimely filed and are therefore dismissed.

> 9   Because PERS class action complaint did not include claims regarding 2007-11AR and several other trusts [*31] mentioned in the CAC, the statute of limitations was not tolled as to these claims pursuant to *American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974)*. In American Pipe, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *In re WorldCom Sec. Litig., 496 F.3d 245, 250-51 (2d Cir. 2007)* (quoting *Am. Pipe, 414 U.S. at 544*).

*Remaining Claims; Defendants' Other Rule 12(b)(6) Arguments*

As a result of the foregoing determinations, the only surviving claims asserted in the CAC at this juncture are the Section 11 and Section 15 claims relating to the 2006-14SL trust certificates purchased by PERS. PERS is not named specifically in the CAC, and there are no allegations specific to the 2006-14SL trust in the CAC. In light of the unusual confluence of legal and factual circumstances that has led to this result, the Court will permit Plaintiffs to amend the CAC prior to evaluating it against those aspects of Defendants' motion that attack specific elements of the pleading under *Rule 12(b)(6)*.

CONCLUSION

Defendants' motion pursuant to *Federal Rule of Civil Procedure 12(b)(1)* is denied as to Lead Plaintiff's [*32] claims pursuant to Sections 11, 12 and 15 insofar as they relate to the 2007-11AR trust, and as to plaintiff PERS' claims pursuant to Sections 11 and 15 insofar as they relate to the 2006-14SL trust, and is granted in all other respects.

Defendants' motion pursuant to *Federal Rule of Civil Procedure 12(b)(6)* is granted, with prejudice, as to Lead Plaintiff WVIMB's claims relating to the 2007-11AR trust. Defendants' motion pursuant to *Federal Rule of Civil Procedure 12(b)(6)* is denied, without prejudice to renewal, as to plaintiff PERS' claims pursuant to Sections 1 and 15 relating to the 2006-14SL trust.

Plaintiffs are granted leave to amend the CAC, to demonstrate PERS' standing with respect to any of the claims that have been dismissed pursuant to *Rule 12(b)(1)* and to augment and clarify the pleading of the claims asserted by PERS. Any such amendment to the CAC must be filed by **September 10, 2010**. If no such amendment is timely filed, Defendants' motion may be reinstated, on written request, as against the remaining aspects of the existing CAC.

This memorandum opinion and order resolves docket entry no. 44.

SO ORDERED.

Dated: New York, New York

August 17, 2010

/s/ Laura Taylor Swain

LAURA [*33] TAYLOR SWAIN

United States District Judge