The Honorable Marsha J. Pechman

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| BOILERMAKERS NATIONAL ANNUITY TRUST FUND, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>WAMU MORTGAGE PASS TRHOUGH CERTIFICATES, SERIES AR1, et al.,<br><br>      Defendants. | Case No. C09-00037MJP<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS** |

This matter is before the Court on Defendants' motions to dismiss Plaintiffs' second amended consolidated complaint. (Dkt. Nos. 168, 170.) In addition filing responses to the motions (Dkt. Nos. 177, 178), Plaintiffs have filed a motion to amend the complaint (Dkt. No. 179). Defendants have filed replies in support of their motions (Dkt. Nos. 184, 187), the Rating Agency Defendants have filed a response to Plaintiffs' motion to amend (Dkt. No. 186), and Plaintiffs have filed a reply in support of their motion to amend (Dkt. No. 190). For the reasons set forth below, the Court GRANTS IN PART the WaMu Defendants' motion to dismiss, GRANTS the Rating Agencies' motion to dismiss, and DENIES Plaintiffs' motion to amend.

**Background**

I.   Procedural History

A total of six complaints have been filed in this matter. On August 4, 2008, an action was filed in King County Superior Court. (C09-0134; Dkt. No. 1 (Notice of Removal).) On January 20, 2009, Plaintiff Boilermakers filed their complaint. (C09-0037; Dkt. No. 1.) The Doral Bank complaint was filed on October 2009. (C09-1557: Dkt. No. 1.) Plaintiffs filed their first consolidated complaint on November 23, 2009. On December 31, 2009, Plaintiffs filed an amended consolidated complaint. Finally, the Second Amended Complaint ("SAC") was filed on April 1, 2010. (Dkt. No. 164.[1]) The proceedings were delayed by a statutorily-mandated stay for claims against Washington Mutual Bank, Plaintiffs' error in providing adequate PSLRA notices, and Plaintiffs' request for leave to amend their complaint in light of this Court's rulings in the In re Washington Mutual Securities, ERISA, and Derivative Litigation, 08-md-1919 MJP.

II.   Allegations in Second Amended Complaint[2]

Lead Plaintiffs Doral Bank of Puerto Rico ("Doral Bank") and Policemen's Annuity and Benefit Fund of the City of Chicago ("Chicago PABF") and Plaintiff Boilermakers National Annuity Trust ("Boilermakers") bring this action on their own behalf and on behalf of a putative class of individuals and entities who purchased interests in certain Washington Mutual Mortgage Pass-Through Trusts ("Issuing Trusts"). (¶ 1.) Plaintiffs purchased mortgage-backed securities created by Washington Mutual Bank subsidiaries from 75,608 "mainly sub-prime first-lien hybrid adjustable rate" mortgage loans. (¶¶ 5-6.) The securities entitled purchasers to the proceeds of payments made on the underlying mortgages: "[a]s the original borrowers on each of the underlying mortgage loans paid their mortgages, distributions were made to investors through the Issuing Trusts in accordance with the terms of the Offering Documents governing the issuance of the Certificates." (¶ 7.)

---

[1] Unless otherwise noted, all references to the Complaint and all "¶" citations refer to the Second Amended Complaint

[2] The Court's summary of the Plaintiffs' allegations shall not be construed as an indication that any facts alleged have been established in fact.

Washington Mutual Bank ("WMB"), which is no longer a named Defendant in this matter, either originated or acquired the mortgage loans underlying the Certificates. (¶ 23.) Defendant Washington Mutual Asset Acceptance Corporation ("WMAAC"), a wholly-owned subsidiary of Washington Mutual, Inc., purchased the mortgage loans from WMB and assigned the mortgage loans to the trustee. (¶ 24.) WMAAC filed two Registration Statements pertinent to the securities in this Complaint: (1) a December 2005 Form S-3, subsequently amended by a January 2006 Form S-3/A (together "the 2006 Registration Statement") and (2) a March 2007 Form S-3, as subsequently amended by an April 2007 Form S-3/A (together "the 2007 Registration Statement"). (¶ 25.) Defendant WaMu Capital Corporation ("WCC"), another wholly-owned subsidiary of Washington Mutual, Inc., underwrote the offerings and "assisted in drafting and disseminating the Offering Documents for the Offerings of Certificates" issued pursuant to the Registration Statements. (¶¶ 37-39.) Plaintiffs refer to WMB, WMAAC, and WCC collectively as "WaMu." (¶ 5.)

