HONORABLE MARSHA J. PECHMAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE WASHINGTON MUTUAL
MORTGAGE BACKED SECURITIES
LITIGATION

This Document Relates to: ALL CASES

Master Case No. 2:09-cv-00037-MJP

**PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

**NOTE ON MOTION CALENDAR:
MAY 27, 2011**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     RELIEF REQUESTED ......................................................................................... 3

III.    STATEMENT OF FACTS .................................................................................... 3

IV.     ARGUMENT ........................................................................................................ 6

      A.    The Standards For Certifying a Class Under Rule 23 ........................................ 6

      B.    The Rule 23(a) Requirements Are Satisfied ..................................................... 8

            1.    The Class Satisfies Numerosity ................................................................. 8

            2.    Commonality is Satisfied ......................................................................... 10

            3.    The Class Satisfies Typicality ................................................................. 11

            4.    The Named Plaintiffs and Lead Counsel Will Fairly
                and Adequately Protect the Interests of the Class ................................... 12

      C.    The Rule 23(b)(3) Requirements Are Satisfied ............................................... 14

            1.    Common Questions of Law or Fact Predominate Over
                Questions Affecting Only Individual Members ...................................... 14

            2.    A Class Action is Superior to Over 2,500 Individual Actions ............. 17

      D.    In The Alternative, the Rule 23(b)(1)(B) Requirements Are Satisfied ........... 21

      E.    The Rule 23(g) Requirements Are Satisfied ................................................... 21

V.      CONCLUSION .................................................................................................. 22

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<small>**CASES**</small>

*Alba v. Papa John's USA,*
   No. 05-7487, 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. Feb. 7, 2007) .............................. 8

*Baker v. Wash. Mut. Fin. Group, LLC,*
   193 Fed. Appx. 294 (5th Cir. 2006) ................................................................................... 21

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.,*
   269 F.R.D. 340 (S.D.N.Y. 2010) ....................................................................................... 19

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) .............................................................................................. 15

*Brotherson v. Prof'l Basketball Club, L.L.C.,*
   262 F.R.D. 564 (W.D. Wash. 2009) ................................................................................... 16

*Buus v. WaMu Pension Plan,*
   251 F.R.D. 578 (W.D. Wash. 2008) ................................................................................... 11

*Dukes v. Wal-Mart Stores, Inc.,*
   603 F.3d 571 (9th Cir. 2010) (*en banc*) ............................................................................. 21

*Funke v. Life Fin. Corp.,*
   No. 99-11877, 2003 WL 1787125 (S.D.N.Y. Apr. 3, 2003) ............................................. 15

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1997) ............................................................................................ 18

*Herbst v. Able,*
   47 F.R.D. 11 (S.D.N.Y. 1969) .............................................................................................. 7

*Herman & MacLean v. Huddleston,*
   459 U.S. 375 (1983) ........................................................................................................ 4, 7

*Hickey v. City of Seattle,*
   236 F.R.D. 659 (W.D. Wash. 2006) ........................................................................ 10, 11, 14

*In re Activision Sec. Litig.,*
   621 F. Supp. 415 (N.D. Cal. 1985) ...................................................................................... 8

*In re Alstom SA Sec. Litig.,*
   253 F.R.D. 266 (S.D.N.Y. 2008) ....................................................................................... 17

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - ii
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX  206.682.2992

*In re Bank One Sec. Litig./First Chicago S'holder Claims,*
    No. 00-0767, 2002 WL 989454 (N.D. Ill. May 14, 2002) ................................. 7

*In re Charles Schwab Corp. Sec. Litig.,*
    264 F.R.D. 531 (N.D. Cal. 2009) ................................................................ 20

*In re Constar Int'l Inc. Sec. Litig.*
    585 F.3d 774 (3d Cir. 2009) ............................................................. 7, 8, 15

*In re Cooper Cos. Inc. Sec. Litig.,*
    254 F.R.D. 628 (C.D. Cal. 2009)................................................... 7, 8, 18, 20

*In re Dynex Capital, Inc. Sec. Litig.,*
    No. 05-1897, 2011 U.S. Dist. LEXIS 22484 (S.D.N.Y. Mar. 7, 2011)....................... 12, 18

*In re Genentech, Inc. Sec. Litig.,*
    No. 88-4038, 1990 WL 120641 (N.D. Cal. June 8, 1990) ................................. 9

*In re Juniper Networks, Inc. Sec. Litig.,*
    264 F.R.D. 584 (N.D. Cal. 2009) ................................................................ 20

*In re K-Dur Antitrust Litig.,*
    No. 01-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) ................................. 19

*In re LDK Solar Sec. Litig.,*
    255 F.R.D. 519 (N.D. Cal. 2009) ................................................................ 17

*In re Monster Worldwide, Inc. Sec. Litig.,*
    251 F.R.D. 132 (S.D.N.Y. 2008)................................................................ 16

*In re Pilgrim Sec. Litig.,*
    No. 94-8491, 1996 WL 742448 (C.D. Cal. Jan. 23, 1996)....................................... 9, 12, 20

*In re Ramtek Sec. Litig.,*
    No. 88-20195, 1991 WL 56067 (N.D. Cal. Feb. 4, 1991)................................. 20

*In re Revco Sec. Litig.,*
    142 F.R.D. 659 (N.D. Ohio 1992)........................................................ 18, 19

*In re Rubber Chems. Antitrust Litig.,*
    232 F.R.D. 346 (N.D. Cal. 2005) ................................................................ 9

*In re Technical Equities Fed. Sec. Litig.,*
    No. 86-20157, 1988 U.S. Dist. LEXIS 15813 (N.D. Cal. Oct. 3, 1988) ............................ 20

*In re THQ, Inc. Sec. Litig.,*
    No. 00-1783, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ............................................. 7

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - iii
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*In re U.S. Fin. Sec. Litig.*,
  69 F.R.D. 24 (S.D. Cal. 1975) ............................................................................ 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
  No. 02-5571, __ F. Supp. 2d __, 2011 WL 590915 (S.D.N.Y. Feb. 17, 2011) ................. 16

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
  No. 2:08-md-1919, 2010 WL 4272567 (W.D. Wash. Oct. 12, 2010) ....................... *passim*

*In re Worlds of Wonder Sec. Litig.*,
  No. 87-5491, 1990 WL 61951 (N.D. Cal. Mar. 23, 1990) ................................................ 19

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) ....................................................................... 16

*Litwin v. Blackstone Group, L.P.*,
  No. 09-4426, 2011 U.S. App. LEXIS 2641 (2d Cir. Feb. 10, 2011) ................................... 8

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ......................................................................... 9

*McFarland v. Memorex Corp.*,
  96 F.R.D. 357 (N.D. Cal. 1982) .......................................................................... 16

*McGuire v. Dendreon Corp.*,
  267 F.R.D. 690 (W.D. Wash. 2010) ...................................................................... 6

*Morton v. Valley Farm Transp., Inc.*,
  No. 06-2933, 2007 U.S. Dist. LEXIS 31755 (N.D. Cal. Apr. 13, 2007) ............................ 8

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08-8781, __ F.R.D. __, 2011 WL 147735 (S.D.N.Y Jan. 18, 2011) .............. 16, 17, 20

*Newman v. CheckRite Cal., Inc.*,
  No. S93-1557, 1996 WL 1118092 (E.D. Cal. Aug. 2, 1996) ........................................... 20

*Pimentel v. Dreyfus*,
  No. C11-119, 2011 U.S. Dist. LEXIS 12270 (W.D. Wash. Jan. 28, 2011) ........................ 6

*Rafton v. Rydex Series Funds*,
  No. 10-1171, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ................................................... 7

*Rannis v. Recchia*,
  No. 09-55859, 2010 U.S. App. LEXIS 10858 (9th Cir. May 27, 2010) ............................. 8

*Roshandel v. Chertoff*,
  554 F. Supp. 2d 1194 (W.D. Wash. 2008 ........................................................ 10, 11, 13

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - iv
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

*Sandoval v. Tharaldson Emp. Mgmt.*,
  No. 08-0482, 2009 U.S. Dist. LEXIS 111320 (C.D. Cal. Nov. 17, 2009) ................... 14, 22

*Schneider v. Traweek*,
  No. 88-0905, 1990 WL 132716 (C.D. Cal. July 31, 1990) ................................................. 20

*Shields v. Smith*,
  No. 90-0349, 1992 WL 295179 (N.D. Cal. Aug. 14, 1992) ................................................. 17

*Susser v. Castle Energy Corp.*,
  No. 94-0336, 1994 WL 247206 (C.D. Cal. Apr. 25, 1994) ......................................... 11, 17

