# EXHIBIT B

424B5 1 wmiq306finalprosup.htm

## CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities Offered | Maximum Aggregate Offering Price | Amount of Registration Fee (1) |
|---|---|---|
| Floating Rate Notes due August 24, 2009 | $500,000,000 | $53,500 |
| 5.50% Notes due August 24, 2011 | $400,000,000 | $42,800 |

(1)A filing fee of $113,260 was previously paid in connection with Registration Statement No. 333-109921 for securities that were not sold thereunder and have been carried forward, of which $96,300 of such unutilized filing fee is being applied to the filing fee payable with this prospectus supplement pursuant to Rule 457(p) under the Securities Act.

**Filed pursuant to Rule 424(b)(5)**
**Registration Statement No. 333-130929**

**Prospectus Supplement to Prospectus dated January 9, 2006**



## $500,000,000 Floating Rate Notes due August 24, 2009
## $400,000,000 5.50% Notes due August 24, 2011

---

We will pay interest on the floating rate notes due August 24, 2009 at a rate equal to the then applicable U.S. dollar LIBOR rate plus 0.14% as described herein, and pay such interest on February 24, May 24, August 24 and November 24, commencing November 24, 2006, and at maturity. The rate of interest on the floating rate notes will be reset quarterly, as described herein.

We will pay interest on the 5.50% notes due August 24, 2011 on each February 24 and August 24. The first interest payment will be made on February 26, 2007.

The Notes (as defined herein) are not redeemable prior to their maturity. There is no sinking fund for the Notes. The Notes are unsecured.

### Floating Rate Notes due August 24, 2009

|  | Per Note | Total |
|---|---|---|
| Initial public offering price | 100% | $ 500,000,000 |
| Underwriting discount | 0.15% | $ 750,000 |
| Proceeds to us, before expenses | 99.85% | $ 499,250,000 |

### 5.50% Notes due August 24, 2011

|  | Per Note | Total |
|---|---|---|
| Initial public offering price | 99.901% | $399,604,000 |
| Underwriting discount | 0.25% | $ 1,000,000 |
| Proceeds to us, before expenses | 99.651% | $ 398,604,000 |

The Notes are expected to be delivered in book-entry form only through the facilities of The Depository Trust Company against payment in New York, New York on August 24, 2006.

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or determined if this prospectus supplement or the prospectus to which it relates is truthful or complete. Any representation to the contrary is a criminal offense.**

---

*Joint Book-Running Managers*

**Goldman, Sachs & Co.**                                    **Morgan Stanley**
**Credit Suisse**            **Deutsche Bank**            **Lehman Brothers**

The date of this prospectus supplement is August 21, 2006.

## Table of Contents

### Prospectus Supplement

|  | Page |
|---|---|
| About this Prospectus Supplement | S-2 |
| Incorporation of Certain Documents by Reference | S-3 |
| Washington Mutual, Inc | S-4 |
| Use of Proceeds | S-4 |
| Ratio of Earnings to Fixed Charges | S-4 |
| Certain Terms of the Notes | S-5 |
| Certain United States Federal Income Tax Consequences to Non-U.S. Holders | S-11 |
| Certain ERISA Considerations | S-12 |
| Underwriting | S-14 |
| Legal Matters | S-16 |
| Experts | S-16 |

### Prospectus

|  | Page |
|---|---|
| About this Prospectus | 3 |
| Where You Can Find Additional Information | 3 |
| Incorporation of Certain Documents by Reference | 4 |
| Special Note Regarding Forward-Looking Statements | 4 |
| The Company | 5 |
| Use of Proceeds | 6 |
| Ratio of Earnings to Fixed Charges | 6 |
| Description of Debt Securities | 7 |
| Description of Capital Stock | 16 |
| Description of Depositary Shares | 17 |
| Plan of Distribution | 20 |
| Legal Matters | 20 |
| Experts | 21 |

