UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE WASHINGTON MUTUAL MORTGAGE-BACKED SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | CASE NO. C09-37 MJP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

This matter comes before the Court on Defendants' motion for judgment on the pleadings and Plaintiffs' motion for class certification. (Dkt. Nos. 259, 223, respectively.) Having reviewed the motions, the oppositions (Dkt. Nos. 327, 252), the replies (Dkt. Nos. 337, 322), and all related papers, and having heard oral argument on October 13, 2011, the Court GRANTS Defendants' motion and GRANTS in part Plaintiffs' motion.

**Background**

Plaintiffs Doral Bank Puerto Rico ("Doral"), Policemen's Annuity and Benefit Fund of Chicago ("Chicago PABF"), and Boilermakers National Annuity Trust ("Boilermakers") pursue claims under § 11 of the Securities Act of 1933 arising out of their purchase of mortgage-backed

securities ("MBS") created and sold by Defendants that collapsed in value relatively soon after issuance. Plaintiffs allege that the residential mortgage loans backing the securities were "fundamentally impaired" and that they were mislead as to the quality of the underwriting of the loans. They seek to certify a class of all "persons or entities who purchased or otherwise acquired WaMu [Washington Mutual] Mortgage-Pass Through Certificates, Series: 2006 AR-7, 2006 AR-12, 2006 AR-16, 2006 AR-17, 2006 AR-18 or 2007-HY1, on or before August 1, 2008 . . . ." (Dkt. No. 223 at 7.) The Class thus includes all persons or entities who purchased WaMu MBS sold in six separate offerings, each of which contained roughly twenty different MBS "tranches," or slices. Across the six offerings, Defendants sold certificates in one-hundred-twenty-three separate tranches. Plaintiffs collectively purchased certificates in only thirteen of these tranches.

The mortgage-backed securities at issue in this litigation have their genesis with Washington Mutual Bank ("WMB"). WMB originated or acquired mortgage loans, and then sold them to Washington Mutual Asset Acceptance Corporation ("WAAC"). (Second Amended Compl. ("Compl.") ¶ 10.) WAAC then "deposited" or transferred the loans into six separate trusts, where each trust represents a complete "offering." (James Report ¶ 15.) The trusts were divided into different loan groups, wherein each loan group shares certain characteristics as to the loans themselves. (See e.g., 2006 AR-12 Pro. Supp. at S-5.) WAAC sold the certificates to WCC, which underwrote the offerings and sold the certificates in six offerings at issue here. (James Rep. ¶¶ 36-37.)

Of the six offerings at issue in this litigation, two were comprised of pay option adjustable-rate mortgages ("ARMs") with a fixed rate period between one to thirteen months, while the four others contained hybrid ARMs where the interest rates were reset at anywhere

between five and ten years. (James Rep. ¶ 33.) Within each offering, WAAC created numerous certificates that represent fractional interest in the income streams generated by the loans deposited in the trust. (Compl. ¶ 10; Hakala Report ¶ 12.) The certificates were then grouped into tranches that "represented specific rights and claims to the receipt of principal and interest payments from the pools of mortgages that they were collateralized by and associated with." (Hakala Rep. ¶ 12.) Each tranche is an individual security in which investors could buy certificates. Each tranche has distinct characteristics, including: (1) its own Committee on Uniform Security Identification Procedures ("CUSIP") number, (2) original principal note balance, (3) interest rate, (4) payment rights, (5) credit rating, and (6) payment priority. (You Decl. Exs. C, E, F; James Rep. ¶¶ 32, 42-46; Hakala Rep. ¶¶ 12-13.) Each tranche has a "specified level of seniority (or subordination) of the holder's claims to the collateral in the event of defaults and losses of principal in the pool of mortgages it was associate with." (Hakala Rep. ¶ 12.) The parties agree the each tranche is a separate security, although Plaintiffs contend that they are sufficiently similar and interrelated to be treated as one security for purposes of standing. One of Plaintiffs' experts, Scott Hakala, admitted that each tranche is an individual security with different rights and claims to receipt of principal and interest payments from the pool of mortgages. (Hakala Report ¶ 12; Hakala Dep. ¶ 159.) As discussed below, the Court finds each tranche to be a separate security.

