THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| POLYGON NORTHWEST COMPANY, L.L.C., a Washington limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>LOUISIANA-PACIFIC CORPORATION, a Delaware corporation,<br><br>Defendant. | CASE NO. 2:11-cv-620 MJP<br><br>MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE DEFENDANT TO COMPLY WITH COURT'S DISCOVERY ORDER<br><br>NOTE ON MOTION CALENDAR:<br>Friday, March 2, 2012 |

## I.   RELIEF REQUESTED

On February 9, 2012, approximately seven months after Defendant Louisiana-Pacific Corporation's ("LP") discovery responses were first due, LP has finally produced approximately 4,500 pages of unredacted documents that are responsive in part to Plaintiff Polygon Northwest Company's ("Polygon") discovery requests. There is no reason LP could not have produced the documents when LP's responses were originally due on July 13, 2011, or at the very latest when the parties' stipulated protective order was entered by the Court on August 5, 2011. The documents are unquestionably within the scope of Polygon's discovery requests, which were reasonably calculated to lead to the discovery of admissible evidence.

If LP had produced the documents when it was obligated to do so, Polygon would have had ample time — approximately six months — to review and analyze the documents, contact

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE DEFENDANT TO COMPLY WITH COURT'S DISCOVERY ORDER [CASE NO. 2:11-cv-620 MJP] - 1
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

witnesses disclosed by the documents, investigate the facts revealed by the documents, prepare for and conduct depositions related to those facts, conduct follow-up discovery, and otherwise prepare for trial. As it is, Polygon was left with just twelve days before the new February 21, 2012 discovery deadline to sift through 4,500 pages of documents, contact newly-disclosed witnesses, investigate newly-disclosed facts, and prepare for and conduct depositions based on those facts. This is essentially an impossible task, made all the more impossible by the fact that LP still has yet to comply with the Court's January 30, 2012 order on the parties' motions to compel. LP still has not produced any of its board meeting minutes relevant to LP's defective vinyl siding product, nor has it produced any documents whatsoever pertaining to the sale of the vinyl siding division to KP Building Products, Inc. that refer to defects in the product.

Polygon has been deprived of an opportunity to conduct discovery and prepare for trial, by LP's utter resistance to Polygon's discovery efforts. LP has effectively left Polygon with twelve days to accomplish what it should have had six months to accomplish. This is highly prejudicial to Polygon. In short, despite its diligence in attempting to persuade LP to comply with its discovery obligations, Polygon cannot comply with the current case scheduling order. Polygon respectfully requests that the Court (1) enter an order continuing the trial date in this matter by 90 days, to allow Polygon a full and fair opportunity to prepare for trial, and (2) enter an order requiring LP to comply with the Court's January 30, 2012 discovery order.

## II. FACTS

### A. Polygon's Discovery Efforts

This lawsuit relates to defects in a siding product manufactured by LP. Polygon purchased large quantities of vinyl siding from LP, which it used in the construction of over 500 homes. *See* Joint Status Report, Docket # 9, at pg. 1. The siding is defective, in that it is susceptible to deformation, distortion, fading/chalking, and premature failure. *Id.* As stated in the Joint Status Report, the parties anticipated conducting discovery regarding Polygon's

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 2
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

claims and damages, including the nature, scope, and extent of the defects alleged by Polygon with respect to the siding, and the extent of LP's knowledge of the alleged defects. *Id.* at pg. 3.

The parties exchanged initial disclosures on June 13, 2011. *See* Declaration of Paul W. Moomaw ("Moomaw Decl."), at ¶ 2. When LP submitted its initial disclosures, it did not produce any documents. *Id.* In its written disclosures, LP indicated that it would produce documents only upon entry of a protective order. *Id.* at Exhibit A. Later, when LP provided its responses to Polygon's discovery requests on July 13, 2011, it provided incomplete written responses, and still did not produce any documents. *Id.* at ¶ 3. Again, LP indicated that it would not produce any documents until a protective order had been entered, or it simply objected to Polygon's requests. *Id.*

