1

2                                          The Honorable Marsha J. Pechman

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
9

10   IN RE WASHINGTON MUTUAL            MASTER CASE NO. C09-037 MJP
     MORTGAGE BACKED SECURITIES
11   LITIGATION,                        **DEFENDANTS' MOTION TO
                                        EXCLUDE THE PROFFERED EXPERT
12   This Document Relates to:  ALL CASES   TESTIMONY OF CHARLES D.
                                        COWAN AND IRA HOLT**
13
                                        NOTE ON MOTION CALENDAR:
14                                      May 11, 2012

15
                                        ORAL ARGUMENT REQUESTED
16

17

18

19

20

21

22

23

24

25

Defendants' Motion to Exclude the Proffered Expert       **HILLIS CLARK MARTIN & PETERSON P.S.**
Testimony of Charles D. Cowan and Ira Holt               1221 Second Avenue,  Suite 500
(CV09-037 MJP)                                           Seattle, Washington  98101-2925
                                                         Telephone: (206) 623-1745
                                                         Facsimile: (206) 623-7789

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

EXPLANATION OF CITATION FORMS ...................................................................... iv

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ............................................................................................................2

ARGUMENT .................................................................................................................4

    I.       Applicable Legal Standards. .................................................................4

    II.     Dr. Cowan and Mr. Holt Should Be Precluded From Testifying Because They Selected a Non-Random, Biased Sample of Loans for Re-Underwriting. ...................................................................................5

    III.    Mr. Holt Should Be Precluded From Offering the Opinion That Certain Loans He Reviewed Were "Materially Defective" Because He Did Not Properly Apply WMB's Underwriting Guidelines. ............................................11

CONCLUSION ............................................................................................................18

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)           i

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1

2

# TABLE OF AUTHORITIES

**Page(s)**

3    **Cases**

4
5    Certified Eng'g Copier Sys., Inc. v. Nat'l City Commercial Capital Co. LLC., No.
2:07-CV-293 TS, 2009 WL 1324047 (D. Utah May 11, 2009).................................... passim

6
7    Chavez v. IBP, Inc., No. CV-01-5093-RHW, 2004 WL 5520002 (E.D. Wash.
Dec. 8, 2004)..........................................................................................................6, 7, 10

8    Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311 (9th Cir. 1995) ................................5, 6, 18

9    Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)................................................4, 5, 17

10   General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)...................................................................6

11   Henricksen v. ConocoPhillips Co., 605 F. Supp. 2d 1142 (E.D. Wash. 2009) ...........................5

12   In re Live Concert Antitrust Litig., No. 06-ML-1745-SVW (VBK), 2012 WL
1021081 (C.D. Cal. March 23, 2012) ...............................................................................16

13
14   In re Silicone Gel Breast Implants Prods. Liab. Litig., 318 F. Supp. 2d 879 (C.D.
Cal. 2004).............................................................................................................................5

15
16   In re Washington Mutual Mortgage Backed Securities Litigation, 748 F. Supp. 2d
1246 (W.D. Wash. 2010) ............................................................................................ passim

17   Many Cultures, One Message v. Clements, No. 10-CV-05253, 2011 WL 5515515
(W.D. Wash. Nov. 8, 2011) .............................................................................................5, 8

18
19   Metabyte, Inc. v. Canal+ Techs., S.A., No. C-02-05509 RMW, 2005 WL 6032845
(N.D. Cal. June 17, 2005) ......................................................................................16, 17, 18

20   Radaszewski v. Maram, No. 01-C-9551, 2008 U.S. Dist. LEXIS 24923 (N.D. Ill.
Mar. 26, 2008).....................................................................................................................6

21
22   Ram v. N.M. Dep't of Evn't, No. 05-cv-1083 JB (WPL), 2006 U.S. Dist LEXIS
95369 (D.N.M. Dec. 15, 2006) ........................................................................................11

23
24   Recreational Devs. of Phoenix, Inc. v. City of Phoenix, 220 F. Supp. 2d 1054 (D.
Ariz. 2002) ........................................................................................................................11

25

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                                    ii

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292 (Fed. Cir. 2011)......................................16

U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Union No.3, AFL-CIO, 313 F. Supp. 2d 213 (S.D.N.Y. 2004)............................................................................9

United States v. W.R. Grace, 455 F. Supp. 2d 1181 (D. Mont. 2006) .........................................9

**Statutes & Rules**

Fed. R. Civ. P. 26 ........................................................................................................................8

Fed. R. Evid. 401 ......................................................................................................................10

Fed. R. Evid. 403 .............................................................................................................7, 10, 11

Fed. R. Evid. 702 .............................................................................................................. passim

**Other Authorities**

Kaye and Freedman, "Reference Guide on Statistics" in Federal Judicial Center's Reference Manual on Scientific Evidence (3rd ed. 2011) ..................................................6, 7

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                              iii

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## EXPLANATION OF CITATION FORMS

The following citation forms are used in this memorandum:

- "Cowan Report" for references to the Expert Report of Plaintiffs' proposed expert, Dr. Charles D. Cowan, dated March 2, 2012 (Earnhardt Decl. Ex. 1).

- "Holt Report" for references to the Expert Report of Plaintiffs' proposed expert, Ira Holt, dated March 2, 2012 (Earnhardt Decl. Ex. 2).

- "Ostendorf Report" for references to the Expert Report of Defendants' proposed expert, George Ostendorf, dated March 30, 2012 (Earnhardt Decl. Ex. 3).

- "Wecker Report" for references to the Expert Report of Defendants' proposed expert, Dr. William Wecker, dated March 30, 2012 (Earnhardt Decl. Ex. 4).

- "Holt Survey" for references to the survey template that Mr. Holt states he and his team utilized in conducting their reunderwriting review (Earnhardt Decl. Ex. 5).

- "Holt Survey Data" for references to the data that Mr. Holt states he and his team compiled through the use of the Holt Survey (Earnhardt Decl. Ex. 7).

- "8/17/06 CUG" for references to the version of WMB's Conventional Underwriting Guidelines dated August 17, 2006 (Earnhardt Decl. Ex. 8).

- "8/17/06 PPG" for references to the version of WMB's Product and Pricing Guide dated August 17, 2006 (Earnhardt Decl. Ex. 9).

