# EXHIBIT 2

Case 2:09-cv-00037-MJP   Document 484-2   Filed 07/20/12   Page 1 of 5

CONFIDENTIAL
ADAM J. LEVITIN - 6/28/2012

Page 1

1        ADAM J. LEVITIN
2  UNITED STATES DISTRICT COURT
3  WESTERN DISTRICT OF WASHINGTON
4  AT SEATTLE
5
   ------------------------------------------------x
6  IN RE:  WASHINGTON MUTUAL MORTGAGE BACKED
   SECURITIES LITIGATION
7
   Master Case No. C09-0037
8
   ------------------------------------------------x
9
              CONFIDENTIAL
10
              June 28, 2012
11
              9:35 a.m.
12
13       Videotaped deposition of ADAM J.
   LEVITIN, at the offices of Scott + Scott, 500
14 Fifth Avenue, New York, New York, before Nancy
   Mahoney, a Certified Court Reporter, Registered
15 Professional Reporter, Certified LiveNote
   Reporter, and Notary Public within and for the
16 States of New York and New Jersey.
17
18
19
20
21
22
23
24
25

Merrill Corporation - New York
1-800-325-3376                    www.merrillcorp.com/law

CONFIDENTIAL
ADAM J. LEVITIN - 6/28/2012

### Page 2

```
 1            ADAM J. LEVITIN
 2   APPEARANCES:
 3      SCOTT + SCOTT LLP
        Attorneys for Plaintiffs
 4         500 Fifth Avenue
           New York, New York 10110
 5
        BY: BETH KASWAN, ESQ.
 6          bkaswan@scott-scott.com
 7      CRAVATH SWAINE & MOORE LLP
        Attorneys for Defendants
 8         WaMu entities
           825 Eighth Avenue
 9         Worldwide Plaza
           New York, New York 10019
10
        BY: EVAN R. CHESLER, ESQ.
11          echesler@cravath.com
            BRENDON DeMAY, ESQ.
12          bdemay@cravath.com
13
14
15   ALSO PRESENT:
16      William Pace, Videographer
        Merrill Legal Solutions
17
18
19
20
21
22
23
24
25
```

### Page 3

```
 1            ADAM J. LEVITIN
 2            THE VIDEOGRAPHER:  This is the
 3   video operator speaking, William Pace for
 4   Merrill Legal Solutions, 225 Varick Street, New
 5   York, New York.
 6            Today is June 28th, 2012, and the
 7   time is 9:38 a.m.  We're at the offices of
 8   Scott + Scott, 500 Fifth Avenue, New York, New
 9   York, to take the videotaped deposition of Adam
10   J. Levitin in the matter of In Re:  Washington
11   Mutual Mortgage-Backed Securities Litigation in
12   the United States District Court, Western
13   District of Washington at Seattle, Master Case
14   No. C09-0037.
15            Will counsel please introduce
16   yourselves and state whom you represent.
17            MR. CHESLER:  Evan Chesler for the
18   defendant.
19            MR. DE MAY:  Brendan DeMay for the
20   defendant.
21            MS. KASWAN:  Beth Kaswan with
22   Scott + Scott for the plaintiffs.
23            THE VIDEOGRAPHER:  The court
24   reporter today is Nancy Mahoney for Merrill
25   Legal Solutions.
```

### Page 4

```
 1            ADAM J. LEVITIN
 2            And you may swear in the witness.
 3            THE WITNESS:  I do so affirm.
 4            ADAM J. LEVITIN,
 5   having been first duly sworn by the Notary
 6   Public (Nancy Mahoney), affirmed, was examined
 7   and testified as follows:
 8            EXAMINATION BY MR. CHESLER:
 9      Q.    Good morning.
10      A.    Good morning.
11      Q.    So I'm going to be asking you some
12   questions today.  You understand you're here as
13   a retained expert for the plaintiffs in this
14   litigation?
15      A.    I do.
16      Q.    Okay.  You've submitted a report to
17   the court in connection with this case?
18      A.    I have.
19            MR. CHESLER:  I'm going to ask the
20   court reporter to mark that as the first
21   exhibit.
22            (Deposition Exhibit 937 marked for
23   identification, Expert Report of Professor Adam
24   J. Levitin.)
25            BY MR. CHESLER:
```

