THE HONORABLE MARSHA J. PECHMAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: WASHINGTON MUTUAL MORTGAGE BACKED SECURITIES LITIGATION<br><br>This Document Relates to: ALL CASES | Master Case No.: C09-0037 (MJP)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE PROFFERED EXPERT TESTIMONY OF SCOTT D. HAKALA**<br><br>**Note on Motion Calendar: August 3, 2012**<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    A.  Legal Standard ......................................................................................................... 3

    B.  The Hierarchy Used by Hakala Is Supported by Numerous Sources ................................ 4

    C.  Section 11(e) Requires a Consideration of Market Prices in Determining Value ............. 6

    D.  Defendants' Argument Surrounding Market Efficiency Is Misplaced .............................. 7

    E.  Hakala's Opinions Are Not Inconsistent or Arbitrary ....................................................... 8

    F.  Defendants' Argument Surrounding DCF Is Disingenuous ............................................. 9

CONCLUSION ................................................................................................................... 11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

i

1
2

# TABLE OF AUTHORITIES

**Page(s)**

3

CASES

4
5

*Akerman v. Oryx Commc'ns, Inc.*,
   810 F.2d 336 (2nd Cir. 1987).............................................................................7

6

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ......................................................................7

7
8

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).........................................................................................3

9
10

*In re the Bear Stearns Cos., Inc. Secs., Deriv., and ERISA Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011)................................................................5

11

*In re Franciscan Vineyards, Inc.*,
   597 F.2d 181 (9th Cir. 1979) .............................................................................9

12
13

*In re Sambo's Restaurants, Inc.*,
   754 F.2d 811 (9th Cir. 1984) .............................................................................8

14
15

*Jinro Am. Inc. v. Secure Inv., Inc.*,
   266 F.3d 993 (9th Cir. 2001) .............................................................................3

16

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).........................................................................................3

17
18

*Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ...............................................................................3

19
20

*Matter of Pizza of Hawaii, Inc.*,
   761 F.2d 1374 (9th Cir. 1985) ...........................................................................8

21

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
   65 F.3d 1044 (2d Cir. 1995)...............................................................................6

22
23

*Miller v. Thane Int'l, Inc.*,
   615 F.3d 1095 (9th Cir. 2010) ...........................................................................7

24
25

*Stilwell v. Smith & Nephew, Inc.*,
   482 F.3d 1187 (9th Cir. 2007) ...........................................................................3

26

*Sun Basin Lumber Co. v. U.S.*,
   432 F.2d 48 (9th Cir. 1970) ...............................................................................8

27
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

**SCOTT+SCOTT LLP**
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

ii

*U.S. v. Finch*,
630 F.3d 1057 (8th Cir. 2011) ...............................................................3

*U.S. v. Prime*,
363 F.3d 1028 (9th Cir. 2004) ...............................................................4

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k........................................................................................ *passim*

Federal Rules of Evidence
Rule 702 ...........................................................................3, 4, 6

**OTHER AUTHORITIES**

31A AM. JUR. 2D EXPERT AND OPINION EVIDENCE
§23..........................................................................................3

*American Bankruptcy Institute Law Review*
Spring 2012 ............................................................................6

*Statement of Financial Accounting Standards No. 157: Fair Value Measurements*,
September 2006 .....................................................................4, 5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

iii

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs hereby respond to and oppose Defendants' Motion to Exclude the Proffered Expert Testimony of Scott D. Hakala dated July 2, 2012 ("Defendants' Brief") (ECF No. 465). Dr. Hakala produced analyses and developed values of the Certificates as of the date that the initial complaint was filed for purposes of Section 11(e) in this case using prices and quotes for comparable arm's-length sales.  This is the methodology for determining "value" as of the Section 11(e) measurement date that is preferred by the courts and the relevant accounting and appraisal authorities.

Defendants' contention that actual arm's-length prices should be rejected in favor of a discounted cash flow method ("DCF") where there is less than full market "efficiency" as that term has been used in Section 10(b)-5 cases as a predicate for establishing "fraud-on-the-market" reliance has been specifically rejected by the Ninth Circuit.  Nor do Defendants' other arguments that Dr. Hakala's opinions are unreliable or arbitrary have any merit.  Indeed, Defendants' positions are little more than an ill-conceived effort to shift the burden of establishing loss causation and damages to Plaintiffs in violation of the presumptions provided in Section 11(e).