Defendants David Beck, Diane Novak, Thomas Green, Rolland Jurgens, Richard Careaga, Thoams, Lehmann, Stephen Fortunato, and Donald Wilhelm are officers of WMAAC who signed the Registration Statements. (¶¶ 4, 27-36.) Plaintiffs name Moody's Investors Services, Inc. ("Moody's") and McGraw Hill Companies, Inc. ("McGraw-Hill") (together "Rating Agencies") as Defendants for their role in providing credit ratings to the certificates which were published in the Prospectus Supplements. (¶¶ 4, 11, 42-43.)

Unlike dividends issued to holders of common stock, the cash flow from mortgage-backed securities ("MBS") is distributed "in order of priority, based on the specific tranche held by the MBS investor." (¶ 45.) Thus, "[t]he highest tranche . . . is first to receive its share of the mortgage proceeds and is also the last to absorb any losses should mortgage borrowers become delinquent or default on their mortgages." (Id.) Plaintiffs allege Defendants made a number of misrepresentations with respect to certificates issued in 36 public offerings between January 26, 2006 and June 26, 2007. (¶ 2.) Defendants amended the Registration Statements with

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 3                    CASE NO. C09-00037MJP

Certificate-specific Prospectus Supplements, which describe the mortgage pool underlying each trust. (¶¶ 61-62.)

**Discussion**

I. Legal Standards

On a Rule 12(b)(6) motion to dismiss, the Court must assess the viability of the Complaint. Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has recently clarified that "[a] claim has facial plausibility when the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Iqbal, 129 S. Ct. at 1949). The Court must accept Plaintiffs' factual allegations as true, but need not accord the same deference to legal conclusions. Id. at 1949-150 (citing Twombly, 550 U.S. at 555). To the extent documents referenced in a complaint contradict a plaintiff's conclusory allegations, the Court is not required to accept those allegations as true. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Under a facial challenge to jurisdiction under Rule 12(b)(1), the Court's analysis mirrors its Rule 12(b)(6) inquiry. See James Wm. Moore, et al., Moore's Federal Practice § 12.30[4]; see also Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2204) (distinguishing between facial and factual challenges).

II. Request for Judicial Notice

When deciding a motion to dismiss, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A court may

consider "a writing referenced in the complaint but not explicitly incorporated therein" if a claim necessarily relies on the document and there is no dispute as to authenticity. Id. A court may take judicial notice of public documents filed with the SEC. Dreiling v. American Express Co., 458 F.2d 942, 946 n.2 (9th Cir. 2006).

The WaMu Defendants seek judicial notice of (1) certain SEC filings (Dkt. No. 171 ("RJN"), Exs. 1-6, 21-22, 25), (2) the Mortgage Loan Purchase and Sale Agreement (id., Ex. 23), (3) summaries and supporting data related to the delinquency rates of the loans (id., Exs. 7, 8), and (4) a number of press releases, newspaper articles, and reports (id., Exs. 9-19). Plaintiffs do not distinguish among the exhibits and object the Court taking judicial notice of any document. (Dkt. No. 177 at 14 n.5.) The Court GRANTS the request as to the SEC filings, which are referenced in the complaint, but DENIES the request as to the remainder of the documents, which do not bear on the Court's analysis.

III.   Sections 11 and 12(a)(2)

    a.   Standing under Section 11

The WaMu Defendants challenge Plaintiffs' standing to bring § 11 and § 12(a)(2) claims with respect to a number of the certificates. Because the standard for standing differs under each statute, the Court analyzes standing as to these claims separately. To establish standing under § 11, a plaintiff must allege "they purchased shares either (1) directly in the public offering for which the misleading registration statement was filed or (2) traceable to that public offering." Guenther v. Cooper Life Sciences, Inc., 759 F. Supp. 1437, 1439 (N.D. Cal. 1990); see also 15 U.S.C. § 77k(a). This Court has previously observed that named plaintiffs who purchased certain types of notes lacked standing to pursue § 11 claims for other related notes which they did not purchase. See In re Washingon Mutual Securities Litig., 694 F. Supp. 2d 1192, 1220 (W.D. Wash. 2009); In re Wells Fargo Mortgage-Backed Certificates Litig., ___ F. Supp. 2d. ___, 2010 WL 1661534, at *4 (N.D. Cal. April 22, 2010) (same); accord, Casey v. Lewis, 4 F.3d 1516, 1519 (9th Cir. 1993) ("At least one named plaintiff must satisfy the actual injury

component of standing in order to seek relief on behalf of himself or the class.") (emphasis in original).