*Swack v. Credit Suisse First Boston*,
  230 F.R.D. 250 (D. Mass. 2005) ....................................................................................... 17

*Wagner v. Barrick Gold Corp.*,
  251 F.R.D. 112 (S.D.N.Y. 2008) ...................................................................................... 15

**STATUTES**

15 U.S.C. § 77k .................................................................................................... *passim*

Federal Rule of Civil Procedure 23 ................................................................... *passim*

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - v
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX  206.682.2992

# I.     INTRODUCTION

Lead Plaintiff Doral Bank Puerto Rico ("Doral Bank"), Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago ("Chicago PABF") and Plaintiff Boilermakers National Annuity Trust ("Boilermakers") (collectively, "Plaintiffs") respectfully submit this motion, pursuant to Fed. R. Civ. P. 23, to certify a class (the "Class") defined as:

> All persons or entities who purchased or otherwise acquired WaMu Mortgage-Pass Through Certificates, Series: 2006 AR-7, 2006 AR-12, 2006 AR-16, 2006 AR-17, 2006 AR-18, or 2007-HY1 ("WAMU Bonds") on or before August 1, 2008 pursuant and/or traceable to their Registration Statements and accompanying Prospectuses filed with the Securities and Exchange Commission ("Offering Documents") and who were damaged thereby (the "Class").[1]

As the Court is aware, this action arises out of the public offerings of purportedly investment grade mortgage backed securities ("MBS") which collapsed in value to "junk bonds" relatively soon after issuance when it became apparent that the underlying residential mortgage loans were fundamentally impaired.  This Court upheld allegations in the Complaint that WaMu's Offering Documents contained material misstatements and omissions in violation of Sections 11 of the Securities Act of 1933 (the "Securities Act") (Dkt. No. 195 at 8-12).  Specifically, Plaintiffs allege that the description of the underwriting guidelines used to originate the mortgage loan collateral in the Offering Documents were materially misleading since those guidelines were, in fact, disregarded.  *See id.* at 9-10.  *See also* ¶¶ 136-149.[2]

Like all securities class actions, the nature of the claims at issue in this case makes it particularly well suited for class certification.

First, the proposed class satisfies the **numerosity** requirement under Rule 23(a)(1) because it includes over twenty five hundred distinct purchasers of WAMU bonds who reside

---

[1] Excluded from the Class are Defendants, the officers and directors of the Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

[2] References to ¶ __ are to paragraphs in the Second Consolidated Amended Complaint (the "Am. Cmplt.") (Dkt. No. 164).

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 1
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

throughout the United States. *See* Zissu Report at ¶¶ 84-90.[3]  Thus, joinder is "impracticable," and numerosity is satisfied.

Second, the proposed class satisfies the **commonality** requirements of Rules 23(a)(1) and 23(b)(3) because:

- All investors in the WAMU Bonds were subject to misstatements and omissions in common Offering Documents with virtually identical language relating to the flawed underwriting practices at WaMu that similarly affected mortgage loans made during 2006 with similar loan characteristics;

- All investors in the WAMU Bonds suffered from the same wrongful course of conduct because the same WaMu employees and officers selected these flawed loans to be included in the collateral loan pools for all six offerings[4] over a brief seven month period; and

- All investors in the WAMU Bonds were similarly affected by the misstatements and omissions in the Offering Documents because the WAMU Bonds were similarly "priced" – *i.e.,* their interest rates were set – based on false statements regarding the true risk of non-payment, and when those risks materialized through greater-than-expected loan losses, the bonds were re-rated and their values plummeted.

In addition, in this case individual issues do not predominate over the common issues because reliance is not an element for Section 11 claims and Plaintiffs need not affirmatively establish loss causation to prevail.  Furthermore, the losses suffered by class members can be calculated via a common methodology. *See* Hakala Report at ¶¶ 5, 33-36.[5]  Thus, all the Bond purchasers suffered losses measurable in the same way from the same wrongful course of

---

[3] The expert report of Professor Anne Zissu ("Zissu Report") is attached as Ex. A to the Rehns Declaration. Professor Zissu identified at least 308 "unique entities" who purchased 2006-AR7 Bonds, at least 469 "unique entities" who purchased 2006-AR12 Bonds, at least 405 "unique entities" who purchased 2006-AR16 Bonds, at least 282 "unique entities" who purchased 2006 AR17 Bonds, at least 573 "unique entities" who purchased 2006 AR18 Bonds, at least 665 "unique entities" who purchased 2007-HY1 Bonds.  *See* Zissu Report at ¶¶ 84-90.

[4] By this Court's decision dated September 28, 2010, this Court sustained the Am. Cmplt. with respect to seven public offerings, based on allegations that one or more of the Named Plaintiffs purchased certificates in those offerings.  Recently, in reviewing client documents, counsel has realized that for one of the offerings originally included in the complaint, the 2006-AR5 offering, the representative for that offering, Policemen's Annuity and Benefit Fund of the city of Chicago, in fact purchased certificates in the 2006-5 offering (which is not involved in this lawsuit) rather than in the 2006-AR5 offering.  Thus, this motion for class certification involves six rather than seven offerings.

[5] The expert declaration of Dr. Scott Hakala ("Hakala Report") is attached as Ex. B to the Rehns Declaration.

1   conduct involving the same wrongful statements by the same Underwriter, Depositor/Issuer,

2   and Sponsor.

3          Finally, the Named Plaintiffs satisfy the **typicality** and **adequacy** requirements of Rule

4   23(a)(3) and 23(a)(4).  On typicality, the proof that Named Plaintiffs will offer to demonstrate

5   all of the elements of their own claims under Section 11 of the Securities Act is the same or

6   substantially the same as that required to prove the claims of other members of the Class.

7   Moreover, there are no conflicts between Named Plaintiffs and other members of the putative

8   Class, and they are not subject to unique defenses.  On adequacy, Named Plaintiffs and their

9   Counsel have prosecuted this action vigorously and have demonstrated that they have both the

10  ability and the resources to handle this case.  In addition, Lead Counsel Cohen Milstein and

11  Scott+Scott have vast experience in complex class actions over the past forty years, further

12  demonstrating that the adequacy of counsel requirement under Rule 23(a)(4) is satisfied.

13  Moreover, Lead Counsel has been appointed as Lead or Co-Lead Counsel in eight securities

14  cases specifically in the MBS area (including the instant case), and has developed substantial

15  expertise in these complex actions.

16         In summary, a class action is plainly the superior method for resolving this complex

17  litigation involving the common Securities Act claims of over eighteen hundred class

18  members.  Accordingly, the Court should certify the proposed Class.

19                          **II.      RELIEF REQUESTED**

20         By this motion, Plaintiffs respectfully request certification of the above defined class.

21  Plaintiffs further request that the Court designate them as the Class Representatives for the

22  Class and designate Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Scott+Scott

23  ("Scott+Scott") as Counsel for the Class and Tousley Brain Stephens PLLC as Liason Counsel

24  for the Class.

25                          **III.     STATEMENT OF FACTS**

26         This proposed class action, alleging violations of the Securities Act, arises out of

27  Defendants packaging thousands of hybrid adjustable rate loans with an initial fixed rate

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 3
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX  206.682.2992

1    period into six MBS and selling those securities to the public for approximately $10 billion in

2    six public offerings ($1,255,863,100 for 2006-AR7, $1,694,778,749 for 2006-AR12,

3    $1,444,737,100 for 2006-AR16, $1,124,131,100 for 2006-AR17, $1,554,983,100 for 2006-

4    AR18, and $3,007,814,100 for 2007-HY1). Each Bond was sold pursuant to a Registration

5    Statement and Prospectus Supplement that misstated and omitted the true underwriting

6    practices used in making mortgage loans having similar characteristics that were included in

7    the collateral loan pools for the Offerings.[6]

8        As the Court is aware, Section 11 claims are not fraud actions. To make out a prima

9    facie case, a plaintiff merely needs to prove that the challenged statements or omissions in the

10   offering documents were false or misleading and material. Liability under the Securities Act is

11   strict, and does not require a showing of scienter by the Defendants, nor reliance by the

12   Plaintiffs. *See* 15 U.S.C. § 77k(a); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82

13   (1983). Here, the Offering Documents did not reveal that the mortgage underwriting

14   guidelines described in the Offering "ceased to exist" when the underlying mortgage loans

15   were originated. (Dkt. No. 195 at 10). *See also* ¶¶ 136-149. As this Court found:

16            Plaintiffs' underwriting allegations survive dismissal because the
17       statements may be misleading if they mask the extent to which the sponsor's
         underwriting guidelines were disregarded. In essence, Plaintiffs allege the
18       underwriting guidelines ceased to exist. If proven true, the absence of
         underwriting standards could make the identified statements misleading.
19

20   (Dkt. No. 195 at 9-10). Because the interest rate paid on each Bond, in each tranche, of the six

21   Offerings was predicated upon the risk of the non-payment on the loans in the underlying

22   mortgage loan pools purportedly underwritten in accordance with WaMu's underwriting

23   guidelines, all class members were harmed by the same misconduct. The value of the WAMU

24   Bonds was "directly tied to the value of the underlying mortgages, as well as the repayment of

25   _____

26   [6] For example, the various mortgage loan pools purportedly consisted of mortgage loans made with similar loan
     to value ("LTV") ratios, with similar geographic distributions and to persons with high credit scores and income.
     Most of the mortgage loans were "Option Arms," and all purportedly satisfied WaMu's loan underwriting
27   standards. *See* Hakala Report at ¶¶14-16, 18, exh. C1-C6.