**You should rely only on the information that this prospectus supplement and the accompanying prospectus contains or incorporates by reference. We have not authorized anyone to provide you with information different from that contained in this prospectus supplement and the accompanying prospectus. We are offering to sell the Notes, and seeking offers to buy the Notes, only in jurisdictions where offers and sales are permitted. The information contained or incorporated by reference in this prospectus supplement and the accompanying prospectus is accurate only as of their respective dates, regardless of the time of their delivery or any sale of the Notes.**

## ABOUT THIS PROSPECTUS SUPPLEMENT

We provide information to you about the Notes (referred to in the accompanying prospectus as ''senior debt securities'') in two documents that progressively provide more detail—this prospectus supplement and the accompanying prospectus. Because the terms of the Notes may differ from the general terms of the senior debt securities described in the prospectus, you should rely on the information in this prospectus supplement over contradictory information in the prospectus. You should read the prospectus and this prospectus supplement together for a complete description of the Notes.

S-3

## CERTAIN TERMS OF THE NOTES

The floating rate notes due August 24, 2009 and the 5.50% notes due August 24, 2011 (each, a "series of Notes" and collectively, the "Notes") are each a series of senior debt securities as described in the accompanying prospectus. The following description of the particular terms of the Notes offered hereby supplements and, to the extent inconsistent therewith, replaces the description of the general terms and provisions of the senior debt securities set forth in the accompanying prospectus. Capitalized terms used herein and not defined in this prospectus supplement shall have the meanings given to them in the accompanying prospectus or in the senior indenture referred to in this prospectus supplement.

**General**

We will issue the Notes under the senior indenture between Washington Mutual, Inc. and The Bank of New York, as trustee (the "indenture"). An officers' certificate will set forth the terms of the Notes in accordance with the indenture. The Notes will rank equally with all of our other unsecured and unsubordinated debt. See "Description of Debt Securities" in the prospectus for a description of the general terms and provisions of our senior debt securities, including the Notes, issued under the indenture.

We may, without the consent of the holders of the relevant series of Notes, issue additional notes of that series having the same ranking and the same interest rate, maturity and other terms (except for the public offering price and issue date) as that series of Notes, provided that such additional notes do not have, for purposes of U.S. federal income taxation, a greater amount of original issue discount than the outstanding Notes of that series have as of the date of the issue of such additional notes. Any of these additional notes, together with the other Notes of that series, will constitute a single series of notes under the indenture. No additional notes may be issued if an Event of Default has occurred with respect to that series of Notes.

We will issue Notes only in registered form, in denominations of $2,000 and integral multiples of $1,000. We will pay principal and interest at the corporate trust office of the trustee in New York, New York or at such other office or agency that we will maintain for such purpose in New York, New York. At our option, we may pay interest by check mailed to the person entitled to payment at that person's address appearing on the register of the Notes.

The Notes will not be redeemable by us or repayable at the option of the holders prior to maturity. The Notes will not be subject to any sinking fund.

*Floating Rate Notes*

The floating rate notes due August 24, 2009 will initially be limited to a total principal amount of $500,000,000 (the "floating rate notes"). The floating rate notes will mature on August 24, 2009.

The floating rate notes will bear interest from August 24, 2006 to, but excluding, November 24, 2006 at a rate per annum equal to the initial interest rate and thereafter will be reset as described below at a rate per annum equal to LIBOR (as defined below) plus 0.14% per annum. The initial interest rate will be equal to LIBOR plus 0.14% per annum as determined by the calculation agent as described below. Interest on the floating rate notes will be payable quarterly in arrears on February 24, May 24, August 24 and November 24 of each year (each an "interest payment date"), commencing November 24, 2006, to the person in whose name such notes are registered at the close of business on the preceding February 9, May 9, August 9 or November 9, as applicable (whether or not a business day).