Defendants seek dismissal of any and all claims related to the one-hundred-ten tranches that Plaintiffs did not buy on the theory that Plaintiffs lack standing to pursue claims related to them. Plaintiffs separately move for class certification of a class that would include all tranches within the six offerings. Because standing is a question of subject matter jurisdiction, the Court

addresses this issue first. LaDuke v. Nelson, 762 F.2d 1318, 1325 (9th Cir. 1985) (noting that standing "is a jurisdictional element that must be satisfied prior to class certification").

**Analysis**

A. <u>Motion for Judgment on the Pleadings</u>

Defendants' motion turns on one question: do Plaintiffs have standing to pursue claims tied to the MBS tranches that they did not purchase, but that were sold in the same offering in which Plaintiffs bought related MBS tranches? The Court finds Plaintiffs lack standing to pursue claims tied to the MBS tranches they did not purchase and that they cannot represent a class of those purchasers.

    1. <u>Standing</u>

Section 11 of the Securities Act of 1933 creates a cause of action for "any person acquiring such security" pursuant to a "registration statement [that] contained an untrue statement of a material fact or mitted to state a material fact. . . ." 15 U.S.C. § 77k(a). This Court and others have construed this section of the Act to require the plaintiff to have actually purchased the security upon which it seeks to sue. See In re Wash. Mut. Inc., Sec. Deriv. & ERISA Litig., 694 F. Supp. 2d 1192, 1221 (W.D. Wash. 2009); Maine State Retirement Sys. v. Countrywide Fin. Corp., No. 2:10-CV-0302 MRP (MANx), Dkt. No. 257 at 9 (C.D. Cal. May 5, 2011) (collecting cases). This Court has concluded that the named plaintiffs in a securities action could not pursue Section 11 claims as to debt securities that no named plaintiff purchased, even though they were sold in an offering in which one named plaintiff had purchased the other security on offer. In re Wash. Mut., 694 F. Supp. 2d at 1221.

Plaintiffs have standing only to sue on the thirteen tranches of WaMu MBS that they purchased. Each tranche of MBS is an individual security. This is evident in the fact that each

has its own CUSIP, credit rating, risk profile, payment rights, payment priority, principal balance, and interest rate. Each offered different risks and possible returns on investment. That each tranche sold in an offering is related to the other does not alter the fact that each tranche is a separate security for purposes of § 11 standing. See Countrywide, Dkt. No. 247 at 12 (rejecting this same argument). Plaintiffs argue that because the tranches are created from the same pool of mortgages, they are all interrelated sufficiently that every tranche within an offering is effectively one security. This argument invites the Court to overlook the fact that each tranche has a separate rating, separate payment structure, and risk profile, and create a special rule for MBS. The Court rejects the invitation. The very point of pooling mortgages and creating tranches is to create different securities whose credit and risk profiles attract different purchasers. Plaintiffs' standing is thus limited only to those tranches in which they actually purchased certificates.

Plaintiffs attempt to distinguish this Court's ruling in the WaMu Securities Litigation is without merit. Plaintiffs argue that the Court's decision as to standing is distinguishable because the Court was considering two debt securities, not mortgage-backed securities. The Court's decision did not turn on the type of security. It was simply the fact that they were distinct securities that the Court found a lack of standing, despite the fact they were sold in the same offering. In re Wash. Mut., 694 F. Supp. 2d at 1220-21.

The Court is equally unpersuaded by the cases cited and relied upon by Plaintiffs. In two of the three district court opinions Plaintiffs cite, the courts did not specifically address tranche-level standing in deciding motions for class certification. See New Jersey Carpenters Health Fund v. Residential Capital, LLC, 272 F.R.D. 160 (S.D.N.Y. 2011); New Jersey Carpenters Health Fun v. DLJ Mortgage Cap., Inc., No 08 civ. 5653 (PAC), Dkt. No. 125 (S.D.N.Y. Aug.