Counsel for the parties had a discovery conference on July 21, 2011, to discuss LP's deficient responses. *Id.* at ¶ 4. At that time, LP committed to supplement its responses on July 29, 2011. *Id.* It was Polygon's counsel's understanding from that conference that LP would produce non-confidential documents on July 29, 2011, but would only produce documents LP deemed confidential upon entry of a protective order. *Id.* LP submitted supplemental responses to Polygon's discovery requests on August 1, 2011, but still did not produce any documents. *Id.* at ¶ 5. LP's counsel took the position that it would not produce any documents until entry of a protective order, whether the documents were confidential or not. *Id.*

The Court entered the parties' stipulated protective order a few days later, on August 5, 2011. *See* Docket #13. Finally, on August 11, 2011, after a number of inquiries by Polygon's counsel, LP produced some documents. *See* Moomaw Decl., at ¶ 6. Unfortunately, LP's production did not come close to responding to the scope of documents Polygon sought in its discovery requests. Among other things, Polygon had asked for documents relating to: (1) other consumer claims regarding LP's defective siding; (2) internal communications and meetings regarding defects in the siding; (3) LP's knowledge of defects in the siding; (4) LP's

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 3
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

efforts to reengineer and improve the siding product; and (5) Polygon's sale of its vinyl siding division to KP Building Products, Inc. *See, e.g.*, Polygon's Motion To Compel, Docket #16.

But on August 11, 2011, all LP produced were documents relating to Polygon's own warranty claims. Moomaw Decl., at ¶ 6. For the most part, these consisted of documents Polygon itself had submitted to LP. *Id.* In other words, they were documents that Polygon already had in its possession. LP took the position that it had no obligation to produce any of the other documents Polygon had sought in its discovery requests. At that time, it became clear to Polygon that it would need the Court's assistance in persuading LP to comply with its discovery obligations. Accordingly, on September 22, 2011, Polygon filed a motion to compel LP to produce the other documents Polygon had requested, and to otherwise respond to Polygon's discovery requests.[1] *See* Docket #16.

On October 31, 2011, the Court entered an order denying Polygon's motion to compel without prejudice. *See* Docket #22. Thereafter, counsel for the parties had a number of additional discovery conferences, on November 17, November 29, and December 20, 2011. Moomaw Decl., at ¶ 8. In those conferences, LP's counsel agreed to produce documents regarding other warranty claims and litigation against LP relating to the siding, but contended that it had no obligation to produce documents regarding the sale of the siding division, and that it was not in possession of any internal communications pertaining to siding defects. *Id.*

Under the case scheduling order governing this litigation, the deadline for filing discovery motions was December 21, 2011. Because the Court had ordered that further discovery motions be filed in accordance with Local Rule CR 37(a)(1)(B), Polygon had to serve the motion on LP by December 13, 2011, in order to give sufficient time for response and reply. At the time of serving the motion on LP, Polygon believed LP's representations that it would produce documents relating to other warranty claims and litigation. Polygon also had

---

[1] Polygon's slight delay in filing the motion was occasioned by the facts that (1) Polygon's counsel was on a long-planned vacation during the last two weeks of August, and (2) Polygon's efforts at that time were focused on responding to LP's own discovery requests. *See* Moomaw Decl, at ¶ 7.

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE DEFENDANT TO COMPLY WITH COURT'S DISCOVERY ORDER [CASE NO. 2:11-cv-620 MJP] - 4
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

little choice but to believe LP's representation that it did not have any documents reflecting internal LP communications regarding problems with the siding.

**B.  LP Produces Approximately 4,500 Pages of Documents, the Majority of Which Are Redacted**

On December 19, 2011, LP produced a CD to Polygon containing approximately 4,500 pages of documents. *Id.* at ¶ 9. These were copies of the documents LP had produced in a previous litigation matter, which Polygon's counsel was given to understand were responsive to Polygon's request for documents relating to other consumer claims regarding the defective siding product. To Polygon's dismay, however, the great majority of these 4,500 documents contained significant redactions. *Id.* at ¶ 10.