- "Pls. 12(c) Opp." for references to Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings (Docket No. 327) (Earnhardt Decl. Ex. 10).

Defendants' Motion to Exclude the Proffered Expert Testimony of Charles D. Cowan and Ira Holt (CV09-037 MJP)                    iv

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Defendants WaMu Capital Corp. ("WCC"), WaMu Asset Acceptance Corp. ("WAAC"), David Beck, Diane Novak, Rolland Jurgens and Richard Careaga respectfully submit this motion to exclude the proffered expert testimony of Dr. Charles D. Cowan and Ira Holt.

## PRELIMINARY STATEMENT

The central issue in this case is whether the Offering Documents for the Certificates purchased by Plaintiffs contained material misstatements concerning Washington Mutual Bank's ("WMB") mortgage underwriting (i.e., the process by which WMB determined whether to approve mortgage loan applications). In re Washington Mutual Mortgage Backed Securities Litigation, 748 F. Supp. 2d 1246 (W.D. Wash. 2010). As the Court explained it: "In essence, Plaintiffs allege the underwriting guidelines ceased to exist. If proven true, the absence of underwriting standards could make the identified statements misleading." Id. at 1255.

In support of their claim, Plaintiffs submitted reports of two purported experts—Dr. Charles Cowan and Mr. Ira Holt—who together opine that 37.1 percent of the loans backing the securitizations at issue were "materially defective". (Cowan Report at 2; Holt Report at 3.) To arrive at that opinion, Dr. Cowan (Plaintiffs' proposed statistical sampling expert) selected a sample of loans, and Mr. Holt (Plaintiffs' proposed underwriting expert) reviewed a subset of the loans in Dr. Cowan's sample. (Plaintiffs also submitted reports from other experts on separate issues that are not the subject of this motion, and Defendants reserve the right to move to exclude the proffered testimony of Plaintiffs' other experts at a future date.)

After Mr. Holt re-underwrote the loans in that subset, Dr. Cowan extrapolated Mr. Holt's conclusions about those loans to the broader population. Because each expert's analysis is dependent on the other, Dr. Cowan and Mr. Holt must each have

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                                        1

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1  employed a reliable methodology in order for the testimony of either expert to be

2  admissible.

3          The testimony of both experts should be excluded for multiple

4  independent reasons.  <u>First</u>, the sample of loans reviewed by Mr. Holt was fundamentally

5  flawed because it was not randomly selected.  A valid random sampling technique must

6  by definition assign some non-zero probability of selection to each member of the

7  sampled population.  While Dr. Cowan purported to select a random sample from the

8  total loan population, in fact his methodology excluded nearly 1,500 loans, giving them a

9  zero possibility of being chosen for the sample, which is a textbook error that invalidates

10  any attempt to extrapolate the alleged characteristics of the sample to the overall loan

11  population.  Further, Mr. Holt's selection of the subset of loans to review from Dr.

12  Cowan's sample was also not random, was not the result of any scientific methodology,

13  missed large swaths of the relevant loan population and yielded a severely biased set of

14  loans.  (<u>See</u> Argument § II.)  <u>Second</u>, even assuming his sample was appropriately

15  chosen—and it was not—Mr. Holt's re-underwriting process was flawed, unreliable and

16  irrelevant because, despite claiming to do so, he failed to apply the WMB guidelines, the

17  adherence to which is purportedly the subject of his opinion.  (<u>See</u> Argument § III.)

18                              **BACKGROUND**

19          Dr. Cowan and Mr. Holt employed a multi-step process to opine that 37.1

20  percent of the loans underlying the securities at issue were "materially defective".

21          <u>First</u>, Dr. Cowan selected a sample of 2,387 loans out of the 13,425 loans

22  backing the six securitizations at issue.  (Cowan Report at 4; Wecker Report at 2.)  To

23  select his sample, Dr. Cowan divided the loans in each securitization into "strata" based

24  on FICO score and loan-to-value (LTV) ratio.  (Cowan Report at 5-7.)  He then arranged

25  the loans in each stratum by loan number and selected a portion of those loans for his

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                     2

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

sample through a process called "interval sampling", whereby every "$n$th" loan following the first randomly selected loan was included in the sample.  (Wecker Report at 9-10.)  For instance, in one stratum, Dr. Cowan randomly selected a loan from among the first four loans in the sorted list and then selected every 4.528735632th loan following the first chosen loan.  (Id. at 10-11.)  However, because the interval (4.528735632) was greater than the number of possibilities for the starting point (four), as a matter of mathematical fact, there were several loans in that stratum that were assigned zero probability of selection. (Id.)  For example, regardless of which loan among the first four was the starting point, given Dr. Cowan's chosen interval it was impossible for the fifth loan in that stratum to be selected.  (Id.)  Dr. Cowan repeated the same error in the vast majority of the strata in his sample, which meant that numerous loans from the total population— indeed, 1,492 loans, or 11.1 percent—had zero chance of being included in Dr. Cowan's sample at all.  (Id. at 11-12.)

Second, Dr. Cowan's sample was "sent to Mr. Holt for re-underwriting". (Cowan Report at 7.)  However, Mr. Holt did not re-underwrite all 2,387 loans, but instead reviewed only 424 loans from Dr. Cowan's sample.  (Id. at 7, 10.)

No explanation was provided for why Mr. Holt did not review Dr. Cowan's entire sample or how he selected the 424 loans that he reviewed.  However, even a cursory review of the 424 loans proves they were not randomly selected.  The 424 loan subset does not include any loans from six of the nineteen loan groups underlying the securitizations at issue and from 193 of the 303 strata into which Dr. Cowan divided the loans.  (Wecker Report at 20.)  If selected randomly, the probability that at least one loan from the 110 strata completely missed by Mr. Holt would have been included among the 424 loans is 0.9999999999 (followed by 173 more 9's).  (Id. at 20-21.)  Indeed, the probability that Mr. Holt's 424 loans are a random subset of Dr. Cowan's initial sample is

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                                        3

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    unfathomably low—less than one in $10^{140}$.  (<u>Id.</u> at 7, 21.)