### Page 5

```
 1            ADAM J. LEVITIN
 2      Q.    Mr. Levitin, can you identify
 3   Exhibit 937 for us?
 4      A.    It appears to be the report I
 5   submitted in this case, including the various
 6   appendices.
 7      Q.    Is there anything in it you want to
 8   change?
 9      A.    No.
10      Q.    You stand by everything in it?
11      A.    I do.
12      Q.    Who wrote it?
13      A.    I did.
14      Q.    Did you write it all yourself?
15      A.    Of course.
16      Q.    A yes or no would be sufficient.
17            Did you get any comments from
18   anybody?
19      A.    No.
20      Q.    Over what period of time did you
21   write the report?
22      A.    I was -- I'm not sure I can give
23   you the precise dates, but this was done within
24   a fairly limited time window.  The report was
25   submitted on March 12th, and I believe I was
```

CONFIDENTIAL
ADAM J. LEVITIN - 6/28/2012

Page 6

1      ADAM J. LEVITIN
2  engaged -- I'm sorry -- March 29th, it was
3  submitted. I believe I was engaged either at
4  the end of February, the beginning of March. So
5  somewhere roughly within the course of a month.
6      Q.   For what purpose were you retained
7  by the plaintiffs in this case?
8      A.   I was retained to provide expert
9  opinion on the sec -- on the role of private
10 label securitization and the
11 originate-to-distribute model in the financial
12 crisis.
13     Q.   And it's your understanding that
14 that issue is relevant to the matters to be
15 decided in this case by the court?
16     A.   It's my understanding that it --
17 that it is relevant for two reasons: Originally
18 my -- my report was focused on the expert report
19 submitted by Mr. Eisenbeis which dealt with --
20 where he addressed questions of what caused the
21 financial crisis and this, I think, all goes to
22 the question of loss causation. And as things
23 developed, it became clear that Mr. James'
24 report and also his deposition testimony on the
25 negative loss -- his negative loss causation

Page 7

1      ADAM J. LEVITIN
2  opinion was also connected with what I was
3  test -- with what I opined about, specifically
4  two things.
5          Mr. James and his negative loss
6  causation opinion argues that Washington
7  Mutual -- that the credit performance in
8  Washington Mutual loans was substantially
9  similar to that of a control -- of an industry
10 control group, and from this he concludes --
11 wrongly, I would say -- that Washington Mutual
12 -- that Washington Mutual's alleged deviation or
13 degradation of its underwriting guidelines did
14 not affect the -- did not cause the losses
15 suffered by the plaintiffs.
16         I think this is wrong for two
17 reasons -- well, they essentially are the same,
18 which is that he has an improper control group,
19 and his control group is wrong because there's
20 an endogeneity problem which he does not seem to
21 be aware of. And that -- and there is also --
22 and I'll elaborate on that in a second.
23         And there is also a problem that
24 the -- that degradation of underwriting
25 guidelines was endemic throughout the industry.

Page 8

1      ADAM J. LEVITIN
2  So it's not at all surprising that Washington
3  Mutual's loans performed similarly to the rest
4  of the industry. They're all poorly
5  underwritten essentially. And that -- that's in
6  no way exculpatory of Washington Mutual.
7          So to elaborate on the endogeneity
8  problem. Washington Mutual's underwriting
9  guidelines -- and you can see this specifically
10 in, I believe it's the minutes of Washington
11 Mutual credit committee meeting -- they
12 specifically reference Countrywide's
13 underwriting guidelines, and they say we will
14 match -- I'm paraphrasing here -- but we will
15 match or beat Countrywide's terms.
16         And Countrywide had the same --
17 pretty much the same policy. You can see that
18 on Page 232 of the senate report.
19         THE WITNESS: Am I speaking too
20 fast? Slow down? Happy to slow down.
21     A.   So there's an endogeneity
22 problem that he's compare -- he's comparing two
23 things that are linked, and that's an improper
24 control. That's issue one.
25         Issue two of how my report relates