**BACKGROUND**

In this case, Plaintiffs allege violations of Section 11 of the Securities Act of 1933 against WaMu Capital Corporation, WaMu Asset Acceptance Corporation, and certain of its individual officers ("WaMu").  Under §11(e), loss causation and damages are presumed and Plaintiffs need only submit proof of the value of the securities at the time the initial complaint is filed and at other dates the securities are sold, to establish their *prima facie* case.

Dr. Hakala, in his expert report dated March 2, 2012 ("Hakala Report") (attached as Exhibit 5 to the Declaration of Jesse M. Weiss in Support of Defendants' Motion for Summary Judgment (ECF No. 384-1)), explains that he was asked to determine the values of each of the Certificates in the certified class at the time of the filing of the first operative complaint and then

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

1

to estimate presumptive damages.   Hakala Report, ¶1.   In his report, Dr. Hakala calculated

presumed damages to the Class under Section 11(e) based on the value of the Certificates as of

the filing of the complaint.   Dr. Hakala explains that he determined the value of each Certificate

by looking first at actual transaction prices in the weeks surrounding August 4, 2008.   Then, he

looked to quoted prices from various sources and finally, he looked to transaction prices in the

few months prior to August 2008 and through January 2009 and then adjusted those prices for

known changes in transaction price quotes and estimates.   His method was thus to look first and

foremost at arm's-length transactions as evidence of value under Section 11(e).   As stated by

Hakala in his report:

> The basic protocol in determining investor losses included consideration
> first of actual transaction prices in the weeks or months before, on and relatively
> soon (within one month) after August 4, 2008.   Second, I considered quoted
> prices provided from various sources, including quoted market prices on account
> statements at the end of July and August 2008 for the Lead Plaintiffs and FT
> Interactive estimated prices as of August 4, 2008.   Finally, I considered
> transaction prices in the few months prior to August 2008 and through January
> 2009 and then adjusted those prices (when possible) for known changes in
> transaction price quotes and estimates provided by FT Interactive and in the
> broker transaction data for certificates with similar prices and performance
> characteristics.   For the senior certificates, at least two of these three methods
> were always available.   For the subordinated certificates at least one of these three
> methods was always available.

Hakala Report, ¶32.

Dr. Hakala consistently applied this hierarchy of information used to determine value.

Put another way by Dr. Hakala at his deposition:

> . . . your primary basis should be known transactions that are validated as meeting
> the fair market value arm's length definition should be given first weight and first
> priority.   The second priority should be given to known quotes or indication to
> interest.   When those two are missing, to the extent you have trades further away,
> adjustments to those prices to the current date would be acceptable.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

2

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

1   Transcript of 6/8/12 Deposition of Scott D. Hakala (attached as Exhibit 1 to the Declaration of

2   John T. Jasnoch filed herewith) ("Hakala Tr.") at 76:23-25; 77:2-8.  As further summarized by

3   Dr. Hakala at his deposition, "[t]here's a clear hierarchy that where the transactions data is

4   relatively robust or I can make adjustments, I'll give first priority to transactions data, consistent

5   with appraisal practice, and then second to price quotes, and then third, to the extent I have to,

6   I'll use much more distant price quotes or transactions to interpolate into the proper value."

7   Hakala Tr. at 51:7-15.

## ARGUMENT

**A.    Legal Standard**

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by an expert witness under several conditions.  As a "general principle . . . Rule 702 is applied consistent with 'the liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'"  *Jinro Am. Inc. v. Secure Inv., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993)); *see also* 31A AM. JUR. 2D EXPERT AND OPINION EVIDENCE §23.  Although the proponent of the expert has the burden of proving admissibility, *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996), "'[d]oubts . . . should generally be resolved in favor of admissibility.'"  *U.S. v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011).[1]

The expert witness should be "qualified . . . by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  In addition to this preliminary question, "Rule 702 embodies 'the twin concerns of reliability and helpfulness.'"  *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).  The reliability requirement ensures that "testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592).  The reliability inquiry is flexible and

---

[1]        Unless otherwise noted, citations are omitted and emphasis is added.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

3

1   depends on the circumstances of each case.  *U.S. v. Prime*, 363 F.3d 1028, 1032-34 (9th Cir.

2   2004).  Rule 702's helpfulness requirement is the capacity of the testimony to "help the trier of

3   fact."  Fed. R. Evid. 702.  Here, Dr. Hakala's testimony is both reliable and helpful as further

4   described below.