Doral Bank alleges it purchased WaMu Mortgage-Pass Through Certificates, Series 2006-AR17, 2006-AR18, 2007-OA4, and 2007-OA5 and WMALT Series 2007-OA5. (¶ 20.) Chicago PABF purchased WaMu Mortgage-Pass Through Certificates, Series 2006-AR5, 2006-AR12, 2006-AR16, 2007-HY1, and 2006-HY1. (¶ 21.) Boilermakers purchased WaMu Mortgage-Pass Through Certificates, Series 2006-AR7. (¶ 22.) Plaintiffs do not allege they purchased any of the following certificates identified in the complaint: 2006-AR1, 2006-AR2, 2006-AR3, 2006-AR4, 2006-AR6, 2006-AR8, 2006-AR9, 2006-AR10, 2006-AR11, 2006-AR13, 2006-AR14, 2006-AR15, 2006-AR19, 2006-HY2, 2006-HY3, 2006-HY4, 2006-HY5, 2006-HY6, 2006-HY7, 2006-OA6, WMALT 2007-OC1, WMALT 2007-OC2, WMALT 2007-1, WMALT 2007-2, and WMALT 2007-3. (See ¶¶ 38-39; Dkt. No. 170, Appx. B.)

Plaintiffs, relying primarily on In re Countrywide Financial Corp. Sec. Litig., 588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2008), argue they have standing to sue on behalf of the class because all the certificates were issued pursuant to either the 2006 or 2007 Registration Statements. (Dkt. No. 177 at 17; see also Dkt. No. 191 (notice of supplemental authority).) The Court is not persuaded to adopt Plaintiffs' expansive view of standing. Unlike the scenario in Countrywide, Plaintiffs here allege that certain statements in the supplemental prospectuses are materially misleading. (See ¶ 61.) In instances where the misstatements extend beyond the shelf registration materials, it is difficult to adopt the rationale that the common misstatements suffice for standing. Plaintiffs lack standing to sue for losses related to the 25 certificates for which they have failed to identify a purchaser.

Plaintiffs also urge the Court to defer ruling on the issue of standing because the issue is "premature to raise on a motion to dismiss." (Dkt. No. 177 at 15.) Plaintiffs' argument and selective quotation of authority invites this Court to commit error. The courts in Global Crossing Ltd. Sec. Litig., 313 F. Supp. 2d 189, 204-05 (S.D.N.Y 2003), and Hevesi v. Citigroup, Inc., 366

F.3d 70, 82 (2d Cir. 2004), were contrasting the standing of the lead plaintiffs with that of the named plaintiffs. Thus, those courts contemplated revisiting the issue of standing in the context of a Rule 23 typicality and adequacy of representation analysis. See Global Crossing, 313 F. Supp. 2d at 205 ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims.") In this case, Plaintiffs have not identified any named plaintiff who purchased 25 of the Certificates cited in the Complaint. Without any purchaser who suffered a loss, plaintiffs cannot identify an injury in fact traceable to the offering as required for Article III standing. See In re Lehman Brothers Sec. and ERISA Litig., 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010). Because Plaintiffs have not alleged an injury in fact for the purposes of those certificates, the issue is properly addressed on a motion to dismiss.

  b. Standing under Section 12(a)(2)

Standing under Section 12(a)(2) is more restrictive than under Section 11. Section 12 "permits suit against a seller of a security by prospectus only by 'the person purchasing such security from him,' thus specifying that a plaintiff must have purchased the security directly from the issuer of the prospectus." Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076, 1081 (9th Cir. 1999). This Court has previously held that simply alleging a purchase was "traceable to" a particular offering is insufficient to confer standing under Section 12. WaMu II, 694 F. Supp. 2d at 1226; see also In re Scottish Re Group Sec. Litig., 524 F. Supp. 2d 370, 399 (S.D.N.Y. 2007) (Plaintiffs' allegations that (1) underwriters sold securities as part of an offering and (2) "plaintiffs acquired securities in the Offerings" were sufficient).