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 4
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   the underlying mortgages by borrowers, since the principal and interest payments due to

2   investors were secured and derived from borrower payments." Am. Cmplt. ¶ 7.  *See also* Zissu

3   Report at ¶ 17 ("All expected cash flows to investors in each of the six (6) WaMu NA-MBS

4   depended on the mortgage loans that comprise the collateral pool backing each security.").

5   Once the far greater-than expected loan delinquencies and non-payments were revealed, the

6   bonds were re-rated by the rating agencies and could be sold only at a significant discount.

7   *See* Hakala Report at ¶¶29, 35.  From an investment perspective, the WAMU Bonds operated

8   like any other security whose key criteria used by investors to make their purchasing decision

9   is misstated.  Named Plaintiffs and members of the proposed Class purchased the WAMU

10  Bonds bearing interest rates that did not compensate investors for the true risks of non-

11  payment.  When these true risks were revealed the Bonds declined in value from their face

12  value.

13        The WAMU Bonds were divided into a hierarchy of classes or "tranches."  All of the

14  tranches relied on the mortgage loans collateralizing the WAMU Bonds to provide the money

15  to pay the monthly interest and principal payments owed to the Bondholders.  *See* Zissu

16  Report ¶¶ 16-17.  But monthly interest and principal payments were distributed in order of

17  priority based on the specific tranche the WAMU Bondholder owned, with holders of the

18  higher-rated tranches getting paid first, and then the remaining money being paid to holders of

19  the lower priority tranches.  *See, e.g.*, *id.*, Am. Cmplt.¶ 7.  Thus, generally losses from

20  mortgage loan non-payments were applied first to the lower priority tranches and then to the

21  higher-rated tranches.

22        Importantly, losses in the lower priority tranches that were due to poorly underwritten

23  loans caused all tranches – including the higher-rated, senior tranches – to lose value.  Indeed,

24  although losses from mortgage loan non-payments are applied first to the lower priority

25  tranches, where these losses significantly exceed the rate that investors initially expected from

26  the mortgage pool based upon its represented characteristics, the risk profile of the higher-

27  rated tranches would also deteriorate and these tranches would lose value, particularly when

1   they are re-rated by the Ratings Companies.  *See* Hakala Report at ¶¶27-29 ; *see also* Zissu

2   Report at ¶ 95 ("All investors in the collateral pools of the six (6) WaMu NA-MBS were

3   *affected* by the alleged misstatements and omissions regarding the disregard for underwriting

4   standards . . . because they all shared the same pool of loans.").

5       Over 90% of the WAMU Bonds have been downgraded to junk and extraordinarily

6   high credit losses have already occurred on the mortgage loans collateralizing WAMU Bonds.

7   *See* Hakala Report Exs. B-1 to B-6.  Significantly, these loan losses did not occur merely

8   because the housing market and economy declined -- even a preliminary review demonstrates

9   that WaMu's loan loss experience far exceeded its peers, who were similarly impacted by the

10  housing market and economic crises, but did not share WaMu's underwriting deficiencies.

11  Hakala Report at ¶36.

12  ## IV.   ARGUMENT

13  **A.   The Standards For Certifying a Class Under Rule 23**

14      "A class action may be maintained if the party seeking certification meets all four

15  criteria in Rule 23(a) and at least one of the three categories of Rule 23(b)."  *Pimentel v.*

16  *Dreyfus*, No. C11-119, 2011 U.S. Dist. LEXIS 12270, at *5-6 (W.D. Wash. Jan. 28, 2011)

17  (Pechman, J.).  "[A]t the class certification stage, while *Eisen v. Carlisle & Jacquelin*, 417

18  U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) prohibits a court from making determinations

19  on the merits that do not overlap with the Rule 23 inquiry, district courts must make

20  determinations that each requirement of Rule 23 is actually met."  *In re Wash. Mut., Inc. Sec.,*

21  *Derivative & ERISA Litig.* ("*Washington Mutual*"), No. 2:08-md-1919, 2010 WL 4272567, at

22  *2 (W.D. Wash. Oct. 12, 2010) (Pechman, J.), quoting *Dukes v. Wal-Mart Stores, Inc.*, 603

23  F.3d 571, 590 (9th Cir. 2010) (*en banc*).  While there is to be a "rigorous analysis to ensure

24  that the prerequisites of Rule 23 have been satisfied," the "Ninth Circuit rejected a 'significant

25  proof' requirement to be imposed on a plaintiff seeking certification of a class."  *Id.*, quoting

26  *Dukes*, 603 F.3d at 594-95.  "This Court is given discretion over whether to certify a class"

27  and should do so here because this putative Securities Act class action fulfills Rule 23's

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 6
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1  requirements.  *See McGuire v. Dendreon Corp.*, 267 F.R.D. 690, 693 (W.D. Wash. 2010)

2  (Pechman, J.).

3      "[T]he law in the Ninth Circuit is very well established that the requirements of Rule

4  23 should be liberally construed in favor of class action cases brought under the federal

5  securities laws.*" In re THQ, Inc. Sec. Litig.*, No. 00-1783, 2002 WL 1832145, at *2 (C.D. Cal.

6  Mar. 22, 2002); *c.f. In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009)

7  ("'[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context

8  because class actions are particularly effective in serving as private policing weapons against

9  corporate wrongdoing.'") (citing cases).

10     Courts have long recognized that Section 11 claims are by their very nature

11  "particularly well-suited to class treatment . . . because Section 11 claims require only a

12  material misstatement or omission in a Registration Statement to prove liability." *In re Bank

13  One Sec. Litig./First Chicago S'holder Claims*, No. 00-0767, 2002 WL 989454, at *4 (N.D. Ill.

14  May 14, 2002); *Herbst v. Able*, 47 F.R.D. 11, 13 (S.D.N.Y. 1969) ("to the extent plaintiffs'

15  claims in these three actions arise only under Section 11 of the Securities Act of 1933,

16  individual reliance is not an issue and class actions are particularly appropriate" (citation

17  omitted).   As the Supreme Court has explained, "Section 11 places a relatively minimal

18  burden on a plaintiff," with liability "virtually absolute, even for innocent misstatements."

19  *Herman & MacLean*, 459 U.S. at 382.  Consequently, Section 11 claims, unlike claims of

20  fraud under common law or Section 10-b of the Securities Exchange Act, do not require a

21  showing of "scienter, reliance, or loss causation." *Rafton v. Rydex Series Funds*, No. 10-1171,

22  2011 WL 31114, at *6 (N.D. Cal. Jan. 5, 2011).  Rather, "Section 11 of the Securities Act

23  focuses on misstatements or omissions in registration statements." *Id.*  As the Third Circuit

24  recently observed, it is precisely because of its "formulaic nature," that "[Section] 11 leaves

25  defendants with little room to maneuver" at the class certification stage.  *In re Constar Int'l

26  Inc. Sec. Litig.* 585 F.3d 774, 785 (3d Cir. 2009).

27     Moreover, "[b]ecause reliance is not an element under [Section] 11, the conduct of the

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 7
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   defendants, not the knowledge of the plaintiffs, is determinative of materiality. The crucial

2   questions are:  Was there a misrepresentation? And, if so, was it objectively material?" *Id.* at

3   784 (quotations omitted).  As a result, "a [Section] 11 case will never demand individualized

4   proof as to an investor's reliance or knowledge."  *Id.*; *see also Litwin v. Blackstone Group,*

5   *L.P.*, No. 09-4426, 2011 U.S. App. LEXIS 2641, at *25-26 (2d Cir. Feb. 10, 2011) ("So long

6   as a plaintiff establishes one of the three bases for liability under these provisions . . . then, in a

7   Section 11 case, the general rule [is] that an issuer's liability . . . is absolute.") (quotations and

8   citation omitted).