Interest on the floating rate notes will be computed on an actual/360 day basis. Interest payments for the floating rate notes will include accrued interest from and including the date of issue or from and including the last date in respect of which interest has been paid or duly provided for, as the case may be, to but excluding the interest payment date or maturity date (except as described below), as the case may be.

If any interest payment date, other than the maturity date, falls on a day that is not a business day, the interest payment will be postponed to the next day that is a business day, except if that business day is in the next succeeding

S-6

calendar month, the interest payment date will be the immediately preceding business day. If the maturity date of the floating rate notes falls on a day that is not a business day, the payment of interest and principal will be made on the next succeeding business day, and no interest on such payment will accrue for the period from and after the maturity date.

The rate of interest on the floating rate notes will be reset quarterly (the ''interest reset period,'' and the first day of each interest reset period will be an ''interest reset date''). The interest reset dates will be February 24, May 24, August 24 and November 24 of each year; *provided* that the interest rate in effect from August 24, 2006 to but excluding the first interest reset date will be the initial interest rate. If any interest reset date falls on a day that is not a business day, the interest reset date will be postponed to the next day that is a business day, except if that business day is in the next succeeding calendar month, the interest reset date will be the next preceding business day.

As used herein, ''business day'' means any day, other than a Saturday or Sunday, that is neither a legal holiday nor a day on which banking institutions are authorized or required by law or regulation to close in New York, New York and London, England.

The calculation agent for the floating rate notes is The Bank of New York, which we refer to as the ''calculation agent.'' Upon the request of the holder of any floating rate note, the calculation agent will provide the interest rate then in effect and, if determined, the interest rate that will become effective on the next interest reset date.

The calculation agent will determine the initial interest rate on the second London banking day preceding the issue date for the floating rate notes and the interest rate for each succeeding interest reset period by reference to LIBOR on the second London banking day preceding the applicable interest reset date, each of which we refer to as an ''interest determination date.''

''London banking day'' means any day on which dealings in deposits in U.S. dollars are transacted in the London interbank market.

The interest rate for the floating rate notes will be based on the London interbank offered rate, which we refer to as ''LIBOR,'' and will be determined by the calculation agent as follows:

(i)     As of an interest determination date, LIBOR will be the rate for deposits in U.S. dollars for a period of three months, commencing on the related interest reset date, that appears on Page 3750, or any successor page, on Moneyline Telerate Inc., or any successor service, at approximately 11:00 a.m., London time, on that interest determination date.

(ii)    If no rate appears, then the calculation agent will request the principal London offices of each of four major reference banks in the London interbank market, as selected by the calculation agent after consultation with us, to provide the calculation agent with its offered quotation for deposits in U.S. dollars for a period of three months, commencing on the related interest reset date, to prime banks in the London interbank market at approximately 11:00 a.m., London time, on that interest determination date and in a principal amount that is representative of a single transaction in U.S. dollars in that market at that time. If at least two quotations are provided, LIBOR determined on that interest determination date will be the arithmetic mean of those quotations. If fewer than two quotations are provided, LIBOR will be determined for the related interest reset date as the arithmetic mean of the rates quoted at approximately 11:00 a.m., New York time, on that interest reset date, by three major banks in New York, New York, as selected by the calculation agent after consultation with us, for loans in U.S. dollars to leading European banks, for a period of three months, commencing on the related interest reset date, and in a principal amount that is representative of a single transaction in U.S. dollars in that market at that time. If the banks so selected by the calculation agent are not quoting as set forth above, LIBOR for that interest determination date will remain LIBOR for the immediately preceding interest reset period, or, if there was no preceding interest reset period, the rate of interest payable will be the initial interest rate.