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 5

16, 2011). Rather, they both dealt with standing at the offering level. These cases are of no assistance. In Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc., No. 08 Civ. 10841, Opinion and Order (S.D.N.Y. Aug. 22, 2011), the court dealt cursorily with tranche-level standing in its decision on class certification and concluded the "the representations in each Offering apply equally to all tranches within that offering." Id. at 24. The Court nowhere addresses the question of whether each tranche is a separate security and provides no meaningful rationale sufficient to persuade this Court its decision is proper. The Court declines to follow the decision particularly because the issue was not squarely presented. Lastly, the Court finds inapposite the First Circuit's decision Plaintiffs cite, as that case addressed only offering-based standing, not tranche-level standing. Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011).

In conclusion, the Court notes that its decision is in line with principles of Article III standing. "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Article III standing requires the plaintiff to have been personally injured, "not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Warth v. Seldin, 422 U.S. 490, 502 (1975). Plaintiffs have not alleged any personal injury stemming from the tranches of MBS in the six offerings that they did not purchase. That their injury may be similar to those of the purchasers of the tranches and that the misrepresentations are the same does not show injury in fact. Plaintiff can show no personal

injury arising out of those one-hundred-ten tranches of MBS that they did not purchase, and they lack standing to assert claims arising out of the purchase of those tranches.

The Court GRANTS Defendants' motion for judgment on the pleadings and DISMISSES Plaintiffs' § 11 claims related to the one-hundred-ten tranches of MBS in the six offerings that they did not purchase for lack of standing. Without standing, Plaintiffs cannot represent a class of those who purchased those one-hundred-ten tranches of MBS they did not purchase.

B. <u>Motion for Class Certification</u>

Plaintiffs move to certify a class of purchasers of the MBS at issue in this case based on the predominance rule in Rule 23(b)(3) and, alternatively, the "limited fund" basis in Rule 23(b)(1)(B). The Court finds that the Class should be certified as to the thirteen tranches remaining in this litigation.

    1. <u>Standard</u>

Rule 23 "provides a one-size-fits-all formula for deciding the class-action question." <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 130 S. Ct. 1431, 1437 (2010). A class action may be maintained if the party seeking certification meets all four criteria in Rule 23(a) and at least one of the three categories of Rule 23(b). Rule 23(a) requires the Court to find that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

1   The "party seeking class certification must affirmatively demonstrate his compliance with
2   . . . Rule [23]—that is, he must be prepared to prove that there are in fact sufficiently numerous
3   parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ___,
4   131 S. Ct. 2541, 2551 (2011) (emphasis in original). "[C]ertification is proper only if the trial
5   court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been
6   satisfied. . . ." Id. (quotation and citation omitted). In deciding the certification, the Court may
7   have to consider the merits of some of the plaintiffs' claims. Id. at 2551-52 (noting that in many
8   cases "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's
9   underlying claim." (citation omitted)).

    2.   Numerosity

    Defendants argue that the class is not sufficiently numerous to sustain a class action. The Court does not agree.

    Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed where the plaintiff class contains forty or more members." In re Cooper Cos. Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009).

    At oral argument Defendants suggested for the first time the class is not sufficiently numerous if the Court examines the number of unique purchasers per tranche. Defendants provide no authority for the Court to look at numerosity on a tranche-by-tranche level. As instructed by the Federal Rules of Civil Procedure, the Court measures numerosity based on the definition of the entire class, which here includes all purchasers of the thirteen tranches. Fed. R. Civ. P. 23(a)(1) (directing the inquiry as to the entire class: "the class is so numerous that joinder of all members is impracticable" (emphasis added)). Based on the data Defendants provided at

oral argument, there are seven-hundred-one unique purchasers within the Class. The Court finds the Class to be sufficiently numerous that joinder would not be practical. The numerosity requirements of Rule 23(a)(1) are satisfied.

3. Commonality

Defendants do not attack commonality. (See Dkt. No. 252 at 14-15.) The Court undertakes an independent inquiry and finds Plaintiffs have satisfied this element.

Plaintiffs must allege a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551. "What matters to class certification is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. at 2551 (quotation omitted and emphasis in original).