For example, the name and address of each and every warranty claimant was redacted, as was the amount LP had paid to resolve each warranty claim. *Id.* Thus, Polygon had no way to learn how widespread the problems related to the siding were. For example, were the issues isolated to a particular region, or were they spread throughout the country? (LP has taken the position before this Court that the problems are not widespread. *See* Defendant's Response to Motion to Compel, at pg. 2 (Docket #18)). Nor could Polygon follow up with previous claimants to investigate the nature of the defects or the factors that contributed to the defects. For example, LP has contended throughout this litigation that all of Polygon's problems with the siding were the result of installation issues. Given LP's redactions, Polygon could not interview other potential witnesses to determine whether LP had taken the same position with them, or whether LP had acknowledged that there were inherent defects with the siding.

Hundreds of pages were redacted in their entirety. Moomaw Decl., at ¶ 11. In other words, LP produced hundreds of pages of documents that contained nothing other than the word "REDACTED." *Id.* at Exhibit B. Obviously, Polygon had no way of knowing what kinds of information these documents contained. Likewise, there were numerous letters and email chains in which substantive text appeared to have been redacted, making it appear that LP was not only concerned about not disclosing personally identifying information, but was

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE DEFENDANT TO COMPLY WITH COURT'S DISCOVERY ORDER [CASE NO. 2:11-cv-620 MJP] - 5
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

also concerned about not disclosing information that may be damaging to its case. *See, e.g., id.* at Exhibit F.

Fortunately, because LP produced the CD just before Polygon's deadline for submitting the motion to compel, Polygon was able to bring LP's significant redactions to the attention of the Court and to ask the Court to require LP to produce unredacted documents.

**C.   LP Produces Unredacted Versions of the Documents Twelve Days Before the New Discovery Deadline**

The Court entered its order on the parties' cross motions to compel on January 30, 2012. *See* Docket #32. The Court also granted in part the parties' joint motion to extend the discovery deadline, which the parties agreed was necessary when it became clear that the Court's order on the discovery motions might not be entered until after the discovery deadline. The new discovery deadline is February 21, 2012. *See* Docket #33.

As the Court is aware, the Court ordered LP to produce unredacted versions of its document production no later than ten days after entry of the discovery order — on February 9, 2012. On the afternoon of the deadline for compliance, LP produced a new CD that contained unredacted versions of the approximately 4,500 pages of documents it had previously produced on December 19, 2011. *See* Moomaw Decl., at ¶ 13. Thus, LP has finally produced unredacted copies of at least *some* of the documents Polygon has been begging LP to produce for approximately seven months, since LP's discovery responses were first due. However, because the discovery deadline is February 21, 2012, Polygon was left with only twelve days to review and analyze these thousands of pages of new documents, to follow up with dozens of new potential witnesses, and to prepare to depose LP and its representatives in connection with the new information disclosed by the documents.

LP's February 9, 2012 production contains volumes of new information. For the very first time, Polygon has now been provided with information identifying the names and addresses of more than sixty homeowners that have made claims against LP regarding the defective Norman Rockwell siding. *Id.* at ¶ 14. Until February 9, 2012, Polygon was unaware

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 6
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of the identities of all of these homeowners, any number of whom could be potential witnesses with information relevant to Polygon's claims against LP. *Id.* Polygon now has twelve days to attempt to contact these witnesses, interview them about the nature of the problems they encountered with the siding and LP's handling thereof, and potentially take their depositions.

Likewise, for the first time, LP has provided Polygon with information disclosing just how widespread the problems with the siding have been. For example, LP's unredacted document production shows that homeowners in locations as diverse as Arkansas, Colorado, Connecticut, Illinois, Michigan, New Jersey, New York, Ohio, Pennsylvania, Virginia, and Washington, to name only a few, have made claims against LP. *Id.* This is obviously contrary to any claim on the part of LP that the problems have not been widespread. Indeed, one claimant was a builder of military housing in Virginia, who submitted a claim for defects in the Norman Rockwell siding affecting over 160 homes. *Id.*

Most importantly, for the first time, Polygon has been provided with information showing beyond a doubt that LP knew it had a serious problem with the Norman Rockwell siding. For example, attached as Exhibit C to the Moomaw Declaration is an April 2005 email chain amongst LP representatives showing that (1) LP knew that it had a serious problem relating to heat distortion, (2) in 2004 it had paid out $365,000 in claims due to the issue, and (3) it was considering whether it was possible to reformulate the product due to the problem. The redacted version of the email is attached to the Moomaw Declaration as Exhibit D.