2         Not only was the 424 loan sample not random, it was also biased.

3    However Mr. Holt chose that subset of 424 loans, a disproportionate number came from

4    the quartile with the lowest FICO scores, which significantly inflated the number of loans

5    that he deemed "materially defective".  (Wecker Report at 22.)

6         <u>Third</u>, Mr. Holt stated that he re-underwrote the 424 loans in accordance

7    with WMB's underwriting guidelines.  (Holt Report at 2.)  To do that, Mr. Holt designed

8    a survey that his team of re-underwriters used to record information about each loan.  (<u>Id.</u>

9    at 15-16.)  Mr. Holt then reviewed the information compiled in the survey and opined

10   whether each loan was "materially defective", <u>i.e.</u>, whether, in his view, the "loan

11   deviated from the applicable Guidelines in a way that materially increased the risk of the

12   loan".  (<u>Id.</u> at 3.)  Based on that review, Mr. Holt concluded that 178 out of the 424 loans

13   in his sample were "materially defective".  (Holt Survey Data, Sheet 2; Ostendorf Report

14   ¶ 110.)  In analyzing each loan, however, Mr. Holt applied (or required his team to apply

15   in completing the survey) a number of "rules" that are inconsistent with, and in some

16   cases directly contradict, what was prescribed by the WMB underwriting guidelines in

17   place at the time (the details of which are described below at pp. 11-16).

18        <u>Fourth</u>, Mr. Holt sent his conclusions back to Dr. Cowan who extrapolated

19   those findings to the broader loan population.  (Cowan Report at 2.)

20                              **ARGUMENT**

21   **I.    <u>Applicable Legal Standards.</u>**

22        District courts must exercise a "gatekeeping role" and only allow

23   proffered expert testimony if:  "[1] the testimony is based on sufficient facts or data; [2]

24   the testimony is the product of reliable principles and methods; and [3] the expert has

25   reliably applied the principles and methods to the facts of the case".  Fed. R. Evid. 702;

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                          4

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1   Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595 (1993); see also Many Cultures,

2   One Message v. Clements, No. 10-CV-05253, 2011 WL 5515515, at *18-19 (W.D.

3   Wash. Nov. 8, 2011) (listing factors to be considered in determining reliability) (quoting

4   Henricksen v. ConocoPhillips Co., 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009) ("The

5   trial court's gatekeeping function requires more than simply taking the expert's word for

6   it.")).  "[I]t is the proponent of the expert witness—not the objecting party—who has the

7   burden of proving admissibility" by a preponderance of the evidence.  Many Cultures,

8   2011 WL 5515515, at *15.  Those requirements must be satisfied for every step in an

9   expert's analysis.  Id. at *18; In re Silicone Gel Breast Implants Prods. Liab. Litig., 318

10   F. Supp. 2d 879, 890 (C.D. Cal. 2004) ("any step that renders [the expert's] analysis

11   unreliable . . . renders the expert's testimony inadmissible").

12          With respect to relevance, a proffered expert's testimony must be

13   excluded unless "the expert's scientific, technical, or other specialized knowledge will

14   help the trier of fact to understand the evidence or to determine a fact in issue".  Fed. R.

15   Evid. 702.  According to the Ninth Circuit, "Daubert stressed the importance of the 'fit'

16   between the testimony and an issue in the case:  'Rule 702's "helpfulness" standard

17   requires a valid scientific connection to the pertinent inquiry as a precondition to

18   admissibility.'"  Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1320 (9th Cir.

19   1995) (quoting Daubert, 509 U.S. at 591-592).

20   **II.**    **Dr. Cowan and Mr. Holt Should Be Precluded From Testifying Because They Selected a Non-Random, Biased Sample of Loans for Re-Underwriting.**

21          Where an expert purports to use the condition of a sample to draw

22   conclusions about a larger population, those conclusions can only be deemed reliable if

23   the sample is selected in a random manner.  Certified Eng'g Copier Sys., Inc. v. Nat'l

24   City Commercial Capital Co. LLC., No. 2:07-CV-293 TS, 2009 WL 1324047, at *5 (D.

25

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)        5

1  Utah May 11, 2009); see also Chavez v. IBP, Inc., No. CV-01-5093-RHW, 2004 WL

2  5520002, at *8-11 (E.D. Wash. Dec. 8, 2004) (excluding expert's extrapolated

3  conclusions where the expert "did not engage in random sampling"); Radaszewski v.

4  Maram, No. 01-C-9551, 2008 U.S. Dist. LEXIS 24923, at *29 (N.D. Ill. Mar. 26, 2008)

5  ("Non-random judgmental sampling could not be used to reliably extrapolate . . .").

6  While "[t]rained experts commonly extrapolate from existing data", the Supreme Court

7  has held that an expert should be excluded if the Court "conclude[s] that there is simply

8  too great an analytical gap between the data and the opinion proffered".  General Elec.

9  Co. v. Joiner, 522 U.S. 136, 146 (1997).  Dr. Cowan concedes that his ability to

10  extrapolate Mr. Holt's re-underwriting results for a sample of loans to the broader

11  population of loans at issue depends upon the "mechanism of randomization".  (Cowan

12  Report at 9.)

13        A mere "attempt at randomness" is not enough.  Certified Eng'g, 2009

14  WL 1324047, at *5.  The party offering the expert testimony must show that the sample

15  was "statistically random".  Id.  "It is randomness in the technical sense that provides

16  assurance of unbiased estimates from a randomized controlled experiment or a

17  probability sample. . . . Looser definitions of randomness are inadequate for statistical

18  purposes."  Kaye and Freedman, "Reference Guide on Statistics" in Federal Judicial

19  Center's Reference Manual on Scientific Evidence, 230 (3rd ed. 2011).

20        Thus, only by selecting a statistically valid random sample can Mr. Holt's

21  opinion be applied to the over 13,000 loans he did not look at.  Without reliable

22  extrapolation, Mr. Holt's opinion regarding a sample of 424 loans (out of the 13,425

23  loans total) fails Rule 702's "helpfulness" test and is not admissible for purposes of

24  determining whether WMB's underwriting guidelines "ceased to exist".  See Daubert, 43

25  F.3d at 1320.  Quite to the contrary, Mr. Holt's opinion would be highly prejudicial (and

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                    6

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    thus also violate Rule 403) because it would likely be perceived by the jury as a

2    conclusion that could be extrapolated to the broader population.