Page 9

1      ADAM J. LEVITIN
2  to the James report is that Mr. James is opining
3  that -- in his negative loss causation opinion
4  that plaintiffs' losses were caused by -- were
5  caused by the financial crisis, the housing
6  crisis, and not by Washington Mutual's deviation
7  from or disregard of its underwriting
8  guidelines.
9          And my opinions are relevant to
10 this in the following way -- and, actually, let
11 me start by making clear what I'm not opining,
12 because it would be -- it would be a shame if
13 my -- it would be a shame if -- if my former
14 colleagues at Cravath, Swaine & Moore in, you
15 know, advocational zeal were to misconstrue what
16 my testimony is.
17         What I'm not opining -- I want to
18 be very clear on this -- -- is that I'm not
19 opining that housing crisis caused losses,
20 Washington Mutual causes housing crisis -- I'm
21 not making a simple syllogism like that -- and,
22 therefore, Washington Mutual causes the losses.
23         Instead I'm -- I think I'm saying
24 something a little more complex, and that is
25 that to the extent the housing crisis affected

CONFIDENTIAL
ADAM J. LEVITIN - 6/28/2012

Page 170

1   ADAM J. LEVITIN
2   reviewing some of the documents that were
3   produced in discovery.
4       Q.   Did you review the disclosures that
5   were made?
6       A.   In one of the prospectus statements
7   and also in the Summary Judgment Motion.
8       Q.   And you didn't look at the -- any
9   of the documentation with respect to five of the
10  six deals and looked at the pro supp with
11  respect to one, correct?
12      A.   That's correct.
13          MS. KASWAN: Objection.
14      A.   However, it's my understanding that
15  at least four of the five were from the same
16  shelf and it would be quite unusual for there to
17  be significantly different disclosures within
18  that shelf, but I have not looked at them, so I
19  cannot say with certainty.
20      Q.   And you haven't read the
21  disclosures that were made in any of the
22  offering statements that you didn't look at
23  obviously, right?
24      A.   No, but I have read the -- the
25  selections that defendants' counsel thought were

Page 171

1   ADAM J. LEVITIN
2   relevant to cite to the court in a Summary
3   Judgment Motion.
4       Q.   That's it?
5       A.   That's correct.
6           MR. CHESLER: Okay. I have no
7   further questions.
8           THE VIDEOGRAPHER: This concludes
9   videotaped deposition at 2:48 and marks the end
10  of tape number two.
11
12          (Time noted: 2:48 p.m.)
13
14  _____
15          ADAM J. LEVITIN
16  Subscribed and sworn to before me
17  this _____ day of _____, 2012.
18
19  _____

Page 172

1   STATE OF NEW YORK  )
                       ss:
2   COUNTY OF NEW YORK )
        I wish to make the following changes, for the
3   following reasons:
4   PAGE LINE ___ ___
        CHANGE FROM _____
5       CHANGE TO   _____
        REASON      _____
6
7       CHANGE FROM _____
8       CHANGE TO   _____
        REASON      _____
9
10      CHANGE FROM _____
        CHANGE TO   _____
11      REASON      _____
12
        CHANGE FROM _____
13      CHANGE TO   _____
        REASON      _____
14
15      CHANGE FROM _____
        CHANGE TO   _____
16      REASON      _____
17
        CHANGE FROM _____
18      CHANGE TO   _____
        REASON      _____
19
20      CHANGE FROM _____
        CHANGE TO   _____
21      REASON      _____
22
        _____
23      ADAM J. LEVITIN
    Subscribed and sworn to before me
24  this ____ day of _____ 2012
25

Page 173

1           C E R T I F I C A T E
2   STATE OF NEW YORK  )
3                      : ss.
4   COUNTY OF NEW YORK )
5
6       I, NANCY MAHONEY, a Certified Court
7   Reporter, Registered Professional Reporter,
8   Certified LiveNote Reporter, and Notary Public
9   within and for the States of New York and New
10  Jersey, do hereby certify:
11          That ADAM J. LEVITIN, the witness
12  whose deposition is hereinbefore set forth, was
13  duly sworn by me and that such deposition is a
14  true record of the testimony given by the
15  witness.
16          I further certify that I am not
17  related to any of the parties to this action by
18  blood or marriage, and that I am in no way
19  interested in the outcome of this matter.
20          IN WITNESS WHEREOF, I have hereunto
21  set my hand this 29th day of June 2012.
22  _____
23      NANCY MAHONEY, CCR/RPR
24
25