5   **B.**     **The Hierarchy Used by Hakala Is Supported by Numerous Sources**

6            Hakala's valuation hierarchy is wholly consistent with copious credible and esteemed

7   sources on valuation that are customarily relied upon in valuation analyses.  To begin with, the

8   Public Company Accounting Oversight Board ("PCAOB") specifically allows for and endorses

9   Hakala's approach to determining current "fair values" as of a defined measurement date.

10  PCAOB, AU Section 328, "Auditing Fair Value Measurements and Disclosures" (attached to the

11  Declaration of Scott D. Hakala ("Hakala Decl.") as Ex. A) specifically notes that GAAP

12  "expresses a preference for the use of observable market prices to make that determination [of

13  fair value]."  *Id.* at .03, and that "[i]n the absence of observable market prices, GAAP requires

14  fair value to be based on the best information available in the circumstances."  *Id.*  Furthermore,

15  Section .08 of that standard explicitly states that "the existence of published price quotations in

16  an active market is the best evidence of fair value."  Therefore, Hakala's approach of looking

17  first to market prices and then to a ladder of other information to determine value is promoted by

18  the PCAOB.

19           Furthermore, the Financial Accounting Standards Board ("FASB") has likewise endorsed

20  Hakala's approach.  FASB created FAS157 (attached to the Hakala Decl. as Ex. B) as a specific

21  guidance for determining the "fair value" of securities, ***including*** mortgage-backed securities.

22  *See Statement of Financial Accounting Standards No. 157: Fair Value Measurements*,

23  September 2006, currently amended by the Financial Accounting Standards Board.  FAS157

24  defines "fair value" as "the price that would be received to sell an asset or paid to transfer a

25

26

27

liability in an orderly transaction between market participants at the measurement date." *Id.*, ¶5 at 157-8.  For purposes of §11(e), the "measurement date" is the date the complaint is filed.

One of the stated purposes of FAS157 was to establish a framework to best measure fair value, and it specifically creates a hierarchy for valuing assets, including securities, by giving precedence to "observable" and objective market prices and data over more assumptive "unobservable inputs," such as a DCF:

> . . . a fair value measurement should be determined based on the assumptions that market participants would use in pricing the asset or liability.  As a basis for considering market participant assumptions in fair value measurements, this Statement establishes a fair value hierarchy that distinguishes between (1) market participant assumptions developed based on market data obtained from sources independent of the reporting entity (observable inputs) and (2) the reporting entity's own assumptions about market participant assumptions developed based on the best information available in the circumstances (unobservable inputs).

FAS 157-3.  More specifically, Section 22-A *et seq*. sets forth a "fair value hierarchy" that "gives the highest priority to quoted prices (unadjusted) in active markets for identical assets or liabilities (Level 1) and the lowest priority to unobservable inputs (Level 3)."   FAS 157-12. FAS157 applies to valuation of securities and, in particular, provides examples that discuss its applicability to mortgage-backed securities.  Courts have adopted FAS157 and its hierarchy as a "[f]ramework for measuring fair value."  *See In re the Bear Stearns Cos., Inc. Secs., Deriv., and ERISA Litig.*, 763 F. Supp. 2d 423,475 (S.D.N.Y. 2011).  FAS157 is thus a credible, reliable, and endorsed guide for valuing the mortgage-backed securities in this case.

Hakala followed the hierarchy of FAS157 almost exactly − looking first to actual market prices where available and then to similar transactions and finally to other categories of information.  His analysis thus tracks the language of FAS157 completely.  The authorities cited above therefore set forth the same hierarchy for determining value with preference given to arm's-length transactions at or around the valuation date.

Plaintiffs' Opposition to Defendants' Motion to Exclude Proffered Expert Testimony of Scott D. Hakala Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

5

1         Finally, Dr. Hakala's valuations are consistent with the "Market Approach to Business

2    Valuation," including for securities, under the Uniform Standards of Professional Appraisal

3    Practice ("USPAP").  *See* USPAP Advisory Opinions, 2010-2011 edition at 12-13 (attached to

4    the Hakala Decl. as Ex. C).

5         Thus, the analyses performed by Dr. Hakala are consistent with professional appraisal

6    reports and other applicable ways to value securities, including mortgage-backed securities.  As

7    such, Dr. Hakala's methods are reliable under Fed. R. Evid. 702.

8    **C.**    **Section 11(e) Requires a Consideration of Market Prices in Determining Value**

9         The Courts have similarly espoused a preference for objective market prices in

10   determining "value" under §11(e).  At a minimum, even when market prices are not wholly

11   reliable, they are an appropriate starting point in reaching a position on "value."  The fact that

12   *some* judgment is required in arriving at a damages number does not mean it should be excluded.