Plaintiffs allege they purchased certificates "pursuant to" the offending Registration Statements and subsequent Prospectus Supplements. (¶¶ 20-22.) In their response brief, Plaintiffs submit: "[t]he Complaint alleges that WCC sold the Certificates as part of the Offerings, and that Plaintiffs acquired the Certificates sold as part of those Offerings." (Dkt. No.

177 at 19.) However, an allegation that a plaintiff acquired certificates that had been—at some point in time—sold in an Offering is different from an allegation a plaintiff purchased certificates as part of an Offering. As the Court in Nomura recognized, "[i]f plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so." Plumbers' Union Local No. 12 Pension v. Nomura Asset Acceptance Corp., 658 F. Supp. 2d 299, 305 (D. Mass. 2009). Plaintiffs' § 12 claims are dismissed for lack of standing.

    c.    Misrepresentation

Section 11 creates a private right of action for purchasers of a security when an issuer's coordinate registration statement includes "an untrue statement of a material fact or omit[s] to state a material fact required to be stated . . . to make the statements therein not misleading." 15 U.S.C. § 77k(a). To prevail on a § 11 claim, "a plaintiff must prove '(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have mislead a reasonable investor about the nature of his or her investment.'" Rubke v. Capitol Bancorp, Ltd., 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting In re Daou Sys., Inc., 411 F.3d 1006, 1027 (9th Cir. 2005)). Similarly, § 12(a)(2) imposes liability "on parties who sell securities with a false or misleading prospectus." In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1423 (9th Cir. 1994). The standard for § 12 materiality is the same as under § 11. Id. at 1424.

"[W]hether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." Fecht v. Price Co., 70 F.3d 1078, 1081 (9th Cir. 1995). Thus, the court may only determine the issue of materiality as a matter of law where "the statement is so obvious that reasonable minds could not differ." Id. (internal quotations omitted).

Following a familiar refrain, Plaintiffs allege the offering documents were materially misleading because (1) they misinformed investors about the nature of the mortgage loans' underwriting guidelines (¶¶136-149); (2) they failed to disclose the risks associated with the

mortgage loan appraisals and misstated the loan-to-value ratios of the mortgages (¶¶ 150-159; 165-167), and (3) the prospectus supplements misstated the certificates' true credit ratings (¶¶168-171). The Court analyzes each in turn.

### 1. Underwriting Guidelines

In <u>Wells Fargo</u>, the court denied dismissal of a complaint alleging improper deviations from underwriting guidelines where "plaintiffs allege[d] that the Offering Documents were misleading as to the extent to which Wells Fargo and the third-party originators deviated from their guidelines." 2010 WL 1661534, at *11; <u>see also</u> <u>Tsereteli</u>, 692 F. Supp. 2d at 392-93 (declining to dismiss complaint where plaintiffs alleged (1) abandonment of underwriting guidelines and (2) a dramatic rise in defaulting loans). In contrast, the court in <u>Nomura</u> dismissed a complaint based on deviations from underwriting standards in the issuance of MBS certificates when a "fusillade of cautionary statements" muted plaintiffs' claim they were not on notice of soft underwriting standards. 658 F. Supp. 2d at 307.

The Registration Statements provide:

> The mortgage loan seller's underwriting standards are intended to evaluate a prospective mortgagor's credit standing and repayment ability, and the value and adequacy of the proposed mortgage property as collateral. In the loan application process, prospective mortgagors generally will be required to provide information regarding such factors as their assets, liabilities, income, credit history, employment history and other related items….

(¶ 138.) Plaintiffs allege such statements are misleading because WaMu pressured appraisers into overstating the value of the properties, made no attempt to confirm underwriting standards for third party issuers, and did not investigate the validity of appraisal values of a sufficient number of loans prior to securitization. (¶ 139.) The Prospectus Supplements stated:

> The sponsor's underwriting guidelines [and Washington Mutual Bank's underwriting guidelines] generally are intended to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral.