9        For these reasons, courts in this Circuit and elsewhere have certified countless Section

10  11 class actions, with the Honorable Marilyn Patel in this Circuit concluding that class

11  certification is "the rule" for Section 11 claims.  *In re Activision Sec. Litig.*, 621 F. Supp. 415,

12  428 (N.D. Cal. 1985) ("Certification of a plaintiff class is the  rule . . . in cases such as the

13  instant one where the securities fraud alleged concerns misrepresentations or omissions in

14  offering materials issued prior to a public offering.").  There is no reason to depart from this

15  rule here.

16  **B.   The Rule 23(a) Requirements Are Satisfied**

17            **1.      The Class Satisfies Numerosity**

18       Numerosity is satisfied if the proposed class "is so numerous that joinder of all

19  members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed where the

20  plaintiff class contains forty or more members."  *Cooper*, 254 F.R.D. at 634.  *See also Rannis*

21  *v. Recchia*, No. 09-55859, 2010 U.S. App. LEXIS 10858, at *9-12 (9th Cir. May 27, 2010)

22  (upholding certification of class with only twenty members); *Morton v. Valley Farm Transp.,*

23  *Inc.*, No. 06-2933, 2007 U.S. Dist. LEXIS 31755, at *12 (N.D. Cal. Apr. 13, 2007) ("[T]he

24  difficulty in joining as few as 40 class members should raise the presumption that joinder is

25  impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule

26  23(a)(1) on that fact alone.") (quoting I Newberg on Class Actions § 3.5 (4th ed. 2004); *Alba*

27  *v. Papa John's USA*, No. 05-7487, 2007 U.S. Dist. LEXIS 28079, at *17 (C.D. Cal. Feb. 7,

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 8
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1    2007) ("[P]ertinent Ninth Circuit authority [] holds that a class consisting of 39 people is large

2    enough to satisfy the numerosity requirement.").

3    "To satisfy the numerosity requirement, plaintiffs need not establish the exact number

4    of class members, but must merely demonstrate that it is sufficiently numerous." *In re*

5    *Genentech, Inc. Sec. Litig.*, No. 88-4038, 1990 WL 120641, at *3 (N.D. Cal. June 8, 1990).

6    Named Plaintiffs need only provide a "reasonable estimate of the limited number of purported

7    class members." *Mazza v. Am. Honda Motor Co.,* 254 F.R.D. 610, 617 (C.D. Cal. 2008)

8    (citation omitted). *See also In re Pilgrim Sec. Litig.*, No. 94-8491, 1996 WL 742448, at *4

9    (C.D. Cal. Jan. 23, 1996) ("Thousands of shares of the Pilgrim Trusts [holding mortgage-

10   backed securities] were traded during the relevant period, and therefore at a minimum there are

11   several hundred class members."). Claims of the impracticability of joinder are strengthened

12   by a showing that the "class is geographically dispersed, and that class members are difficult

13   to identify," thus creating difficulties in organizing a non-representative action. *In re Rubber*

14   *Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005); *see also In re U.S. Fin. Sec.*

15   *Litig.*, 69 F.R.D. 24, 34 (S.D. Cal. 1975) (finding that, when "plaintiffs cannot discover the

16   identity of other [securities] holders" because they are registered in another's name, joinder of

17   all class members is not only impracticable, it is an "impossibility.").

18   To assure the Court that the class has a substantial number of members, Named

19   Plaintiffs subpoenaed the financial institutions listed as the major record holders of the

20   WAMU Bonds for their trading records for the WAMU Bonds, received partial responses (25

21   institutions out of 40 responded), and provided the data[7] used by Professor Zissu to identify

22   the minimum number of investors in each Offering. *See* Zissu Report at ¶¶ 82-83. Based

23   solely on this limited data, numerosity is easily satisfied. The record to date reflects over

24   2,500 members of the class. *See* Zissu Report at ¶¶ 84-90. At a minimum, each Offering has

25   well over 250 specifically identified unique purchasers, with the majority having many more

26

27   [7] Given the voluminous nature of the transaction records (consisting of many thousands of pages), Named
     Plaintiffs has not submitted them along with this motion. The material has been produced to Defendants and is
     available to the Court in electronic format upon request.

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 9
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1    (including 2007-HY1 with over 650 unique purchasers).[8]   The investors include both

2    institutions and individuals with a wide range in the size of the transactions, including some as

3    low as $34,000.  *See* Zissu Report at ¶ 93.  In addition, the identified investors are dispersed

4    around the country.  *Id*. at ¶ 92. Under such circumstances, joinder is not practicable and

5    numerosity is satisfied.

6                          **2.      Commonality is Satisfied**

7            "Rule 23(a)(2) requires that there be 'questions of law or fact common to the class.'"

8    *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1203 (W.D. Wash. 2008) (Pechman, J.).  "[T]he

9    commonality test is met where there is at least ***one issue***, the resolution of which will affect all

10   or a significant number of the putative class members."  *Hickey v. City of Seattle*, 236 F.R.D.

11   659, 665 (W.D. Wash. 2006) (Pechman, J.) (emphasis added).

12           Here, the putative members of the Class were all alleged to have suffered from the

13   same wrongful course of conduct (*i.e*., the packaging of loans into the WAMU Bonds and the

14   sale of the WAMU Bonds without ensuring that the underlying loans were actually originated

15   under the underwriting guidelines described in the Offering Documents) and suffered from the

16   exact same misstatements and omissions.  Therefore, the questions of law and fact common to

17   the Class include: do the Offering Documents contain untrue statements or omissions about the

18   underwriting practices actually used to originate the mortgage loans in the Offerings, and were

19   these misstatements and omissions material to a reasonable investor.  This more than satisfies

20   the commonality prong.  *See Washington Mutual*, 2010 WL 4272567, at *3 (commonality

21   satisfied where "Plaintiffs have shown that there are common questions of fact regarding the

22   alleged fraudulent statements and omissions made by Defendants and the various common

23   questions of law that will go into determining the merits of Plaintiffs' claims.").

24

25

26   _____
     [8] Professor Zissu identified at least 308 "unique entities" who purchased 2006-AR7 Bonds, at least 469 "unique
     entities" who purchased 2006-AR12 Bonds, at least 405 "unique entities" who purchased 2006-AR16 Bonds, at
27   least 282 "unique entities" who purchased 2006 AR17 Bonds, at least 573 "unique entities" who purchased 2006
     AR18 Bonds, at least 665 "unique entities" who purchased 2007-HY1 Bonds.  *See* Zissu Report at ¶¶ 84-90.

### 3.      The Class Satisfies Typicality

"In regards to the typicality element, 'plaintiff's claims are typical if they arise from the same event or practice or course of conduct that gives rise to the claims of other class members and are based on the same legal or remedial theory.'" *Roshandel*, 554 F. Supp. 2d at 1204, quoting 1 Alba Conte & Herbert Newberg, Newberg on Class Actions § 3:19, at 401 (4th ed. 2002).  "[T]ypicality focuses on the relationship of facts and issues between the class and its representatives."  *Buus v. WaMu Pension Plan,* 251 F.R.D. 578, 585 (W.D. Wash. 2008), citing *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 n.12 (9th Cir. 2007).  "The Ninth Circuit has held that Rule 23(a)(3) should be interpreted somewhat permissively and that 'representative claims are 'typical' if the are reasonably co-extensive with those of the absent class members; they need not be substantially identical.'"  *Hickey*, 236 F.R.D. at 665, quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1997).  In the securities context, courts have cautioned that "the typicality requirement is not demanding," *In re Heritage Bond Litig.*, MDL No. 02-1475, 2004 WL 1638201, at *4 (C.D. Cal. July 12, 2004), and "is to be 'loosely construed,'" *Susser v. Castle Energy Corp*., No. 94-0336, 1994 WL 247206, at *8 (C.D. Cal. Apr. 25, 1994).