Accrued interest on any floating rate note will be calculated by multiplying the principal amount of the note by an accrued interest factor. The accrued interest factor will be computed by adding the interest factors calculated for each day in the period for which interest is being paid. The interest factor for each day is computed by dividing the interest rate applicable to that day by 360. The interest rate in effect on any interest reset date will be the applicable

S-7

rate as reset on that date. The interest rate applicable to any other day is the interest rate from the immediately preceding interest reset date, or if none, the initial interest rate. All percentages used in or resulting from any calculation of the rate of interest on a floating rate note will be rounded, if necessary, to the nearest one hundred-thousandth of a percentage point (with .000005% rounded up to .00001%), and all U.S. dollar amounts used in or resulting from these calculations will be rounded to the nearest cent (with one-half cent rounded upward).

*5.50% Notes due August 24, 2011*

The 5.50% notes due August 24, 2011 will initially be limited to a total principal amount of $400,000,000 (the "5.50% notes"). The 5.50% notes will mature on August 24, 2011.

The 5.50% notes will bear interest from August 24, 2006 or from the most recent date to which we have paid or provided for interest, at the annual rate of 5.50%. We will pay interest semiannually on the 5.50% notes on each February 24 and August 24, beginning on February 26, 2007, to the person in whose name the notes are registered at the close of business on February 9 or August 9 prior to the payment date.

We will compute interest on the 5.50% notes on the basis of a 360-day year of twelve 30-day months. If an interest payment date or the maturity date falls on a day that is not a business day, the payment will be made on the next business day as if it were made on the date the payment was due, and no interest will accrue on the amount so payable for the period from and after that interest payment date or the maturity date, as the case may be, to the date the payment is made.

**Book-Entry, Delivery and Form**

Each series of Notes will be issued in the form of one or more fully registered global notes, the "global notes," which will be deposited with, or on behalf of, The Depository Trust Company, New York, New York, referred to herein as the "depositary" or "DTC," and registered in the name of Cede & Co., the depositary's nominee. Beneficial interests in the global notes will be represented through book-entry accounts of financial institutions acting on behalf of beneficial owners as direct and indirect participants in the depositary. Investors may elect to hold interests in the global notes held by the depositary through Clearstream Banking, *société anonyme,* "Clearstream, Luxembourg," or Euroclear Bank S.A./ N.V. as operator of the Euroclear System, the "Euroclear operator," if they are participants of such systems, or indirectly through organizations that are participants in such systems. Clearstream, Luxembourg and the Euroclear operator will hold interests on behalf of their participants through customers' securities accounts in Clearstream, Luxembourg's and the Euroclear operator's names on the books of their respective depositaries, which in turn will hold such interests in customers' securities accounts in the depositaries' names on the books of the depositary. Citibank, N.A. will act as depositary for Clearstream, Luxembourg and JPMorgan Chase Bank will act as depositary for the Euroclear operator, in such capacities, the "U.S. depositaries." Because holders will acquire, hold and transfer security entitlements with respect to the Notes through accounts with DTC and its participants, including Clearstream, Luxembourg, the Euroclear operator and their participants, a beneficial holder's rights with respect to the Notes will be subject to the laws (including Article 8 of the Uniform Commercial Code) and contractual provisions governing a holder's relationship with its securities intermediary and the relationship between its securities intermediary and each other securities intermediary between it and us, as the issuer. Except as set forth below, the global notes may be transferred, in whole and not in part, only to another nominee of the depositary or to a successor of the depositary or its nominee.

DTC has advised us as follows: DTC, the world's largest depository, is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934. DTC holds and provides asset servicing for over 2 million issues of U.S. and non-U.S. equity issues, corporate and municipal debt issues, and money market instruments from over 85 countries that DTC's participants ("direct participants") deposit with DTC. DTC also facilitates the post-trade settlement among direct participants of sales and other securities transactions in deposited securities, through electronic computerized book-entry transfers and pledges between direct participants' accounts. This eliminates the need for physical movement of securities certificates. Direct participants include both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. DTC is a wholly owned subsidiary of The Depository Trust & Clearing Corporation ("DTCC"). DTCC, in turn, is owned by a number of