Plaintiffs have demonstrated that a common legal question binds the class together: did the offering documents contain material, false or misleading statements as to the existence or quality of underwriting guidelines that caused them harm? Answers to this question will drive the resolution of the Class's claims in this litigation. The Court therefore finds the element of commonality satisfied.

4. Typicality

Defendants challenge the named Plaintiffs' typicality on a two bases that tend to overlap with the predominance inquiry of Rule 23(b)(3). None of the attacks is on point.

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." Ellis v. Costco Wholesale Corp., No. 07-15838, Slip. Op. at 17715 (9th Cir. Sept. 16, 2011). The "test of typicality is whether other members have the same or similar

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 9

injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). Under the rule's permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). The Ninth Circuit does not require the named plaintiffs' injuries to be "identical with those of the other class members, [but] only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." Armstrong v. Davis, 275 F.3d 849, 869 (9th Cir. 2001) abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005). "Typicality can be destroyed where 'a putative class representative is subject to unique defenses which threaten to become the focus of litigation.'" In re Wash. Mut. Inc., Sec., Deriv. & ERISA Litig., No. 08-md-1919 MJP, Dkt. No. 759 at 6 (W.D. Wash. Oct. 12, 2010) (quoting In re THQ, Inc. Sec. Litig., No. 00-1783AHM(EX), 2002 WL 1832145, at *4 (C.D. Cal. Mar. 22, 2002)). However, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis, Slip Op. at 17715 (quoting Hanon, 976 F.2d at 508).

Plaintiffs claimed injuries redressable under § 11 of the Securities Act are typical of the Class. Plaintiffs contend that they suffered losses caused by Defendants' misleading statements as to the underwriting guidelines or lack thereof and that all purchasers of the thirteen tranches of WaMu MBS were similarly injured regardless of the tranches acquired. Plaintiffs' theory of the case shows that the action is based on conduct that is not unique to them and that the class members were harmed by the same conduct. See Hanon, 976 F.2d at 508. The resolution of the

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 10

Plaintiffs' claims and the Class's will require an examination of the same alleged statements and whatever proof Plaintiffs adduce to show the statements or omissions were false or misleading and material. The injuries of the unnamed class members result from "the same injurious course of conduct" and are sufficiently "similar to those of the named plaintiffs" to show typicality. Armstrong, 275 F.3d at 869. The Court finds typicality satisfied.

Defendants incorrectly argue that the named Plaintiffs' knowledge of WaMu's purportedly absent underwriting is an issue to defeat typicality. Section 11 of the Securities Act provides a complete defense if "it is proved that at the time of . . . acquisition [the claimant] knew of such [alleged] untruth or omission. 15 U.S.C. § 77k(a). Defendants suggest that each named Plaintiff is atypical because they had "specific knowledge of loan origination practices generally, and WMB's practice in particular." (Dkt. No. 252 at 24.) Yet, Defendants have not provided any competent evidence the named Plaintiffs actually knew WMB or any Defendants disregarded the underwriting guidelines contrary to the statements made in the offering documents. Plaintiffs' general knowledge of the mortgage industry or their ability to have reviewed loan data is not sufficient to show that any named Plaintiff is subject to a unique defense or one that it is likely to become a focus of this litigation. See Hanon, 976 F.2d at 509 ("[T]he defense of non-reliance is not a basis for denial of class certification.") The Court rejects this argument as a reason to deny certification.

Defendants also contend that the named Plaintiffs are atypical because each group of purchasers of a specific tranche will have to show how they were deceived by different statements in the offering documents. This is a red herring. Plaintiffs have adequately alleged that purchasers of every tranche were deceived by the same statements as to underwriting

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 11

guidelines because they were allegedly absent. There is no need to analyze these statements on a tranche-by-tranche basis. Defendants' argument is without merit.

The Court finds Plaintiffs have shown typicality.

5.  Adequacy

Defendants argue Plaintiffs are not adequate representatives because each group of purchasers of tranches will want to employ a unique valuation model to measure damages that will be at odds with other class members' valuation model. The Court is not persuaded by this argument.

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" Ellis, Slip Op. at 17717 (quoting Hanlon, 150 F.3d at 1020). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id. (citation omitted).