Similarly, Exhibit E to the Moomaw Declaration is another April 2005 email chain in which an LP representative states that "Miguel is extremely interested in all NR [presumably Norman Rockwell] Claims," and another states in response: "This was Rockwell one and we all know that had issues." The redacted version of the email is attached as Exhibit F to the Moomaw Declaration. And, Exhibit G is a November 2004 email from LP's consultant, Rick Lappin, related to Polygon's own claims. In pertinent part, he states: "On our end, we must insure we make what we say we do – if HDM is supposed to be in the dark j-channels, there

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 7
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

should be no question that every stick of what we produce has HDM. Wayne's looking into that aspect didn't give me any confidence in that at all." The redacted version of the email is attached to the Moomaw Declaration as Exhibit H.

Obviously, these emails are contrary to LP's claims that the problems experienced by Polygon are not widespread, and show that they were not the result of Polygon's own alleged defective installation. Likewise, they demonstrate that LP was well aware that there were problems related to the siding. The emails also bring up numerous new questions and lines of inquiry for Polygon to investigate, including whether LP was aware of this inherent problem at the time Polygon purchased and installed the defective siding, and what steps LP took to attempt to correct the problem. The emails also bring up questions about what other similar documents LP has failed to disclose. LP has taken the position that it has not retained any communications relating to defects in the siding. Plainly, however, these are all communications relating to defects in the siding and LP's knowledge thereof.

There may be other examples of similar emails in LP's production. But because LP did not produce the documents in unredacted form until Thursday, February 9, 2012, Polygon has only now begun to sift through the volumes of new information revealed by the documents. Much less has Polygon had an opportunity to follow up with witnesses, who are scattered throughout the United States, identify which witnesses need to be deposed, and prepare for depositions relating to this new information.

All of this information is relevant to Polygon's claims against LP. Again, LP has continually taken the position throughout this litigation that the problems with the siding are not widespread, and that Polygon's difficulties were the result of their own alleged defective installation of the product. Now, based on the new information disclosed by LP, Polygon has the opportunity to develop evidence that there was a widespread problem, experienced by many other homeowners, that the problems were not the result of installation issues, and that LP was aware of the problems when it sold Polygon the product and when it disputed Polygon's claims.

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 8
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

But Polygon only has twelve days from the date of LP's production to the date of the discovery cutoff to follow up on all this new information. Polygon has twelve days to contact and interview the approximately 60 other homeowners who experienced problems with LP's siding. It has twelve days to investigate the new revelations disclosed by the emails discussed above (and other similar documents it may encounter as it sifts through the documents). It has twelve days to set up, prepare for, and accomplish depositions of witnesses located around the United States with knowledge of these revelations.[2]

Finally, even if Polygon had the time to review the documents and prepare for depositions, due to the short time frame, Polygon's counsel is not available for depositions on the dates proposed by LP. LP's counsel has agreed to make Rick Lappin and LP's 30(b)(6) designee(s) available for deposition on February 20 and 21 in Charlotte, N.C. *See* Moomaw Decl., at ¶ 19. However, Chris Brain, who will be trial counsel for Polygon in this matter, is unable to participate in depositions on those dates — particularly in North Carolina — because he has an important oral argument before the Court of Appeals on February 23. *Id.*

### C. LP Still Has Not Produced All of the Documents the Court has Ordered It To Produce

To make matters worse, seven months later, LP's failure to comply with its discovery obligations persists, even after its February 9, 2012 production. For example, LP has stated in its most recent supplementation to its discovery responses that it has produced LP's board meeting minutes related to the defective siding product. *See id.* at Exhibit I, pp. 20-21. But LP still has not produced any board meeting minutes whatsoever. *Id.* at ¶ 20. Thus, assuming LP produces this information, Polygon is left with even less than twelve days to follow up on the information disclosed in the meeting minutes.