3            For reasons apparent from Dr. Cowan's and Mr. Holt's reports, the sample

4    of 424 loans reviewed by Mr. Holt was not random.  Those 424 loans were selected from

5    the total population in two steps.  At each step, the proposed experts failed to choose a

6    valid random sample.  Each failure independently renders their testimony inadmissible.

7            First, the process Dr. Cowan utilized to select the initial sample of 2,387

8    loans did not yield a statistically valid random sample.  (See Wecker Report at 4-5 &

9    Appx. A.)  It is a bedrock principle of statistical sampling that each member of the

10   population sampled must have some non-zero probability of being included in the

11   sample; otherwise, the sample is not random.  See Reference Manual on Scientific

12   Evidence, at 225.  Contrary to that basic principle, Dr. Cowan assigned a "zero"

13   probability of selection to over eleven percent of all loans underlying the securitizations

14   at issue (1,492 out of 13,425).  (See supra pp. 2-3; Wecker Report at 4-5 & Appx. A.)

15   Based on that mathematical fact, Dr. Cowan's sample was statistically invalid and Mr.

16   Holt's opinion cannot be extrapolated beyond the 424 loans he reviewed (even if his

17   conclusions about those 424 loans were reliable, which they were not).  See, e.g.,

18   Certified Eng'g, 2009 WL 1324047, at *5; Chavez, 2004 WL 5520002, at *8-11.

19           Second, even if the initial sample of 2,387 loans had been selected

20   randomly—and it was not—the subsequent non-random and biased selection process for

21   the 424 loans actually underwritten by Mr. Holt likewise requires exclusion of Mr. Holt's

22   and Dr. Cowan's testimony.  Dr. Cowan provided his sample of 2,387 loans to Mr. Holt

23   for re-underwriting.  (Cowan Report at  7.)  He played no role in selecting the subset of

24   424 loans that Mr. Holt actually reviewed.  (Holt Report at 34.)  That selection process

25   was done entirely by Mr. Holt, who does not even purport to have the necessary

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                                    7

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

statistical expertise to construct a random sample.  Nevertheless, and despite his lack of

involvement in the selection process, Dr. Cowan states that the 424 loans that Mr. Holt

did underwrite "are random subsets of the full set of loans selected".  (Cowan Report at

7.)  But neither expert explains how Mr. Holt selected the 424 loans to ensure they

constituted a "random" sample.  That failing alone violates Rule 26 and requires

exclusion of the proffered testimony.  See Fed. R. Civ. P. 26(a)(2)(B)(i) (expert report

must include "a complete statement of . . . the basis and reasons for" the expert's

opinion); see also Many Cultures, 2011 WL 5515515, at *15 (proponent of expert

testimony has burden to demonstrate admissibility).

In fact, Dr. Cowan's assertion that the 424 loans are a "random subset" is

demonstrably false.  That subset includes no loans from six of nineteen loan groups in the

securitizations at issue and 193 of Dr. Cowan's 303 loan strata.  (Wecker Report at 20.)

The probability of a randomly selected sample missing such large portions of the loan

population is virtually zero—to the point of being a mathematical absurdity.  As

Defendants' statistical expert, Dr. Wecker, explains:

> If . . . a sample of 424 (Holt's sample size) were selected at random, the
> chance that at least one of the 424 loans would fall into one of the strata
> completely missed by Holt's sample is 0.9999999999 . . . followed by 173
> more 9's—meaning that it is virtually impossible to select 424 loans at
> random from 13,425 loans and fail to select a single sample loan from one
> of the strata completely missed by Holt's sample.  (Id. at 20-21.)
> . . . .
> [T]he probability of a distribution of loans as dramatically non-
> representative as the Holt 424 arising as a random subset of Dr. Cowan's
> sample is less than 1 in $10^{140}$ . . . .  A chance of one in $10^{140}$ is
> unfathomably small and impossible to compare to anything in normal
> experience, as there are only an estimated $10^{87}$ particles in the observable
> universe.  By comparison, a chance of one in a billion is only one in $10^9$;
> one in a trillion is only one in $10^{12}$; one in $10^{140}$ is incomparably larger yet
> . . . .  (Id. at 7, 21.)

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                                        8

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    Tellingly, in addition to not being random, the 424 loans reviewed by Mr.

2  Holt constituted a severely biased sample favoring the inclusion of loans with low FICO

3  scores.  Specifically, while approximately 25 percent of the loans in Dr. Cowan's sample

4  of 2,387 came from each of his four FICO score quartiles, 42.7 percent of the loans that

5  Mr. Holt re-underwrote came from the lowest FICO score quartile.  (Wecker Report at

6  22, 32.)  That is especially significant because Mr. Holt opined that over 50 percent of the

7  loans he reviewed from that quartile (92 out of 181) were "materially defective", as

8  opposed to, for example, only 25 percent of the loans from the highest FICO score

9  quartile (26 out of 104).  (Id.)  Mr. Holt's heavier weighting towards the lowest FICO

10  score loans inflated the overall percentage of loans he deemed "materially defective".

11    For each of those independent reasons, Mr. Holt did not review a

12  statistically valid, random sample of the loan population.  Accordingly, his review of a

13  non-random sample of 424 loans provides no reliable basis for Dr. Cowan to extrapolate

14  that approximately 37 percent of the broader loan population is "materially defective".

15  See, e.g., United States v. W.R. Grace, 455 F. Supp. 2d 1181, 1189 (D. Mont. 2006) ("A

16  random sampling of the population is necessary to allow the results among participants in

17  a study to be extrapolated to predict results in a broader population."); U.S. Info. Sys.,

18  Inc. v. Int'l Bhd. of Elec. Workers Local Union No.3, AFL-CIO, 313 F. Supp. 2d 213,

19  233 (S.D.N.Y. 2004) ("the reliability of any analysis depends upon an unbiased selection

20  of sample data").