13        The case of *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1049 (2d Cir.

14   1995) (cited, but not followed by Defendants) is instructive here and shows how courts have

15   specifically approved Dr. Hakala's methods and analysis.  In that decision, the Second Circuit

16   expressly stated that "instances where the market price of a security will be different from its

17   value are 'unusual and rare' situations . . . .  Indeed, in a market economy, when market value is

18   available and reliable, 'market value will always be the primary gauge of an enterprise's worth."

19   Furthermore, the court went on to state that "[m]oreover, even where market price is not

20   completely reliable, it serves as a good starting point in determining value."  The court then

21   directed the district court, in applying the statutory damages formula set forth in Section 11(e), ***to***

22   ***begin with the market price to determine true value***.  *See also American Bankruptcy Institute*

23   *Law Review*, Spring 2012, Judge Christopher S. Sontchi, U.S. Bankruptcy Judge for the District

24   of Delaware ("Courts have consistently held that use of actual market data is the preferred

25

26

27

1  method to value an asset."). Therefore, Hakala's decision to rely first on actual market prices is

2  in keeping with not only valuation guidelines, but also judicial authority.

3  **D.      Defendants' Argument Surrounding Market Efficiency Is Misplaced**

4          Defendants also find fault with Dr. Hakala's use of market prices because they argue that

5  the Certificates at issue did not trade in an efficient market. Absent an efficient market, they

6  claim his reliance on actual transaction prices is "nonsensical." This is simply not the law.

7          To begin with, Dr. Hakala *did not* agree that the market was wholly inefficient, as

8  Defendants suggest in their brief. *See* Defendants' Brief at 11 ("[a]s both Dr. Hakala and

9  Dr. James agree, the market at issue was not efficient under *Cammer*"). Instead, Hakala testified

10  that the market, in fact, was *informationally efficient*. Hakala Tr. at 79:5-24. Defendants'

11  argument (as echoed by their expert, Christopher James) that actual prices should be ignored

12  unless there is "*Cammer*-like efficiency" has been specifically rejected by the Ninth Circuit in

13  *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095 (9th Cir. 2010). Plaintiffs thus dispute that

14  "efficiency," as that term is used for determining whether "reliance" in a 10(b)-5 case may be

15  presumed under *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), has any bearing on the

16  reliability of the actual prices used by Hakala for the purposes of a Section 11(e) damages

17  analysis.

18          Like here, defendants in *Thane Int'l* argued that stock price evidence could not be used

19  for valuation purposes when the market for a stock is not "*Cammer*-level efficient." The court

20  specifically and definitely rejected this position, stating that "[t]he absence of *Cammer* efficiency

21  does not mean that prices are unreliable." In so holding, the Ninth Circuit also noted how the

22  Second Circuit had decided similarly in *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336 (2nd

23  Cir. 1987). In that case, the court noted a "thin" or an inefficient market but nonetheless relied

24  on actual prices as the appropriate measure of damages.

25

26

27  PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
28  Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

7

1   There can thus be absolutely no doubt here that actual prices as determined in arm's-

2   length sales can and should be used as a measure of damages even if the market were deemed

3   "thin" or inefficient.   The law from within this Circuit is patently clear on that fact.   Thus,

4   Hakala's use of arm's-length transaction data is both appropriate and reliable.

5   **E.    Hakala's Opinions Are Not Inconsistent or Arbitrary**

6   Contrary to Defendants' assertions, Hakala's opinion is neither arbitrary nor inconsistent.

7   Defendants make much of damages schedules appending proofs of claims filed in the United

8   States Bankruptcy Court for the District of Delaware for the Washington Mutual Inc.

9   bankruptcy.   These, however, were specifically identified as preliminary and were not based on

10  the full pricing data that was used for Dr. Hakala's expert report in this case.   The bankruptcy

11  submissions were prepared for a motion to estimate the amount of Plaintiffs' class claim

12  prepared on an expedited basis due to impending court deadlines relating to the scheduled vote

13  of a proposed bankruptcy plan.   Because of the time limitations, Dr. Hakala did not review and

14  validate the extensive hard-copy production of purchase and sale transaction data made in

15  response to Plaintiffs' third-party subpoenas.   *See* Hakala's Decl., ¶3.   For the bankruptcy case,

16  Dr. Hakala performed a "limited" review to obtain his numbers, which were "only preliminary

17  estimates of value [that] were necessary for submission with proofs of claim and for an

18  upcoming hearing for which an estimate of damages was necessary to temporarily allow a claim

19  for voting purposes."   *Id.*   His estimate was performed simply to make an initial determination in

20  connection with the filing of a proof of claim, much like a damages estimate prepared in

21  connection with a complaint.[2]   Indeed, the Ninth Circuit has a "'long-established liberal policy

22  toward amendment of proofs of claim.'"   *Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1381

23  (9th Cir. 1985); *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 816 (9th Cir. 1984); *Sun Basin*

24

25  [2]    A $273.2 million proof of claim was replaced with one for $435 million after the tranches
    in the class were changed.   Hakala Decl., ¶3.