(¶ 143.) Plaintiffs allege these statements are misleading because WaMu failed to verify the information contained in borrowers' mortgage loan applications, and ignored adverse information about the borrowers. (¶144.) Defendants urge dismissal because the Prospectus Supplements included warnings about a number of other documentation programs used to evaluate mortgage loan applications. (Dkt. No. 170 at 16; RJN, Ex. 3 at S-28.) Even under these alternative documentation programs, the Supplements indicated "exceptions to the sponsor's loan program parameters may be made on a case-by-case basis if competing factors are present." (RJN, Ex. 3 at S-30.) The Prospectus Supplements identify the number of "full documentation" and "reduced documentation" loans in each Certificate pool. (RJN, Ex. 4 at S-111.)

Plaintiffs' underwriting allegations survive dismissal because the statements may be misleading if they mask the extent to which the sponsor's underwriting guidelines were disregarded. In essence, Plaintiffs allege the underwriting guidelines ceased to exist. If proven true, the absence of underwriting standards could make the identified statements misleading. The Court denies Defendants' motion to dismiss the underwriting guidelines.

### 2. Appraisal/LTV ratio Allegations

In Tsereteli, the court dismissed allegations based on faulty appraisal practices reasoning that "neither an appraisal nor a judgment that a property's value supports a particular loan amount is a statement of fact." 692 F. Supp. 2d at 393 (Plaintiffs failed to allege the speaker did not have the opinion at the time he made the statement appraisals were conducted "in accordance with the Uniform Standards of Practice."). In contrast, the Wells Fargo court denied dismissal of appraisal and LTV allegations where Plaintiffs supported their claims with numerous statements from confidential witnesses that included estimates about the degree to which LTV ratios were inaccurate for the Wells Fargo. 2010 WL 1661534, at *11-12.

Plaintiffs have not alleged actionable misrepresentations based on appraisals or loan-to-value ratios. Plaintiffs allege the statement that appraisals were completed in accordance with the Uniform Standards of Professional Appraisal Practice was misleading because LTV ratios

were manipulated to meet certain targets. (¶¶ 60-61.) Plaintiffs' allegations on this issue are simply too conclusory. For instance, the near wholesale reliance on the New York Attorney General's complaint against eAppraiseIT offers no nexus to the Certificates at issue here. (¶¶ 61-84.) The Court is left to assume there is an identity between these loans and the ones at issue in the eAppraiseIT complaint, even though the NYAG complaint focuses on events that post-date the vast majority of these offerings. (Dkt. No. 170 at 23.) Though Plaintiffs offer some appraisal values from reviews completed, they do not allege that the differences in valuation have any connection with any loan underlying the securities here. Thus, unlike the complaint in Wells Fargo, Plaintiffs have not substantiated their conclusory allegations with facts suggesting a viable claim. The appraisal and coordinate LTV ratio allegations must be dismissed.

### 3. Credit Ratings

Plaintiffs' credit ratings allegations are similarly insufficient. Plaintiffs allege the offering documents were misleading because the ratings were based on outdated models. (¶¶ 15-16, 105-113.) However, Plaintiffs fail to allege facts that would make this a material omission. Other courts have held that there is no duty to disclose the methods used by agencies in developing a rating. Tsereteli, 2010 WL 816623, at *5. The mere fact that the ratings would have been different under a different methodology is insufficient to state a claim.

Further, Plaintiffs allege that WaMu failed to disclose the Ratings Agencies' conflicts of interests. (¶¶ 91-97.) However, "the risk that the rating agencies operated under a conflict of interest because they were paid by the issuers had been known publicly for years." In re Lehman Bros Sec. and ERISA Litig., 684 F. Supp. 2d 485, 492 (S.D.N.Y. 2010). Thus, because reasonable investors knew that the rating agencies were paid by the issuers, the alleged misstatement is immaterial. Id.

The Court dismisses the credit ratings allegations.

### 4. Purchase and Sale Agreements

Defendants claim the Purchase and Sale agreements shield them from liability because it provided that purchasers' sole remedy is the obligation to repurchase the certificates or substitute the mortgage loans in the trust. (Dkt. No. 170 at 33; RJN, Ex. 25.)  In Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC, the Fifth Circuit held plaintiffs could not advance misrepresentation claims based on statement "that there were no delinquent loans in the BR2 and BR3 trusts" when the prospectuses provided the defendant would substitute performing mortgages in the trusts.  594 F.3d 383, 388-90 (5th Cir. 2010).  The Lone Star Court reasoned the "repurchase or substitute clauses change[d] the nature of [defendant's] representation."  Id. at 390.