Here the Named Plaintiffs' claims arose from the exact same events, practices, and course of conduct as the rest of the class.  Named Plaintiffs, like all other class members, purchased WAMU Bonds pursuant and/or traceable to Offering Documents which contained identical material misstatements and omissions regarding WaMu's underwriting practices for the mortgage loans in the underlying loan pools with similar characteristics.  The bonds purchased by the Named Plaintiffs were mispriced for the same reasons that all the other bonds were mispriced.  When loan losses unexpectedly mounted and the bonds were re-rated, Named Plaintiffs suffered losses in the same way as others in the Class.  Therefore, Named Plaintiffs' claims satisfy the typicality requirement of Rule 23(a).  *See Heritage Bond*, 2004 WL 1638201, at *7 ("if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences");

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 11
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

*Pilgrim*, 1996 WL 742448, at *4 (finding class representatives typical where their claims "arise from the same course of conduct: Defendants' alleged misrepresentations and omissions regarding the Trusts [holding mortgage-backed securities] during the class period, and is based upon the same legal theories as the claims of the class members").

The fact that different investors purchased on different Offerings and bought specific tranches within each offering does not interfere with typicality. *See In re Dynex Capital, Inc. Sec. Litig.*, No. 05-1897, 2011 U.S. Dist. LEXIS 22484 (S.D.N.Y. Mar. 7, 2011) (10b-5 class certified for asset backed securities where court found that plaintiff could represent purchasers of different tranches for the entire series of bonds, whether subordinate or senior, despite differences in repayment rights of the various tranches). First, every Offering is represented by a Named Plaintiff who purchased on that Offering and each Offering relies on a single pool of collateral for payment. (Dkt. No. 195 at 5-7). (Named Plaintiffs who purchased on or traceable to an Offering have standing to represent other purchasers from that Offering); Zissu Report at ¶ 15 ("Each of the six (6) NA-MBS is a single security issued according to an individual prospectus supplement and backed by one collateral pool."). Second, all loans collateralizing all six Offerings were originated or purchased by the same sponsor, were purportedly subject to the same guidelines, and those guidelines were represented the same way in all of the Offering Documents. *See* Zissu Report at ¶15; *see also* ¶¶ 136-149. Thus, Defendants disregard of the guidelines affects all of the Offerings and all tranches within each Offering and Named Plaintiffs claims are typical of those of the rest of the class. *See* Zissu Report at ¶ 95 ("All investors in the collateral pools of the six (6) WaMu NA-MBS were *affected* by the alleged misstatements and omissions regarding the disregard for underwriting standards . . . because they all shared the same pool of loans.").

### 4.   The Named Plaintiffs and Lead Counsel Will Fairly and Adequately Protect the Interests of the Class

"To satisfy the adequacy requirement, plaintiffs must show that their interests are not antagonistic to those of the class and that they are able to prosecute the action vigorously

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 12
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1    through qualified and competent counsel." *Roshandel*, 554 F. Supp. 2d at 1204 (Pechman, J.),

2    citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238-39 (9th Cir. 1998).   Court

3    appointed Named Plaintiffs and Lead Counsel fulfill these requirements.

4         There are no conflicts between Named Plaintiffs and the other members of the

5    proposed Class.   On the contrary, Named Plaintiffs' interests are co-extensive with those

6    members of the Class that they represent.   Like all of the other class members they represent,

7    Named Plaintiffs purchased the WAMU Bonds and suffered from the misstatements and

8    omissions in the same Offering Documents.   As described above, like all of the other class

9    members they represent, Named Plaintiffs were damaged as a result of these misstatements

10   and omissions regarding the underwriting guidelines.   There are no conflicts between

11   purchasers of each of the Bonds.   There are no unique defenses which apply only to Named

12   Plaintiffs.   The interests of the other members of the Class, therefore, will be fairly and

13   adequately protected by Named Plaintiffs.

14        Named Plaintiffs commitment to this case is illustrated by their active prosecution of it

15   since its inception which has entailed substantial investigation and discovery and considerable

16   expenditure of time in responding to Defendants' discovery demands.   Named Plaintiffs'

17   efforts and diligent prosecution of the action demonstrates their adequacy pursuant to Fed. R.

18   Civ. P. 23(a)(4).   Named Plaintiffs Doral Bank, Chicago PABF, and Boilermakers are

19   precisely the type of institutional investors Congress sought to empower when passing the

20   Private Securities Litigation Reform Act of 1995 ("PSLRA").   Congress enacted the PSLRA

21   in large part to "increase the likelihood that parties with significant holdings in issuers, whose

22   interests are more strongly aligned with the class of shareholders, will participate in the

23   litigation and exercise control over the selection and actions of plaintiff's counsel."   H.R.

24   Conf. Report No. 104-369, at 32 (1995).   Named Plaintiffs, who have considerable interest in

25   ensuring the Class attains a recovery, satisfy the adequacy requirement of Rule 23(a)(4).

26        Furthermore, court-appointed Lead Counsel Cohen Milstein and Scott+Scott and

27   Liaison Counsel Tousley Brain Stephens PLLC are amply qualified and have ably represented

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 13
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

Named Plaintiffs on behalf of the proposed Class thus far and will continue to do so.  *See* Firm Resumes of Cohen Milstein, Scott + Scott, and Tousley Brain, attached as Ex. C, D, and E respectively to the Rehns Decl.[9]

## C.   The Rule 23(b)(3) Requirements Are Satisfied

### 1.   Common Questions of Law or Fact Predominate Over Questions Affecting Only Individual Members

"Under Fed. R. Civ. P. 23(b)(3), the Court must determine 'whether the proposed class [. . .] [is] sufficiently cohesive to warrant adjudication by representation." *Hickey*, 236 F.R.D. at 666, quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1021 (9th Cir. 1998).  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative basis.'" *Id*., quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986).  The case here satisfies this requirement as the following substantial issues which are essential to the claims of all class members are common to the class:

- Are the challenged statements and omissions in all of the Offering Documents about WaMu's underwriting practices untrue or misleading?

- Are the challenged statements and omissions in all of the Offering Documents material to a reasonable investor?

- What role did each of the Defendants play in the Offerings?

As all of the issues of law and fact are elements of the proof of the claims of ***all*** class members, predominance of common issues is clear in this case.  *See Washington Mutual*, 2010 WL 4272567, at *13 (plaintiffs meet burden of establishing predominance when they "have shown that common questions of fact and law touch on all absent class members").  *See also Heritage Bond*, 2004 WL 1638201, at *10 (finding predominance test satisfied for investors in

---

[9] As a result of the 2003 amendments to the Federal Rules, the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4). *See Sandoval v. Tharaldson Emp. Mgmt.,* No. 08-0482, 2009 U.S. Dist. LEXIS 111320, at *10 (C.D. Cal. Nov. 17, 2009) ("Courts determine the adequacy of counsel under Rule 23(g).").

1    11 different bond offerings); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL

2    No. 901, 1993 WL 144861, at *6 (C.D. Cal. Feb. 26, 1993) ("The Ninth Circuit has repeatedly

3    found that common issues predominate in federal securities actions where the proposed class

4    members have all been injured by the same alleged course of conduct."); J. William Hicks, 17

5    Civil Liabilities:  Enforcement & Litigation Under the 1993 Act § 4:43 (for Section 11 claims

6    a "court can usually find that common factual and legal issues will predominate."), citing

7    cases.

8         In fact, except for the amount of damages, there are ***no*** individual issues which

9    Plaintiffs face in establishing their claims.  Defendants may raise the affirmative defense of

10   loss causation at some point in the litigation, but this Court has recently confirmed "that the

11   inquiry into loss causation is inappropriate at class certification stage."   *Washington Mutual*,

12   2010 WL 4272567, at *13.   Even if Defendants' challenge to loss causation were an

13   appropriate issue to be considered at the class certification stage, however, the battle of the

14   experts over this issue involves common proof and methods.  *See* Hakala Report at ¶¶5, 33-36.

15   *See also Constar*, 585 F.3d at 785 (an "affirmative defense on this ground [of loss causation]

16   would present a *common* issue – not an individual one").

17        The relative sophistication of investors is also an inappropriate consideration for

18   purposes of determining class certification.   *See, e.g., Wagner v. Barrick Gold Corp.*, 251

19   F.R.D. 112, 117 (S.D.N.Y. 2008) ("[C]ourts have held that sophistication of the class

20   representative does not necessarily mean 'his claim arises any less from the same course of

21   events and raises the same legal liabilities as every other member of the putative class.'"

22   (quoting *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007))); *Funke v. Life*

23   *Fin. Corp.*, No. 99-11877, 2003 WL 1787125, at *2 (S.D.N.Y. Apr. 3, 2003) ([I]n as much as

24   reliance is not an element of a Section 11 . . . claim, a plaintiff's sophistication regarding

25   securities and investment practices is irrelevant.") (citations omitted).  *Cf. Blackie v. Barrack*,

26   524 F.2d 891, 905 (9th Cir. 1975) ("Differences in sophistication, etc., among purchasers have

27   no bearing in the impersonal market fraud context . . . .").