Defendants wrongly suggest that Plaintiffs will not adequately represent the class because each will pursue a valuation of damages antithetical to the Class's. First, calculation of damage is not generally a reason to defeat class certification. Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975). Second, the Court finds no legitimate reason why Plaintiffs will present a valuation model that does not maximize damages for the entire class. The named Plaintiffs have purchased the same tranches of MBS that the absent class members have. The interests of the named Plaintiffs and the Class are aligned. As Plaintiffs point out, their expert has already suggested that damages can be determined using a common methodology. (Dkt. No. 322 at 11-12.) There

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 12

is no reason that the purchasers of the different tranches will be antagonistic or that a single model cannot be used to evaluate damages. The Court rejects this argument.

The Court finds no evidence of antagonism between the Plaintiffs and the Class. The named Plaintiffs' interests are aligned with the Class's. Class counsel are experienced securities litigators who have prosecuted this action vigorously. The Court finds adequacy satisfied.

6. <u>Rule 23(b)(3): Predominance and Superiority</u>

Plaintiffs primarily seek certification under Rule 23(b)(3), arguing that common issues of law and fact predominate and that a class action is the superior method of litigation. The Court agrees.

Predominance is present when common questions of law or fact predominate over individual questions, and a class action is superior to other available methods of adjudication. <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1188-89 (9th Cir. 2001). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996). To measure superiority, the Court is to consider the four factors of Rule 23(b)(3): (1) the interest of each member in "individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Economy and efficiency are considered the most important elements of the inquiry. <u>Zinser</u>, 253 F.3d at 1190.

Plaintiffs have satisfied predominance and superiority. First, there are common questions of law and fact that predominate over any individual issues. Plaintiffs pursue a claim common to

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 13

all purchasers of the thirteen WaMu MBS tranches that involves answering three key questions: (1) are the challenged statements about WaMu's underwriting untrue or misleading?; (2) are the challenged statements material to a reasonable investor?; and (3) what role did each of the Defendants play in the offerings? (See Dkt. No. 223 at 20.) Defendants argue that Plaintiffs cannot show predominance because there will be competing valuations as to damages. As explained above, questions about valuation models do not show that common issues do not predominate. Defendants also argue that Plaintiffs cannot show predominance because Boilermakers and Chicago PABF will have to show individual reliance. (Dkt. No 252 at 26.) Defendants argue that because these two plaintiffs purchased the securities more than a year after trustee reports were released, they will have to show individual reliance. (Id. (citing 15 U.S.C. § 77k(a)).) The trustee reports do not satisfy this defense. The rule in § 77k(a) applies only where "earning statements" were released. By regulation, the term "earning statement" does not include trustee or distribution reports. See 17 C.F.R. § 230.158(a)(2(i)-(ii). As the court held in DLJ Mortgage, these trustee reports are not sufficient to satisfy § 77k(a) because they are not "earning statements." DLJ Mortgage, 08 Civ. 5653 (PAC), Dkt. No. 125 at 11-12. The Court rejects Defendants' argument on this issue.

The use of the class action here is superior to a number of individual actions. It is beyond dispute that having all claims of the class litigated at once will serve judicial economy and efficiency. Defendants argue that because three potential members of the Class have brought their own cases regarding three WaMu MBS offerings from which the tranches at issue here were sold defeats superiority. That three of a class of over seven-hundred have started cases involving the same securities does not convince the Court that litigating this matter as a class action, as opposed to hundreds of separate lawsuits, is not superior. Presumably, those three

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 14

1  potential class members may opt out of the Class and prosecute the matter themselves.  The

2  Court is also not convinced that superiority is lacking because some of the absent members may

3  have large claims or are sophisticated investors.  This conjectural argument raised by Defendants

4  does not show that the class members will be at war to control the litigation.  These arguments

5  do not show that economy and efficiency are not best served by a class action here.  Zinser, 253

6  F.3d at 1190.  Lastly, the Court finds this matter to be easily managed by one Court given the

7  fact that Plaintiffs' claims have been significantly narrowed as this case has moved forward.  The

8  Court is well versed in the subject matter of this litigation and is no stranger to handling complex

9  class action litigation.