---

[2] Moreover, it is not even clear that LP has indeed produced all of the documents relating to consumer claims about the product. For example, Exhibit C makes reference to a claim filed by a homeowner in Tulsa, Oklahoma. But the claim files produced by LP on February 9, 2012, which purportedly contain all of the claims related to the siding, do not contain any reference to any claims filed by a homeowner located in Tulsa, Oklahoma. Moomaw Decl., at ¶ 18. Similarly, LP produced information related to litigation regarding the product in Minnesota. But LP does not appear to have produced the underlying warranty claim file related to the Plaintiff's claim. *Id.*

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 9
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Likewise, the Court ordered LP to produce any and all documents relating to the sale of the vinyl siding division to KP that refer to defects in the product. LP now takes the position that "[t]he Asset Purchase Agreement and the Non-Competition, Non-Disclosure, and Non-Solicitation Agreement between KP Building Products and LP does not in any way refer to defects in Rockwell siding or LP's knowledge of same." *Id.* at Exhibit I, pp. 18-19. But Polygon also asked for written communications between LP and KP that pertain to the defects. LP still has not produced any such communications. *Id.* at ¶ 20. LP will likely assert that there are no such communications. But, of course, LP also took the position that it did not have any internal communications relating to the defects. *But see* Exhibits C-H, which are emails relating to defects in the Norman Rockwell vinyl siding product and LP's knowledge thereof.[3]

### III. ARGUMENT

**A.     There Is Good Cause for a 90-day Trial Continuance**

To obtain modification of a trial court's scheduling order, a party must show "good cause" under Rule 16(b). *See* Fed. R. Civ. P. 16(b); *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she is unable to meet the timetable set forth in the order. *See Zivkovic*, 302 F.3d at 1087.

There is unquestionably good cause for a trial continuance in this case. LP could have produced unredacted versions of the documents contained in its February 9, 2012 production back on July 13, 2011, when its responses to Polygon's discovery requests were first due. At the very least, LP could have produced the documents no later than August 5, 2011, when the Court entered the parties' stipulated protective order. At that point, there was no reason for LP not to produce the documents. The documents were plainly responsive to Polygon's discovery

---

[3] Further, LP's resistance to providing information relating to its agreement with KP regarding liability for defects in the siding is further evidence of its intransigence. The information is plainly relevant, as is evidenced by the fact that, when Polygon recladded a home with KP Norman Rockwell siding to remedy defects in LP's siding, LP's general counsel asserted that it had no obligation to pay when the KP siding failed.

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 10
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

requests, which were indisputably reasonably calculated to lead to the discovery of admissible evidence. The protective order fully resolved any concerns LP may have had about disclosing the identities and addresses of non-party warranty claimants.

If LP had produced these documents to Polygon when it was obligated to do so, Polygon would not have this problem. Polygon would have had months before the discovery deadline to follow up on the information, interview witnesses, take depositions, pursue other relevant discovery, and otherwise prepare for trial. But LP, through its intransigence, has succeeded in leaving Polygon with only twelve days to sift through and analyze thousands of pages of previously undisclosed documents, in order to identify and contact dozens of previously undisclosed witnesses and to investigate numerous previously undisclosed facts. It is an impossible task. LP's strategy has plainly been that if it resists hard enough, and delays for long enough, Polygon will simply run out of time to prove its case. Requiring Polygon to comply with the current case schedule under these circumstances effectively vindicates LP's strategy, resulting in significant prejudice to Polygon.

Moreover, Polygon's trial counsel's schedule will not permit him to take the depositions of certain key individuals on the dates proposed by LP's counsel, as he has an important Court of Appeals argument on February 23. Again, though, even if he could, it would not be possible to sufficiently prepare for those depositions given the short time frame between LP's document disclosure and the proposed deposition dates.