21    The facts here are analogous to those in Certified Engineering.  That case

22  involved a contractual dispute about an order for approximately 300 copy machines.  In

23  an attempt to support its contention that the copiers met or exceeded the warranted

24  condition, the seller offered the expert testimony of a technician who inspected a sample

25  of approximately twenty of the copiers at issue.  2009 WL 1324047, at *2.  The proposed

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                              9

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    expert explained that he inspected at least one copier from each room in the warehouse

2    and inspected both easily accessible and less accessible copiers.  Id.  The court permitted

3    the proposed expert to testify about the condition of the twenty copiers he had personally

4    inspected, but excluded the portion of his testimony that extrapolated the condition of the

5    copiers as a whole from the twenty in his sample.  Id. at 5.  The Court noted that while

6    the expert's methodology indicated "an attempt at randomness" his failure to inspect a

7    "scientifically random" sample rendered any extrapolation unreliable.  Id.

8            Likewise, because the 424 loans reviewed by Mr. Holt were not a

9    scientifically random sample of the total population of loans, Dr. Cowan's proposed

10   extrapolation of Mr. Holt's conclusion to the full population of loans is not "the product

11   of reliable principles and methods" and must be excluded.  Fed. R. Evid. 702; Chavez,

12   2004 WL 5520002, at *8-11.

13           Moreover, although the expert in Certified Engineering was allowed to

14   testify about the twenty copiers he examined, allowing Mr. Holt to testify even about the

15   424 loans he reviewed would be both non-probative and highly prejudicial in violation of

16   Federal Rules of Evidence 401 and 403.  In Certified Engineering, the fact finder could

17   conclude that some copiers met the warranted condition and others did not, with

18   contractual relief apportioned depending on the findings.  Here, however, the central

19   issue to be decided is whether WMB's underwriting guidelines "ceased to exist", and

20   thus an opinion regarding the quality of WMB's underwriting that is limited to only 424

21   loans—or about three percent of the total population—would be irrelevant and

22   meaningless absent the ability to extrapolate Mr. Holt's conclusions to the other 13,000

23   loans.  Indeed, as Plaintiffs have previously conceded, "Whether different aspects of

24   WaMu's uniform underwriting standards were applied to specific loans is immaterial

25   because the underwriting standards that are being challenged were, according to the

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                           10

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1   Offering Documents, uniformly applied across all loans in each pool". (Pls. 12(c) Opp. at

2   2 n.6.) There can be no legitimate dispute that Mr. Holt's purported 178 "materially

3   defective" loans—i.e., less than 1.5 percent of the total population—cannot constitute

4   evidence of an "absence of underwriting standards" at WMB. In re Wamu, 748 F. Supp.

5   2d at 1255. And, here, unlike in Certified Engineering, there is demonstrable bias in the

6   sample, which renders unreliable Mr. Holt's opinion even as to the 424 loans he

7   reviewed. (See supra 8-9.)

8          Mr. Holt's opinion about the 424 loans would also be misleading and

9   highly prejudicial to Defendants because the jury would naturally conclude that Mr.

10  Holt's conclusion that 37.1 percent of those loans were "materially defective" could be

11  applied to the population at large—for if it did not, what would be the point of his

12  testimony in a case about an alleged systematic abandonment of underwriting "across all

13  loans in each pool"? (Pls. 12(c) Opp. at 2 n.6; see Fed. R. Evid. 403; Ram v. N.M. Dep't

14  of Evn't, No. 05-cv-1083 JB (WPL), 2006 U.S. Dist LEXIS 95369, at *53 (D.N.M. Dec.

15  15, 2006) ("because of the small size of the data sample at play in this case . . . the

16  evidence poses a significant risk of confusing the issues or misleading the jury");

17  Recreational Devs. of Phoenix, Inc. v. City of Phoenix, 220 F. Supp. 2d 1054, 1061 (D.

18  Ariz. 2002) (excluding statistical evidence where "the probative value of such evidence is

19  far outweighed by its potential to mislead and confuse the factfinder").)

20  **III.    Mr. Holt Should Be Precluded From Offering the Opinion That Certain
21         Loans He Reviewed Were "Materially Defective" Because He Did Not
        Properly Apply WMB's Underwriting Guidelines.**

22          Mr. Holt's testimony also should be excluded for the independent reason

23  that it is unreliable and not relevant to any issue in this case because he did not actually

24  apply WMB's underwriting guidelines. Mr. Holt claims that he sought to determine

25  whether the loans in his sample "deviated from the requirements of WMB's

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                            11

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    [underwriting guidelines]".  (Holt Report at 2.)  However, in reaching his opinion as to

2    whether the loans he reviewed were "materially defective", what Mr. Holt actually did

3    was create rules that are inconsistent with or directly contradict the applicable WMB

4    guidelines.

5            <u>First</u>, Mr. Holt states that "[u]nder the WMB guidelines" all loans with the

6    potential for negative amortization—<u>i.e.</u>, loans such as Option-ARMs where the borrower

7    had the option to pay less than the interest owed each month, with the unpaid interest

8    then added to the principal amount owing—required:  (i) an upward adjustment of one

9    percent of the qualifying interest rate used to calculate the Debt-to-Income ("DTI") ratio

10   and (ii) an upward adjustment of the mortgage loan amount used in the DTI and Loan-to-

11   Value ("LTV") ratio calculations to at least 110 percent of the actual loan amount, due to

12   the potential for the principal to increase over time.  (<u>See</u> Holt Report at 18; Ostendorf

13   Report ¶ 130.)  But Mr. Holt does not cite any particular provision of the WMB

14   guidelines in support of that "rule" and, in fact, the guidelines contain no such

15   requirement—even among the detailed provisions they do contain regarding how to

16   calculate DTI and LTV.  (<u>See, e.g.</u>, 8/17/06 CUG at 1-23, 1-32, 6-11 to 6-15; Ostendorf

17   Report ¶ 130.)  As a result, Mr. Holt's calculation of the DTI and LTV ratios for purposes

18   of evaluating every loan in his sample that had the potential for negative amortization

19   (172 out of the 424 loans) was wrong.  (Ostendorf Report ¶¶ 130-32.)  Furthermore,

20   imposition of that arbitrary "rule" had profound consequences throughout Mr. Holt's

21   analysis in that it affected not only the DTI and LTV ratios, but also other metrics that are

22   derivative of the same calculations.  (<u>Id.</u> ¶ 131.)