26

27  PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
    EXCLUDE PROFFERED EXPERT TESTIMONY OF
    SCOTT D. HAKALA

28  Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

1  *Lumber Co. v. U.S.*, 432 F.2d 48, 49 (9th Cir. 1970) (*per curiam*); *In re Franciscan Vineyards,*
2  *Inc.*, 597 F.2d 181, 182 (9th Cir. 1979) (*per curiam*).

3  **F.      Defendants' Argument Surrounding DCF Is Disingenuous**

4          Defendants suggest that Hakala ***should*** have used a DCF approach to estimating
5  Plaintiffs' losses.  Defendants' Brief at 11-12.  However, this argument is intended solely to trap
6  Plaintiffs and to set their expert up for failure.

7          Defendants on the one hand argue that Hakala's applied methodology is too "subjective"
8  and then suggest DCF as the preferable method.  However, DCF is actually the least reliable
9  pricing method because it is only as reliable as its assumption about future performance of the
10  mortgage loans.  Therefore, DCF would require far ***more*** subjectivity and would require sharply
11  disputed assumptions about trends in payment defaults and credit losses where some, but not all,
12  of the truth about Defendants' underwriting deficiencies had been disclosed.   Tellingly,
13  Defendants' expert, Dr. James, performed no such DCF calculations or suggested the credit loss
14  assumptions which he believed should be used in such a calculation.  Indeed, because Dr. James
15  has offered a "negative causation" opinion that ***all of*** Plaintiffs' losses were attributable to causes
16  unrelated to the alleged misrepresentations, Defendants' insistence on using a DCF methodology
17  is a transparent effort to avoid the §11(e) presumption of loss causation and make loss causation
18  an element of Plaintiffs' *prima facie* case.

19          At his June 2012 deposition, Hakala explained that he considered and, in fact, performed
20  a discounted cash flow analysis initially but determined that it was "too assumptive" and
21  "required too much assumption on [his] part . . . ."  Hakala Tr. at 44:20; 45:10.  Numerous
22  prominent sources agree with this conclusion.  For example, in Uniform Standards of
23  Professional Appraisal Practice, 2010-2011, Statement 2, it is specifically stated that "[b]ecause
24  DCF analysis is profit oriented and dependent on the analysis of uncertain future events, it is
25  vulnerable to misuse."  *See Uniform Standards of Professional Appraisal Practice* as

26

27  PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
     EXCLUDE PROFFERED EXPERT TESTIMONY OF
     SCOTT D. HAKALA
28  Case No. C09-037 MJP

**SCOTT+SCOTT LLP**
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

9

1   promulgated by the Appraisal Foundation, 2010 to 2011 edition (selected portions attached as

2   Ex. A to Hakala Decl.).   Furthermore, the PCAOB agrees.   In Section .19, it states that "the

3   introduction of an active market for an equity security may indicate that the use of the discounted

4   cash flows method to estimate the fair value of the security is no longer appropriate."   *See* Ex. A

5   to Hakala Decl.  Defendants also make much of Dr. Hakala's use of subsequent transactions for

6   valuation purposes.  However, this is also a recognized tool.  The PCAOB specifically allows for

7   use of subsequent events or transactions.   In Section .41, it is stated that such events or

8   transactions "may provide audit evidence regarding management's fair value measurements as of

9   the balance-sheet date."   *See* Ex. A to Hakala Decl.   Likewise, the Appraisal Foundation

10  promulgated Statement 3 that specifically addresses the fact that retrospective appraisals may be

11  required for suits to recover damages.  *See* Ex. C to Hakala Decl.  Finally, Defendants have taken

12  the statement from Plaintiffs' other expert, Dr. Zissu, entirely out of context.  In her deposition,

13  Dr. Zissu was discussing how investors evaluated an offering's pricing.  *See* Ex. 1 to Declaration

14  of Brendon DeMay [ECF No. 466] at 102:24-104:12.   Certainly, before there are comparable

15  arm's-length sales, a DCF is the only means available to reach a purchasing decision.