Unlike the scenario in Lone Star, Plaintiffs allegations are not simply based on a representation about the absence of delinquent loans.  As set forth above, Plaintiffs allege misstatements and omissions regarding underwriting guidelines.  The purchase and sale agreements thus cannot shield Defendants from liability at the pleadings stage.

### 5. Economic Loss

Defendants urge dismissal because Plaintiffs do not allege they have failed to receive an income stream from the Certificates and, as such, have failed to allege an economic loss. (Dkt. No. 170 at 35.)  The Court declines to dismiss the Complaint on this basis.

Plaintiffs allege the "delinquency, foreclosure, repossession, and bankruptcy rates for all the collateral underlying the Certificates—arising from defective collateral and faulty origination practices—triggered unprecedented downgrades of the Certificates' credit ratings by the Rating Agencies and attendant declines in the value of the Certificates." (¶¶ 191, 211.)  Section 11 allows damages for "the difference between the amount paid for the security . . . and  . . . the value thereof as of the time such suit was brought."  Here, Plaintiffs allegations of loss give rise to the inference that the value of the security is much less than the purchase price.  The mere fact that Plaintiffs may have difficulty substantiating the exact nature of their loss in an illiquid market does not necessitate dismissal.

      6.      Risk Disclosures

Defendants argue all claims must be dismissed because the prospectus documents contained numerous risk disclosures. The two cases on which Defendants rely, In re Convergent Techs. Sec. Litig., 948 F.2d 507 (9thCir. 1991), and Worlds of Wonder, 35 F.3d at 1420-21, affirmed rulings granting summary judgment based on the sufficiency of risk disclosures. The Court declines to analyze the sufficiency of the disclosures at the pleadings stage. As the Ninth Circuit cautioned in Fecht: "whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." 70 F.3d at 1081.

      d.      Control Persons—Section 15 Claims

The Court grants Defendants' motion to dismiss the Section 15 claims as to the Individual Defendants. Section 15 of the Securities Act provides that "[e]very person who … controls any person liable under [Sections 11 or 12 of the Securities Act] shall also be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 77o. To state a claim for control person liability, a plaintiff must allege: (1) a primary violation of securities law; and (2) that the defendant exercised control over the primary violator. See In re Washington Mutual Sec. Litig., 259 F.R.D. 490, 508-09 (W.D. Wash. 2009) (citing Howard v. Everex, Sys., 228 F.3d 1057, 1065 (9th Cir. 2000)). Control means "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405; see also Howard, 228 F.3d at 1065 n.9.

Plaintiffs simply allege the Individual Defendants were either officers or directors of WMAAC and that they signed the Registration Statements. (¶¶ 27-34.) Based on nothing more, Plaintiffs claim each of the Individual Defendants are control persons "by virtue of his or her control, ownership, offices, [or] directorship." (¶ 205.) Such allegations, alone, are insufficient to state a claim. First, making blanket allegations about the Individual Defendants makes no

sense when the Defendants apparently held different positions.  In other words, Plaintiffs should have substantiated their allegations about the Individual Defendants with individualized facts.  Second, the allegations are entirely circular and couched as conclusions of law.  Plaintiffs allege the Individual Defendants are control persons "by virtue of his or her control."  This offers no factual content that would establish a plausible claim.

The Court also dismisses the Section 15 claims as to WCC.  In opposition to Defendants' motion on the issue, Plaintiffs cite paragraphs 55-60 and 82-84 from the Complaint.  (Dkt. No. 177 at 35.)  Tellingly, none of those paragraphs reference WCC.  Instead, they refer to WMB or WaMu (as a way of referencing WMB, WMAAC, and WCC).  (See ¶ 5.)  But Plaintiffs cannot plead control person liability simply through the use of shorthand.  Plaintiffs have not alleged facts giving rise to WCC's status as a control person.  The Section 15 claims must be dismissed.