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 15
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1    To defeat Plaintiffs' showing of predominance, Defendants "must do more than simply

2 point to the theoretical possibility of an individualized issue, [they] must provide evidence

3 suggesting that it is likely that the issue bears on the claims of more than a few putative class

4 members." *Brotherson v. Prof'l Basketball Club, L.L.C.*, 262 F.R.D. 564, 569 (W.D. Wash.

5 2009). *See also In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008)

6 (certifying class where there was no direct evidence that any putative class member knew

7 about the misrepresentations at issue); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 184

8 (S.D.N.Y. 2008) (certifying class where there was no direct evidence that any putative class

9 member knew about the misrepresentations at issue). This they will be unable to do on the

10 facts of this case. Defendants will no doubt point to a recent decision by the District Court in

11 the Southern District of New York, *N.J. Carpenters Health Fund v. Residential Capital, LLC*,

12 No. 08-8781, __ F.R.D. __, 2011 WL 147735 (S.D.N.Y Jan. 18, 2011), *petition for appellate*

13 *review pending*, which denied certification of a class upon the Court's finding that varying

14 levels of "knowledge" by class members of Defendants' underwriting practices showed that

15 individual issues "predominated." *Id.* at *8-10. Plaintiffs respectfully submit that this

16 decision was entered in error for several reasons but is, in any event, distinguishable from the

17 case here.[10] *See also* Hakala Report at ¶¶22-25. (The market did not have knowledge of facts

18 ────────────────────

[10] This out-of-circuit decision is not persuasive for several reasons. The affirmative defense of actual knowledge
19 only applies when the plaintiff actually knew of **the untrue statement or omitted fact at issue** before the
purchase. *See* 15 U.S.C. § 77k. *See In re Wash. Mut., Inc.. Sec., Derivative & ERISA Litig.* ("*Washington*
20 *Mutual*"), No. 2:08-md-1919, 2010 WL 4272567, at *6 (W.D. Wash. Oct. 12, 2010) ("That Brandes thought there
was 'froth' in the real estate appraisal market is not the same as Brandes knowing Defendants were engaged in
21 the appraisal manipulation alleged in the complaint."). No such evidence exists in this case. Moreover, questions
relating to Defendants' Section 11 knowledge defense raise common (not individualized) questions about what
22 information was available in the market place. *See McFarland v. Memorex Corp.*, 96 F.R.D. 357, 362 (N.D. Cal.
1982) ("The defense of plaintiffs' knowledge is also a common question of fact."); 5 Disclosure & Remedies
23 Under the Sec. Laws § 3:46 ("The defense of plaintiffs' knowledge is a common question in a class action"
brought pursuant to Section 11). As Dr. Hakala describes, the truth about WaMu's underwriting for the
24 mortgaged loans in the offerings leaked out slowly and was not fully known until at least August 2008 at the
earliest. Hakala Report at ¶3. Finally, even assuming, arguendo, that there were a potential need for
25 individualized knowledge determinations for Plaintiffs' Section 11 claims, courts have repeatedly held that
instances of class members who purportedly have knowledge contrary to a presumption can be dealt with after
26 trial and should not interfere with the certification of a class. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*,
No. 02-5571, __ F. Supp. 2d __, 2011 WL 590915, at *58 (S.D.N.Y. Feb. 17, 2011) ("courts in securities fraud
27 actions have consistently recognized that issues of individual reliance can and should be addressed after a class-
wide trial, through separate jury trials if necessary"); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 263-
64 (D. Mass. 2005) (granting motion to certify class despite defendants' contention that individual issues of non-

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 16
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1   contrary to the Offering Documents).

2        Similarly, the differences in the timing of class member purchases (which *Residential*

3   *Capital* also considered significant in denying class certification) does not here present a

4   question of individual issues.  As Dr. Hakala testifies, the truth about WaMu's underwriting

5   practices for the loans in the Offerings leaked into the market and did not become fully

6   revealed until at least August 2008, the time when the class period in this case ends.  Hakala

7   Report at ¶¶3, 26-30.  Thus, variances in the dates of investors' purchases do not interfere with

8   class certification.  *See, e.g., In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 277 (S.D.N.Y. 2008)

9   ("putative intra-class conflicts relating to the times at which particular class members

10  purchased their securities, and which could potentially motivate different class members to

11  argue that the securities were relatively more or less inflated at different time periods, relate to

12  damages and ***do not warrant denial of class certification***");  *In re LDK Solar Sec. Litig.*, 255

13  F.R.D. 519, 530 (N.D. Cal. 2009) (rejecting argument that class should not be certified

14  because certain class members purchased before certain disclosures while others purchased

15  after).  *C.f. Washington Mutual*, 2010 WL 4272567 (the purchase of stock after a partial

16  disclosure is not a defect to typicality).

17              **2.    A Class Action is Superior to Over 2,500 Individual Actions**

18       "The United States Supreme Court, the Ninth Circuit and its district courts have

19  repeatedly endorsed the class action procedure as the superior method of adjudicating claims

20  under the federal securities laws." *Susser*, 1994 WL 247206, at *6; *see also Shields v. Smith*,

21  No. 90-0349, 1992 WL 295179, at *5 (N.D. Cal. Aug. 14, 1992) ("courts have consistently

22  endorsed the use of class procedures in resolving claims under the federal and state securities

23  laws.").  They have recognized that "[t]rying each plaintiff's case separately would be

24  incredibly inefficient, burdensome, and costly," creating "a substantial danger of inconsistent

25  findings and judgments." *Cooper*, 254 F.R.D. at 642.  The instant case is no exception. *See*

26

27  reliance predominated, and reasoning that action should proceed in two phases, with phase one dealing with class-
    wide issues and a second phase dealing with individualized issues of reliance or damages).

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 17
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1    *Dynex Capital*, 2011 U.S. Dist. LEXIS 22484 (finding class action superior when certifying

2    10b-5 class of asset-backed Bonds using efficient market presumption).

3    "'To measure superiority, the Court must consider the four factors of Rule 23(b)(3):

4    (1) the interest of each member in 'individually controlling the prosecution or defense of

5    separate actions'; (2) 'the extent and nature of any litigation concerning the controversy

6    already commenced by or against members of the class'; (3) 'the desirability or undesirability

7    of concentrating the litigation of the claims in the particular district'; and (4) 'the likely

8    difficulties in managing a class action.' Economy and efficiency are usually considered the

9    most important elements of the inquiry." *Washington Mutual*, 2010 WL 4272567, at *13,

10   quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). The

11   proposed class here fulfills all four factors.

12   Regarding factor (1) no individual member appears to have any interest in controlling

13   the prosecution or defense of separate actions – a theory confirmed by the fact that, on

14   information and belief , no class member has brought an individual action based on any of the

15   Offerings at issue. This alone "indicates that the class members have no great interest in

16   controlling the prosecution of the litigation." *In re Revco Sec. Litig.*, 142 F.R.D. 659, 669

17   (N.D. Ohio 1992). This makes sense because, as the Ninth Circuit recognized in *Hanlon*, if

18   individual plaintiffs attempt to pursue their claims individually, "[t]here would be less

19   litigation or settlement leverage, significantly reduced resources and no greater prospect for

20   recovery." 150 F.3d at 1023. The investors in the Offerings include both institutions and

21   individuals, with a wide range in the size of the transactions including some as low as $34,000.

22   *See* Zissu Report at ¶ 93.

23   Although some absent class members may be able to fund individual lawsuits - a

24   theoretical possibility present in virtually all securities class actions - there is no reason to

25   believe that all or even most of the absent class members have sufficient resources or

26   economic incentives to spend the millions of dollars necessary to fund a lawsuit under the

27   federal securities laws. *See In re Worlds of Wonder Sec. Litig.*, No. 87-5491, 1990 WL 61951,

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 18
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1   at *6 (N.D. Cal. Mar. 23, 1990) (rejecting challenge to superiority based on argument that

2   "most of the . . . investors are large institutions [that] can maintain independent lawsuits"

3   because there was no evidence that "all the proposed Debenture subclass members can

4   maintain [a case]").  Moreover, even assuming *arguendo* that all of the members of the class

5   had sufficient economic incentives to litigate their claims individually (which is not the case),

6   proceeding as a class would still be superior to individual actions.  Courts have repeatedly held

7   that "'[t]he existence of large individual claims that are sufficient for individual suits is no bar

8   to a class'" particularly where, as here, "'the advantages of unitary adjudication exist to

9   determine the defendant's liability.'"  *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase*

10  *Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010) (granting certification of a 76 member class

11  in a securities case where five members of the putative class suffered approximately eighty

12  percent of the total losses alleged); *see also In re K-Dur Antitrust Litig.*, No. 01-1652, 2008

13  WL 2699390, at *20 (D.N.J. Apr. 14, 2008) ("As other courts have noted, Rule 23(b)(3) 'does

14  not exclude from certification cases in which individual damages run high.'") (citation

15  omitted); *Revco*, 142 F.R.D. at 669 ("While members of the class may be capable of litigating

16  separate actions, Rule 23 has no restrictions on wealth.").