10       The Court finds the elements of Rule 23(b)(3) satisfied.  The Court GRANTS the motion

11  for class certification, having found the elements of Rule 23(a) and Rule 23(b)(3) satisfied.

12       7.    Rule 23(b)(1)(B): Limited Fund

13       Plaintiffs seek certification alternatively under the "limited fund" rule of Rule

14  23(b)(1)(B).  Under this rule, Plaintiffs must show that "prosecuting separate actions by or

15  against individual class members would create a risk of . . . adjudications with respect to

16  individual class members that, as a practical matter, would be dispositive of the interests of the

17  other members not parties to the individual adjudications or would substantially impair or

18  impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)-(b)(1)(B).  There are

19  three requisite elements of a limited fund case.  First, "the totals of the aggregated liquidated

20  claims and the fund available for satisfying them, set definitely at their maximums, demonstrate

21  the inadequacy of the fund to pay all the claims." Ortiz v. Fibreboard Corp., 527 U.S. 815, 838

22  (1999). Second, plaintiffs must show "the whole of the inadequate fund was to be devoted to the

23

24

overwhelming claims." Id. at 839. Third, plaintiffs must also show "the claimants identified by a common theory of recovery were treated equitably among themselves." Id.

Plaintiffs have failed to show that there is a definite maximum of the purported fund, or that the remaining funds of WaMu will be inadequate. One might assume that the WaMu assets are at a definite maximum, but Plaintiffs have not shown evidence of this or why the funds are inadequate. The Court thus rejects Plaintiffs' argument as to Rule 23(b)(2)(B). This does not affect the Court's ultimate decision to grant the motion for class certification, as Plaintiffs have already satisfied Rule 23(b)(3).

### 8. Class Counsel

Plaintiffs seek an order appointing the firms of Cohen Milstein Sellers & Toll PLLC and Scott + Scott LLP as Class Counsel. Defendants do not challenge this request. At oral argument the Court queried whether it was in the best interest of the Class to have two firms appointed as Class Counsel. Counsel for Plaintiffs adequately explained that the two firms have already shared in the labor and that both represent individual Plaintiffs in the action. Counsel assured the Court that no work would be duplicated and that the two firms would aid in the prosecution of the matter. The Court is satisfied that both firms will adequately represent the Class and appoints them as Co-Lead Class Counsel. The Court cautions the firms that it will not reward excessive hours spent on routine or duplicative matters and that the billing rates cannot exceed the rates charged in Seattle.

**Conclusion**

The Court agrees with Defendants that Plaintiffs have standing only to represent those entities and persons who purchased certificates from the thirteen tranches of WaMu MBS that the named Plaintiffs actually purchased. The Court therefore GRANTS Defendants' motion for

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND
GRANTING IN PART PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION- 16

judgment on the pleadings and dismisses all claims beyond the thirteen tranches in which the named Plaintiffs purchased. Considering this narrowed class, the Court finds the action should be certified under Rule 23 and GRANTS in part Plaintiffs' motion for class certification. The Court agrees with Plaintiffs that all of the Rule 23(a) and the Rule 23(b)(3) factors are met. The Court certifies the Class as follows:

> All persons or entities who purchased or otherwise acquired the following WaMu Mortgage-Pass Through Certificates: 2006 AR-7 tranche 1A; 2006 AR-12 tranche 1A1; 2006 AR-16 tranches 2A1, LB1, LB2, LB3, 3B1, 3B2, and 3B3; 2006 AR-17 tranche 1A; 2006 AR-18 tranche 2A1; and 2007-HYI tranches 1A1 and 3A3 ("WAMU Bonds") on or before August 1 ,2008 pursuant and/or traceable to their Registration Statements and accompanying Prospectuses filed with the Securities and Exchange Commission ("Offering Documents") and who were damaged thereby.

The Court also appoints Cohen Milstein and Scott + Scott as Co-Lead Class Counsel.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 21st day of October, 2011.

Marsha J. Pechman
United States District Judge