Polygon had hoped to remedy this situation by requesting a significant extension of the deadline for completing discovery, which Polygon had hoped would allow the parties to maintain the same trial date. However, the Court was understandably concerned about the impact of such a significant extension on its ability to consider dispositive motions. Accordingly, the only way to avoid significant prejudice to Polygon is to continue the trial date.

In short, Polygon has diligently worked to persuade LP to provide the information to which Polygon is entitled. Nevertheless, it is apparent that LP embarked on an intentional

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 11
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

course of action to delay and extend discovery with the hope of avoiding production of important and damaging evidence in its possession. Its lack of cooperation has deprived Polygon of a reasonable opportunity to conduct discovery and prepare for trial, and has left Polygon in the position of being unable to comply with the case schedule. Polygon is highly prejudiced by LP's course of action, as it now has twelve days to d what it should have had six months to accomplish. This is made worse by the fact that, as discussed below, LP still has not produced all of the documents it was ordered to produce in the Court's January 30, 2012 discovery order. Polygon thus respectfully requests that the Court enter an order continuing the trial date for 90 days, to allow Polygon a full and fair opportunity to prepare for trial.

**B.   The Court Should Order LP To Comply with Its Previous Order**

Finally, LP still has yet to comply with the Court's January 30, 2011 discovery order. Specifically, while LP has represented in its most recent supplemental responses that it has produced minutes of meetings of LP's board of directors, it has not done so. The Court's January 30, 2012 order on the parties' discovery motions specifically orders production of unredacted board meeting minutes. *See* Docket #32, at pg. 5. Similarly, LP has yet to produce any documents whatsoever that pertain to the sale of the vinyl siding division that refer or relate to defects in the siding. While LP contends that none of the parties' contractual documents contain any reference to any siding defects, Polygon also asked for written communications and other documents that pertain to such defects. *See* Moomaw Decl., at Exhibit I, pp. 18-19. LP has not produced any such documents, and should be compelled to do so.

## IV.   CONCLUSION

For the foregoing reasons, Polygon respectfully requests that the Court (1) enter an order continuing the trial date in this matter by 90 days, to allow Polygon a full and fair opportunity to prepare for trial, and (2) enter an order requiring LP to comply with the Court's January 30, 2012 discovery order. A proposed order is submitted herewith.

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE
DEFENDANT TO COMPLY WITH COURT'S DISCOVERY
ORDER [CASE NO. 2:11-cv-620 MJP] - 12
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Respectfully submitted this 13th day of February, 2012

                            TOUSLEY BRAIN STEPHENS PLLC

By: */s/ Paul W. Moomaw*
    Christopher I. Brain, WSBA #5054
    Email: cbrain@tousley.com
    Paul W. Moomaw, WSBA #32728
    Email: pmoomaw@tousley.com
    1700 Seventh Avenue, Suite 2200
    Seattle, Washington 98101
    Tel: 206.682.5600
    Fax: 206.682.2992

*Attorneys for Plaintiff*

MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE DEFENDANT TO COMPLY WITH COURT'S DISCOVERY ORDER [CASE NO. 2:11-cv-620 MJP] - 13
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

E. Pennock Gheen, WSBA #14969
pgheen@karrtuttle.com
Celeste Mountain Monroe, WSBA #35842
Email: cmonroe@karrtuttle.com
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, WA 98101
Tel:   (206) 223-1313
Fax:   (206) 682-7100

*Attorneys for Defendant*

/s/ *Paul W. Moomaw*
Christopher I. Brain, WSBA #5054
Email: cbrain@tousley.com
Paul W. Moomaw, WSBA #32728
Email: pmoomaw@tousley.com
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel:   206.682.5600
Fax:   206.682.2992
*Attorneys for Plaintiff*
MOTION TO CONTINUE TRIAL DATE AND TO REQUIRE DEFENDANT TO COMPLY WITH COURT'S DISCOVERY ORDER [CASE NO. 2:11-cv-620 MJP] - 14
4275/001/252360.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992