23           Given that his methodology miscalculated numerous metrics for loans

24   with the potential for negative amortization, it is not surprising that such loans make up

25   61 percent of all the loans that Mr. Holt opined were "materially defective" (109 out of

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                          12

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    178) even though they only comprised 41 percent of his sample.  (Id. ¶¶ 131-32.)  But

2    those loans were only "defective" in the sense that they did not comply with a rule that

3    Mr. Holt invented, not a requirement of the WMB guidelines.

4           Second, Mr. Holt systematically and improperly reduced the value of

5    retirement account assets used to determine if borrowers held the required liquid reserves.

6    (Id. ¶¶ 166-67.)  Mr. Holt applied a 30 percent reduction to borrowers' retirement account

7    assets, despite the fact that WMB's guidelines specifically mandated only a 20 percent

8    reduction.  (See, e.g., 8/17/06 CUG at 5-24 ("[a] deduction of 20% from the vested

9    balance must be taken into account for penalties and taxes, if applicable").)  That

10   methodological error affected Mr. Holt's analysis of every loan in which the borrower's

11   reserves consisted at least in part of retirement assets, such as 401(k) accounts (at least 39

12   out of 178 "materially defective" loans, according to Mr. Holt's data).  (Ostendorf Report

13   ¶ 166; Holt Survey Data at Sheet 2, Column IJ.)

14          Third, Mr. Holt consistently committed a methodological error in

15   evaluating the reasonableness of "stated income" in the loan files.  "Stated income" refers

16   to certain reduced documentation loan programs in which—as disclosed in the Offering

17   Documents—the income stated by the borrower on the loan application was not required

18   to be documented.  Mr. Holt describes his approach as follows:

19         The Guidelines in force in 2004 to 2006 required underwriters to check

20         incomes for reasonableness, but provided no practical guidance on how to
           do so.  I therefore developed an approach to reviewing the reasonableness

21         of stated income based on my experience as an underwriter and on
           industry norms for determining whether an income was reasonable.

22   (Holt Report at 19.)  To solve that purported problem, in every instance Mr. Holt relied

23   on average salary statistics from the Bureau of Labor Statistics of the U.S. Department of

24   Labor ("BLS") to review the reasonableness of stated income loans:  "When my team and

25   I reviewed stated income loans, I selected the closest possible BLS-listed occupation to

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                                      13

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    the occupation listed by the borrower on the application, and looked for income ranges in

2    the borrower's location where possible."  (Holt Report at 20.)

3              That approach contradicts WMB's guidelines, which instructed

4    underwriters to evaluate the stated income "for reasonableness based on the borrower's

5    credit profile".  (8/17/06 CUG at 1-14 (emphasis added).)  According to the guidelines,

6    the "initial loan application, which may not be altered, is the primary source of

7    information used to evaluate the borrower's income, profession, and tenure in

8    conjunction with assets, liabilities, and net worth.  This information is used to evaluate

9    the reasonableness of the stated income and the borrower's financial capacity."  (Id. at 1-

10   13 (emphasis added).)  "If there is information in the file that appears to refute or

11   contradict the level of income stated by the borrower, the Credit Approver should require

12   additional documentation."  (Id. at 4-3 (emphasis added).)  Thus, WMB underwriters

13   were supposed to determine reasonableness of stated income by considering other factors

14   within the loan application, such as borrower's assets and credit history, to determine

15   whether they were consistent with the stated income, and if those factors were consistent,

16   the inquiry was at an end.  By substituting reliance on the BLS statistics for the judgment

17   of the underwriters based upon the contents of the loan file, contrary to the WMB

18   guidelines, Mr. Holt's opinion does not even speak to the relevant question of whether

19   WMB's guidelines "ceased to exist".

20             Fourth, in many instances, Mr. Holt simply applied the wrong guidelines.

21   WMB utilized multiple sets of guidelines with different requirements, including

22   specialized manuals for particular channels—Wholesale, Retail or Premier Broker—and

23   updated its guidelines multiple times per year.  (Ostendorf Report ¶ 172.)  On at least 23

24   loans, Mr. Holt applied the guidelines for the wrong channel or the wrong date or both.

25   (Id.)

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                                14

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1          <u>Finally</u>, Mr. Holt imposed artificial and overly restrictive limitations on

2    the use of "compensating factors"—<u>i.e.</u>, factors that, under the WMB guidelines, had to

3    be considered in conjunction with the loan file as a whole to determine whether a

4    borrower's application substantially complied with the underwriting guidelines, even if

5    certain individual criteria were not satisfied.  In considering compensating factors, Mr.

6    Holt relied on what he called "rules of thumb" that he did not even purport to draw from

7    WMB's guidelines.  While there is nothing categorically improper about using "rules of

8    thumb" in analyzing inherently subjective and discretionary issues such as compensating

9    factors in mortgage applications, the rules employed by Mr. Holt expressly contradicted

10   the dictates of the WMB guidelines.  Most notable are the following:

- "[I]n general, in my experience, a borrower must have verified reserves of a minimum of six to twelve months to constitute a compensating factor, and depending on the other facts of the loan a much higher level of reserves may be required"; and

- "[A]s a general rule of thumb, a borrower must have a FICO of at least 700 for it to constitute a compensating factor, and depending on the other aspects of the loan a much higher FICO may be required".

16   (Holt Report at 31-32.)

17          With respect to verified reserves, the WMB underwriting guidelines stated

18   that any amount "in excess of product guidelines" (which were often as low as two

19   months' worth of a borrower's mortgage payment (<u>see, e.g.</u>, 8/17/06 CUG at 5-5)) could

20   serve as a compensating factor (<u>see, e.g.</u>, <u>id.</u> at 1-57).  But Mr. Holt's report states that

21   "six to twelve months"—or even "a much higher level"—of reserves were required.

22   (Holt Report at 32.)  And even beyond the disclosure in his report, Mr. Holt's survey only

23   permitted his team to deem it a compensating factor if the borrower had "12 or more

24   months" of verified reserves.  (Holt Survey at Question 11.)

25

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                    15

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1          Likewise, the WMB underwriting guidelines state that any FICO score

2  "significantly higher than the program minimum" may be deemed a compensating factor.