16          Therefore, Hakala actually opted to employ a more reliable and less subjective method

17  for his expert opinion.   Under Section 11, arm's-length transactions are the best evidence of

18  "value" as a matter of law and as confirmed by numerous guidelines and oversight boards.

19  Defendants' insistence that Plaintiffs must develop a discounted cash flow model – which

20  conveniently requires them to prove up the credit losses attributable to Defendants' poor

21  underwriting – is nothing more than a disingenuous effort to reverse the burdens of §11(e) on

22  loss causation and damages.

23

24

25

26

27

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

1

## CONCLUSION

2     For the reasons stated herein, Plaintiffs respectfully ask that this Court deny Defendants'

3  motion to exclude in its entirety and fully permit the testimony and opinions of Scott D. Hakala.

4  Dated: July 30, 2012                                    Respectfully submitted,
5                                                          **SCOTT+SCOTT LLP**

6                                                          */s/ Beth Kaswan*
                                                           Beth Kaswan (admitted *pro hac vice*)
7                                                          Amanda F. Lawrence (admitted *pro hac vice*)
                                                           500 Fifth Avenue, 40th Floor
8                                                          New York, New York 10110
                                                           Telephone: (212) 223-6444
9                                                          Fax: (212) 223-6334
10                                                         Email: bkaswan@scott-scott.com
                                                                  alawrence@scott-scott.com
11

12                                                         Anne L. Box (admitted *pro hac vice*)
                                                           John T. Jasnoch (admitted *pro hac vice*)
13                                                         SCOTT+SCOTT LLP
                                                           707 Broadway, Suite 1000
14                                                         San Diego, California 92101
                                                           Telephone: 619-233-4565
15                                                         Fax: 619-233-0508
16                                                         Email:  abox@scott-scott.com
                                                                   jjasnoch@scott-scott.com
17

                                                           **COHEN MILSTEIN SELLERS &**
18                                                         **TOLL PLLC**
                                                           Steven J. Toll
19                                                         Joshua S. Devore (admitted *pro hac vice*)
                                                           S. Douglas Bunch (admitted *pro hac vice*)
20                                                         1100 New York Avenue, N.W.
                                                           Suite 500, West Tower
21                                                         Washington, DC 20005
                                                           Telephone: (202) 408-4600
22                                                         Fax: (202) 408-4699
                                                           Email: stoll@cohenmilstein.com
23                                                                 jdevore@cohenmilstein.com
                                                                   dbunch@cohenmilstein.com
24

25

26

27  PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
    EXCLUDE PROFFERED EXPERT TESTIMONY OF
    SCOTT D. HAKALA                                        **SCOTT+SCOTT LLP**
28  Case No. C09-037 MJP                                   707 Broadway, Suite 1000
                                                           San Diego, CA 92101
                          11                               Telephone: (619) 233-4565

1
2
3
4
5

Christopher Lometti (admitted *pro hac vice*)
Daniel B. Rehns (admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: clometti@cohenmilstain.com
      drehns@cohenmilstein.com

6

*Lead Counsel for the Class*

7

**TOUSLEY BRAIN STEPHENS PLLC**
Kim D. Stephens, WSBA #11984
Janissa A. Strabuk, WSBA #21827
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
Email: kstephens@tousley.com
      jstrabuk@tousley.com

8
9
10
11
12
13

*Liaison Counsel for Plaintiffs and the Class*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA
Case No. C09-037 MJP

SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

12

1

**CERTIFICATE OF SERVICE**

2
I hereby certify that on July 30, 2012, I caused the foregoing to be electronically filed

3
with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4
to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I

5
caused the foregoing document or paper to be mailed via the United States Postal Service to the

6
non-CM/ECF participants indicated on the Manual Notice List.

7
I certify under penalty of perjury under the laws of the United States of America that the

8
foregoing is true and correct.  Executed on July 30, 2012.

9

10
/s/ Beth Kaswan
Beth Kaswan (admitted *pro hac vice*)

11
500 Fifth Avenue, 40th Floor
New York, New York 10110

12
Telephone: (212) 223-6444
Fax: (212) 223-6334

13
Email: bkaswan@scott-scott.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE PROFFERED EXPERT TESTIMONY OF
SCOTT D. HAKALA

28
Case No. C09-037 MJP

**SCOTT+SCOTT LLP**
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565