e. Inquiry Notice—Doral Bank Claims

Defendants claim Doral Bank's claims are barred by the statute of limitations because Plaintiffs were on notice as of the August 20, 2008 complaint in In re WaMu.  (Dkt. No. 170 at 40.)  Under 15 U.S.C. § 77m, the statute of limitations for Securities Act claims is "one year after the discovery of the untrue statement or the omissions, or after such discovery should have been by the exercise of reasonable diligence."  An amendment adding a plaintiff "relates back to the date of the original pleading only when: 1) the original complaint gave defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff."  In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1996) (no relation back where new plaintiffs bought securities at different values and after different disclosures); see also In re Morgan Stanley Mortgage Pass-Through Certificates Litig., No. 09-civ-2137, 2010 U.S. Dist. LEXIS 84146, at *22 (S.D.N.Y Aug. 17, 2010) ("Inquiry notice exists where sufficient facts would suggest to a plaintiff of normal intelligence that wrongdoing is probable, not merely possible.").

The original complaint in this action was filed on August 1, 2008. Doral Bank filed its complaint on October 30, 2009. (C09-1557; Dkt. No. 1.) Plaintiffs argue that the two cases involved different securities and, thus, Doral could not have been on inquiry notice. (Dkt. No. 177 at 38.) Plaintiffs cannot, however, ignore their own allegations. Plaintiffs' allegations are based on substantially identical statements in the Offering Documents and focus almost exclusively on the shelf Registration documents. If these allegations are sufficient to state a claim as to the earlier Certificates, they must also be sufficient to put other holders of WaMu certificates on notice of underwriting and appraisal issues. (See Dkt. No. 187 at 22.) The Court therefore dismisses claims to the extent they include the following Certificates: WaMu 2007-OA4, WaMu 2007-OA5, and WMALT-OA5.

  f.  Time Barred Appraisal Claims

The Court dismisses Plaintiffs appraisal allegations as to a number of the Certificates because they are time barred. Plaintiffs' appraisal allegations are predicated upon the NY Attorney General's complaint against First American and eAppraiseIT, which was filed on November 1, 2007. (See ¶¶ 64-84.) A number of plaintiffs filed their appraisal allegations more than a year after the NYAG's complaint. (See Dkt. No. 170 at 42 (Chicago PABF on March 16, 2009, Doral Bank on October 30, 2009, and Boilermakers on January 12, 2009).)

These claims were not equitably tolled by the filing of the New Orleans Action. In American Pipe & Const. Co. v. Utah, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). Courts since American Pipe have found that the statute of limitations does not toll for putative class actions whose named plaintiff lacks standing to advance claims in the first place. See Walters v. Edgar, 163 F.3d 430, 432 (7th Cir. 1998); Palmer v. Stassinos, 236 F.R.D. 46, 465-66 and n.6 (N.D. Cal. 2006) ("It is one thing to toll a period of limitations because of the discretionary act of one judge seeking to manage his or her docket in an efficient manner, but it

would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it.") Because there are no allegations the New Orleans plaintiffs had standing to assert the appraisal claims on behalf of Chicago PABF, Doral Bank, or Boilermakers, the only surviving certificates with coordinate appraisal allegations are 2006-AR2, AR14, AR 16, AR18, 2007-HY2, HY4. (See New Orleans Complaint ¶¶ 16, 17.)

IV.   Rating Agencies' Motion

The Rating Agencies move for dismissal of the § 15 claims against them because (1) Plaintiffs' failed to identify a primary violation by the Issuing Trusts, (2) Plaintiffs failed to set forth sufficient allegations of "control" against the Agencies, and (3) Plaintiffs' claims are time-barred. (Dkt. No. 168.) In response, Plaintiffs concede that WMAAC—and not the Issuing Trusts—should have been identified as the entity allegedly under the Rating Agencies' control. (Dkt. No. 178 at 7.) Plaintiffs seek leave to amend their complaint "for the sole purpose of correcting their misidentification of the 'issuer' that was the controlled entity" and maintain amendment is appropriate because "the core supporting factual allegations" about the Rating Agencies' control remain unchanged. (Dkt. No. 190 at 2.) Because amendment would be futile, the Court DENIES the motion to amend and GRANTS the Rating Agency's motion to dismiss.