17       As to factor (3), it is extremely desirable to concentrate the litigation of these claims in

18  this district as opposed to having over 2,500 individual Securities Act actions across the

19  country.  Here, there are over 2,500 already identified members of the putative class (with

20  many more not yet identified) and significantly over 250 unique entities for each offering.  *See*

21  Zissu Report at ¶¶ 84-90.  These class members are dispersed throughout the country.  *See*

22  Zissu Report at ¶ 92.  Under such circumstances, joinder is plainly not a practicable option,

23  and given the geographical dispersion of class members, "[d]enying certification would be

24  drastic because it would create the prospect of inefficient and costly multi-forum litigation that

25  would not only be undesirable, but prejudicial to all parties-plaintiffs, defendants and

26  witnesses-as well as the courts." *Heritage Bond*, 2004 WL 1638201, at *11.

27       Factor (4), manageability, should not be a problem in this Securities Act case.

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 19
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1   While manageability concerns may be considered in the "superiority" analysis, "[t]he more

2   important considerations remain the predominance of common questions and superiority of the

3   class action." *Newman v. CheckRite Cal., Inc.*, No. S93-1557, 1996 WL 1118092, at *9 (E.D.

4   Cal. Aug. 2, 1996). Indeed, "denial of class certification because of conjured manageability

5   problems is disfavored among both the courts and the legal commentators . . . ." *In re Sugar*

6   *Indus. Antitrust Litig.*, MDL No. 201, 1976 WL 1374, at *29 (N.D. Cal. May 21, 1976).[11]

7   "District courts have consistently recognized that the common liability issues involved in

8   securities fraud cases are ideally suited for resolution by way of a class action." *Cooper*, 254

9   F.R.D. at 641. Courts have further recognized that class actions predicated on Section 11

10  claims are relatively easy to manage because Section 11 includes a statutory formula for

11  calculating damages and does not require a showing of scienter, reliance, or loss causation.

12  *See, e.g., In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009)

13  ("[T]he Court does not see any particular management difficulties regarding this case

14  proceeding as a class action."); *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 536

15  (N.D. Cal. 2009) (finding "far fewer . . . manageability problems" because "[t]he instant

16  Section 11 . . . claims do not require proof of reliance").[12]

17          Accordingly, the class action device is the superior method for adjudicating the claims

18  of Named Plaintiffs and the Class.

19

20  [11] In *Residential Capital, LLC*, the district court denied class certification holding that a class action was not
21  superior, as well as that common issues did not predominate. This finding, however, was based almost entirely
    on the Court's determination regarding the individualized issue of knowledge which, as discussed above, should
    not be followed in this case for several reasons. *See* p. 16-17, *infra*.

22  [12] To further ensure that this action is manageable, the Court may create subclasses, bifurcate the proceedings, or
23  even decertify the class if manageability issues ultimately prove troublesome. *See In re Ramtek Sec. Litig.*, No.
    88-20195, 1991 WL 56067, at *4 (N.D. Cal. Feb. 4, 1991) ("The certification of a class is a preliminary ruling
24  and is therefore subject to modification."). Although Named Plaintiffs believe the Court need not do so at this
    juncture, the Court may address any perceived manageability concerns through the creation of subclasses for each
25  Offering either at this time or in the future. *See, e.g., Schneider v. Traweek*, No. 88-0905, 1990 WL 132716, at
    *16 (C.D. Cal. July 31, 1990) (certifying a global class of investors in eight separate partnerships, but noting that
26  it may later create sub-classes pursuant to Rule 23(d)); *Pilgrim*, 1996 WL 742448, at *4 (certifying class of
    investors in ten different trusts without sub-classes); *In re Technical Equities Fed. Sec. Litig.*, No. 86-20157, 1988
27  U.S. Dist. LEXIS 15813 (N.D. Cal. Oct. 3, 1988) (certifying global class and five subclasses for common stock,
    debentures, notes, general and limited partnerships, and mortgage pool partnerships).

**D.      In The Alternative, the Rule 23(b)(1)(B) Requirements Are Satisfied**

Under Rule 23(b)(1)(B), a class action may be maintained if prosecuting separate actions by individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  Fed. R. Civ. P. 23(b)(1)(B).  "The Advisory Committee intended Rule 23(b)(1) classes to be 'limited fund' actions, a type of action where multiple plaintiffs seek to divide a limited fund among claimants."  *Dukes v. Wal-Mart Stores, Inc*., 603 F.3d 571, 646 (9th Cir. 2010).  That is the situation here.

Defendants here are a broker-dealer which is now a non-operating entity (WaMu Capital Corporation), the depositor which is a special purpose entity (Washington Mutual Asset Acceptance Corporation) and individual defendants.   The cumulative assets of all Defendants and the insurance policies they carry are far less than the billions of dollars of potential liability arising from the claims of the putative class members in this litigation.  As the total funds available are inadequate to pay all of the claims, the whole of any recovery will be devoted to the overwhelming claims, and the claimants identified by the common theory of recovery will be treated equitably in any settlement by a court-approved allocation plan, class treatment under Rule 23(b)(1)(B) is proper here.  *See Baker v. Wash. Mut. Fin. Group, LLC*, 193 Fed. Appx. 294, 298 (5th Cir. 2006) (approving settlement under Rule 23(b)(1)(B) based on estimate of Washington Mutual's dwindling net worth and lack of operations as well as the "breathtaking cost of defending against so many individual lawsuits").

**E.      The Rule 23(g) Requirements Are Satisfied**

Rule 23(g) requires a district court to assess the adequacy of the proposed class counsel. To that end "the court 'must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 21
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1   representing the class.'" *Sandoval v. Haralson Emp. Mgmt.*, No. 08-0482, 2009 U.S. Dist.

2   LEXIS 111320, at *10 (C.D. Cal. Nov. 17, 2009), quoting Fed. R. Civ. P. 23(g).

3       Proposed Class Counsel satisfies these requirements; having investigated all of the

4   claims asserted herein and successfully litigated them thus far.  Proposed Class Counsel has

5   extensive experience prosecuting shareholder-related class actions on behalf of injured

6   investors, having done so for over forty years, and courts have seen fit to appoint the proposed

7   Class Counsel as Lead or Co-Lead Counsel in seven other securities cases involving MBS.

8   *See* Rehns Decl. Ex 3 &4.  This Court did as much when it previously appointed Cohen

9   Milstein and Scott + Scott as Lead Counsel and nothing has changed since that time that

10  should require the Court to reassess that appointment.

11      Proposed Class Counsel has evidenced knowledge of the applicable law and its ability

12  and willingness to commit significant resources in prosecuting this case having expended

13  thousands of hours in the investigation and prosecution of this action and substantial funds

14  gathering evidence and in the retention of necessary experts and consultants.    The

15  requirements of Rule 23(g) have been met in this case.