3  (See, e.g., 8/17/06 CUG at 1-57.)  But Mr. Holt instead required a fixed score of 700 or

4  higher, failing to account for variations in the minimum FICO score requirements for

5  different loan programs, which were often as low as 620.  (See, e.g., 8/17/06 PPG at 3-13;

6  Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1315 (Fed. Cir. 2011) (reversing the

7  district court's failure to exclude expert testimony where a proffered expert relied on a

8  "rule of thumb" for calculating patent infringement damages, but "fail[ed] to tie the

9  theory to the facts of the case").)

10          Because Mr. Holt purported to base his opinion on WMB's underwriting

11  guidelines, but for all of the above reasons did not faithfully apply those guidelines, his

12  opinion was not "the product of reliable principles and methods" and should be excluded.

13  Fed. R. Evid. 702; Metabyte, Inc. v. Canal+ Techs., S.A., No. C-02-05509 RMW, 2005

14  WL 6032845, at *5 (N.D. Cal. June 17, 2005) (excluding expert testimony based in part

15  on failure to adhere to contractually prescribed valuation methodology); In re Live

16  Concert Antitrust Litig., No. 06-ML-1745-SVW (VBK), 2012 WL 1021081, at *18-20

17  (C.D. Cal. March 23, 2012) (excluding expert testimony that failed to adhere to the

18  applicable methodology for defining relevant product markets that the expert claimed to

19  have used).

20          In addition to not being reliable, Mr. Holt's opinion is irrelevant because

21  the central issue in this securities case is whether the Offering Documents contained false

22  or misleading statements regarding whether the loans underlying the securitizations

23  generally were underwritten in accordance with WMB's underwriting guidelines.  If

24  Mr. Holt did not apply the WMB guidelines—and, for the reasons explained above, he

25  did not—his proffered expert opinion is nothing more than his subjective judgment about

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)         16

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1   whether the loans he reviewed should have been made pursuant to a set of standards that

2   he considers to have been appropriate.  (See Holt Report at 4.)   But this case is not about

3   whether Mr. Holt would have made the loans at issue, or about what he believes WMB's

4   underwriting guidelines should have been; rather, it is about whether WMB

5   systematically abandoned the underwriting guidelines it in fact had in place at the time.

6   Mr. Holt's testimony thus has no relevance—or "fit"—to any issue in this case and would

7   not be helpful to the jury.  As the Supreme Court put it in Daubert, "Expert testimony

8   which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  509

9   U.S. at 591.

10          Indeed, because of the qualitative and subjective nature of loan

11  underwriting, even a single significant deviation from WMB's guidelines—let alone the

12  numerous ways in which Mr. Holt applied rules that are inconsistent with those

13  guidelines—makes it impossible to determine how many of Mr. Holt's conclusions

14  regarding particular loans would have been different had he properly applied WMB's

15  guidelines, as he purported to do and as the standard articulated by the Court requires.

16  There is no way to disentangle that portion of Mr. Holt's analysis that contradicts the

17  WMB guidelines; his opinion must be excluded as a whole.

18          The Metabyte case is analogous.  The issue there was the appropriate

19  valuation of a tranche of common stock subject to a put option.  2005 WL 6032845, at

20  *1.  The put option required that any valuation of the common shares be performed in

21  accordance with seven specific valuation practices and assumptions.  Id.  Although the

22  party offering the testimony argued that "in his valuation, [the expert] considered, and

23  utilized where appropriate, seven criteria prescribed in the Put Option", the court found

24  that the expert did not follow those requirements, explaining that, "although [the expert]

25  recites the Put Option's criteria on page twelve of his expert report, he never mentions

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                    17

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1   them again". Id. at 5.  Based in part on his failure to apply the relevant valuation

2   guidelines, the court excluded the expert's testimony.  Id.

3           As in Metabyte, Mr. Holt claims to have utilized the applicable WMB

4   underwriting guidelines, when, in fact, his analysis deviated from those guidelines and

5   contradicted them in numerous significant ways.  As a result, Mr. Holt's conclusions

6   amount to nothing more than an opinion whether he would have made the loans in

7   question according to his own standards, not the standards prescribed in the applicable

8   WMB underwriting guidelines relevant to the determination of liability in this action.

9   Mr. Holt's proffered testimony therefore does not "fit" any issue to be determined in this

10  case and should be excluded as irrelevant.  See Daubert, 43 F.3d at 1320 ("Rule 702's

11  'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a

12  precondition to admissibility.").

### CONCLUSION

14          For the foregoing independent reasons, and on the basis of the authorities

15  cited, Defendants respectfully request that the Court exclude the proffered expert

16  testimony of Dr. Charles Cowan and Mr. Ira Holt.

18  Dated this the 25th day of April, 2012.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
By: /s/ Louis D. Peterson
Louis D. Peterson, WSBA #5776
Brian C. Free, WSBA #35788
1221 Second Avenue, Suite 500
Seattle, WA 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789
Email: ldp@hcmp.com
        bcf@hcmp.com

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                    18

1

**BINGHAM MCCUTCHEN LLP**
**By:** */s/ John D. Pernick*
David M. Balabanian (admitted *pro hac vice*)

2

John D. Pernick (admitted *pro hac vice*)
Frank Busch (admitted *pro hac vice*)

3

Three Embarcadero Center

4

San Francisco, CA 94111-4067
Telephone: (415) 393-2000

5

Facsimile: (415) 393-2286
Email:  david.balabanian@bingham.com

6

john.pernick@bingham.com
frank.busch@bingham.com

7

*Attorneys for Defendants Washington Mutual*

8

*Asset Acceptance Corporation, Washington Mutual Capital Corporation, David Beck,*

9

*Richard Careaga, Rolland Jurgens, and Diane Novak*

10

11

**CRAVATH, SWAINE & MOORE LLP**
**By:** */s/ Michael A. Paskin*

12

Evan R. Chesler (admitted *pro hac vice*)
Daniel Slifkin (admitted *pro hac vice*)

13

Michael A. Paskin (admitted *pro hac vice*)
Wes Earnhardt (admitted *pro hac vice*)