As set forth above, to sustain a Section 15 claim, a plaintiff must allege: (1) a primary violation of securities law; and (2) that the defendant exercised control over the primary violator. Whether an individual is a "control person" is "an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs the corporation and the defendant's power to control corporate actions." Kaplan v. Rose, 49 F.3d 1363, 1382 (9th Cir. 1994); see also Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1162 (9th Cir. 1996) ("As the definition suggests, our inquiry must revolve around the "management and policies" of the corporation, not around discrete transactions."). The Lehman Bros. court dismissed § 15 claims against rating agencies where plaintiffs alleged they "largely determined which loans

were to be included in the securitization, the amount and form of credit enhancement for each Certificate and the Certificate structure before they were actually engaged by Lehman. . . ." In re Lehman Bros. Sec. and ERISA Litig., 681 F. Supp. 2d 495, 500 (S.D.N.Y. 2010).  That court reasoned plaintiffs allegations fell "considerably short of anything that could justify a reasonable trier of fact in concluding that the decision making power lay entirely with the Rating Agencies." Id. at 501.

Plaintiffs allege the Rating Agencies "determined the structure and credit support for each of the Issuing Trusts [or WMAAC] which purportedly justified the ratings." (¶¶ 11, 42, 43.)  Plaintiffs further cite to a 2009 report from a Congressional oversight panel that suggests certain agencies enabled and validated the decision-making behind the flawed mortgage-backed securities market. (¶ 97.)  Plaintiffs describe the methods the Rating Agencies used to rate the Certificates. (¶¶ 124-129.)  Even if the Court were to allow Plaintiffs to substitute WMAAC for the Issuing Trusts, Plaintiffs' allegations are insufficient for the purposes of control person liability.  Plaintiffs' allegations simply do not implicate WMAAC's management or policies, nor do they suggest the ability to be involved in any day-to-day activities.

Indeed, Plaintiffs' allegations regarding the Rating Agencies' "ratings shopping" plainly contradict any claim that the Rating Agencies controlled WMAAC.  The complaint suggests it was the arrangers who "pressured" the Rating Agencies to reduce credit enhancement levels. (¶ 94.)  WaMu purportedly "leveraged" the Rating Agencies of one another in order "to obtain the most profitable structure—to WaMu—on the Offerings." (¶¶ 114- 120.)  Read as a whole, Plaintiffs' allegations regarding the Rating Agencies' control person liability simply fail to state a claim.  Because Plaintiffs have failed to present a viable alternative Third Amended Complaint, the Court's dismissal as to the Rating Agencies should be with prejudice.  In light of the insufficiency of the allegations, the Court need not reach the question of whether the claims are time-barred.

\\

**Conclusion**

First, Plaintiffs lack standing to sue for losses related to the 25 certificates for which they have failed to identify a purchaser. The Court GRANTS the motions to dismiss these claims. Second, the Court GRANTS the motions to dismiss Plaintiffs' § 12 claims for lack of standing. Third, the Court rules on Plaintiffs' § 11 claims as follows: (1) Plaintiffs' underwriting allegations survive dismissal and the Court DENIES the motions on this issue; (2) the Court GRANTS the motions to dismiss Plaintiffs' § 11 misrepresentations claims based on appraisals or loan-to-value ratios; and (3) the Court GRANTS the motions to dismiss Plaintiffs' § 11 credit ratings allegations. Fourth, the Court DENIES the motions to dismiss as to the arguments that the purchase and sale agreements shield Defendants from liability, that economic loss is not sufficiently alleged, and that the prospectuses contained numerous risk disclosures. Fifth, the Court GRANTS Defendants' motion to dismiss the Section 15 claims against the Individual Defendants and WCC. Sixth, the Court GRANTS Defendants' motions to dismiss Doral Banks' claims to the extent they include the following Certificates: WaMu 2007-OA4, WaMu 2007-OA5, and WMALT-OA5. Seventh, the Court GRANTS the motions to dismiss on statute of limitation grounds as to Plaintiffs' appraisal allegations, except as to certain certificates. Eighth, because amendment would be futile, the Court DENIES Plaintiffs' motion to amend, and GRANTS the Rating Agencies' motion to dismiss the Section 15 claims against them.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 28th day of September, 2010.

Marsha J. Pechman
United States District Judge