16                          **V.    CONCLUSION**

17      For all the above reasons, this Motion should be granted.

18  Dated:  March 11, 2011                    Respectfully submitted,

19                                            **TOUSLEY BRAIN STEPHENS PLLC**

20
                                             By:  /s/ Janissa A. Strabuk
21                                           Kim D. Stephens, WSBA #11984
                                             Janissa A. Strabuk, WSBA #21827
22                                           1700 Seventh Avenue, Suite 2200
                                             Seattle, Washington 98101
23                                           Telephone: (206) 682-5600
                                             Facsimile: (206) 682-2992
24                                           Email: kstephens@tousley.com
                                                    jstrabuk@tousley.com
25

26                                           *Liaison Counsel for Plaintiffs and the Proposed*
                                             *Class*
27

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 22
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**SCOTT+SCOTT LLP**

Arthur L. Shingler III (admitted pro hac vice)
Hal D. Cunningham (admitted pro hac vice)
600 B Street, Suite 1500
San Diego, California 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
Email: ashingler@scott-scott.com
      hcunningham@scott-scott.com

Joseph P. Guglielmo (admitted pro hac vice)
500 Fifth Avenue, 40th Floor
New York, New York 10110
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
Email: jguglielmo@scott-scott.com

**COHEN MILSTEIN SELLERS &
TOLL PLLC**

Steven J. Toll
Julie Goldsmith Reiser
Joshua S. Devore (admitted pro hac vice)
Matthew B. Kaplan (admitted pro hac vice)
S. Douglas Bunch (admitted pro hac vice)
1100 New York Avenue, NW
Suite 500 West
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
      jreiser@cohenmilstein.com
      jdevore@cohenmilstein.com
      mkaplan@cohenmilstein.com
      dbunch@cohenmilstein.com

Joel P. Laitman (admitted pro hac vice)
Christopher Lometti (admitted pro hac vice)
Daniel B. Rehns (admitted pro hac vice)
150 East 52nd Street, Thirtieth Floor
New York, New York 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: jlaitman@cohenmilstein.com
      clometti@cohenmilstain.com
      drehns@cohenmilstein.com

*Lead Counsel for the Proposed Class*

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 23
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

## <u>CERTIFICATE OF SERVICE</u>

1

2          I hereby certify that on March 11, 2011, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send electronic notification of such

4   filing to all counsel of record and additional persons listed below:

5
    Steve W. Berman (Terminated) steve@hbsslaw.com, heatherw@hbsslaw.com,
6   robert@hbsslaw.com

7   Larry Steven Gangnes gangnesl@lanepowell.com, docketing-sea@lanepowell.com,
    donnellyjossm@lanepowell.com, sebringl@lanepowell.com
8

9   David Daniel Hoff dhoff@tousley.com, efile@tousley.com

10  Stellman Keehnel stellman.keehnel@dlapiper.com, patsy.howson@dlapiper.com

11  Paul Joseph Kundtz pkundtz@riddellwilliams.com, mbergquam@riddellwilliams.com,
    mdowns@riddellwilliams.com
12

13  Bruce Earl Larson blarson@karrtuttle.com, psteinfeld@karrtuttle.com

14  John D Lowery jlowery@riddellwilliams.com, dhammonds@riddellwilliams.com

15  Louis David Peterson ldp@hcmp.com, smp@hcmp.com

16  Stephen M. Rummage steverummage@dwt.com, jeannecadley@dwt.com

17
    Kim D Stephens kstephens@tousley.com, cbonifaci@tousley.com, wcruz@tousley.com
18

19  Robert D Stewart stewart@kiplinglawgroup.com, cannon@kiplinglawgroup.com

20  Dennis H Walters dwalters@karrtuttle.com, wbarker@karrtuttle.com

21  Mike Liles, Jr mliles@karrtuttle.com

22  Steven P Caplow stevencaplow@dwt.com, chrisevo@dwt.com, jasonSchattenkerk@dwt.com,
    patrickwatts@dwt.com, sheilarowden@dwt.com
23

24  Janissa Ann Strabuk jstrabuk@tousley.com, wcruz@tousley.com

25  Walter Eugene Barton gbarton@karrtuttle.com, danderson@karrtuttle.com,
    nrandall@karrtuttle.com
26

27  Gavin Williams Skok gskok@riddellwilliams.com, dhammonds@riddellwilliams.com

---

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 24
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX  206.682.2992

1    David M Balabanian david.balabanian@bingham.com

2    Douglas C McDermott doug@mcdermottnewman.com, eric@mcdermottnewman.com

3    Steven J Toll stoll@cohenmilstein.com, efilings@cohenmilstein.com

4    John D Pernick john.pernick@bingham.com

5    Brian C Free bcf@hcmp.com, gcp@hcmp.com

6
     Rogelio Omar Riojas omar.riojas@dlapiper.com, karen.hansen@dlapiper.com,
7    nina.marie@dlapiper.com

8    Timothy Michael Moran moran@kiplinglawgroup.com, cannon@kiplinglawgroup.com

9    Arthur L Shingler ashingler@scott-scott.com, efile@scott-scott.com

10   Richard A Speirs rspeirs@cohenmilstein.com

11   Bradley T. Meissner bradley.meissner@dlapiper.com

12
13   Mary Kay Vyskocil mvyskocil@stblaw.com

14   Barry Robert Ostrager bostrager@stblaw.com, managingclerk@stblaw.com

15   Richard F Hans richard.hans@dlapiper.com, dorinda.castro@dlapiper.com

16   Kerry F Cunningham kerry.cunningham@dlapiper.com

17
     Corey E Delaney corey.delaney@dlapiper.com, kerry.cunningham@dlapiper.com,
18   patrick.smith@dlapiper.com, richard.hans@dlapiper.com

19   S Douglas Bunch dbunch@cohenmilstein.com

20   Darren J Robbins e_file_sd@csgrr.com

21   Jonathan Gardner jgardner@labaton.com

22
     Hollis Lee Salzman (Terminated) hsalzman@labaton.com, ElectronicCaseFiling@labaton.com
23   Daniel B Rehns drehns@cohenmilstein.com, efilings@cohenmilstein.com

24
25   Joel P Laitman jlaitman@cohenmilstein.com

26   Christopher E Lometti clometti@cohenmilstein.com

27   Michael H. Barr mbarr@sonnenschein.com

1   Kenneth J Pfaehler kenneth.pfaehler@snrdenton.com, nicole.reeber@snrdenton.com

2   Leslie D Davis ldavis@sonnenschein.com

3
    Kevin P Chavous kchavous@sonnenschein.com
4
5   Joseph A. Fonti (Terminated) jfonti@labaton.com, ElectronicCaseFiling@labaton.com

6   Paul Scarlato pscarlato@labaton.com, ElectronicCaseFiling@labaton.com

7   Serena Richardson (Terminated) srichardson@labaton.com,
    ElectronicCaseFiling@labaton.com
8
9   Frank Busch frank.busch@bingham.com, frank.downing@bingham.com,
    theo.robins@bingham.com
10
    Hal D Cunningham hcunningham@scott-scott.com, efile@scott-scott.com,
11  halcunningham@gmail.com

12  Julie Hwang (Terminated) jhwang@labaton.com, ElectronicCaseFiling@labaton.com

13  Joseph P Guglielmo jguglielmo@scott-scott.com, efile@scott-scott.com

14
15  Kenneth M Rehns krehns@cohenmilstein.com

16  Adam Zurofsky azurofsky@cahill.com

17  Tammy Roy troy@cahill.com

18  Floyd Abrams fabrams@cahill.com

19  James J. Coster jcoster@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

20  Joshua M. Rubins jrubins@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

21
    Brian O. O'Mara bomara@csgrr.com
22
23  Joshua S. Devore jdevore@cohenmilstein.com, efilings@cohenmilstein.com

24  Matthew B. Kaplan mkaplan@cohenmilstein.com, efilings@cohenmilstein.com

25  Julie Goldsmith Reiser jreiser@cohenmilstein.com

26  **2:09-cv-00037-MJP Notice will not be electronically mailed to:**

27  WaMu Officer Defendants Securities MDL

---

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 26
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**2:09-cv-00134-MJP Notice has been electronically mailed to:**

Bruce Earl Larson dwalters@karrtuttle.com

Naumon A Amjed namjed@btkmc.com, knguyen@btkmc.com

John A. Kehoe jkehoe@btkmc.com

Sharan Nirmul snirmul@btkmc.com

Andrew B Brettler (Terminated) abrettler@gmail.com

**2:09-cv-00134-MJP Notice will not be electronically mailed to:**

WaMu Officer Defendants Securities MDL

**2:09-cv-00137-MJP Notice has been electronically mailed to:**

Christopher M Huck huck@pypfirm.com, dana@pypfirm.com

**2:09-cv-00137-MJP Notice will not be electronically mailed to:**

WaMu Officer Defendants Securities MDL

**2:09-cv-01557-MJP Notice has been electronically mailed to:**

Gavin Williams Skok azurofsky@cahill.com, fabrams@cahill.com, troy@cahill.com

**2:09-cv-01557-MJP Notice will not be electronically mailed to:**

**2:10-cv-00990-JCC Notice has been electronically mailed to:**

Joel E. Wright jw@leesmart.com, sm@leesmart.com

John M Casey jcasey@curranfirm.com, kchurch@curranfirm.com

Marc Rosenberg mr@leesmart.com, Lawyermarc@comcast.net

Michael T. Pines info@pinesandassociates.com, michaelpines@gmail.com

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 27
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX  206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

By: /s/ Janissa A. Strabuk
Kim D. Stephens, WSBA #11984
Janissa A. Strabuk, WSBA #21827
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
Email: kstephens@tousley.com
        jstrabuk@tousley.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 28
(Case No. 2:09-cv-00037-MJP)
4898/001/241394.1