14

Cravath, Swaine & Moore LLP
Worldwide Plaza

15

825 8th Avenue
New York, NY 10019

16

Tel: (212) 474-1000
Fax: (212) 474-3700

17

Email:  echesler@cravath.com;
dslifkin@cravath.com;

18

mpaskin@cravath.com;
wearnhardt@cravath.com

19

*Attorneys for Defendants Washington Mutual*

20

*Asset Acceptance Corporation and Washington Mutual Capital Corporation*

21

22

23

24

25

Defendants' Motion to Exclude the Proffered Expert
Testimony of Charles D. Cowan and Ira Holt
(CV09-037 MJP)                    19

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Adam Zurofsky azurofsky@cahill.com

Barry Robert Ostrager bostrager@stblaw.com, managingclerk@stblaw.com

Bradley T. Meissner bradley.meissner@dlapiper.com

Brian O. O'Mara bo'mara@rgrdlaw.com, e_file_sd@rgrdlaw.com

Christopher E. Lometti clometti@cohenmilstein.com

Daniel B. Rehns drehns@cohenmilstein.com, efilings@cohenmilstein.com

Darren J. Robbins e_file_sd@csgrr.com

David Daniel Hoff dhoff@tousley.com, efile@tousley.com

Douglas C. McDermott doug@mcdermottnewman.com, eric@mcdermottnewman.com

Floyd Abrams fabrams@cahill.com

Gavin Williams Skok gskok@riddellwilliams.com, jsherred@riddellwilliams.com,
        lmoore@riddellwilliams.com

Geoffrey M. Johnson gjohnson@scott-scott.com, efile@scott-scott.com

Hal D. Cunningham hcunningham@scott-scott.com, efile@scott-scott.com,
        halcunningham@gmail.com

Hollis Lee Salzman (Terminated) hsalzman@labaton.com,
        ElectronicCaseFiling@labaton.com

James J. Coster jcoster@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

Janissa Ann Strabuk jstrabuk@tousley.com, lrolling@tousley.com,
        wcruz@tousley.com

Jason T. Jasnoch jjasnoch@scott-scott.com, efile@scott-scott.com

Certificate of Service
 (CV09-037 MJP)

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    Joel P. Laitman jlaitman@cohenmilstein.com

2    John D. Lowery jlowery@riddellwilliams.com, dhammonds@riddellwilliams.com

3    Jonathan Gardner jgardner@labaton.com

4    Joseph P. Guglielmo jguglielmo@scott-scott.com, efile@scott-scott.com

5    Joseph A. Fonti (Terminated) jfonti@labaton.com, ElectronicCaseFiling@labaton.com

6    Joshua M. Rubins jrubins@ssbb.com, jregan@ssbb.com, managingclerk@ssbb.com

7    Joshua S. Devore jdevore@cohenmilstein.com, efilings@cohenmilstein.com

8    Julie Goldsmith Reiser jreiser@cohenmilstein.com

9    Julie Hwang (Terminated) jhwang@labaton.com, ElectronicCaseFiling@labaton.com

10   Kenneth J. Pfaehler kenneth.pfaehler@snrdenton.com, nicole.reeber@snrdenton.com

11   Kenneth M. Rehns krehns@cohenmilstein.com

12   Kerry F. Cunningham kerry.cunningham@dlapiper.com

13   Kevin P. Chavous kchavous@sonnenschein.com

14   Kim D. Stephens kstephens@tousley.com, cbonifaci@tousley.com,

15          lrolling@tousley.com, wcruz@tousley.com

16   Larry Steven Gangnes gangnesl@lanepowell.com, docketingsea@lanepowell.com,

17          donnellyjossm@lanepowell.com, sebringl@lanepowell.com

18   Leslie D. Davis ldavis@sonnenschein.com

19   Mary Kay Vyskocil mvyskocil@stblaw.com

20   Michael H. Barr mbarr@sonnenschein.com

21   Nancy A. Pacharzina (Terminated) npacharzina@tousley.com, mhottman@tousley.com

22   Paul Scarlato pscarlato@labaton.com, ElectronicCaseFiling@labaton.com

23   Paul Joseph Kundtz pkundtz@riddellwilliams.com, mbergquam@riddellwilliams.com,

24          mdowns@riddellwilliams.com

25   Richard A. Speirs rspeirs@cohenmilstein.com

Certificate of Service
 (CV09-037 MJP)

1 Richard F. Hans richard.hans@dlapiper.com, dorinda.castro@dlapiper.com

2 Robert D. Stewart stewart@kiplinglawgroup.com

3 Rogelio Omar Riojas omar.riojas@dlapiper.com, karen.hansen@dlapiper.com,

4      nina.marie@dlapiper.com

5 S. Douglas Bunch dbunch@cohenmilstein.com

6 Serena Richardson (Terminated) srichardson@labaton.com,

7      ElectronicCaseFiling@labaton.com

8 Stellman Keehnel stellman.keehnel@dlapiper.com, patsy.howson@dlapiper.com

9 Stephen M. Rummage steverummage@dwt.com, jeannecadley@dwt.com,

10      seadocket@dwt.com

11 Steve W. Berman steve@hbsslaw.com, heatherw@hbsslaw.com, robert@hbsslaw.com

12 Steven J. Toll stoll@cohenmilstein.com, efilings@cohenmilstein.com

13 Steven P. Caplow stevencaplow@dwt.com, jasonSchattenkerk@dwt.com,

14      patrickwatts@dwt.com, seadocket@dwt.com, sheilarowden@dwt.com

15 Steven W. Fogg sfogg@corrcronin.com, hpowell@corrcronin.com,

16      reception@corrcronin.com

17 Tammy Roy troy@cahill.com

18 Timothy Michael Moran moran@kiplinglawgroup.com, cannon@kiplinglawgroup.com

19 Walter W. Noss wnoss@scott-scott.com, efile@scott-scott.com

20      DATED this 25th day of April 2012 at Seattle, Washington.

21                        By:  /s/ Louis D. Peterson

22                        Louis D. Peterson, WSBA #5776
                        1221 Second Avenue, Suite 500

23                        Seattle, WA 98101-2925
                       Telephone: (206) 623-1745

24                        Facsimile: (206) 623-7789
                       Email: ldp@hcmp.com

25

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789